UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| vs. | § | CRIMINAL NO. C-02-216 |
| | § | |
| ALFRED BOURGEOIS | § | |

**GOVERNMENT'S RESPONSE TO COURT ORDER OF FEBRUARY 6, 2008**
**REGARDING DEFENDANT'S MOTION TO AMEND**
**THE COURT'S ORDER LIMITING CORRESPONDENCE**

COMES NOW the United States of America, by and through the United States Attorney

for the Southern District of Texas, and Patti Hubert Booth, the undersigned Assistant United

States Attorney, and files the following **RESPONSE TO THE COURT'S ORDER OF**

**FEBRUARY 6, 2008.**

I.

The defendant, Alfred Bourgeois ("Bourgeois") through new counsel, has filed a Motion

to Amend the Court's Order Limiting Correspondence.  Attachments to defendant's motion are

two previous court orders regarding the limitations of defendant's communication.  The first

order was entered on January 8, 2003, following a hearing held before the Court on this issue,

and the second order was entered on October 24, 2003, which was entered following a lengthy

status conference held before the Court as to several issues, one of which was Bourgeois'

continued threats to potential witnesses.

Defendant Bourgeois was convicted on March 16, 2004, of first degree murder of his

child following an eight day jury trial.  After four days of hearings as to the punishment phase of

Bourgeois' conviction, the jury announced its unanimous decision to sentence Bourgeois to death for this crime.

The government established numerous times through prior motions and in Court hearings that defendant Bourgeois is a violent, manipulative and dangerous individual, who repeatedly threatened others before and during his trial.

During Bourgeois' incarceration in Corpus Christi, Texas, and prior to trial, an inmate named Orlando Campos, who was housed with Bourgeois, contacted case agents and informed them that Bourgeois repeatedly told Campos that he "Bourgeois" was going to kill his wife. Bourgeois' wife at the time was Robin Bourgeois. Campos told agents that Bourgeois said he had a brother who owed him a favor and that this brother asked Bourgeois if he wanted **anything done to Robin.** Campos told agents that Bourgeois answered his brother **not now... because it would look bad.**

Campos contacted case agents a second time when Bourgeois told Campos that he was going to have his brother **kill Robin now.** Campos stated to agents that Bourgeois said he was not going to wait until his trial to have **Robin** murdered. Campos also told agents that Bourgeois told him that he, "Bourgeois" has the ability to have anyone killed through his family, and that his family had already killed one of his ex-wives for him.

Another inmate named Wiley Lee Taylor, was also housed with Bourgeois during this time period. Taylor also informed the government that Bourgeois told Taylor of his plans to kill his wife **Robin.** Taylor told agents that Bourgeois stated that the only reason he was in jail was due to Robin's cooperation with the FBI. Taylor told agents that Bourgeois said that when he got out of jail that he was going to pull Robin's tongue out with a pair of pliers, cut it off and

2

watch her bleed to death.  He further told Taylor that after he cut off her tongue, he was going to slit her throat just before she died.  Taylor said that Bourgeois told him he did not care if he got caught, that **it was something he had to do.**  Taylor, like Campos had done, informed agents that Bourgeois bragged that he had the power to kill someone through his family.  Finally, Taylor told agents that Bourgeois stated that when this was all over, they would **get that bitch**.

The government has no evidence to substantiate that Bourgeois' personality and his manipulative tendencies toward others has changed since his conviction.

Further, in reviewing the defendant's previous correspondence, in particular, correspondence to the defendant's wife's uncle, Anthony Dumas, the defendant directly threatened Robin's life, stating that, "Robin's days will be short... This niece of yours will have a short life... Robin's day is coming."  See attached Exhibit "A".

In reviewing other correspondence from the defendant, Bourgeois cleverly directs the recipient of his letter to get in touch with his brother Lloyd, so that they can discuss the defendant's case with Lloyd.  In another letter written by the defendant to his brother and sister-in-law, Lloyd and Anita, the defendant directs Lloyd to "do what we spoke about."  Unless the attorneys currently representing the defendant are aware of the contents of these letters, a statement such as "do what we spoke about" might go unnoticed, yet cause great harm to individuals such as Robin.  See attached Exhibit "B".

In addition, in much of the defendant's correspondence, Bourgeois' statements are "down and out" untruths which could potentially taint these witnesses.  Furthermore, the fact of the matter is that many of these witnesses have had time on their hands to reconsider the defendant's

death sentence. Even though present counsel for Bourgeois have assured the government they will consciously inspect the defendant's mail for attempts to intimidate, threaten, or manipulate witnesses, the government feels that supervision of his correspondence is even more important at this time, because many of these witnesses have a familial relationship with Bourgeois, feel badly about the fact that he received the death penalty, and are subject to being easily manipulated in Bourgeois' plight.

Because this defendant currently has a pending Motion for Relief under Title 28, Section 2255 or in the alternative, relief under Title 28, Section 2241, which challenges his conviction and death sentence related to the 2002 beating death of his daughter, and, based on the examples of defendant's behavior, it is unreasonable to assume that defendant Bourgeois will cease in making threats to family members or potential witnesses, should a hearing come about as a result of the pending motion(s) before the Court.

Until these matters are resolved, government stands on its position that Bourgeois not be allowed to communicate with anyone other than his attorney.

II.

Should a hearing result from this matter, the government would produce witnesses to re-establish the level of threats Bourgeois made before and during his trial.  However, the government does not believe a hearing is necessary to resolve this matter.

4

III.

Accordingly, the government requests that the motion be denied.

Respectfully submitted,

DONALD J. DeGABRIELLE, JR.
UNITED STATES ATTORNEY

By:   /S/ Patti Hubert Booth
PATTI HUBERT BOOTH
Assistant United States Attorney
Federal I.D. No. 19500
State Bar I.D. No. 02650500
800 N. Shoreline Blvd., Suite 500
Corpus Christi, TX 78401
(361) 888-3111
(361) 888-3200 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing response with attachments has been served upon Mr. Michael Wiseman, Assistant Federal Public Defender, Philadelphia, PA via facsimile and through the ecf filing system on this 6th day of March, 2008.

/S/ Patti Hubert Booth
PATTI HUBERT BOOTH
Assistant United States Attorney