1

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION


UNITED STATES OF AMERICA,      *   CRIMINAL ACTION
                                 *
      PLAINTIFF,          *   CR-C-02-216(1)
                                 *
VS.                         *
                               *   CORPUS CHRISTI, TEXAS
ALFRED BOURGEOIS,         *   OCTOBER 30, 2008
                               *   9:00 A.M.
      DEFENDANT.         *
                               *

* * * * * * * * * * * * * * * * * *


TRANSCRIPT OF TELEPHONE CONFERENCE

BEFORE THE HONORABLE JANIS GRAHAM JACK
UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE GOVERNMENT:      MS. PATTI HUBERT BOOTH
                          MS. ELSA SALINAS-PATTERSON
                          OFFICE OF THE U.S. ATTORNEY
                          800 NORTH SHORELINE, SUITE 500
                          CORPUS CHRISTI, TEXAS 78401

                          MR. TONY R. ROBERTS
                          OFFICE OF THE U.S. ATTORNEY
                          P. O. BOX 61129
                          HOUSTON, TEXAS 77208

(APPEARANCES CONTINUED ON PAGE 2)


COURT RECORDER:         MS. VELMA GANO


PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING
TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE:
MOLLY CARTER, P. O. BOX 270203
CORPUS CHRISTI, TEXAS 78427 (361) 945-2525

APPEARANCES:   (Continued)


FOR THE DEFENDANT:          MR. MICHAEL WISEMAN
                           OFFICE OF THE FEDERAL PUBLIC DEFENDER
                           601 WALNUT STREET
                           THE CURTIS CENTER, SUITE 545
                           PHILADELPHIA, PENNSYLVANIA 19106


ALSO PRESENT:              MR. JOHN GILMORE

(The proceedings began at 9:00 a.m.)

(Call to Order of the Court.)

THE COURT:  Would you call the case, Ms. Scotch?

THE CLERK:  Yes, Your Honor.  Court calls Criminal Action C-02-216, United States of America versus Alfred Bourgeois.  May I have appearances, please?

MR. WISEMAN:  Michael Wiseman for Mr. Bourgeois.

MS. BOOTH:  Patti Hubert Booth for the United States.

MS. SALINAS-PATTERSON:  Elsa Salinas-Patterson for the United States.

MR. ROBERTS:  Tony Roberts for the United States.

MR. GILMORE:  And John Gilmore.

THE COURT:  Mr. Wiseman, I wanted to just ask you how you anticipated we should go forward with this.  I know you have some time left to file your response to the Government's response.

MR. WISEMAN:  Yes, Your Honor.  We certainly intend to do that.  We may be asking for a little extra time to do that, given the length of the Government's response.  But we certainly intend to file a reply.

I had spoken with Mr. Gilmore, who advised me that he was not hopeful that Mr. Tinker was going to be able to respond to the interrogatories that we asked him to.  So I guess that's going to require some separate discussion, assuming that's the case.

THE COURT:  That's really why I wanted, what I wanted to talk to you about today.

MR. WISEMAN:  Yeah.

THE COURT:  Is that when we talked before you sent out the interrogatories by written questions to Mr. Tinker, I told you I thought that would be the only way to get testimony, to preserve testimony from Mr. Tinker.  And I have seen the responses of Mr. Tinker's interrogatories that you sent out, the deposition by written questions, is what I called it, and wanted to know if you needed to amplify that or what you need to do, rather quickly, and if it could be done, which is why I wanted Mr. Wiseman and Mr. Gilmore on the phone.

MR. WISEMAN:  Right.  It's Michael Wiseman.  I mean, we, just to be clear, we did propound some follow-up questions, and I guess Mr. Gilmore can let us know if he thinks those are going to be answered.

THE COURT:  How's Mr. Tinker, Mr. Gilmore?

MR. GILMORE:  John Gilmore.  Judge, his condition's rapidly deteriorating.  He's made a marked downturn --

THE COURT:  I'm sorry, I can't hear you.

MR. GILMORE:  He's made a marked downturn since last week.  I went over to try to get him to answer the interrogatories.  He was unable to.  And now he's having problems swallowing.  His nurse thinks that it's not going to be much longer.

THE COURT:  Mr. Gilmore, you're fading out.  Are you on a cell phone or land line?

MR. GILMORE:  No, Your Honor.  I'm standing at a, I'm on the land phone.  I'm in the courthouse, in a courtroom.

MR. WISEMAN:  Your Honor, I was able to make out as much as Mr. Gilmore said about Mr. Tinker not being able right now to respond to our interrogatories.  So I guess that leaves my side with the choice of either moving to strike the answers of the Government's or not.  And I'm frankly not prepared today to make that decision.  But I can certainly let the Court know that in short order.  I just have to get with my colleagues and focus on that question.

THE COURT:  Well, I can tell you I'm not going to strike them.  You can file a motion to strike, if you would like, Mr. Tinker's responses.

MR. WISEMAN:  Okay.

THE COURT:  But I told you the situation some month ago --

MR. WISEMAN:  Oh, no, I understand.

THE COURT:  -- and told you to move rapidly with all the questions you wanted answered --

MR. WISEMAN:  Yeah.

THE COURT:  -- a deposition by written questions.  I know that that was not the preferred manner to do that.

MR. WISEMAN:  Yeah, yeah.

THE COURT:  But I hadn't heard anything back, and I didn't know if you had sent follow-ups or what the situation was.

MR. WISEMAN:  Well no, Your Honor, I did file a notice with the Court that I had propounded these interrogatories, and I did so within --

THE COURT:  I guess I -- you know, I guess I thought that notice was after the fact.  I didn't realize these were follow-up --

MR. WISEMAN:  No.

THE COURT:  -- deposition by written questions.

MR. WISEMAN:  We followed the time line that the Court set out --

THE COURT:  Okay.

MR. WISEMAN:  -- in its order, and we propounded them I believe timely.  And that notice I filed was just to let everybody know that I had in fact asked Mr. Gilmore to get the interrogatories to Mr. Tinker.

THE COURT:  Okay.

MR. WISEMAN:  And so now we know that they --

THE COURT:  But it may be enough to know that Mr. Gilmore and Mr. Tinker worked in concert in their defense.

MR. WISEMAN:  Uh-huh.

THE COURT:  And Mr. Gilmore may have all the information that Mr. Tinker had, or Mr. Gilmore may be able to

get that information.

MR. WISEMAN:  Yeah.  I guess, Your Honor, just reflecting back on the question about what next, I think we talked, in our little argument we had about the motion, the Government's motion, to have Mr. Gilmore and Tinker complete affidavits.  I think the Court was agreeable to conducting a deposition of Mr. Gilmore.  So I think, given the whole --

THE COURT:  I'm not that concerned about the deposition of Mr. Gilmore, because we can do that live.  I anticipate an evidentiary hearing.

MR. WISEMAN:  Right.

THE COURT:  And I don't see any reason why that can't be done, Mr. Gilmore's testimony can't be done in court.

MR. WISEMAN:  Okay.

THE COURT:  My concern was the preservation of Mr. Tinker's testimony by deposition by written questions.

MR. WISEMAN:  Right.

THE COURT:  And frankly, the questions that you asked, sent for Mr. Tinker originally were not too detailed. And I was a little surprised about that.

MR. WISEMAN:  You mean the ones the Government propounded?

THE COURT:  Oh, I'm sorry.  That was the Government. Well, whoever did it, I told you both to do it, but apparently you --

MR. WISEMAN:  Your Honor, just to be clear, your order envisioned the Government going first and then us going after receipt of Mr. Gilmore's, I'm sorry, Mr. Tinker's responses to the Government.

THE COURT:  Okay.  Well, I didn't remember that.  But I guess I anticipated both of you moving a little bit quicker than did you.

MR. WISEMAN:  We were following the order.

THE COURT:  Okay.

MR. WISEMAN:  I thought the order was clear in that respect, and we followed it.

Well, I guess the question then is what next.  And I think we -- let me get with my colleagues this week, and we'll alert the Court by motion as to whether we think we're going to need some extra time to file our reply.  And if we don't, then --

THE COURT:  I don't have any problem with giving you extra time.  My concern again is your access.  I pretty well -- Mr. Gilmore, do you feel like you have all the information that Mr. Tinker would have given?

MR. GILMORE:  Honestly, Your Honor, no, I don't.

THE COURT:  In what regard?

MR. GILMORE:  When Mr. Tinker came on board on the case, he had just --

THE COURT:  I really cannot hear you.  Can you speak

up?

MR. GILMORE:  I'm -- can you hear me now, Judge?

THE COURT:  Yes, thank you.

MR. GILMORE:  When Mr. Tinker came into the case, he was just coming off of his retirement, and his docket wasn't as big as mine, and he was able to devote more time to talking to the experts.  That's why we divided the case, him doing the experts, the mitigation people, and me doing the lay witnesses.

THE COURT:  Now I can't hear you.  Can you identify those experts any way?

MR. GILMORE:  I didn't have any personal contact with our experts.

THE COURT:  Okay.  Was there a way to identify those experts so they can be deposed?

MR. GILMORE:  Yes, I believe so, Judge.

MR. WISEMAN:  We've spoken with all of the experts ourselves, Your Honor, and we've got declarations from a number of them in the appendix we filed.  So we --

THE COURT:  Right.

MR. WISEMAN:  We have been working on the assumption of late that we were going to have to go from the record as to, and from what the experts say as to Mr. Tinker's interaction with them.

THE COURT:  Okay.

MR. WISEMAN:  I guess that just is what it is.

There's not anything anyone can do about it.  And we'll have to make the best of that.

THE COURT:  Yeah, I think from, I understood from whatever the record is that Mr. Tinker interacted mostly with the experts but shared that information with Mr. Gilmore, so they made a joint decision as to how to proceed with that testimony from the experts.  Is that correct, Mr. Gilmore?

MR. GILMORE:  Yes, Your Honor.

THE COURT:  Okay.  So I think we can go through the back way and get the information, at least from the experts' point of view as to what their interaction was with Mr. Tinker, then Mr. Gilmore can tell us what that discussion was about whether or not to present the experts, what portion, if any, to present in the case.

MR. WISEMAN:  Yeah, this is Michael.  I think that's a, that sounds like the best way we can do it at this point, given the circumstances.

THE COURT:  If I recall, there was something, there was an expert or so that Mr. Tinker didn't, in his response, didn't remember who he had contacted.  Was it a bite expert?

MR. ROBERTS:  Your Honor, this is Tony Roberts.  My recollection is that it was the -- he said he had talked to someone about the bite mark and did not recall who that was.

THE COURT:  Is there any way we can find that from his records, Mr. Gilmore?

MR. GILMORE:  I'll try to get access to his records. My -- was your question he was waiting for a response from somebody that he didn't get back timely?

THE COURT:  No.  That person was identified.  That was --

MR. WISEMAN:  That was Dr. Johnson --

MR. GILMORE:  Dr. Johnson, yes.

MR. WISEMAN:  -- I believe.

THE COURT:  And again, that person's identified, that Mr. Tinker was not satisfied with her testing and that she had not returned his calls and didn't get back to him in time to present anything at trial.  Was that the bite expert?

MR. WISEMAN:  No.  She was the DNA expert, Your Honor.

THE COURT:  Yeah.  Well, I thought there was a bite expert he didn't recall.  Is there any way that we could re-create who that would be, Mr. Gilmore, from --

MR. WISEMAN:  Your Honor, I've got all that information in our file, and I'm sure we can, you know, we can --

THE COURT:  Oh, you've got that, Mr. Wiseman?

MR. WISEMAN:  I'm sorry?

THE COURT:  You've got that?

MR. WISEMAN:  Yeah, we know who all the experts that were consulted with and whether or not Mr. Tinker spoke with

them, and you know, we have that information.

THE COURT:  Okay.  Who was that expert?

MR. WISEMAN:  We can reproduce that.  I'm sorry?

THE COURT:  Who was that expert that he, Mr. Tinker consulted, with whom he consulted?

MR. WISEMAN:  I think the one you're talking about is, her name is Johnson.  And she was relevant to a question of, related to DNA.

MR. ROBERTS:  Your Honor, this is Tony Roberts --

THE COURT:  Okay.  But wasn't there a bite expert that he said he couldn't remember?

MR. WISEMAN:  There were bite experts.  I don't have those names in front of me, though.  And I'm not --

MR. ROBERTS:  Your Honor, if I might --

THE COURT:  But you do know who that is, Mr. Wiseman?

MR. WISEMAN:  Yes, we do.  We do.

THE COURT:  Okay.

MR. ROBERTS:  I was just going to clarify -- this is Tony Roberts -- I was just going to clarify, in answer to Question 7, which was in reference to Dr. Senn, Dr. Hertz and Dr. Oliver, and Dr. Dailey, that Mr. Tinker did in fact respond that he believed he had, he believed that he had an expert review the evidence, but at this time does not recall who that person was.

THE COURT:  Can we find out who that person is,

Mr. Gilmore, do you think?

MR. GILMORE:  I'll attempt to find out, Judge.

THE COURT:  Okay.  Anything else, Mr. Wiseman, that you can think of that we need to be planning on at this time?

MR. WISEMAN:  No, Your Honor.  I think, you know, you'll be hearing from us, as I mentioned earlier, very soon as to whether we need time or not.

THE COURT:  Yeah, well I can see, I can see your problem with striking Mr. Tinker's testimony, since you didn't get a chance to cross-examine him.  But I'm not really sure how to go about, how to go about remedying that.

MR. WISEMAN:  Yeah, I understand the problem.  You know, let me get with my partners, and we will, you know, propose something to the Court.  We'll either file a motion in that regard, or if we don't, then that will be our position that it's okay to stand as it is.  And we'll file our reply, and I think there may be some motions we want to file with regard to, you know, identifying the issues for hearing, and I guess we could take it from there.

THE COURT:  Okay.  Mr. Gilmore, does Mr. Tinker, did he finally get hospice?

MR. GILMORE:  He has hospice.  He has 24-hour care right now.

THE COURT:  Oh, that's wonderful.  I'm so glad about that.  All right.  Anything else?

MR. WISEMAN:  Not from me, Your Honor.

MR. ROBERTS:  Your Honor, this is Tony Roberts again for the United States.  We had briefly heard from Mr. Gilmore that there were some concerns he had about the questions that were submitted by Mr. Wiseman.  And we obviously, the Government did not get copies of the questions that Mr. Wiseman submitted, and we were just wondering if the Court wanted to inquire about the concerns Mr. Gilmore had about the questions.

THE COURT:  Mr. Gilmore, could you tell -- could you speak to that?

MR. GILMORE:  I'm not -- I can't remember, Judge.  It's been about a couple of weeks since I received them and tried to go over them with Mr. Tinker.  I can't remember what the problems were.

MR. WISEMAN:  You know, if there's a problem, we can certainly send you a copy of the questions.  There's no big secret there.  And I'll send them to you when I get back to my office.

THE COURT:  Would you do that, please, Mr. Wiseman and --

MR. WISEMAN:  I'm sorry?

THE COURT:  Would you do that?  Would you send that to Mr. Gilmore?

MR. WISEMAN:  Sure.  Sure.  No big secret there.

MR. ROBERTS:  Could the Government get a copy of

those?

MR. GILMORE:  I have them.  I have them, Judge.  I think Mr. Roberts wants them.

MR. WISEMAN:  Yeah, yeah, I was saying I would be happy to send them to the Government.

THE COURT:  Okay.

MR. WISEMAN:  There's no problem with that.

MR. ROBERTS:  Thank you, Your Honor.  This is Tony Roberts again.  The only thing I can add to that is that we heard they might be very, very technical questions that are just impossible to answer.  But I guess we can see that once we get them.

MR. WISEMAN:  Well, why don't I send them to you and you can see what you think of them, and we can go from there.

THE COURT:  All right.  Anything else you all need to talk about on this call?

MR. WISEMAN:  Not from the Petitioner.

MR. ROBERTS:  Not from the Government, Your Honor.

MR. GILMORE:  Not from me, Judge.

THE COURT:  All right.  Thank you all very much for your appearances.

MR. WISEMAN:  All right.  Thank you.

THE COURT:  Particularly Mr. Gilmore.  Thank you.

MR. GILMORE:  Thank you.

THE COURT:  Bye-bye.

MR. WISEMAN:  Goodbye.

(Proceedings concluded at 9:14 a.m.)

I, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

/s/ Molly Carter                    January 20, 2009
Molly Carter                        Date