# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

_____

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. Cr-C-02-216 |
|  | : |  |
| Respondent, | : | Honorable Janis Graham Jack, |
|  | : | U.S.D.J. |
| -against- | : |  |
|  | : | **Capital Case** |
| ALFRED BOURGEOIS, | : |  |
|  | : |  |
| Petitioner. | : |  |

_____  :

**PETITIONER'S REPLY
IN SUPPORT OF
MOTION FOR AN EVIDENTIARY HEARING AND DISCOVERY**

On July 1, 2009 Petitioner filed his *Motion for an Evidentiary Hearing and Discovery* (hereafter, *Motion*) (document # 460). The Government filed its *Response to Petitioner's Motion* on December 24, 2009 (document # 480) (hereafter, *Response*). Petitioner files this *Reply*.

## Evidentiary Hearing

1. The Government "acknowledges that holding a hearing where a defendant has been sentenced to death is not an unreasonable decision" *Response*, 4. Moreover, the Government does not dispute any of the legal principles governing Petitioner's entitlement to a hearing. Thus, the parties are not in disagreement that

1

a hearing should be conducted, however the scope of the hearing remains somewhat at issue. Petitioner will address the issues which he believes merit evidentiary resolution, and in that discussion will address the Government's contrary arguments.

2.    Before addressing individual claims, counsel wish to clear up an apparent area of confusion. The Government appears to believe that Petitioner's "claims of ineffective assistance of counsel" are related only to Claim II, alleging that counsel were ineffective for failing to present available mitigating evidence in the penalty phase of trial. See *Response*, 3. In reality, in addition to Claim II, Petitioner has pled six other claims in which he contends that counsel were ineffective.[1] Each require evidentiary resolution.

**Claim I:    Petitioner is Mentally Retarded and Counsel Were Ineffective for Failing to Present this Evidence.**

3.    The Government opposes a hearing on Petitioner's status as a person with mental retardation by asserting that "conspicuously absent from Petitioner's submissions is any actual diagnosis of mental retardation"(*Response* at 3). This is

---

[1]Petitioner has also pled that counsel were ineffective for: Claim I (not investigating and presenting evidence of mental retardation); Claim III (not presenting available evidence that the fatal injuries occurred outside the territorial jurisdiction of the United States); Claim IV (failing to present evidence to undermine the Government's sex-abuse evidence); Claim V (failing to challenge the bite-mark evidence); Claim VI (failing to challenge digitally enhanced photos); Claim IX (failing to object to improper prosecutorial comments); and Claim X (failing to rebut evidence of Petitioner's "indifferent demeanor").

incorrect as Petitioner has submitted such a diagnosis.  See Declaration of Victoria Swanson, Ph.D., dated June 8, 2009, ¶ 6 ("Based on my review of the records and my own testing, it is my opinion to a reasonable degree of psychological certainty that Mr. Bourgeois is an individual with mental retardation").[2]

4.      The Government also points out that Mr. Gilmore's affidavit reveals that the defense relied upon the statement of Dr. Estrada, that Mr. Bourgeois "appears to have an above average intelligence."  *Response*, 3 (emphasis added).  However, counsels' ostensible reliance on "appearances" raises more questions than it answers – questions that are appropriately resolved at an evidentiary hearing.  While Dr. Estrada merely noted Mr. Bourgeois' "appearance" – which was obviously not based on any psychometric testing – the defense had available Dr. Weiner's actual IQ testing, on which Mr. Bourgeois scored a 75, placing him in range of mental retardation.  See Declaration and attached Report of Dr. Donald E. Weiner, document # 16 (*Petitioner's Appendix in Support of 2255 Motion.*[3]

---

[2]Dr. Swanson's declaration was included in *Petitioner's Supplemental Appendix,* submitted with *Petitioner's Reply to Respondent's Answer to 2255 Motion*, identified as document # 74.

[3]As noted in the *Petition*, Mr. Bourgeois actually scored a 75, not 76, and Dr. Weiner made a transcription error when he referenced the score in his report. Moreover, when the score is adjusted for the Flynn Effect, his actual IQ is 68. See *Petition* at pages 5-6.

5.    Effective counsel would not have relied on Dr. Estrada's statement regarding "appearances" without trying to reconcile that statement with the actual IQ testing.    Had an attempt been made to reconcile these points, counsel would have discovered that Dr. Weiner's IQ testing is far more reliable than the "appearance" noted by Dr. Estrada, and Dr. Weiner's testing places Mr. Bourgeois at anywhere from a 68 to 75, and thus in the range of mental retardation.    At a minimum this conflict requires evidentiary resolution.

### Claim II:    Counsel Were Ineffective For Failing to Investigate and Present Available Mitigating Evidence.

6.    The Government asserts that no hearing is necessary because trial counsel made a tactical decision not to present the mitigating evidence proffered by current counsel, because that mitigating evidence conflicted with Mr. Bourgeois' denial of guilt. *Response* at 3-4.  The Government is incorrect as a matter of fact and law.

7.    Factually, trial counsel did attempt to make a presentation about childhood abuse, but was prevented from doing so.  Counsel sought to elicit from Dr. Estrada on cross examination that Mr. Bourgeois was subject to savage abuse as a child, and that this abuse made him more apt to be violent as an adult.  However, that effort was terminated because Dr. Estrada was not permitted to rely on Dr. Weiner or

Dr. Cunningham as sources for the abuse evidence (because counsel decided not to call them as witnesses), and Dr. Estrada had no other sources upon which to rely. Counsel was then forced to argue by implication, i.e. that people who commit such horrific violence must come from abused backgrounds. See *Petition* at ¶¶ 59-62.

8.      Counsel made a further, if half-hearted, attempt to present a smidgin of abuse evidence through the very brief testimony of Carl Kevin Henry and the Reverend Herman Clayton, Jr. (*Petition*, ¶¶ 69-71).

9.      Thus, contrary to the Government's arguments, counsel did **not** make a tactical decision **not** to present childhood abuse and resulting psychological scars, because it conflicted with Mr. Bourgeois' denial of the offense.  Rather, they tried to elicit this testimony and make argument about it, but did so in an ineffective manner.

10.      The Government has also failed to address at all Petitioner's assertion that he is entitled to a hearing on his alternative claim that counsel were ineffective for failing to present evidence of Petitioner's borderline mental retardation.  Thus, even if Petitioner does not qualify as a person with mental retardation, his borderline IQ (ranging in the mid-70s), is itself mitigating, and, as the Supreme Court has held, such borderline cognitive functioning is relevant mitigation, see Smith v. Texas, 543 U.S. 37, 44 (2004) ("There is no question that a jury might well have considered petitioner's IQ scores [of 78]. . . as a reason to impose a sentence more lenient than

death."), that should be admitted even if it bears no connection to the offense, Tennard v. Dretke, 542 U.S. 274, 287 (2007) (evidence of low IQ admissible at penalty phase despite failure to show that crime was connected to low IQ).

11.    The Government is also wrong on the law.  A defendant's denial of guilt does not relieve capital counsel of their duty to investigate and present extant mitigating evidence.  Initially, most capital defendants reach the penalty phase of trial with at least an official denial of their guilt.  Accordingly, the AMERICAN BAR ASSOCIATION GUIDELINES FOR THE APPOINTMENT AND PERFORMANCE OF DEFENSE COUNSEL IN DEATH PENALTY CASES, February, 2003, Guideline 10.7, requires penalty phase preparation to proceed regardless of statements made by the defendant about his guilt or innocence.  See also Rompilla v. Beard, 545 U.S. 374 (2005) (counsel ineffective for incomplete mitigation investigation and presentation even though their client insisted he was not guilty and counsel presented a "residual doubt" defense in penalty phase); Stafford v. Saffle, 34 F.3d 1557, 1563 (10th Cir. 1994) ("We conclude that [counsel] performed well below the prevailing professional norm in his handling of the penalty phase of this capital case. We do not think that an alibi defense would have been inconsistent at all with the presentation of the mitigating evidence . . . The jury obviously had already rejected the alibi defense when they convicted Stafford in the guilt phase in less than two hours, and any good attorney

should have pursued alternative mitigating arguments with vigor in the penalty phase of the trial.")

### Claim III.   Counsel's Ineffective Failure to Challenge the Jurisdictional Element of the Offense.

12.     This claim is as compelling as it is straight-forward: counsel failed to present evidence to the jury that Dr. Elizabeth Rouse, who performed the autopsy and testified as the Government's witness at trial, authored a report indicating that the fatal blow in this case was inflicted at least ten days prior to the date of the child's death on the grounds of the Naval Air Station.  Thus, this report defeats, and at a minimum significantly challenges, the essential element of federal jurisdiction.  See *Petition*, ¶¶ 111-113.  Yet, counsel inexplicably and ineffectively, failed to bring this finding to the jury's attention.

13.      The Government's *Response* fails to address the need for a hearing on this claim.  Instead of discussing whether an evidentiary hearing is required, the Government simply says that there was overwhelming evidence of Petitioner's guilt. *Response*, 4.  While the prosecution presented significant evidence from which the jury could conclude that Petitioner beat the victim on federal lands, that does not address the question presented by this claim, i.e. where and when was the fatal blow delivered.  Petitioner maintains that he did not strike any of the blows attributed to

him by the Government.  However, for sake of argument, even assuming he delivered every blow attributed to him by the prosecution while on the grounds of the Naval Air Station, the fact remains that the Government's medical examiner wrote a report saying that the fatal blow was inflicted ten days earlier, when Mr. Bourgeois was unquestionably not on the grounds of the Naval Air Station, or any other federal lands.  Had that opinion been presented, there is far more than a reasonable likelihood that a properly instructed jury would have not found the jurisdictional element, and an acquittal would have been required.  A hearing on this claim is not just required, it is compelled by the law and facts.

**Other Claims.**

14.    The Government does not expressly address the other Claims for which Petitioner requests a hearing.  Nonetheless, Petitioner briefly recounts the factual issues that require resolution with respect to the remaining claims.

15.    In **Claim IV**, he alleges facts showing that counsel had in their possession forensic evidence showing that there was no sexual abuse of the victim perpetrated by Mr. Bourgeois.  Counsel ineffectively failed to present these facts to the jury, and that failure impacted both the guilt and penalty phases of trial. Petitioner should be permitted to prove these facts.

16.    In **Claim V and VI**, Petitioner alleges that trial counsel ineffectively

failed to challenge the admissibility and integrity of the scientific evidence of bite marks and of the digitally enhanced photos used to depict the child's injuries. Again, these deficiencies impacted both the guilt and penalty phases of trial. This evidence in question was particularly important in the prosecutor's arguments for a death sentence, as they showed the offenses to be particularly gruesome and heinous (albeit, unreliably). Thus, this unreliable evidence likely impacted the jury's weighing deliberations and particularly prejudiced Petitioner with respect to the penalty phase.

17. In **Claims IX** and **X**, Petitioner wishes to present the brief testimony of trial counsel regarding their failures to object to the prosecutor's improper arguments before the jury and their failure to rebut the Government's argument regarding Petitioner's alleged "indifferent demeanor."

18. **Oral Argument.** As articulated in the last phone conference in this case, Petitioner believes that there should be oral argument on the scope of the hearing. The Government appears to agree with that suggestion. See *Proposed Order* accompanying *Response* (proposing an "initial hearing" to permit parties to "present argument regarding what issues, if any, should be addressed in a subsequent evidentiary hearing"). Accordingly, Petitioner requests the opportunity to address these issues in oral argument before the Court. The Court had mentioned April, 2010 as a possible time for such argument, and counsel are free for most of that month.

(Counsel have a commitment during the week of April 12, 2010 and would request that the Court not schedule argument for that time.)

### Discovery

19.   The Government makes two general objections to the requested discovery.  Petitioner will first address those general objections and then will reply to the Government's individual responses.

20.   **The Government's Relevance Objections**.  The Government objects to a number of Petitioner's requests as "irrelevant."  See *Response,* 2, 6, 7.  Rule 6 of the RULES ON MOTION ATTACKING SENTENCE UNDER SECTION 2255 states that discovery may be had by leave of court, but otherwise is governed by the Federal Rules of Civil Procedure.  With respect to "relevance," Fed.R.Civ.P., Rule 26(b)(1) (*Scope of Discovery*) states that "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  This Rule has been interpreted to permit and encourage broad discovery:

> Courts have traditionally construed relevance broadly: information is relevant if it encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.  Thus, although the district court is customarily accorded wide discretion in handling discovery matters, we will not uphold a

ruling which has failed to adhere to the liberal spirit of the Rules.

Coughlin v. Lee, 946 F.2d 1152, 1159 (5th Cir. 1991) (internal quotation marks and footnotes omitted).   Petitioner will apply the "liberal spirit" and "reasonably calculated" standards to the Government's claim-specific invocation of this objection.

21.   **The Government's Work-Product Objections.**   The Government contends that notes of witnesses taken by Government attorneys are protected from disclosure by the work-product privilege.   *Response*, 2, 5, 6.   The Government, however, ignores that this privilege is qualified, and under the circumstances presented by Petitioner's requests, it must yield to the need to discover the truth.   The work-product privilege is not absolute.   Upjohn Co. v. United States, 449 U.S. 383, 401-02 (1981).   When an attorney's mental impressions are themselves at issue in a lawsuit, the work-product privilege is overcome.   In re Cendent Corp. Sec. Litig., 343 F.3d 658, 664 (3d Cir. 2003); Helen of Troy Limited v. John Paul Mitchell Systems, Inc., 2007 WL 1858819 at * 7 (W.D. Texas, June 26, 2007).   The privilege can also be overcome when attorney notes are themselves part of a fraud or criminal conduct. In re Grand Jury Proceedings, 43 F.3d 966, 972 (5th Cir. 1994).[4]

---

[4]Petitioner certainly does not suggest that the Government lawyers were involved in criminal activity or fraud when they may have failed to turn over exculpatory information to the defense at trial.  However, a violation of due process by suppression of exculpatory information – as alleged by Petitioner in this case – overcomes the work-product privilege because the attorney's notes are themselves

22.    **Government's "Open File Policy."**  The Government maintains that it conducted "open file" discovery with trial counsel.  *Response*, 5, n.2.  This assertion does not advance the discovery dispute.  Unfortunately, it is a reality of the criminal justice system that some times, some prosecutors, do not include the exculpatory evidence in the file that they open to the defense.  See Banks v. Dretke, 540 U.S. 668, 692-93 (2004) (noting that the prosecutor who claimed an "open file policy" kept back from the defense the exculpatory evidence) and discussing, Strickler v. Greene, 527 U.S.263, 273-75 (1999) ("The prosecution file given to the Strickler petitioner, however, did not include several documents prepared by an important prosecution witness, recounting the witness' initial difficulty recalling the events to which she testified at the petitioner's trial. . . . Those absent-from-the-file documents could have been used to impeach the witness.") (citations and internal quotation marks omitted).  Here, as pled in the *Petition*, we have some reason to believe that this may have been the case with respect to the prisoner witnesses who testified for undisclosed consideration, and possibly some of the forensic witnesses.

23.    If the prosecutors wish to open their full file to inspection by the current defense team, counsel would welcome that, and it would likely resolve most, if not

---

evidence of the violation of Petitioner's rights, just as such notes can in other cases evidence attorney fraud or criminal conduct.

all, of the current discovery disputes.

## Specific Issues

24.     Using the same letter designations as in the initial *Motion*, Petitioner will now address the Government's objections to specific requests.

25.     **Request A.**  The Government has indicated that it will produce the requested materials.

26.     **Request B.**  The Government indicates it will provide these materials, except for those that are "work-product."  This is an instance where the work-product privilege should yield to the need to acquire attorney notes, if those notes reveal the presence of undisclosed consideration.  At a minimum, the Government should be required to do what Petitioner has done: submit any arguably privileged information to the Court for *in camera* inspection.

27.     **Request C.**  The Government does not respond to this request because it is repetitive of Request B, and it requests an explanation for how the two are different.  They are different because Request B seeks communications between the Government and its agents and other law enforcement or court authorities, while Request C seeks such communications directly between the Government and its agents, and the prisoner witnesses.  With this clarification, Petitioner requests a more complete response.

28.    **Request D.**  Petitioner accepts the Government's invitation to inspect the requested reports.

29.    **Request E.**  Petitioner accepts the Government's invitation to inspect the requested reports.

30.    **Request F.**  Petitioner seeks information about other cases in which the prisoner witnesses cooperated.  The Government claims no such knowledge. Petitioner submits that the notes of the Government attorneys and/or their agents may well contain such information, and the Court should not be required to rely only of the recollection of Government counsel.  This is yet another reason for the Government to provide their notes for *in camera* inspection.

31.    **Request G.**  The Government again invokes attorney work product to exempt their notes of sessions in which the prisoner witnesses were prepared or engaged in proffers.  Petitioner requests that such notes be submitted to the Court for *in camera* inspection.  See Kyles v. Whitley, 514 U.S.  419, 430 (1995) (Brady violation found based on, *inter alia*, failure to provide defense with notes and transcripts of witness interviews).

32.    **Request H.**  Petitioner accepts the Government's representation that it will provide the plea agreements and its invitation to inspect the 5K motions.

33.    **Request I.**  The Government contends that it has provided all Jencks Act

materials.

34.   **Request J.**  The Government indicates it will produce mental health records for Moore and Taylor, but that it has none for Longoria or Campos.

35.   **Request K.**  The Government asserts that this request is "vague and over-broad," but then proceeds to respond to it.  Petitioner simply requests any notes created by Government attorneys or agents of any meeting that they attended in which trial defense counsel interviewed Government expert witnesses Daily, Chrz, Senn or Oliver.  In the event such notes exist and the Government contends that they are covered by the  work product privilege, Petitioner requests that they be provided to the Court for *in camera* inspection.  In this instance any such notes may be of critical importance because trial counsel Mr. Tinker, who was primarily responsible for handling the experts in this case, is now deceased.  Any notes that can shed light on his actions or thought processes are of critical importance and should be shared with defense counsel.

36.   **Request L.**  Petitioner seeks a list of any articles showing that the image enhancement methodology utilized by Dr. William Oliver has been subject to peer review.  To be clear, counsel does not expect that the Government has such a list, but requests that such a list be obtained from Dr. Oliver.  It must be recalled that this list is highly relevant to Petitioner's claim that trial counsel ineffectively failed to subject

this highly questionably methodology to a <u>Daubert</u> challenge.[5]   Indeed, in their

*Answer* to the 2255 Motion, the Government indicated that Dr. Oliver maintains that

there are such articles, and he mentions the same in his attached statement

(Attachment I to the *Answer*).   It should not be difficult for Dr. Oliver to identify

those peer reviewed articles upon which he relies.    Such information is highly

germane to Petitioner's contention that these methods should not have passed a

<u>Daubert</u> challenge.   Thus, contrary to the Government's assertion, this request is

neither "vague" nor "irrelevant."

37.    **Request M.**  The Government responds that all such computer programs

used by Dr. Oliver were identified at trial.

38.    **Request N.**  The Government responds that the results of all testing have

been shared with trial counsel.  However, the Government failed to respond to the

request for notes or other documents generated in the testing process.   The

Government also failed to disclose whether any biologic materials remain for further

testing.  Petitioner requests a more complete response.

39.    **Request O.**  The Government contends that it has provided all evidence

---

[5]As noted in Petitioner's *Reply* to Government's Response in Opposition to 2255 Motion (document # 74) at pages 63-65, the recent National Academy of Sciences Report found the methods used by the Government's expert to be lacking in scientific credibility.

of sexual assault to trial counsel. Again, however, the Government did not address the specific request for notes generated in the process of analyzing this evidence. Petitioner requests a more complete response.

40.    **Request P.** The Government states that this request is "unclear" and the response would be privileged as "deliberative." Petitioner would note that this request seeks exculpatory evidence in regard to the Government's interactions with Dr. Dailey. See *Petition*, ¶¶ 180-182. These paragraphs of the *Petition* are based on the declaration of Dr. Dailey (see *Petitioner's Appendix*, document # 45) indicating that the Government may have misrepresented to the jury its interactions with this uncalled witness. Thus viewed, the Government's notes about such interactions are not privileged. If they exist, they should be provided to the Court for *in camera* inspection.

41.    **Request Q.** The Government objects to this request as over-broad. To be clear, Petitioner is not interested in the Government's daily and routine contact with these witnesses. Petitioner is interested in notes generated when these witnesses were being questioned and/or prepared for testimony. Such notes should be submitted *in camera* for the Court's inspection.

42.    **Request R.** Petitioner here seeks documents of witnesses who were interviewed but were not called at trial. He seeks such documents for both experts

and other prisoner witnesses. The reason for this request is clear: if expert or prisoner witnesses were interviewed but were not called, they may have provided the Government with exculpatory information. Thus, such information could be admissible in these proceedings, or could lead to the discovery of admissible evidence, and the Government's relevance objection is not well-founded. Petitioner would also point out that withholding such documents is contrary to the Government's stated "open file policy" – if there are such documents that were not provided to trial counsel and which the Government will not now provide, their files are not entirely open.

43. **Request S.** The Government indicates that it has fully discharged its on-going Brady obligation.

## Resolution of the Discovery Disputes

44. Although the Government has agreed to provide some of the requested discovery, there is much still in dispute. Petitioner proposes the following plan to resolve these disputes. **First**, the Government should provide all of the information and documents it has agreed to provide and permit the inspections it has agreed to, and should do so within 30 days. **Second**, the Government should provide further responses in view of the clarifications and arguments set forth in this document, and this too should be done within 30 days. **Third**, the Government should submit for *in*

*camera* inspection all notes identified above by Petitioner that the Government contends are protected by the work-product privilege.[6]  **Fourth**, within 30 days of receipt of the Government's production and inspection, and the Government's further responses, Petitioner will file a statement with the Court outlining what, if any, disputes remain so that they can be addressed when the parties are before the Court for argument on the scope of the evidentiary hearing.

## Conclusion

Petitioner submits that he has identified serious issues in this case.  These are issues that require both discovery and evidentiary resolution.  As a prelude to such discovery and hearing, he requests the opportunity to fully address them before the Court.

---

[6]Petitioner would request that the Government identify by type and number the documents that it submits for *in camera* inspection.

Respectfully Submitted,

/s/ Michael Wiseman

Michael Wiseman
Victor Abreu
James McHugh
Elizabeth Larin
Capital Habeas Corpus Unit
Federal Community Defender Office
for the Eastern District of Pennsylvania
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520
Counsel for Petitioner,
Alfred Bourgeois

Dated:     Philadelphia, PA
           January 11, 2010

## Certificate of Service

I, Michael Wiseman, hereby certify that on this 11th day of January 2010, I served the foregoing upon the following persons in the manner indicated:

Tony R. Roberts, Esq.
PO Box 61129
Houston, Texas 77208
Tony.Roberts@usdoj.gov

Patricia Hubert Booth, Esq.
Elsa Salinas-Patterson, Esq.
800 North Shoreline, Suite 500
Corpus Christi, Texas 78401
Patti.Booth@usdoj.gov
Elsa.S.Patterson@usdoj.gov

/s/  Michael Wiseman

Michael Wiseman