UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ALFRED BOURGEOIS, | § | |
| Petitioner, | § | |
| | § | Civil No. C-07-223 |
| v. | § | (Criminal No. C-02-216) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

UNITED STATES' OPPOSED MOTION FOR RECONSIDERATION OF
COURT'S ORDER TO VIDEOTAPE PETITIONER'S MENTAL HEALTH
EXAMINATION.

I.

**A.**     **Relevant Background**

On April 20, 2010, this Court held a status hearing to determine what issues from Petitioner's

2255 motion would warrant an evidentiary hearing in September 2010.  This Court determined that

Petitioner's mental retardation claim warranted such a hearing in addition to other issues.  The

United States noted that Petitioner had proffered statements from expert witnesses indicating that

those experts had conducted mental retardation testing and intended to testify about Petitioner's

mental status during the evidentiary hearing.  The United States requested permission to have

Psychologists Roger Moore and Randall Price conduct mental retardation testing.  Counsel for

petitioner, Michael Wiseman and Victor Abreu, of the Capital Habeas Corpus Unit, Federal

Community Defender for the Eastern District of Pennsylvania, stated that Petitioner would agree to

permit the testing.  The parties informed the Court that they would attempt to work out the logistics

of the testing. Unfortunately, the parties were unable to agree and requested a telephone conference

with the Court.

On May 6, 2010, this Court held a telephone conference.  The United States informed this

Court that Petitioner's counsel had requested to either be present for the testing or to have the testing videotaped.  The United States also informed this Court that both Dr. Moore and Dr. Price objected to having counsel present and to videotaping stating that either would interfere with the accuracy of the testing results.   Petitioner's counsel stated that its request was based upon Petitioner's Constitutional right to remain silent and his right to counsel.  This Court then Ordered that the testing by Dr. Moore and Dr. Price would be videotaped.[1]

The United States communicated this Court's Order to Dr. Moore and Dr. Price.  Dr. Moore and Dr. Price voiced additional concerns about having the examination videotaped and provided additional reasons that militate against videotaping the examination.   Additionally, the United States informed the Bureau of Prisons (BOP) officials about the requirement to videotape the examination.  The BOP officials voiced security concerns.   The additional objections by the psychologists and those raised by the BOP officials were not communicated to the Court during the May 6, 2010, telephone conference.  The United States has also researched the Constitutional concerns raised by Petitioner's counsel at the May 6, 2010, hearing and now believe that those concerns are unfounded.  For these reasons, as further discussed below, the United States herein requests this Court to reconsider the Order that the mental retardation tests and evaluations by Dr. Moore and Dr. Price be videotaped.

**B.**     **<u>Alternative Motion for Hearing</u>**

If this Court is not persuaded to reconsider the Order to videotape the testing and evaluation by Dr. Moore and Dr. Price based upon this pleading, then the United States requests the opportunity

---

[1]  The Court also Ordered that Dr. Price must submit a list of all tests from which he will choose to give to Petitioner.  That part of this Court's ruling is not at issue in this reconsideration motion.

to present testimony to support the objections to videotaping the testing and evaluation. Dr. Moore, Dr. Price, and the BOP officials are available to present testimony supporting their objections during the week of June 7, 2010.

It is important to note that the United States is merely seeking to determine the truth of Petitioner's mental retardation claims. If Dr. Moore or Dr. Price were to determine that Petitioner is mentally retarded, the United States would move to set aside the jury's sentence of death. Currently, the United States believes that Petitioner's evidence falls well short of establishing mental retardation. The United States could forgo additional testing and simply respond to and rebut Petitioner's evidence at the evidentiary hearing. The burden clearly rests upon Petitioner to demonstrate that he is mentally retarded. Notwithstanding that burden, the United States believed that the best way to ascertain the truth was to have Dr. Moore and Dr. Price conduct their own testing and inform the parties of their conclusions.

The primary basis for objecting to the videotaping of the mental retardation testing and evaluation originates from the psychologists and the BOP officials themselves. In fact, Dr. Price has now suggested that he would be professionally required to withdraw from further participation in this case if he was required to be videotaped during his evaluation of the Petitioner. The BOP security concerns have been explained to the United States by Chief Correctional Supervisor Hector Joyner. He is charged with the overall security of the Federal Correctional Complex in Terre Haute, Indiana, which includes the Special Confinement Unit where Petitioner is confined.

The United States desires to know the truth and believes the best method for discerning the truth is to have Dr. Moore and Dr. Price test and evaluate Petitioner. However, the requirement to videotape the testing might prevent the psychologists from being able to conduct the testing. To

-3-

better inform this Court of the details of the objections, the United States is prepared to present testimony from Dr. Moore and Dr. Price, as well as BOP officials.  If this is deemed necessary, the United States requests that this Court hold a hearing during the week of June 7, 2010, and permit Dr. Moore, Dr. Price, and the BOP officials to testify about their concerns regarding the videotaping of the proposed testing.

II.

**A.**     <u>**Basis for Reconsideration**</u>

After the May 6, 2010, telephone conference, the United States contacted BOP officials and informed them of this Court's Order regarding videotaping the examination.  The BOP officials voiced grave concerns about security and the impact of this decision on future cases in which defense counsel make similar requests.  The BOP officials stated that they currently house more than 50 federal inmates with a sentence of death pending.  They state that many of those inmates have psychological testing and requests for videotaping of this testing is common.  The housing location of these inmates presents a security problem for BOP, and it could open the floodgates to videotaping testing done within BOP.  As such, the BOP officials are concerned about the long-term implications of this Court's Order.  The BOP officials also asked that I alert the Court to the fact that inmates maintain their own web sites and are very proactive in regards to what the inmates include on those web sites.  As such, the fact that one inmate is permitted to videotape an examination within the maximum security area would quickly be disseminated to the public.

The United States also informed Dr. Moore and Dr. Price of this Court's Order regarding videotaping of the testing and evaluation.  Dr. Price is licensed in Texas and Oklahoma and stated that he is ethically bound to oppose the videotaping based on the Rules and Regulations of the Texas

-4-

State Board of Examiners of Psychologists, the American Psychological Association Ethical Code

of Conduct, and the National Academy of Neuropsychology.  Prior to the May 6, 2010 conference,

Dr. Price had not provided any specifics regarding these ethical concerns.  However, if asked to

testify about this matter, Dr. Price would essentially testify as follows:

> The Rules and Regulations of the Texas State Board of Examiners of Psychologists Section 465.16 (d) require licensed psychologists to "conduct testing and maintain and release test protocols and data in a secure manner that does not compromise the validity of the test".

> The American Psychological Association Ethical Code of Conduct, Standard 9.11 (2002) requires psychologists to maintain the integrity and security of tests so as not to decrease the test's validity.  The development and refinement of intelligence tests requires many years of research, effort, and expense; improper disclosure of test materials may result in breach of contract claims against psychologists who violate the terms of their test purchase or lease agreements.

The Official Position Statement of the National Academy of Neuropsychology on Test Security (Approved 10/5/99) recognizes the need to maintain test security to protect the uniqueness of test instruments.  Psychological test procedures are to be used only by psychologists trained in the use and interpretation of test instruments.  Maintaining test security is critical as public dissemination of novel test procedures can enable individuals to alter their responses in advance of actual examination.  The paper compares the videotaping and release of secure test instruments to the situation in which a student gains access to test items and the answer key for a final examination before taking the test.  The restandardization of a replacement test is a costly and time-consuming project.  For example, the Wechsler Adult Intelligence Scale, Third Edition (WAIS-III) cost several million dollars, required testing of over 5000 cases, and took more than five years to complete.

> Additionally, the Official Position Statement of the National Academy of Neuropsychology on the Presence of Third Party Observers During Neuropsychological Testing (Approved 5/15/99) recognizes the distracting effect of the presence of people other than the examiner and the examinee in the testing room.  The presence of a third party in the testing room is also inconsistent with the standardized test administration requirements.  Performance on complex tasks may decline and performance on overlearned tasks may be enhanced, "leading to a spuriously magnified picture of neuropsychological deficit".[2]

---

[2] Affidavit of Dr. Price which was submitted in the case of *Hearn v. Quarterman*, Civil No. 3:04-CV-0450-D in the United States District Court for the Northern District of Texas.

Dr. Price also provided a link to a "You-Tube" video clip where Psychologist George Denkowski was videotaped while conducting an IQ test. The videotaped interview was apparently not supposed to be released to the public, yet the video clip was subsequently posted on the Internet. The captions added to the video clip challenge the method in which the psychologist asked one specific question during the IQ test. For the reasons set out above, Dr. Price believes it would be unethical for him to permit his testing to be videotaped. Dr. Moore has similar objections and would testify about specific concerns he has regarding the negative impact on the validity, reliability, and objectivity of the test results if the evaluation is videotaped or a third person is present.

Notably, several circuits have recognized that counsel's presence during a mental examination may interfere with the reliability of the test results. *United States v. Bohle*, 445 F.2d 54, 67 (7th Cir. 1971); *United States v. Baird*, 414 F.2d 700, 711 (2d Cir. 1969), *cert. denied*, 396 U.S. 1005, 90 S.Ct. 559 (1970); and *United States v. Albright*, 388 F.2d 719, 726-27 (4th Cir. 1968). *But see Thornton v. Corcoran*, 132 U.S.App.D.C. 232, 407 F.2d 695, 698-702 (1969).

Dr. Moore and Dr. Price added that they do not intend to question Petitioner about the underlying offense or about any other criminal conduct. Indeed, both of them suggested that any concerns by Petitioner's counsel about their questions violating Petitioner's right to remain silent could be assuaged by a Court Order not to ask Petitioner any questions about any criminal conduct. As discussed more fully below, the United States does not believe that Petitioner actually retains his right to remain silent in this context. However, if that right applies, a Court Order that no questions be asked about criminal conduct would be a reasonable protection.

**B.     No right to counsel or self-incrimination concerns:**

After the May 6, 2010, hearing, the United States researched the claims asserted by

-6-

Petitioner's counsel during the hearing.  Contrary to opposing Counsel's assertions, Petitioner's Fifth Amendment privilege against self-incrimination and his Sixth Amendment right to counsel are not at issue under the current circumstances.  Petitioner raised the defense of mental retardation himself and does not have an absolute right to have his attorney present during a psychiatric examination where the testing is being administered in response to the alleged defense.  *See generally Riles v. McCotter*, 799 F.2d 947, 954 (5th Cir. 1986), *quoting Vardas v. Estelle*, 715 F.2d 206, 209 (5th Cir. 1983) (citing *United States v. Cohen*, 530 F.2d 43, 48 (5th Cir.1976).  Importantly, Petitioner is voluntarily submitting to this examination with the knowledge and consent of his attorneys after presenting psychiatric evidence for his own benefit.  Under such circumstances, the Fifth Circuit has concluded that a Petitioner's Fifth and Sixth Amendment rights are not implicated.  *See Coble v. Cockrell*, 80 Fed.Appx. 301, 312 (5th Cir. 2003) (unpublished).

In *Smith v. Estelle*, 602 F.2d 694 (5th Cir.1979), the Fifth Circuit Court of Appeals, relying on *Cohen*, 530 F.2d at 48, specifically concluded that the defendant did not have a right to have his attorney present during a psychiatric evaluation when the examination was to decide if the defendant was sane.  602 F.2d at 708 (reasoning that "an attorney present during the psychiatric interview could contribute little and might seriously disrupt the examination.").  The Supreme Court noted this ruling and did not question or indicate any disapproval of the ruling in its review of the holding.  *Estelle v. Smith*, 451 U.S. 454, 470 n. 14, 101 S.Ct. 1866 (1981).  Subsequent to the holding in *Estelle v. Smith*, the Supreme Court concluded that there is no Sixth Amendment violation where a defense counsel is aware of the scope and nature of a psychological examination and consulted with the defendant prior to the examination.  *Buchanan v. Kentucky,* 483 U.S. 402, 424-25, 107 S.Ct. 2906, 2918-19 (1987).

-7-

Additionally, Petitioner's assertion of mental retardation removes his subsequent claim of a Fifth Amendment privilege against self incrimination in regards to the United States' request to have a government-sponsored mental examination conducted upon Petitioner.  In *Estelle v. Smith*, the Supreme Court recognized that "When a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case."  451 U.S. at 465, 101 S.Ct. At 1874.   The Supreme Court added that several Courts of Appeals have held that, under such circumstances, a defendant can be required to submit to a sanity examination conducted by the prosecution's psychiatrist. *Id*. (Citing *Cohen*, 530 F.2d at 47-48; *Karstetter v. Cardwell*, 526 F.2d 1144, 1145 (9th Cir. 1975); *United States v. Bohle*, 445 F.2d 54, 66-67 (7th Cir. 1971); *United States v. Weiser*, 428 F.2d 932, 936 (2nd Cir. 1969), *cert. denied*, 402 U.S. 949, 91 S.Ct. 1606 (1971); *United States v. Albright*, 388 F.2d 719, 724-725 (4th Cir. 1968); *Pope v. United States*, 372 F.2d 710, 720-721 (8th Cir. 1967) (*en banc*), vacated and remanded on other grounds, 392 U.S. 651, 88 S.Ct. 2145 (1968)).  The sanity defense and a mental retardation defense to a sentence of death are essentially similar concepts.

In the instant case, Petitioner submitted mental examinations sponsored by his own counsel under conditions of their own design.  Those examinations were not subjected to videotaping.  The government has a right to fully confront Petitioner's sponsored mental examinations.  Petitioner's counsel seeks to impose conditions on the United States' sponsored responsive mental examination (Counsel's presence or videotaping), which potentially reduces the reliability of Dr. Moore's and Dr. Price's mental examination, and thus diminishes the United States' ability to fully confront Petitioner's claim of mental retardation.

-8-

Additionally, videotaping Dr. Moore's and Dr. Price's examination is unnecessary. The format and procedures used will serve as the foundation for the psychologists' conclusions and testimony. The procedures used will be shared with Petitioner in advance of the evidentiary hearing for their own evaluation. Further, any incriminating admissions by Petitioner occasioned by the government-sponsored examination would be subject to a suppression motion.

For these reasons, the undersigned moves this Court to reconsider its May 6, 2010 Order and permit Dr. Moore and Dr. Price to evaluate Petitioner without the requirement of videotaping the evaluation and without permitting Petitioner's counsel to be present during the evaluation.

Respectfully submitted,

JOSE ANGEL MORENO.
United States Attorney

TONY R. ROBERTS
Assistant United States Attorney

MARK M. DOWD
Assistant United States Attorney

 /s/ PATTI HUBERT BOOTH
 PATTI HUBERT BOOTH
Assistant United States Attorney
State Bar No. 02650500
Federal Bar No. 19500
800 N. Shoreline Blvd., Suite 500
Corpus Christi, Texas 78401
Office: (361) 888-3111
Fax: (361)888-3200

## CERTIFICATE OF CONSULTATION

On May, 25, 2010, Tony R. Roberts, Assistant United States Attorney, conferred with Mr. Michael Wiseman, Counsel for Bourgeois, who advised he opposes the subject motion for reconsideration.

/s/ PATTI HUBERT BOOTH
PATTI HUBERT BOOTH
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I, Patti Hubert Booth, Assistant United States Attorney, certify that a true and correct copy of this motion for reconsideration has been provided by Notice of Electronic Filing or fax to Mr. Michael Wiseman, Esq., Chief Capital Habeas Corpus Unit, Counsel for Alfred Bourgeois, on this 25th day of May 2010.

/s/ PATTI HUBERT BOOTH_____
PATTI HUBERT BOOTH
Assistant United States Attorney