# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

_____

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. Cr-C-02-216 |
|  | : |  |
| Respondent, | : | Honorable Janis Graham Jack, |
|  | : | U.S.D.J. |
| -against- | : |  |
|  | : | **Capital Case** |
| ALFRED BOURGEOIS, | : |  |
|  | : |  |
| Petitioner. | : |  |

_____

### PETITIONER'S *RESPONSE IN OPPOSITION* TO GOVERNMENT'S *MOTION FOR RECONSIDERATION OF COURT'S ORDER TO VIDEOTAPE PETITIONER'S MENTAL HEALTH EXAMINATION*[1]

On May 6, 2010 the Court ordered that the Government videotape the mental health examinations of Petitioner to be performed by its experts (document # 498). The Government has now filed a *Motion for Reconsideration* (*Motion*) of this order (document # 501). Petitioner submits this *Response in Opposition*. Petitioner submits that the Government has not offered persuasive reasons for this Court to reconsider its prior ruling, or to conduct a hearing on the Government's *Motion*.

The Governments seek reconsideration for two reasons. The "primary basis" for reconsideration relates to concerns raised by the Government's experts that

_____

[1]All emphasis in this *Answer* is supplied unless otherwise noted.

videotaping the evaluations will compromise "test security" – which the Government has chosen to couch as an "ethical" concern (*Motion*, 3-6). The Government also offers unspecified "security" concerns voiced by a Bureau of Prison (BOP) official (*Motion*, 3-4).

Because of these twin concerns, the Government takes the position that videotaping of a mental health evaluation should never be done, and videotaping can never be done at the USP – Terre Haute. However, the Government's position is not sacrosanct. Indeed, the Government's own experts have agreed to and insisted on recording past evaluations, and the BOP has allowed such recording to occur in the past at Terre Haute when requested by the Government. Regrettably, it would appear that both the Government's experts and the BOP may not have been entirely forthcoming in the instant *Motion*, as will be demonstrated.

A.    **The Government's Experts' "Ethical Concerns."**

The Government argues that the examinations should not be videotaped because doing so will compromise test security and therefore the "ethics" of at least one of their experts. These concerns are illusory at best, and are likely patently false.

Dr. Price, who has voiced the ethical concerns regarding test security, has voluntarily **audiotaped** neuropsychological and psychological testing and interviewing in at least one other federal capital case of which counsel are aware. In

United States v. Edward Leon Fields, Cr. 03-73–RW (E.D. Ok.), Dr. Price was retained by the Government to conduct a pre-trial psychological and neuropsychological evaluation of a capital defendant. As the excerpted page from his *Report* of his evaluation shows, both of his sessions with the defendant were audio-taped. The audiotapes of the sessions were shared with the defense. See page 16 of Dr. Price's report, attached as an Exhibit.[2]

The Government has represented that Dr. Price will administer, among other tests, the WAIS IV, which is an instrument designed to measure intelligence. Parts of the test requires the subject to respond to oral questions posed by the evaluator. Thus, although audiotaping may not **show** the tests, it certainly would reveal the questions asked, which one would believe would also compromise test security. Thus, if Dr. Price is truly concerned about test security, the Government needs to explain why audiotaping does not constitute a security breach.

The Government has more explaining to do. It retained Dr. Daniel Martell as its neuropsychological expert in this case. See *Respondents' Sealed Answer to*

_____

[2]This report has been filed as a public document in Mr. Fields' section 2255 case and therefore counsel have no concern about filing this excerpt publically in this case.

*Section 2255 Motion* (document # 443) at page 73-74.[3]  Dr. Martell testified for the

Government in another capital section 2255 case about why he routinely attempts to

videotape all of his evaluations and why doing so constitutes sound forensic practice.

Q:    Was your evaluation of Mr. Hammer – yours and Dr. Matthews [the
      Government psychiatrist], was it videotaped?

A:    Yes, it was.

Q:    Why did you allow for videotaping?

A:    I try and do this in every case unless I'm precluded by the parties.  I feel
      that it protects everyone involved.  It provides the defense with an
      absolute record of everything that I said, everything that I did, so their
      experts can look for mistakes, can question my methods if they choose
      to do so.  It protects me because I don't have to spend time writing notes
      which can be quite cumbersome, and so it makes it a more efficient test
      process, and it gives me an absolute record of the answers that were
      given so I'm not trying to paraphrase a defendant.

      So I think overall **it's good forensic practice to videotape the exams
      and preserve the record.**

United States v. David Paul Hammer, 96-CR-239 (M.D. Pa.), Transcript, August 29,

2005, pages 51-52 (attached as Exhibit).

      Thus, contrary to the Government's current expert's (Dr. Price) view – that

videotaping is always prohibited by ethical concerns over test security – the

---

[3]Dr. Martell's name has not appeared since the Government filed its *Answer*
which included comments about Dr. Martell's views and included his *curriculum
vitae* as a exhibit.  It is not clear to Petitioner, nor has the Government articulated any
reason, as to why it appears to have dropped him from this case.

Government's apparently former expert (Dr. Martell) believes it to be good forensic practice. This discrepancy is not explained by the Government.

The Government complains that Petitioner's mental health experts were permitted to conduct examinations "under conditions of their own design" which did not include videotaping (*Motion*, 8). Therefore, the Government reasons, it should be permitted to do the same. This is an extraordinary argument. One-half of the neuropsychological and intelligence testing that comprise Petitioner's current mental retardation claim, was done by Dr. Weiner years before current counsels' entry into this case. Current counsel took those results as they found them. It is worth noting that Dr. Weiner's result on IQ testing was a 75, which, when adjusted for the Flynn Effect, is actually a 68. This result is remarkably similar (i.e. statistically identical) to the score of 70 obtained by Dr. Gelbort in post-conviction testing. Petitioner has thus scored in the mentally retarded range already on two tests. Dr. Price's passing concern that videotaping will lower the score (*Motion* at 5 "Performance on complex tasks may decline"), would seem irrelevant since Petitioner has already scored in the range of mental retardation.[4]

---

[4]It is also noteworthy that Dr. Price's concerns regarding test accuracy seem to arise only in the case of a third party observer. There is nothing in his quoted material regarding adverse impacts on accuracy based solely on videotaping.

The Government's current position that videotaping is never appropriate is also undercut by the Government's position in another capital section 2255 case, United States v. Keith D. Nelson, No. 04-8005-CV-W-FJG, No. 99-00303-01-CR-W-JFG (W.D. Missouri), where the United States has moved to **require** videotaping of a forensic mental health evaluation.  In Nelson, the Government retained Dr. Martell and Park Dietz, by whom he is employed, to conduct three days of mental health evaluations of Mr. Nelson (including neuropsychological evaluation).  The Government moved to have these sessions audio and videotaped, with the tapes being provided to the court and defense counsel.  See *Government's Motion to Establish Procedures by Which a Mental Health Examination of Movant Will Be Conducted*, at page 5 (attached as an Exhibit).[5]

Ironically, the defense in Nelson opposed the audio and videotaping of the

---

[5]In stark contrast to the Government's position in this case, the Government in Nelson agreed to permit counsel to be present, albeit outside the examination room, in "recognit[ion of] the movant's Sixth Amendment right to counsel" Id., at 5.  That is no longer an issue in this case because Petitioner's counsel are satisfied not to be present, so long as the sessions are taped.  Accordingly, Petitioner will not respond further to the Government's discourse on the Fifth and Sixth Amendment.

It should be noted that the Government incorrectly asserts that Petitioner's counsel **still wish to be present** for the evaluations. *Motion*, 8 ("Petitioner's counsel seeks to impose conditions on the United States sponsored responsive mental examination (Counsel's presence or videotaping) . . .")).  This is not so.  As articulated during the May 6, teleconference, counsel are happy to rely on the videotaping as a substitute for their presence.

evaluations.   In response, the Government in <u>Nelson</u> cited the American Bar Association Guidelines on Criminal Justice Mental Health Standards, 7-3.6, as requiring preservation of an evaluation and argued that audio and videotaping was far superior to "get to the truth" than the simple provision of an experts notes (an alternative proposed by the defense):

> In a case as important as this, the ultimate goal is reaching a correct, just result.   One way to accomplish that goal is to conduct these examinations transparently. . . a audio- or video-recording would be the best record of what will occur.  Additionally, notes are inadequate for capturing relevant behavioral data that an expert may witness, but be unable to adequately describe in written notes.  **If the real goal in this post-conviction setting is to get to the truth, there is a much better way of recording the movant's examination.**

<u>Id.</u>, 5, 7.

The Government in <u>Bourgeois</u> claims that the only way to "get to the truth" is by not videotaping (*Motion*, 3) ("the United States is merely seeking to determine the truth . . .the best way to ascertain the truth . . .The United States desires to know the truth . . . "). Yet, in <u>Nelson</u> the United States took the polar opposite position that the truth is best determined by a contemporaneous videotaping of the record.  Petitioner believes that videotaping is the best way.  In any event, given the discrepant positions assumed by the United States in <u>Nelson</u> and in <u>Bourgeois,</u> the Government here cannot credibly maintain that not videotaping is the only way to obtain a credible

result.

The Government complains that a video of a Dr. Denkowski from Texas was put on "You-Tube," and that this unexplained and unfortunate incident should cause this Court to reconsider what the Government's own expert (Martell) considers "good forensic practice." *Motion*, 6. Counsel obviously cannot be held accountable for the unknown actions of unknown people in some other case. Counsel have already offered to enter into a protective order (as recognized in this Court's May 6 Order) and they can assure the Court that they will abide by any protective order precluding redisclosure of such tapes to anybody outside the defense team.

There is further irony in the Government's citation to the Denkowski incident. Undersigned counsels' office has encountered Dr. Denkowski in a Pennsylvania case where mental retardation was at issue. The state court judge who presided over the hearing found that Dr. Denkowski inappropriately administered and scored tests. This finding was made based upon the review of a videotape of Denkowski's evaluation, thus showing the value of videotaping to ensure a truthful result:

> [Defense expert] Dr. Cooke **reviewed the video tape** of the examination and found tremendous deviation from a standard assessment. N.T. 10/25/06: 65. Dr. Cooke added that Dr. Denkowski rephrased the questions multiple times, which violated the standardized procedure. N.T. 10/25/06:132. Furthermore, Dr. Cooke testified that the ABAS manual does not discuss altering scores based on the administrator's subjective view. N.T.I0/25/06:133. During the examination, Dr. Denkowski asked 215 questions, 45 of which were adjusted. N.T. 11/29/06.

Commonwealth of Pennsylvania v. Jose DeJesus, November Term, 1997, No. 350 1/1

(CCP, Phila. Co., August 10, 2007) slip opinion at 12 (excerpt attached as Exhibit).[6]

The findings against Dr. Denkowski endorse the efficacy of Dr. Martell's view

that videotaping is "good forensic practice" because it provides an "absolute record"

of the testing. Dr. Martell's position is really what is at the core of the current

dispute. It is imperative that counsel have a record of what happens in the evaluation

so that they can, quite literally, keep the Government's experts honest. The

Government's experts' concerns about test security are easily met, and do not come

close to outweighing this Court's need to have as much information as possible to

resolve these important issues.

---

[6]It is also noteworthy that Dr. Denkowski is the subject of pending disciplinary action initiated by the Texas State Board of Examiners by Psychologists. A copy of the Complaint is attached as an Exhibit. The basis for the discipline was the maladministration of tests related to mental retardation.

**B.      Security Concerns.**

The Government fails to offer any specific basis for the security concerns voiced by a single BOP official, so it is difficult if not impossible to respond to them. However, as counsel have noted above, the Government has moved to videotape in the Nelson case and that motion appears to not have caused any such concerns to be raised by the BOP.  Undersigned counsel were involved in the Hammer case, also discussed above, and can represent to the Court that Dr. Martell's evaluation of Mr. Hammer was done and videotaped at the USP – Terre Haute.  Thus, in at least two instances where the **Government** has wanted to videotape, the BOP has not raised their alleged security concerns.

Because defense counsel in Nelson were opposed to the videotaping (see Government's *Motion to Establish Procedures* at 6 (noting that the defense was opposed to audio or videotaping)), they wrote to the Warden of the USP – Terre Haute to inquire as to the policies governing videotaping.  Although it appears in context that the Warden did not necessarily understand that the defense was opposed to videotaping, her recent response to that inquiry states that "every request for videotaping and audio recording is carefully reviewed and considered **on a case by case basis**.  The decision is based upon the individual facts and circumstances of each particular request."  See Letter from H.J. Marberry, Complex Warden to Gary

Brotheron, Esq., dated may 7, 2010, attached as an Exhibit.

The Government has not indicated what "individual facts" about the Bourgeois request "poses a security risk" of a "potential disruption" to the facility. To the contrary, the Government's pleading relies upon the **generalized concerns** voiced by a single BOP representative (Mr. Joyner) that videotaping in this case will have an impact on "future cases" and will "open floodgates" to videotaping requests in other cases *Motion*, 4. Thus, Mr. Joyner's generalized concerns are contrary to the policy articulated by the Warden, that the BOP will conduct a "careful . . . case-by-case" review with a decision "based upon the individual facts and circumstances of each particular request."

Even more troubling, based upon counsels' current information, the BOP appears to permit videotaping when the Government asks for it, but denies it when it is requested by the defense. If this is the case, the Government has more explaining to do.

In the Hammer case, Dr. Martell brought with him a tripod and handheld video camera. He set it up, turned it on, and let it run. It is difficult to imagine how such an arrangement can pose a danger to the orderly and safe running of the facility. If the Government or its expert do not have this equipment at their disposal, Petitioner's counsel will gladly loan it to them.

In another matter, District Judge Dale A. Kimball (D. Utah), overruled the Government's generalized security concerns about videotaping at the USP Terre Haute's death row, by placing common sense restrictions on the taping. In Trentadue v. Federal Bureau of Investigation, 2:04-CV-772 (D. Utah), a litigant initiated a suit against the FBI, seeking production of documents under the Freedom on Information Act. In connection with that suit, he sought to take the videotaped depositions of two federal prisoners, including one housed at the USP – Terre Haute.[7] The BOP raised generalized security concerns just as they have in the Government's *Motion*, which the court easily resolved:

> As to the BOP's concern that a video recording poses a threat to the security of the institutions, the court will limit the usage of the video recording equipment to only the room in which the deposition is taken. The two affidavits submitted by the Federal Defendants express concerns that various aspects of the prison grounds, security systems, equipment storage, offices, staff, other inmates and various other items might be filmed.
>
> While it is doubtful that Plaintiff intended to video anything other than Nichols and Hammer during their actual depositions, the court hereby orders that no video equipment may be used other than in the specific room where each deposition is taking place, and the video equipment may not record the images of any person other than Nichols and Hammer. In addition, if it would allay the security concerns of the

---

[7]The facts underlying the suit related to the Oklahoma City bombing case for which Timothy McVeigh and Terry Nichols were convicted. Mr. Trentadue wished to take the videotape depositions of a Mr. Hammer – coincidently the same Mr. Hammer discussed above in regard to Dr. Martell's videotaping – and Mr. Nichols.

respective prison officials, Plaintiff is directed to make arrangements to meet a designated prison official at a predetermined location outside of the correctional facility and so that the prison official make take possession of the recording equipment and transport it to the proper location where the deposition will take place.

Trentadue, order dated Sept. 25, 2008 (attached as an Exhibit), reversed on other grounds, Trentadue v. F.B.I., 572 F.3d 794 (10th Cir. 2009).

The Government says that some prisoners at Terre Haute maintain websites and that fact adds to the security concerns. *Motion*, 4. Again, this is a generalized concern that has nothing to do with this case. If the Government is concerned that Mr. Bourgeois would post the tape to a website, that concern is easily covered by a protective order prohibiting counsel from sharing the tape with their client. If it is the concern that Mr. Bourgeois would post the fact that his evaluation was videotaped, counsel is not sure why disseminating the **fact** that a video – and not the video itself – would implicate prison security. Counsel would also remind the Court that Mr. Bourgeois is under severe restrictions imposed by this Court about having any communications with the outside world. As this Court knows from the BOP interception of his mail to counsel for his wife, Robin Bourgeois, these restrictions are being closely imposed.

**C.      Conclusion.**

There is much wrong with the positions of the Government's experts and the BOP. There is nothing sacrosanct about not permitting videotaping. It has been done before on Terre Haute's death row. There is no insurmountable ethical or security concerns, which can be readily addressed with an appropriate protective order. On balance, the need to provide the Court with the most reliable and truthful information in this case tips heavily in favor of requiring videotaping.

There is no need to take evidence on the Government's *Motion*. The Government has not proffered a sufficient basis for requiring a hearing, i.e. even taking their facts as true, there is no reason to reconsider.

14

For all of these reasons, the Court should deny the *Motion* without a hearing and with prejudice.

Respectfully Submitted,

/s/ Michael Wiseman

Michael Wiseman
Victor Abreu
James McHugh
Elizabeth Larin
Capital Habeas Corpus Unit
Federal Community Defender Office
for the Eastern District of Pennsylvania
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520
Counsel for Petitioner,
Alfred Bourgeois


Dated:      Philadelphia, PA
            May 29, 2010

## Certificate of Service

I, Michael Wiseman, hereby certify that on this 29th day of May 2010, I served the foregoing upon the following persons in the manner indicated:

Tony Roberts
Patti Hubert Booth
Mark Dowd
Elsa Patterson
at
Tony.Roberts@usdoj.gov
Mark.Dowd@usdoj.gov
Patti.Booth@usdoj.gov
Elsa.S.Patterson@usdoj.gov
By Email and ECF Filing

/s/  Michael Wiseman

Michael Wiseman