192

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **SEALED** |
| Plaintiff, | ) | |
| v. | ) | Case No.    CR-03-73-WH |
| EDWARD L. FIELDS, | ) | FILED UNDER SEAL PURSUANT |
| Defendant. | ) | TO COURT ORDER DATED 12/20/04 |

## REPORT OF NEUROPSYCHOLOGICAL EVALUATION
## OF J. RANDALL PRICE, Ph.D, DATED JULY 1, 2005

**FILED**

JUL 0 1 2005

WILLIAM B. GUTHRIE
Clerk, U.S. District Court

By: _____
Deputy Clerk

DAVID E. O'MEILIA
United States Attorney

DOUGLAS A. HORN, OBA No.  13508
Assistant United States Attorney
110 West 7th Street, Suite 300
Tulsa, Oklahoma 74119-1029
(918) 382-2700

Neuropsychological Report: Edward L. Fields, Jr.

|  | Effexor XR 37.5 mg daily for one week and then 75 mg daily for two weeks (samples provided). Return in three weeks or if he feels suicidal. |
|---|---|
| 07/07/03 | Follow-up. Mr. Fields reported: doing a little better; catching snakes at night and selling them for 40 cents per running foot; broke-up with old girl friend but spent weekend with new girlfriend; continues to think about suicide, but not seriously; appetite increased. Dr. noted that Mr. Fields seemed happier and less negative. Assessment was that clinical depression and compulsive disorder had improved. Effexor was increased to 150 mg (prescription given). Return in one month. |

## Time Tables

Time Table 1 is an addendum to this report and attempts to provide a time line of specific events, descriptions, and comments from a variety of individuals who knew Mr. Fields and were questioned about his behavior. The purpose of the Table is to provide examples of behaviors that help understand Mr. Fields over the course of his life as recorded in the records provided this examiner.

Table 2 includes comments and events taken from the records provided this examiner that are difficult to place in a time line but that shed light on the perceptions of others about Mr. Fields.

## INFORMED CONSENT:

Before the first session began, Ms. O'Connell, counsel for the defense, met with her client and me to insure a smooth beginning With his counsel present, I informed Mr. Fields about the nature of the evaluation, who had retained my services, the limits on confidential, his right to refuse to cooperate, his right to contact his attorney, and that the entire evaluation would be audio-taped. He gave consent both orally and in writing. Ms. O'Connell also met with her client and me at the beginning of the second session. The second session was also audio-taped.

## BEHAVIOR OBSERVATIONS AND MENTAL STATUS:

Ed Fields is a 38 year-old, Caucasian male in no apparent physical or emotional stress. He was attired in typical jail clothes. Personal hygiene was good with the exception of needing a shave. He wore correctional lenses. Hearing was within normal limits. His motor behavior was remarkable for a bilateral tremor secondary to medication. Gross attention and concentration was adequate for formal testing to proceed. Mr. Fields was alert, oriented, and cooperative throughout the evaluation session. Affect and mood were euthymic. Thought processes were goal-directed and logical. Thought content revealed no present or past delusions. He denied suicidal or homicidal thoughts. Sensorium was clear. Memory functions were grossly intact. Intelligence was judged to be average to above average. The results of this evaluation are judged to be a reliable and valid representation of his neuropsychological status.

## RESULTS OF CLINICAL INTERVIEW:

Mr. Fields has been incarcerated since 7/18/03 when he was charged with capital murder. He is now in a single cell designed for a disabled person so he has his own shower. Before coming to jail, he was staying with different girlfriends and in his truck in a campsite at Lake Wister. His main girlfriend continued to talk to him on the phone for approximately seven months after he was arrested but has since reconciled with her husband. Mr. Fields was working at a plastics