IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

COPY

United States of America           :

                                  :

   vs                           :   96-CR-239

                                   :

David Paul Hammer                  :


      BEFORE:            Honorable Malcolm Muir

      PLACE:             Williamsport, Pennsylvania

      PROCEEDINGS:     Rule 2255 Hearing

      DATE:             Monday, August 29, 2005

      VOLUME:            Sixteen


APPEARANCES:

For the United States:   Frederick E. Martin, Esquire
                           United States Attorney's Office
                           240 West Third St., Suite 316
                           Williamsport, PA    17701


For the Defendant:       Anne L. Saunders, Esquire
                           Federal Public Defender's Office
                           Suite 306, 100 Chestnut Street
                           Harrisburg, PA    17101


OFFICIAL COURT REPORTER

APPEARANCES, (Cont'd.)

FOR THE DEFENDANT:         Michael Wiseman, Esquire
                          James J. McHugh, Esquire
                          James Moreno, Esquire
                          Federal Court Division
                          Defender Assoc. of Philadelphia
                          Capital Habeas Corpus Center
                          Suite 545 West
                          Independence Square West
                          Philadelphia, PA    19106

OFFICIAL COURT REPORTER

MARTELL - DIRECT

to do that, and he knows cognitively what happens in court, he would be fit to proceed.

Q    Now, in addition to referring to Dr. Gelbort's examinations in October or the fall of 1997, did you also examine Dr. Wolfson's testing such as it was done and reported in defendant's exhibit 139.1?

A    I reviewed what he wrote about his testing. I didn't have the advantage of the actual test data.

Q    And with respect to the testing and his results, how if at all do you compare yourself with your testing results with Dr. Wolfson?

A    Well, actually I think Dr. Wolfson's testing was done by Richard Frederick, who is a Ph.D. psychologist in the Bureau of Prisons that works with Dr. Wolfson. And I found his finding to be quite consistent with my own. They did not do as much neuropsych testing, but overall found strong memory and average IQ and a lack of malingering on psychopathology of faking mental disorder, that he was not doing that.

Q    With respect to, again, Mr. Hammer's evaluation, you said that Dr. Matthews was there for day one, but not for day two, is that correct?

A    That's correct.

Q    And first of all, was your evaluation of Mr. Hammer -- yours and Dr. Matthews, was it videotaped?

MARTELL - DIRECT

A    Yes, it was.

Q    Why did you allow for videotaping?

A    I try and do this in every case unless I'm precluded by the parties.  I feel that it protects everyone involved.  It provides the defense with an absolute record of everything that I said, everything that I did, so their experts can look for mistakes, can question my methods if they choose to do so.  It protects me because I don't have to spend as much time writing notes which can be quite cumbersome, and so it makes it a more efficient test process, and it gives me an absolute record of the answers that were given so I'm not trying to paraphrase a defendant.

So I think overall it's good forensic practice to videotape the exams and preserve the record.

Q    Now, on the second day of testing you were by yourself, is that correct?

A    Yes.

Q    And with respect to when you were alone with Mr. Hammer, did he indicate that he had any knowledge of your -- your background or experience?

A    Yes, he did.

Q    And how did that come about?

A    He was actually quite cordial.  He waited until the second day to tell me that he had heard some things about my background, that he heard that maybe I was a prosecution