# IN THE
## COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
### CRIMINAL TRIAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | NOVEMBER TERM, 1997 |
| v. | : | |
| JOSE DEJESUS | : | No. 350 1/1 |

**RECEIVED** AUG 1 0 2007 **PCRA UNIT**

**FILED** AUG 1 0 2007

Criminal Appeals Unit
First Judicial District of PA

OPINION & ORDER

GREENSPAN, J.                                    DATED: August 10, 2007

## PROCEDURAL HISTORY

Defendant, Jose DeJesus, was tried and convicted before this court and a jury on August 5, 1999, of two counts of first degree murder, two counts of aggravated assault, possession of an instrument of crime (PIC), criminal conspiracy, and recklessly endangering another person (REAP). At trial defendant was represented by Joseph Canuso, Esquire. Following a penalty hearing, the jury found four aggravating circumstances and no mitigating circumstances and therefore returned a sentence of death for each murder conviction.[1] On August 17, 1999, this court formally imposed the death sentence and sentenced the defendant to additional consecutive sentences of 20 to 40 years for the two aggravated assault charges, two-and-a-half to five years for the PIC charge and 10 to 20 years for the conspiracy charge. Defendant appealed and on March 8, 2000, this Court filed an extensive opinion. On December 31, 2001, the Supreme Court of Pennsylvania affirmed defendant's judgments of sentence. Commonwealth v.

---

[1] The aggravating circumstances found by the jury were that the defendant was paid by another person for killing the victim, 42 Pa.C.S. § 9711(d)(2); that, during the commission of the offense, the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense, § 9711(d)(7); that the defendant had a significant history of felony convictions involving the use of threat or violence, § 9711(d)(9); and that the defendant was convicted of another murder committed at the time of the offense at issue, § 9711(d)(11).

·1

retardation range. N.T. 11/29/06: 112. The unadjusted adaptive domain scores were 84 in social skills, 77 in practical skills, and 69 for conceptual skills. N.T. 11/29/06:114-15.

Dr. Puente questioned Dr. Denkowski's administration of the ABAS because he conducted the exam in a self-reporting format, asked leading questions, and readjusted defendant's initial results. N.T. 10/23/06: 79-80. Dr. Cooke reviewed the video tape of the examination and found tremendous deviation from a standard assessment. N.T. 10/25/06: 65. Dr. Cooke added that Dr. Denkowski rephrased the questions multiple times, which violated the standardized procedure. N.T. 10/25/06:132. Furthermore, Dr. Cooke testified that the ABAS manual does not discuss altering scores based on the administrator's subjective view. N.T. 10/25/06:133. During the examination, Dr. Denkowski asked 215 questions, 45 of which were adjusted. N.T. 11/29/06:110-11.

Dr. Denkowski adjusted defendant's composite score on the ABAS from 71 to 86. N.T. 10/25/06: 135. Dr. Martell believes that Dr. Denkowski inflated the ABAS scores because he asked leading questions. N.T. 1/4/07: 295-96. Dr. Denkowski explained that he adjusted defendant's scores for lifestyle because the instrument is based on functioning in mainstream society and not for criminal defendants. N.T. 11/29/06: 105-06. According to Dr. Olley, the ABAS allows for self-reporting, but such administration should only be employed where the subject is a high-functioning individual. N.T. 10/26/06: 60-61. However, Dr. Denkowski believes that a mildly mentally retarded person can self-report. N.T. 11/29/06: 95.

Dr. Olley explained that the AAMR recommends using the SIB-R to assess adaptive behavior by interviewing people other than the subject. N.T. 10/26/06: 56. Dr. Olley used information given by Minerva Rivera, defendant's cousin who has known

12