IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL ACTION |
| | ) | |
| PLAINTIFF, | ) | CR-C-02-216(1) |
| | ) | |
| VS. | ) | CORPUS CHRISTI, TEXAS |
| | ) | JUNE 7, 2010 |
| ALFRED BOURGEOIS, | ) | 2:57 P.M. |
| | ) | |
| DEFENDANT. | ) | |
| .............................) | | |

TRANSCRIPT OF TELEPHONE CONFERENCE
BEFORE THE HONORABLE JANIS GRAHAM JACK, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT

APPEARANCES BY TELEPHONE FOR:

THE GOVERNMENT:                MS. ELSA SALINAS
                               MR. TONY ROBERTS
                               ASSISTANT U.S. ATTORNEYS
                               800 N. SHORELINE, STE 500
                               CORPUS CHRISTI, TEXAS 78401

THE DEFENDANT:                 MR. MICHAEL WISEMAN
                               ASSISTANT FEDERAL DEFENDERS
                               SUITE 545 WEST, CURTIS BUILDING
                               601 WALNUT STREET
                               PHILADELPHIA, PENNSYLVANIA 19106

THE COURT RECORDER:            MS. VELMA GANO

PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING
TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE:  GARCIA
SERVICES, P.O. BOX 351, ROCKPORT, TEXAS 78381, 361-463-9790

(The proceedings began at 2:57 p.m.)

(The case was called)

THE CLERK:  May I have appearances please?

MR. WISEMAN:  Michael Wiseman, W-I-S-E-M-A-N, for Mr. Bourgeois.

MS. SALINAS:  Elsa Salinas --

MR. ROBERTS:  Tony Roberts for the United States, Your Honor.

MS. SALINAS:  And Elsa Salinas on behalf of the United States.

MR. ROBERTS:  Your Honor, Tony Roberts again for the United States.  Mark Dowd for the United States is unavailable, as is Patti Booth.  She is in another courtroom at this time.

THE COURT:  Okay.  I was looking at the motion to reconsider by the Government and looking at the petitioner's response.  Is it a fact that this Dr. Price has actually audiotaped testing before?

MR. ROBERTS:  Your Honor, Tony Roberts for the United States.  Dr. Price has informed the United States that he was ordered to audiotape before and that he agreed to do it at that time and since that time, the other things that he has pointed out to us, he said that he believes that, in his opinion, it's professional misconduct for him to actually agree to have that --

THE COURT:  Why is that?

MR. ROBERTS:  -- evaluation audiotaped or --

THE COURT:  Why is that?

MR. ROBERTS:  I'm sorry, Your Honor?

THE COURT:  Why would it be professional misconduct?

MR. ROBERTS:  He cited to me a provision in the Texas code --

THE COURT:  Does he know he's in Federal Court?

MR. ROBERTS:  -- the release of information.

THE COURT:  Sorry, did you, does he understand he is in Federal Court?

MR. ROBERTS:  I, yes, Your Honor, he did.

THE COURT:  Well, then I don't really want, need any citings from the Texas codes.

MR. ROBERTS:  Yes, Your Honor.  He was, his concern is that his license could be subject to be evaluated under the Texas code, not necessarily --

THE COURT:  Oh, okay.  Why would that be?  What does the Texas code say?

MR. ROBERTS:  It tells, it says that they have to safeguard all information and it says --

THE COURT:  But this is not a confidential, this is not a confidential communication.

MR. ROBERTS:  Yes.

THE COURT:  Of any kind.

MR. ROBERTS:  Well, that's exactly the reason I thought it would be best to have him testify and give his --

THE COURT:  I think you had better find somebody else to do this.

MR. ROBERTS:  I'm sorry, Your Honor?

THE COURT:  I think you had best find somebody else for you to do this.

MR. ROBERTS:  Well, I know that in the defense's response they noted Dr. Martell, and we have not been able to get Mr. Martell's ear as much as we had hoped, and we actually turned our attention towards Dr. Price and Dr. Moore when we started investigating and reviewing the Flynn Effect aspect and noted that both Dr. Price and Dr. Moore had extensive experience in dealing with the Flynn Effect argument.  I, quite honestly, I even tried to reach Dr. Martell again today.  He is extremely difficult to reach.  I will try and I will continue to try to reach him and if he is willing and able to do the testing under videotaping, I wouldn't have a problem with that, Your Honor.  I just, we have not been in contact with him for some time.

THE COURT:  You know, I never, I never anticipated having a videographer there.  You know, I don't know why you can't just set something up on a stand and face it toward the defendant.  I don't think that the doctor needs to be videotaped.  I think that the point for the movant is to see

the client's reaction.  Is that right?

MR. WISEMAN:  Yes, Your Honor, that's right. Michael Wiseman.

THE COURT:  So, I mean, he can have it over his shoulder, the doctor can, and put it in the field of vision. I think anybody, all of us can run a video camera, so he ought to be able to seat Mr. Bourgeois in the field of vision of the video camera and proceed.  There would be nobody else there, it will just be videoed for posterity.  And if Mr. Price thinks his license is at risk, which seems kind of ridiculous because there's absolutely no confidentiality in a court-ordered examination, which is what this is, then obviously you need to find somebody else to do it.

MR. ROBERTS:  Yes, Your Honor.  It wasn't so much the confidentiality aspect, Your Honor, as it was his concern about the requirement on the psychologist to safeguard the testing material and to insure that it does not, it is not released, and one of the things that he --

THE COURT:  I thought we were going to talk about a protective order.  I'm sorry, Mr. Roberts, I keep interrupting you.  Go ahead.

MR. ROBERTS:  That's all right, Your Honor, it's your courtroom.

THE COURT:  No, it's yours.

MR. ROBERTS:  Well, there was, he is not -- I

understand, and I agreed that and I informed him that there would a protective order, and then he referred me over to this YouTube clip that ended up on YouTube, obviously, where another psychologist was interviewing an individual and that somehow got out into -- and it was Dr. Price's belief and Dr. Moore's belief that that interview that was conducted by that individual was also under a protective order, and so there was a concern that --

THE COURT:  Well do you know, have you gotten a copy of that information?

MR. ROBERTS:  I have not, yet, Your Honor, no.

MR. WISEMAN:  Your Honor, Michael Wiseman. Obviously we are going to abide by the Court's orders and, you know, I mean if this thing winds up on YouTube there would be a very short list of possible suspects and we wouldn't --

THE COURT:  I would think so, and, as we all know, there would be tremendous consequences.

MR. WISEMAN:  Oh absolutely, absolutely, as there should be.

MR. ROBERTS:  And I just --

THE COURT:  But, you know --

MR. ROBERTS:  Dr. Price --

THE COURT:  Let me tell you this.  You know, I have been hearing discovery matters for over 16 years, in every

kind of a case, and I litigated, when I practiced for 13 years, discovery matters, and we never decided discovery that was under protective order based on YouTube or internet disclosure or somebody standing out in front of the courthouse with it on billboards and I don't think that's an appropriate consideration, especially in this type of a case. This is a capital murder case, the jury may have convicted Mr. Bourgeois of this offense but his life is at stake, and I don't see any reason why he shouldn't have video for his attorney to look at this examination.  And I think these are inappropriate objections, Mr. Roberts, and I don't think they are coming from you-all but I think from your examiners.  And I would be glad if you want to have Dr. Price or Dr. Moore come in here over the next week to discuss this.

MR. ROBERTS:  I, Your Honor, I have already asked them to be present in Corpus this week and, I mean, I am really having a hard time articulating their professional guideline objections as well as the Bureau of Prisons.  And Ms. Salinas is also on the line here and she can weigh in on this as well, because she was in with our, some of our conversations.  But the Bureau of Prisons is claiming that in the interim, from when there was a videotape recording in the past, they had a, the confinement facility at Terre Haute was different and that now they have a different location where they keep inmates like Mr. Bourgeois and they have, they are

articulating some security concerns, and they state that in every case they get requests for videotaping these kind of things and they are concerned about how this is going to impact future requests.

THE COURT:  Well, I am not understanding that exactly.

MR. ROBERTS:  I'm sorry, Your Honor?

THE COURT:  What is this security claim in particular?  When examinations like this are given, are, will Mr. Bourgeois be in the same room as the examiner?

MR. WISEMAN:  Yes, he would be, Your Honor.

THE COURT:  Is this, I'm sorry, who said that?

MR. WISEMAN:  That's Michael Wiseman.

THE COURT:  And I assume that he would be shackled for the protection of the examiner?

MR. WISEMAN:  I'm sorry, Michael Wiseman again.  At some points during the neuropsychological examination he would probably have to have his hands free to be able to manipulate the materials, and that's pretty routine in these.

THE COURT:  For written materials?

MR. WISEMAN:  I'm sorry?

THE COURT:  He would have written materials?

MR. WISEMAN:  Well, he might have to fill in, you know, answers.

THE COURT:  Okay.  Okay.

MR. WISEMAN:  And solve, or else he might have to assemble blocks.

THE COURT:  So I am not, I guess I am not understating the articulable security -- security concern, if we are talking about two people in an open room, what is the security concern about having a video, the video set up behind the doctor's shoulder?

MR. ROBERTS:  Well, Your Honor, that is exactly why I --

THE COURT:  Who is speaking?

MR. ROBERTS:  -- have instructed the Bureau of Prisons to be --

THE COURT:  Who is speaking?

MR. ROBERTS:  -- available also.

THE COURT:  Who is speaking?

MR. ROBERTS:  Because, again, these are not my objections, Your Honor, they are --

THE COURT:  Mr. Roberts?

MR. ROBERTS:  Yes, ma'am?

THE COURT:  Is that you speaking?

MR. ROBERTS:  Oh, yes.  It's Tony Roberts for the United States.  Sorry, Your Honor.

THE COURT:  Thank you.  Go ahead.

MR. ROBERTS:  The Bureau, what the Bureau of Prisons said to us was that they would have to shut down the entire

facility to take the security, the camera equipment and all, and whatever the equipment is, through the facility to the back part of the facility, that once that camera is in there, all the inmates have access to their own website and to email, that they would then start advocating or informing the world, so to speak, that people were allowed to be, bring videotapes in and videotape things, and then I don't really understand the remaining security issues and I think --

THE COURT:  There must be more to it than that, Mr. Roberts.

MR. ROBERTS:  There has got to be more, Your Honor, and I am trying to understand.

THE COURT:  I feel bad for you even having to say that.

MR. ROBERTS:  Thank you, Your Honor.  I just, I, we have been coordinating with the, you know, I took your order immediately and went back to my two experts and to the Bureau of Prisons and said, "This is what the Court has ordered, this is how we are going to do this," and they started raising new objections to how this was going to be done, and so --

THE COURT:  Okay.  I --

MR. ROBERTS:  -- I told them that I would go back and ask the Court to reconsider based on their objections and then I would request an opportunity for them to come in and

articulate what it is --

THE COURT:  Mr. Wisefeld, how do you want to do this?  I don't want to not get -- I'm sorry, I didn't mean Wisefeld.  I just had somebody in here named Wisefeld.  Mr. Wiseman, how do you, how do you anticipate --

MR. WISEMAN:  Your Honor --

THE COURT:  -- letting the Government make a record of the objections for Dr. Price and Dr. Moore as well as the Terre Haute facility?

MR. WISEMAN:  Yeah, I have no problem in principle, I'm just dealing with some logistical issues about getting our team down there next week for this type of a hearing. Frankly, I think the Government has not proffered sufficient basis for the Court to even have an evidentiary hearing.

THE COURT:  Well, it sounds like it to me.

MR. WISEMAN:  Yeah.

THE COURT:  But this is the problem.

MR. WISEMAN:  If the Court wanted to --

THE COURT:  If they can't --

MR. WISEMAN:  -- perhaps we could do it by telephone?

THE COURT:  I don't mind doing it by telephone.

MR. WISEMAN:  I'm sorry?

THE COURT:  I don't mind doing all of it by telephone.

MR. WISEMAN:  Yeah, I mean, and then we could certainly stand by and ask pertinent questions.  I mean, I don't imagine it will be all that involved.  So I guess that would be my suggestion.

THE COURT:  Okay.  When are you-all free this week to do this?

MR. ROBERTS:  Your Honor, Dr. Price and Dr. Moore will both be in Corpus Christi on Wednesday all day.

MR. WISEMAN:  This Wednesday?

MR. ROBERTS:  This Wednesday.

THE COURT:  Why are they coming into Corpus?

MR. ROBERTS:  I couldn't, I had to figure out something, Your Honor, and I just decided to bring them to Corpus so that we could have them present in case you allowed for them to be present and get their own rationale to why they object to this process.

THE COURT:  Mr. Wiseman, are you free on Wednesday?  Again, everyone would have to appear by telephone, whether they are in Corpus or elsewhere.

MR. ROBERTS:  Sure, Your Honor.

MR. WISEMAN:  Yes, I'm free on Wednesday.

THE COURT:  10:00 O'clock?

MR. WISEMAN:  10:00 O'clock sounds fine.

THE COURT:  Wait a minute.  We are starting a jury trial.  Jury selection day is Wednesday.  Okay.

(Court conferring off the record with clerk)

MS. SALINAS:  This is Ms. Salinas, this --

THE COURT:  I wonder if we could do jury selection, if we could do this first thing in the morning and then jury selection after that.

MR. WISEMAN:  Your Honor, I'm a little tight early in the morning.  This is Michael Wiseman.  I have a medical appointment first thing.

MS. SALINAS I was just about to say the same thing. This is Elsa Salinas.  I have got a medical appointment at 10:00 but I can, I can talk to Mr. Roberts about that later.

(Court conferring off the record with clerk)

THE COURT:  How long do you think this will take? Could I do it during the noon hour?

MR. ROBERTS:  I would -- this is Tony Roberts for the United States, Your Honor.  I would hope so.  I, my intention is to simply put Dr. Price, then Dr. Moore, and then the BOP official on the stand and say, "Please inform the Court of why you believe it's inappropriate to do the, to have the videotape," and let them articulate their objections, because, as I have said before --

THE COURT:  I hope they do a better job than you-all.

MR. ROBERTS:  I understand, Your Honor.  I mean, from --

THE COURT:  I got it, Mr. Roberts.  You know I'm teasing you.  I understand your situation.  Let me ask you this, is it not usual, let's say Dr. Price goes in with no video and no audio and does task A, B and C; does he not have to disclose the task A, B and C, the questions, to the movant?

MR. WISEMAN:  Your Honor, this --

THE COURT:  I mean if Mr. Bourgeois sees them, why can't his attorney see them?

MR. WISEMAN:  In my experience, Your Honor, typically --

THE COURT:  Who is speaking?

MR. WISEMAN:  -- is that the --

THE COURT:  Who is speaking?

MR. WISEMAN:  -- the psychologist -- I'm sorry, Michael Wiseman.  The psychologist would disclose the raw data to our psychologist and that protects the test protocols.  I should think that if our psychologist then informs us that there is some error in the scoring, we would then be able to take that material and enter it as an exhibit, notwithstanding the secrecy of the test.  There has to be a way for us to confront the witness.

THE COURT:  Okay.  Well, let me ask you this: Doesn't Mr. Bourgeois know what the tests are, because he is being given the test?

MR. WISEMAN:  Of course.

THE COURT:  Then why can't his attorney know what it is?

MR. WISEMAN:  Well, I agree.  I am just anticipating that that's the answer that you would get from the --

THE COURT:  I am talking to Mr. Wiseman?

MR. WISEMAN:  Yes, I'm sorry, Michael Wiseman.

THE COURT:  Okay.  This is my concern, Mr. Roberts, about Dr. Moore and Dr. Price's objections, because whatever Mr. Bourgeois knows his attorney is supposed to know, and if Mr. Bourgeois is given the test then why can't his attorney -- I don't get it.

MR. ROBERTS:  Well, Your Honor -- Tony Roberts for the United States.  The one thing I can articulate is that there is a distinct difference between an individual taking a test and going and reporting how the test was given and that and actually videotaping and memorializing every single question on a test that is copyrighted, a test that is protected.  We have got this whole issue of the Flynn Effect and these arguments that people slowly over time learn how to change their mental abilities and then therefore their testing scores are different, and the societies that are putting these out protect their test material so that they don't have to do a new, update the testing every year or every so often, they can do it over several years at a time.

Because it takes extensive research and extensive study and quite expensive for, my understanding is, that for them to put out a new test.  So now we have the phase, the number IV that is available, but it has only been on the market for, I understand, a year or two.

MR. WISEMAN:  Your Honor, it's Michael Wiseman.  We have no problem, of course, with maintaining test security.  That's not the issue.  We are not asking for copies of the test, we simply want the exam to be videotaped.

THE COURT:  Well, then you get the copy of the test that way.

MR. WISEMAN:  Well, except we won't -- we will only have questions and answers and not necessarily the written materials.  But, more importantly, we would be bound by a protective order to not disclose that, and so I don't see where it compromises test security.

THE COURT:  Well, I don't get it either but I sure want to give them an opportunity to articulate whatever it is their concerns are.  What I don't get is that, I don't see any problem, just theoretically, if Mr. Bourgeois instead of what you are claiming he is, Mr. Wiseman, were an absolute genius with total recall, I don't know why he couldn't write down every question and answer that he gave.  Is there any prohibition to that?

MR. WISEMAN:  Not that I am aware of.  Michael

Wiseman.  No.

THE COURT:  Mr. Roberts?

MR. ROBERTS:  Your Honor, Tony Roberts for the United States.  I don't know how the psychologists administer the test so I don't know that if he was writing down every question and then writing down every answer, I don't know how that would, how they would claim or articulate how that would impact the accuracy of the results.

THE COURT:  Okay.

MR. ROBERTS:  That would be a great question to ask them.  They are the experts, they are the ones that I am relying --

THE COURT:  I mean, I don't know if there are certain nuances like you ask question A, if you should stretch it out over a minute because of certain reasons, and that that is the secret in how the questions are, the tone of the nuances of the questions, or if the secrets are just in the questions.  So we'll have to get that --

MR. ROBERTS:  And --

THE COURT:  What do you think Mr. Wiseman, we will have to get that from the experts on Wednesday?

MR. WISEMAN:  Yeah, I guess.  I don't know the answer to that.  I expect that, you know, the test is the test and then, you know, they are concerned with the questions being put out before the public.  But again,

that's, you know, that's not something that can't be covered by a protective order.

THE COURT:  Well, in the meantime, Mr. Roberts, I think you ought to start looking for different examiners.

MR. ROBERTS:  Yes, Your Honor.  I have, I mean, I am going to contact Dr. Martell again and find out if he is in fact available.  We have, obviously we are on a short time span here.

THE COURT:  Yes, sir, and I appreciate that, too. But, on the other hand, if Dr. Price did these audio and he didn't lose his license, then that argument is going to look a little funny.

MR. ROBERTS:  I understand, Your Honor.  And I have confronted him with what has happened in the past and the attachments that Mr. Wiseman submitted and asked him to comment on those and he told me that he does have some reasons for why he would not do it himself again, if a court ordered it he would, in fact in this case he said he would actually withdraw before he --

THE COURT:  Well, that's why I am saying you had better find another examiner.

MR. ROBERTS:  Well, I have Dr. Moore in addition, Your Honor, and we, as Mr. Wiseman commented, we have Dr. Martell and I will follow up with him, and Dr. Price is, actually, his name has been mentioned in several Fifth

Circuit cases and that's how I ended up finding him.  He has been acknowledged as somebody that has a lot of experience and knowledge in this area and so I reached out to find out if he was available to assist us when the Fifth Circuit published his name in one of their published cases, so I will certainly look for other possibilities but I am hopeful that we can go forward, and whether it's Dr. Price or just Dr. Moore or even Dr. Martell back again, I will pursue all the options, Your Honor.  And as I stated in our motion for reconsideration, quite frankly, I mean we are, if my doctors are telling me that they are not going to do this because of a videotaping, and I, then we obviously could just pull back and just say oh, fine, we will just respond to the defense's evidence.  It's their burden and we could do that.  That's not what I want to do, but.

THE COURT:  Well, I understand that.  I'm sorry, I would be sorry to be the cause of depriving you of that, but I think it would be more likely that the doctors have done themselves out of a fee, actually.

MR. ROBERTS:  Yes, Your Honor.

THE COURT:  But, we will see.

MR. ROBERTS:  Yes, Your Honor.

MR. WISEMAN:  Your Honor, did you set a time, this is Michael Wiseman, for --

THE COURT:  I think I'm, 12:00 noon.

MR. WISEMAN:  12:00 noon, your time, okay.  Your Honor, could I bring up one other matter?

THE COURT:  Yes, sir.  Is this Mr. Wiseman?

MR. WISEMAN:  Yes, it is, I'm sorry.

THE COURT:  Yes, sir.

MR. WISEMAN:  I had communicated with Ms. Scotch and Mr. Roberts about this previously and I was going to do a motion but then Mr. Roberts and I talked about it, we thought we, maybe it would be just easier to bring it up with you.

THE COURT:  Okay.

MR. WISEMAN:  Dr. Gilbert, our neuropsychologist, is unavailable for the week of the hearing, he is going to be out of the country on a prepaid trip.  It seems to me, and I don't have a preference necessarily, that the alternatives would be either to pick a different day when he is available and the Court is available or else to have his testimony done by deposition, a trial deposition.  I have got a number of alternative dates and I am personally fine with either plan depending on what the Court wants to do.

THE COURT:  Mr. Roberts, what is your preference?

MR. ROBERTS:  Your Honor, Tony Roberts for the United States.  My preference would be to actually have live testimony if we could get him in before, and to --

THE COURT:  Just preserve it?  Because if it's a deposition I want to participate, because I usually do.  I

mean if I am the decision maker and the fact finder, I like to see the person and ask him some questions myself.

MR. WISEMAN:  Sure.  Live testimony would be fine. This is Michael Wiseman.

THE COURT:  So we can do that by video-conferencing with all of us there, or we can have him come to Corpus and preserve his testimony that way, in court.

MR. WISEMAN:  Okay.  This is Michael Wiseman.  The, should I get with Ms. Scotch on the proposed dates?

THE COURT:  Yeah, you-all, Mr. Roberts, you and Mr. Wiseman pick a preference.  We can do it in the courtroom or we can do it in the courtroom with video-conferencing.

MR. WISEMAN:  Well, Your Honor -- this is Michael Wiseman.  I guess if we are going to, you know, do it by video we might as well be in Corpus and just make it another part of the hearing.

THE COURT:  And that's fine, as long as you don't need him to sit through the whole hearing to look at the other experts.

MR. WISEMAN:  No, I don't think that --

THE COURT:  Okay.

MR. WISEMAN:  -- would be required from petitioner's perspective.

MR. ROBERTS:  And that would be my -- Tony Roberts for the United States, Your Honor.  That would be my

preference as well, to have him present, because I would want one of my expert psychologist's --

THE COURT:  If you can find one.

MR. ROBERTS:  --  his testimony, perhaps guiding us and giving us counsel.

THE COURT:  Okay.  Anything else?

MR. WISEMAN:  Not from petitioner.

THE COURT:  Well, you-all go ahead and get with Ms. Scotch.  You want to do it right now?

MR. WISEMAN:  Sure.

THE COURT:  Do you know the dates that your expert is free?

MR. WISEMAN:  I do.

THE COURT:  What are they, start throwing them out.

MR. WISEMAN:  September 8th through the 10th, or October 6th through the 8th.

THE COURT:  It will be September.

MR. WISEMAN:  Okay.

(Court conferring off the record with clerk)

THE COURT:  The 10th?  The 10th is a Friday, how is that?

MR. WISEMAN:  That's fine with petitioner.

THE COURT:  Mr. Roberts?

MR. ROBERTS:  Your Honor -- yeah, Tony Roberts for the United States, Your Honor.  The only thing I would want

to do is check with Dr. Moore and Dr. Price to see if one of those two could be available during that time, and I will do that immediately.

THE COURT:  Well, I mean, if they are not going to take the case then, if Dr. Price is not going to take the case, I hate to spend too much time working around his schedule.

MR. ROBERTS:  Yes, Your Honor.

THE COURT:  On the other hand --

MR. ROBERTS:  -- come to a resolution, I --

THE COURT:  If he may rethink his position, then maybe we have something else to work with.

MR. ROBERTS:  Yes, Your Honor.  I know that Dr. Price has worked with both the, both sides of a case.  He has worked with a lot of courts and I'm sure we will be able to come to some resolution.

THE COURT:  Okay, I appreciate that.  And, you know, I would be glad to draw the protective order as tightly as you-all want it with built-in consequences that poor Mr. Wiseman has to pay for a reissuing of the new test if he lets it out.

MR. WISEMAN:  That's good.  I thought, Your Honor, you were going to suggest some imprisonment, but.

THE COURT:  No sir, because then you wouldn't be able to take your video camera in.

MR. WISEMAN:  That's right.

THE COURT:  Anything else?

MR. WISEMAN:  So, will the test --

THE COURT:  Okay, so we are going to go with that date, the 10th, unless I hear back from Mr. Roberts and Mr. Wiseman calling Ms. Scotch for an alternative date.

MR. WISEMAN:  Okay, and --

THE COURT:  Do you have an extra date to give them right now?  Okay.  8:00, 9:00, 10:00 O'clock in the morning, which do you want?

MR. WISEMAN:  Earlier the better for petitioner.  I guess 9:00 O'clock.

THE COURT:  9:00 O'clock is perfect.  She says that we are free September 8th, 9th and 10th.  So those are the three dates available now if you can talk to Drs. Price and Moore.

MR. ROBERTS:  Your Honor, in that case, could we do it, I would prefer -- this it Tony Roberts for the United States, Your Honor.  I would prefer Thursday the 9th.

THE COURT:  Would you, why don't we just do it this way:  The reason I put it on the 10th, on Friday, because I will be picking juries that week also and it's easier to break on a Thursday at 5:00 than break midweek.  So, let's keep it on Friday unless you have a huge conflict.

MR. ROBERTS:  That's fine, Your Honor.  Tony

Roberts.  Thank you, Your Honor.

THE COURT:  Besides, we try to get people to Corpus to spend money for the weekend.  Right, Ms. Salinas?

MS. SALINAS:  That's right, Your Honor.

THE COURT:  All right.  Thank you-all very much. You are excused.

MR. ROBERTS:  Thank you, Your Honor.

MR. WISEMAN:  Thank you, Your Honor.

MS. SALINAS:  Thank you, Your Honor.

(The proceedings ended at 3:25 p.m.)

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above entitled matter.


___/s/  Judith M. Garcia_____        _June 29, 2010___