184256 eb

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

UNITED STATES OF AMERICA *
            Respondent,   *
against                   * No. Cr-C-02-216
                          * No. Cv-07-223
ALFRED BOURGEOIS          *
            Petitioner.   *


VIDEOTAPED DEPOSITION OF
WILLIAM RUSSELL OLIVER, MD, MS, MPA

UPON RECEIPT OF SIGNATURE, THE ORIGINAL OF THIS
DEPOSITION WILL BE IN THE CUSTODY OF:
James McHugh, Esquire
Federal Community Defender Office
For the Eastern District of Pennsylvania
Defender Association of Philadelphia
601 Walnut Street, Suite 540 West, Curtis Building
Philadelphia, PA  19106


Date                    Edith A. Boggs, CSR


10-28-10                HOUSTON, TEXAS



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

DEPOSITION OF WILLIAM RUSSELL OLIVER, MD, MS, MPA


DEPOSITION AND ANSWERS of WILLIAM RUSSELL OLIVER, MD, MS, MPA, taken before Edith A. Boggs, a certified shorthand reporter in Harris County for the State of Texas, taken at the offices of Esquire Deposition Solutions, 1221 Lamar Street, Suite 1305, Houston, Texas, on the 28th day of October, 2010, between the hours of 11:39 a.m. and 1:49 p.m.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216   Document 609-1   Filed 11/17/10 in TXSD   Page 3 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

3

A P P E A R A N C E S

ATTORNEY FOR PETITIONER:
Federal Community Defender Office
For the Eastern District of Pennsylvania
Defender Association of Philadelphia
601 Walnut Street
Suite 540 West, Curtis Building
Philadelphia, PA   19106

BY:   JAMES MCHUGH, ESQUIRE

ATTORNEYS FOR RESPONDENT:
U.S. Department of Justice
United States Attorney's Office
919 Milam, Suite 1500
P.O. Box 61129 (77208-1129)
Houston, Texas   77002
BY:   TONY R. ROBERTS, ESQUIRE
AND MARK M. DOWD, ESQUIRE

AND

U.S. Department of Justice
United States Attorney's Office
800 North Shoreline, Suite 500
Corpus Christi, Texas   78401
BY:   PATTI BOOTH, ESQUIRE
AND ELSA SALINAS, ESQUIRE

ALSO PRESENT:

Ms. Kathrin Hennig
Mr. Sean Pieternelle, Videographer

REPORTED BY:
Ms. Edith A. Boggs



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

EXAMINATION INDEX

QUESTIONS BY                                          PAGE

Mr. Dowd                                             5

Mr. McHugh                                           11

Mr. Dowd                                             17

Mr. McHugh                                           37

Mr. Dowd                                             97

Mr. McHugh                                           106

INDEX OF EXHIBITS

NO.    MARKED    DESCRIPTION

P-127  52        2002 version of the SWGIT guidelines for
Recommendations and Guidelines for the Use of Digital
Image Processing in the Criminal Justice System
P-182  66        Excerpt from Workshop #19, Forensic
Image and Video Processing

P-183  73        SOP from the FBI

P-184  86        Excerpt from Workshop #6, So You Think
You Know Digital Imaging?  SWGIT Advice to All AAFS
Disciplines

P-185  116       Workshop #19, Forensic Image and Video
Processing
P-186  116       Workshop #6, So You Think You Know
Digital Imaging?  SWGIT Advice to All AAFS Disciplines



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216   Document 609-1   Filed 11/17/10 in TXSD   Page 5 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

5

PROCEEDINGS

THE VIDEOGRAPHER:  Today's date is October 28th, 2010.  The time is approximately 11:39.  We are now on the record.

(Whereupon, the witness was placed under oath by the court reporter.)

MR. DOWD:  All right.  And this is the deposition of William R. Oliver, MD, MS, MPA, and my name is Mark Dowd.  I'm with the United States Attorney's office in the Southern District of Texas.

And if there's no other objections, I'll go ahead and proceed.

WILLIAM RUSSELL OLIVER, MD, MS, MPA
was called as a witness and, being first duly sworn by the notary, testified as follows:

EXAMINATION

Q.   (BY MR. DOWD)   Sir, would you state your full name and spell your last name for the record, please.

A.   Sure.  I'm William Russell Oliver, O L I V E R.

Q.   All right.  Dr. Oliver, and let me, first of all, start with your educational background.  Could you advise us of your educational background?

A.   Sure.  I received a bachelor's degree in microbiology from the University of Oklahoma.

Following that, I went to Vanderbilt School of



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 6 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

6

Medicine in Nashville, Tennessee where I received my medical degree.

Following that, I went to the University of North Carolina at Chapel Hill where I simultaneously did a residency in anatomic and clinical pathology, fellowship in forensic pathology and graduate school in computer science.

At the end of that, I received a master's degree in computer science with an emphasis on image processing and computer vision under Steve Pizer there.  Then -- and also the fellowship in forensic pathology.

From there, I went to -- oh, wait a minute. That's about it for -- oh, wait a minute.  Sorry.  One more thing.

Then I guess it would be 2003, I received a master's degree in justice administration from Columbus State University in Columbus, Georgia.  Also during that period, I've gone to various training programs in programming and such as that.

Q.  Relating to computer programming?

A.  Related to computer science, yes.

Q.  Computer science.  All right.  And what has been your professional background?

A.  My professional background, following my training, I went to the military and was a staff


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 7 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

7

pathologist in the Department of Molecular Pathology at the Armed Forces Institute of Pathology, as well as a deputy medical examiner with the Office of the Armed Forces Medical Examiner.

While with the -- while with the Armed Forces Institute of Pathology, I was also the head of the digital image processing laboratory there.  My job tasks were primarily having to do with image processing and visualization issues, writing visualization algorithms for confocal microscopy and --

Q.  Say that again.

A.  Visualization algorithms for confocal microscopy, C O N F O C A L, which is just a type of three-dimensional microscope.  And I was doing three-dimensional -- writing algorithms to allow people to see what we saw in three dimensions --

Q.  Okay.

A.  -- as well as doing image analysis issues and image processing and enhancement for the Office of the Armed Forces Medical Examiner, dealing primarily with hostage issues, terrorism and force protection issues.

From -- after spending 12 years at the Armed Forces Institute of Pathology both as an active duty officer and as a civilian Department of Defense employee, I then went to the Georgia Bureau of


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Investigation and was regional medical examiner for North -- Northwest Georgia.

Following that, I was recruited as a tenured full professor at Brody School of Medicine at East Carolina University where I am now professor of pathology and director of autopsy, forensic services at Brody School of Medicine, East Carolina University.

Q.   All right.  Oh, go ahead.  Did I cut you off?

A.   Well, and during this period, I was also network administrator for the scientific computing network at the Armed Forces Institute of Pathology.

Q.   And -- and what is your present employment?

A.   I am professor of pathology and director of autopsy and forensic services at Brody School of Medicine, East Carolina University.

Q.   And do you also serve as a medical examiner?

A.   Yes.

Q.   And in what area?

A.   I serve 22 -- approximately 22 counties in Northeastern North Carolina.

Q.   All right.  Are you a member of any professional organizations?

A.   Yes, I am.

Q.   And what are those?

A.   They include the American Academy of Forensic



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 9 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

9

Sciences, the National Association of Medical Examiners, the Institute of Electrical and Electronic Engineers, the Association for Computing Machinery, the Association of Old Crows, which is an electronic warfare group.  I see a smile there.  Let's see.  And the American -- sorry -- the College of American Pathologists and the Association -- American Society of Clinical Pathology.

Q.  All right.  And do you hold any professional certificates, licenses, awards?  Have you contributed to any publications in the area of forensic pathology or forensic imaging?

A.  Yes, I have.

Q.  And what are those?

A.  I am licensed to practice medicine in Georgia and North Carolina.  Awards I've received include the Government Computing News -- one of the Government Computing News 100 most influential IT professionals in the late 1990s, I think it was 1998.  I was a finalist for the Berry Prize in military medicine, again, in '98 or '99.

Q.  And what is that?

A.  That's just an award for contributions in military medicine --

Q.  All right.

A.  -- given out by the federal government.  I



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

received a commendation for work I did after 9-11 in evaluation of the Pentagon attack, and I received a letter of commendation from Janet Reno for my work in image processing in the Rodney King case way back in 1992.

Q.  What was your contribution regarding the Pentagon attack?

A.  I was one of the pathologists that did the autopsies on the victims.

Q.  Okay.

A.  Let's see.  That was -- that was awards.

Q.  Those are awards.

A.  What were some of the other --

Q.  Okay.  What about publications?

A.  Oh, publications.  I've been published in a number of journals -- oh, sorry.  Okay.  Stop moving. Okay.

I've been published in a number of journals, including the Journal of Forensic Sciences, the American Journal of Forensic Medicine and Pathology, the International Journal of Intelligence and Counter Intelligence and the Journal of Surgical Oncology, Journal of Sex and Marital Therapy and a number of IEEE and SPIE proceedings.

Q.  All right.  Now, could you describe your



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

background and experience as relates to photo or image enhancement and related disciplines?

A.   Sure.   As I said, I have a master's degree in computer science with an emphasis on computer vision and computer science.   I -- I did image enhancement and image analysis professionally for the military for 12 years.   I lecture and teach on image analysis and image processing.   For instance, I give a workshop -- part of a workshop every year at the American Academy of Forensic Sciences and lecture extensively on it.

Q.   All right.   And have you previously been qualified as an expert in forensic pathology and forensic imaging?

A.   Yes, I have.

Q.   Okay.   And could you tell us on how many occasions?

A.   Actually, no.   I didn't -- I never kept track while I was in the Army.

Q.   All right.

MR. DOWD:   We would -- we would -- we would offer Dr. Oliver as an expert in forensic pathology and forensic imaging.   Any objection?

MR. MCHUGH:   Let me ask some questions.

MR. DOWD:   Go ahead.

EXAMINATION



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

12

Q.   (BY MR. MCHUGH)   Good morning, Dr. Oliver.

A.   Good morning.

Q.   I wanted to focus in on some training that you've received.  What training have you received in digital imaging process?

A.   It was essentially the primary focus of my master's degree.

Q.   So -- and when was that?

A.   That was 19 -- I want to say 1990.

Q.   Okay.  And --

A.   And following that, I also have received training in programming various image processing packages and evaluating images that way.  So, if you -- unfortunately, I don't have my CV handy but AVS programming, AVS Express programming, things like that, Open GL programming.

Q.   Well, I'd ask you to be more specific.  You said you had your master's --

A.   Uh-huh.

Q.   -- and you did digital imaging processing?

A.   Right.

Q.   And then you said you had received additional training but can you specifically tell us where and what -- who was that from?

A.   Sure.  AVS training was from AVS.  AVS --


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216   Document 609-1   Filed 11/17/10 in TXSD   Page 13 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

13

Q.  And what's AVS?

A.  Advanced Visualization Systems.

Q.  And who --

A.  It is a -- it is a -- it is a company that does visualization software that basically is a tool kit that you build visualization software out of.

Q.  Okay.

A.  Okay.  AVS Express training, Open GL training. Open GL is a -- again, it's an API programming interface for doing three dimensional graphics in the computer. It's --

Q.  Now, are you going to trainings or are you -- are you simply receiving these materials in the mail?  Are you actually --

A.  No.  I went to the training.

Q.  Went to the trainings to then use these programs; is that right?

A.  Yes.

Q.  Okay.  The --

THE VIDEOGRAPHER:  Excuse me, Counsel, do you have your mic on?

MR. MCHUGH:  It's right here.  Sorry.

Q.  (BY MR. MCHUGH)  So -- so, that's your -- so, your digital image training is your master's degree?

A.  Uh-huh.


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Q.   And then these other subsequent trainings that you went to; is that right?

A.   Yes.

Q.   Okay.  Now, what about enhancing images from digital images, enhancing digital images, did you study that at any time in school?

A.   That's part of that.

Q.   That's -- so, the enhancement you also studied in your master's program?

A.   Yes.

Q.   And when you say that was part of your master's program, were you actually taking courses in enhancing of images or were you studying that?

A.   I was actually taking courses.

Q.   All right.  And do you recall the names of those courses?

A.   No, but I can -- no, but I can tell you that, for instance, my advisor was Steve Pizer, who developed the Contrast-Limited Adaptive Histogram Equalization.

Q.   Right.  And -- now, as far as employment, with the digital imaging process, where have you been employed where you've used the digital imaging process?

A.   At the Armed Forces Institute of Pathology.

Q.   Okay.  And was that the primary focus of your job?



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

15

A.   It was about 70 percent of my job.

Q.   Okay.   And what was the other 30 percent?

A.   Forensic pathology.   Standard regular forensic pathology.

Q.   And what were you -- what digital images were you using at the Armed Forces Institute?

A.   I was using surveillance images.   I was using images from autopsies.   I was using remote sensing images.   I was using data from microscopy, like confocal microscopy images.

Q.   And how about employment where you were enhancing digital images, same question as --

A.   And the same answer.

Q.   So, it would be the Armed Forces Institute?

A.   Right.

Q.   So, when you were being trained, you were being trained at the same time in both digital process -- imaging processing as well as enhancement?

A.   Yes.

Q.   And then in your employment, it was at the Armed Forces Institute, both enhancement and digital imaging process --

A.   Yes.

Q.   -- is that right?

     Besides the Armed Forces Institute -- and by the



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 16 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

16

way, what years were you there, if you recall?

A.   1990 to 2003.

Q.   Okay.  And besides that 13-year period, have you ever been employed in an area where you were using digital enhancing images, things of that nature?

A.   I've done it as part of my work off and on while at the GBI and at U -- and at ECU and, in addition, I did it as a private consultant.

Q.   Okay.  And would that be as an expert witness?

A.   Yes.

Q.   Private consultant.  Okay.  What is the breakdown of the -- you've testified in court many times; is that right?

A.   Yes.

Q.   Okay.  What is the breakdown as far as testifying for the defense versus the government, if you are able to make an approximation?

A.   Mostly for the prosecution.  Oddly enough for -- when I consulted for the defense, it usually ended up not going to trial.

Q.   Okay.  But the -- would it be over 50 percent?

A.   Oh, no.  No.  No.  It would probably be 80 to 90 percent for prosecution.

Q.   Okay.

          MR. MCHUGH:  I have nothing further.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216   Document 609-1   Filed 11/17/10 in TXSD   Page 17 of 146
William Russell Oliver, MD, MS, MPA                      October 28, 2010

17

MR. DOWD:  Okay.  Do you object to the doctor's qualification?

MR. MCHUGH:  No, I do not.

MR. DOWD:  Okay.

FURTHER EXAMINATION

Q.  (BY MR. DOWD)  Dr. Oliver, in -- in the case before the Court, United States versus Bourgeois, were you asked to review autopsy photos and to identify and count injuries depicted on those photographs?

A.  Yes, I was.

Q.  All right.  And in connection with that, did you -- did you have -- did you enhance these photographs for the purpose -- for the purpose of identifying or actually drawing attention to these particular injuries?

A.  I used it for image exploration.

Q.  Explain, if you would, briefly what that entails.

A.  All right.  In image analysis, one of the problems is frequently not whether or not data is present in an image.  The problem is whether or not the analyst notices the data in an image.

To give sort of a classic trivial example, many magazines have these little puzzles where they'll have two pictures side by side -- excuse me -- they'll have two pictures side by side or one above the other and the question will be, "What are the differences between this



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

picture and that picture," and you'll have one where the hem of a skirt will be a little higher or one tire will be black wall instead of white wall.

THE WITNESS:  Thank you very much.

A.  And it will become -- you know, it becomes not an issue of whether or not the data is present in the image, it becomes an issue of whether or not the analyst or, in this case the person reading the magazine, notices all of these differences.

So, it is not uncommon for image analysts to manipulate images in many different ways in order to bring features -- to make features more apparent or less apparent in order to essentially break out of the perceptual boundaries that come from looking at images.

Very frequently when people look at an image, they expect to see certain things, and so, they either do or they don't.  And what you need to do is you need to sort of break out of that.

And in -- in the intelligence community, they use what are called light boxes in which they'll have a picture that's displayed on an image and they'll magnify it and change the contrast and move it around and crop it and turn it upside down and all sorts of other things in order to modify how people look at the image.  That's called image exploration.


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216     Document 609-1     Filed 11/17/10 in TXSD     Page 19 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

19

And then what you do is if you notice something in the image, then you go back to the original and you say, "Well, wait a minute.  Is this something real or is this something that is an artifact or -- or what is it?"  And then you go back to the original image and do your interpretation.

Q.  (BY MR. DOWD)  All right.  So, the thrust of your presentation was to draw the jury and the judge's attention to a particular aspect of a photograph --

A.  Yes.

Q.  -- of an injury that you identified on the original?

A.  Yes.

Q.  Okay.  Now, what method did you ultimately use to demonstrate these -- these aspects to the jury?

A.  The illustrations I used had been modified using Contrast-Limited Adaptive Histogram Equalization.

Q.  All right.  And can you give us just a brief description of what that is?

A.  Sure.  You can break it down by the -- by the -- by the name.  It's a contrast enhancement method, which means that it takes features -- some features in an image and it changes their relative importance.  It makes some more -- more obvious and some less obvious.

Many methods of contrast adjustment do so by


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                October 28, 2010

20

manipulating the histogram, and there are numerous ways of doing that.

Q.   And the histogram is what?

A.   The histogram is simply a graph or collection noting the number of pixels at a given gray scale or at a given color.  The most -- the most classic and simplest is what's called a histogram stretch.  If you can imagine that your display goes from zero to 255 but you took an image that's low contrast, and so, when you display it, it only goes from 50 to 150, okay, histogram stretching will take that 50 and move it down to zero and the 150 and move it up to 255 and multiply everything else to fit the same pattern between the two so that the darks are darker and the brights are brighter and everything is more obvious in between.

Histogram equalization makes the assumption that everything in the contrast is best achieved when all of the bends in the histogram have the same number of pixels, and so, it attempts to do that, and that's called histogram equalization.

The problem with histogram equalization is that one part of the image may be very bright and one part of the image may be very dark.  And so, you end up losing contrast in both because all the bright pixels are eaten up there and all the dark pixels are eaten up over



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 21 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

21

there.

So, adaptive methods attempt to do their processes on local regions in the image.  Okay?  And those are called adaptive methods.  And so, adaptive histogram equalization applies a histogram equalization to local regions in the image to increase contrast everywhere.

It was originally developed for use in x-rays and CT scans.  One of the problems with CT scans, you know, computed tomography, and most people are familiar with that, is that there is a lot more data in a CT scan than can be displayed, so that if you want to look at the bone and see the details in the bone and you move the contrast over to look at the bone, then the lungs are all black.  In contrast, if you want to look at the lungs and you move -- you fix the contrast so that you can see what's in the lungs, then the bones are all white, and that's called windowing.

In other words, because you've got -- let's say you have data from zero to a thousand but you can only see in the display from zero to 200, then you just take that window from zero to 200 and move it up and down that scale of 1 to -- zero to a thousand.

So, people said, "Well, wouldn't it be better if you could show the appropriate part of the image in the


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

appropriate window, the bone in the bone window and the lung in the lung window and the soft tissue in the soft tissue window."

And so, that's why it was -- these adaptive methods were developed was to look at a place and say, "Oh, wait a minute.  This should be in the bone window," and do the visualization as if it were in the bone window, move over and say, "Oh, wait a minute.  This is in the lung window.  This is lung, so, it should be in the lung window."

Q.  All right.  And how long is this contrast enhancement technique that you're describing -- how long has that been in use in the medical field and in photography?

A.  Since the mid to late 1980s.

Q.  All right.  And is it -- is it -- well, let me ask you this:  Why did you use that method in your presentation to the -- to the jury?

A.  Because I -- I thought it might be helpful for them to help them notice things.

Q.  All right.  And what -- what does this contrast method do that would help or assist the jury to notice what you're drawing their attention to?

A.  It makes features a little bit more -- it sometimes makes features a little bit more -- more


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                          October 28, 2010

23

obvious.

Q.  Okay.

A.  Okay?  It's essentially -- the problem one -- I could have -- I could have just as easily, for instance, used line drawings but the problem with using line drawings or -- or I could have hired an artist to paint it and -- but the problem with doing both of those things is that sometimes there's a perceptional difficulty with going from the line drawing back to the original image but if you change the contrast and -- so that the actual feature becomes more obvious, then in looking back at the original image, it's a little bit more easy to do the comparison and say, "Oh, yes, that's what he's talking about."

Q.  Okay.  Now, in your -- in your -- you said that you counted the injuries?

A.  Yes.

Q.  And did you make that count from the original autopsy photos?

A.  Yes.

Q.  You didn't use the -- your -- let's -- let's say your enhanced images to count injuries?

A.  No.  I used the enhanced -- I used the enhanced images to draw my -- I mean, I used the enhanced images basically to draw my attention to things and then went


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 24 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

24

back to the original image to discern whether or not it was an artifact or whether it was something else.

Q. All right. And did you suggest that -- that -- that same procedure to the jury and to the judge, to go back to the original to identify the actual injuries?

A. Yes.

Q. Okay. Now, what about Mr. Schenk's claim that the numerous layers of modification of -- the original photo underwent creates a situation where the known or potential rate of error is impossible to determine? And he's talking about going from the original print to the digitized version and then to the enhanced version.

A. That -- the statement that there is -- that the rate of error is unknown implies there's a specific test for which there is a rate of error. Since no test was done based on the enhanced image, then there -- then it's -- the question essentially does not apply.

Q. Okay. What about Mr. Schenk's claim that the lossless compression is the scientific standard and that your use of the lossey compression fails that standard?

A. The -- there -- there are a couple of issues with that. The first is that, once again, there's a difference between a demonstration and a medical illustration and the images that I actually did the work on -- I mean, that I actually looked at.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

So, the prints that I received, obviously, were prints. They're not -- they're not compressed at all. The images that were taken with the digital camera that Dr. Rouse -- that Dr. Rouse took, the JPEG was the native format. There is always loss of information when you change to JPEG format.

The question -- the fact of the matter is, particularly with received imagery, is that you have what you have. And so, with the imagery that Dr. Rouse gave me, they were taken with JPEG images.

It turns out that most forensic pathologists take their imagery with JPEG images, and I do as well. There are practical reasons for that. And the primary practical reason is that the features that you are taking photographs of are adequately demonstrated using JPEG images.

Q. All right. So, just to understand the -- the -- the process here, Dr. Rouse took 35 millimeter photos at the autopsy scene and then stored those and sent those to you in JPEG format?

A. No.

Q. Okay. Go ahead and explain that.

A. There were two -- there were two sets of imagery that I received. One was a set of photographic prints and the other was a set of JPEG images on a disk.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216   Document 609-1   Filed 11/17/10 in TXSD   Page 26 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

26

Q.   Okay.  And --

A.   They were -- they were disjoint sets.  They were different groups of images.

Q.   All right.  And you made your -- your count of the injuries and your identification of injuries on the prints that you were sent?

A.   I used -- I used both.

Q.   Okay.

A.   The prints were the most useful.

Q.   Okay.  All right.  What about Dr. -- Mr. Schenk's claim that the original 35 millimeter photos were the best evidence and that your digitized unenhanced images were not the equivalent of the best evidence?  Let's start with the first part of it --

A.   Okay.

Q.   -- that the 35 millimeter photos were the best evidence.

A.   Well, the 35 millimeter photos were what I received.

Q.   Uh-huh.

A.   And -- and, in fact, yes, they -- they are the best evidence, and that's what I used for making my conclusions.

Q.   Okay.  And then as far as the -- your digitized unenhanced images, then you digitized those?



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

27

A.  Right.  I then digitized them, and that's what I used as the basis for the image exploration thing that I talked about and also for creating the demonstration for court.

Q.  All right.  And what about his claim that those unenhanced -- those digitized unenhanced images were not equivalent to the best evidence or to the original prints?

A.  That's absolutely correct.

Q.  Okay.  But did you use the -- your digitized version to count the injuries or to identify injuries on the -- on the child?

A.  No.  The -- the Power Point presentation was my report.

Q.  Okay.  And did you suggest to the jury or to the judge that they -- they should use the digitized -- the unenhanced digitized version to count the injuries or to identify injuries on the child?

A.  The -- the -- what -- what I suggested to them is that if they could not see the images, see the injuries on the images, then they should not believe me.  Even -- even with the degraded images that were present in the Power Point, the injuries were still present, just as -- as you -- as you saw on the image in the previous testimony.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Q.  Okay.  And what about Mr. Schenk's claim that you could not substitute enhancement for details lost during the digital conversion?

A.  That's correct.

Q.  And what about his claim that the technique that you used -- that you used is neither well known, regulated, regarded or accepted within the U.S. or international forensic community?

A.  Well, certainly to the degree that medicine is a -- is -- is forensic, it certainly has both a long and extensive history of use and an extensive history in the peer-reviewed literature.

Q.  All right.  And what about Mr. Schenk's claim that the -- you said going back to the '80s?

A.  Yes.

Q.  What about Mr. Schenk's claim that the method used by you had not been tested and had not been suggested to -- subjected to peer review and publication in the medical community?

A.  There is a long history of publication about this method in both the computer science and the medical literature.

Q.  Okay.  Involving both medical imaging or x-rays as well as --

A.  As well as --

Toll Free: 800.969.3027
Facsimile: 210.558.3670



Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216  Document 609-1  Filed 11/17/10 in TXSD  Page 29 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

29

Q.   -- photographic enhancement?

A.   As well as -- photographic -- as well as photographs of fungi, photographs of blood cells, photographs of all sorts of stuff.

Q.   Okay.  Now, there are limitations in counting injuries from photographs, it's not the same as being at the autopsy and seeing -- seeing the body, correct?

A.   Yes.

Q.   Okay.  And did you discuss -- did you discuss that limitation with the Court and with the jury?

A.   Yes, I did.

Q.   Okay.

MR. DOWD:  And for the record, I think that occurred on day 5 at Page 196 in the transcript.

Q.   (BY MR. DOWD)  If you came across an area which contained a large bruise that could have resulted from numerous bruises or numerous impacts on that -- on that singular area, did you ever count that as multiple bruises or did you always count that as a single bruise?

A.   When there was some data, I counted them as individual -- as single bruises.

Q.   Okay.  Now, there -- there was an objection at trial as far as the prejudice of the use of your presentation before the jury, right?

A.   As I remember.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 30 of 146
William Russell Oliver, MD, MS, MPA                      October 28, 2010

30

Q.  As a Rule 403 objection.  Did you use or did you attempt to use either your digitized versions of the original prints or your enhanced versions to supplant or replace the original prints that -- that were before the Court?

A.  I don't know what that means.

Q.  You digitized the prints --

A.  Uh-huh.

Q.  -- as far as the Power Point presentation and then you enhanced those?

A.  Yes.

Q.  To demonstrate or direct the jury's attention to particular areas to -- to identify injuries?

A.  Right, just to draw attention to things.  Right.

Q.  Right.  But did you ever suggest that they should use those instead of the original autopsy photographs --

A.  No.

Q.  -- to identify or count any injuries?

A.  No.

Q.  Okay.  And so that the -- your use of the digitized versions and the enhanced versions were just an aid to the jury to help them direct their attention to the area where you believed an injury had occurred?

A.  Yes.

Q.  Okay.  And did you point that out to the Court


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 31 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

31

and to the jury on a number of occasions during --
during the trial?

     A.  Yes.

     Q.  Okay.  Now, on -- I'm referring to Mr. Schenk's
report of May 11, 2007.  On Page 2, he suggests that you
used the enhanced photographs to identify the numerous
issues you discussed in your testimony, and he
identifies 25 to 26 whip marks, 78 healed scars, 73 to
105 nonspecific contusions, 8 pattern contusions, 9 to
10 abrasions, on and on.  And then, again, did you --
did you count any of the injuries that you didn't see on
the original autopsy photos?

     A.  No.

     Q.  Okay.  Mr. Schenk suggests that you counted
injuries that were not visibly present in the original
photographs.  Is that an accurate assessment?

     A.  No.

     Q.  Okay.  Mr. Schenk suggests that to test the
accuracy of the enhanced photographic method that you
used, you have to compare them to the original photos.
However, Mr. Schenk suggests that you never compared the
enhanced -- the enhanced photos to the originals, you
only -- you only compared them back to your digitized
versions.  Is that -- is that correct?

     A.  It is correct that's what he says.  His statement


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 32 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

32

is incorrect.

Q.  That's not what you did?

A.  That is not what I did.

Q.  Okay.  I don't want to get into too much -- too technical here but what is the -- what is the effect of the reliability of reproducing an image via scanner at 600 DPI of a 35 millimeter photo with 3600 DPI?

A.  The issue primarily has to do with what is the -- from an image analysis point of view, it has to do with what is the -- what is the best resolution necessary to evaluate the feature that you want to look at in the image.

For one thing, if you're talking about digitizing a print at 3600 DPI, you're actually digitizing the print at a much higher resolution than -- than information within the image.

As I -- as I stated in my response, there are studies now that show sort of what the resolution of a photographic image, particularly a photographic image that's being hand held in an autopsy type -- an autopsy type situation is significantly lower than that.

So, if digitizing is much higher than the resolution of the information in the image, it's not particularly useful.

The study by Herb is actually not in an autopsy


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

suite.  It's actually a best situation where it was a tri -- you know, a tripod stabilized camera using high quality film, et cetera, et cetera, et cetera, and it showed that, in fact, the pipeline of image creation provides a resolution that it does not require that kind of digitization.

Q.  Okay.  What about Mr. Schenk's claim that the conversion to digital forces a much narrower color spectrum?

A.  I think what he means is color gamut and the -- in most -- particularly systems in the -- I don't actually remember when this trial originally was.  What was it, 2004 or --

MR. MCHUGH:  '4.

A.  Certainly in 2004, scanners at the time did have a narrower gamut.

Q.  (BY MR. DOWD)  All right.  And what about the shift in aspect ratio from 3 -- 3 times 2 versus 4 times 3, would that impact the reliability of the digitized image to the original -- back to the original 35 -- 35 millimeter photo?

A.  It -- it is a source of error, and if one were doing measurements from the photograph, then it -- one would have to make sure that that did not impact upon it.  If one is simply doing recognition, then no, it has



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 34 of 146
William Russell Oliver, MD, MS, MPA                        October 28, 2010

34

no impact.

Q. Okay. Is photographic information further lost as the images are compressed in converting them to a JPEG file?

A. Yes.

Q. Okay. Now, if -- if you have a negative, you know, that's taken of the scene and you process it and produce two different prints, will those prints be exactly the same?

A. No.

Q. And why is that?

A. It's because the response in both the paper and the optical pipeline is subject both to mechanical and user change. And I mean, basically, you know, you talk about interpolation, the -- the -- the colors you see in a photographic print are the result of a chemical process that is essentially the equivalent of an interpolation and essentially no two -- no two -- and it's a function of -- of the manufacturing of the paper, it's a function -- particularly if it's done in a darkroom by a human, it's a function of how the print is made by the human, or even if it's done in a machine, it's done with the calibration of the machine. All of those will introduce their own changes.

But, in fact -- and, in fact, the very pattern of


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216   Document 609-1   Filed 11/17/10 in TXSD   Page 35 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

35

the silver will change things but, in fact, you know, those differences are usually not perceivable but when they are perceivable, they are perceivable in a way that is not particularly important to the viewer.

One of the things to remember is that, in fact, most color films explicitly do not represent reality as -- as people see them because color films are modified to make colors more aesthetically pleasing.

And what that means is that, for instance, particularly with, for instance, Echtochrome and Kodachrome, they'll -- they have different color balances.  Frequently they're a little bit redder.  They will tend to oversaturate the flesh tones because when people take pictures of family members, they want them to look rosy red and nice looking and not pale and cadaverous.

Q.   The way they look in real life?

A.   Yeah, the way they look in real life.  And so, it turns out that every step along the way, there is the interpolation and modification --

Q.   Which --

A.   -- both in chemical -- both in wet and digital imaging.

Q.   All right.  So, in that regard -- so, the negative would be the best evidence as -- as relates to



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 36 of 146
William Russell Oliver, MD, MS, MPA                     October 28, 2010

36

the prints?

A.  Well, unfortunately, I mean, sort of -- in sort of an abstract way, that would be true but then you can't look at a negative, and so, whenever you go from the negative to something you can see, there will be loss of data.

Q.  All right.  So, in other words, to -- to make your presentation to the jury, you wouldn't be able to just take a -- ask the jury to look at a negative against the light and identify injuries?

A.  No.

Q.  Okay.  Now, will you agree that there's some loss of accuracy when you digitize a print into the digitized version that you made and that was seen by the jury?

A.  Yes.

Q.  All right.  And -- and that loss of accuracy, would that result in less features being visible or evident?

A.  It -- it would make -- it would result in small features being less evident, not the features I used for diagnosis, however, or -- and, in particular, not the features that I wanted to display.

Q.  So, if the jury only saw the digitized version and the enhanced version, they would actually be -- they would actually see less than if they saw the original


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

37

autopsy photo?

A. Yes. That is, unfortunately, the nature of virtually all courtroom displays.

Q. All right. They would see fewer injuries in -- in -- in principal than --

A. Right.

Q. -- than were on the original autopsy prints?

A. Yes.

Q. Okay.

MR. DOWD: I'll pass the witness.

MR. MCHUGH: Thank you.

FURTHER EXAMINATION

Q. (BY MR. MCHUGH) Good morning, although it's afternoon.

Dr. Oliver, I'm going to ask you to look at what we've marked as P-181.

A. Uh-huh.

Q. I'm going to talk about that for a little bit, if you could.

A. Okay.

Q. Can you identify that, please?

A. It looks like a print from one of the slides from my Power Point exhibit.

Q. And is that -- not just a print but does it depict the protocol that you used in -- in this



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

particular case?

A.   Yes.

Q.   Okay.   And there's -- appears to be two numbers, 1, 2 and then I'm not sure there's a 3 but it goes 5, 6 and 7; is that right?

A.   Yes.   Unfortunately, that's the outlining problem with the Power Point.   Yes.

Q.   Okay.   And this protocol that was used, can you tell me or identify for me a peer-reviewed article that peer reviews this protocol from 1 through 7, let's say, since there's no 3 but I'll --

A.   Okay.   Well, this is not a sequential protocol. These are individual things.   So, there is peer review that -- literature that discusses color balancing. There's peer literature review -- there's peer-review literature that discusses histogram stretching.   There's peer-reviewed literature that discusses histogram stretching.   There's peer-reviewed literature that discusses histogram equalization.   There is peer-reviewed literature that involves wavelet packet construction.   There is peer-reviewed literature that takes about glare estimation.   There's peer-reviewed literature that talks about unsharp masking.   And there's peer-reviewed literature that discusses blind deconvolution.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 39 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

39

Q. Right.

A. So --

Q. But your protocol, the one that you've used in this case, is there a peer-reviewed article that discusses all of these as you have them here?

A. Well, there -- it's just -- it's just a list. So, as just a list, each object on the list has a peer-reviewed literature.

Q. But as the -- in combination because you're not --

A. No. These are -- these are not done in combination. These are --

Q. Well, this is the process you followed, isn't it?

A. This is -- each one of these were done separately.

Q. I understand.

A. Right. And so --

Q. Each step creating a protocol?

A. And each -- and each of these has peer-reviewed literature.

Q. Is there an article --

A. Uh-huh.

Q. -- just name me one --

A. Uh-huh.

Q. -- that discusses the process that you used in


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216   Document 609-1   Filed 11/17/10 in TXSD   Page 40 of 146
William Russell Oliver, MD, MS, MPA                     October 28, 2010

40

total from 1 through 7?

A.  That -- for each one of these, yes, there is.  I don't --

Q.  Not for each one.  The protocol that you used in this case --

A.  Uh-huh.

Q.  -- 1 through 7, half a page.

A.  Right, but this is -- this is not a sequential protocol.  That's what I'm --

Q.  Would the answer be no, that you're not aware of --

A.  You're asking me to --

MR. DOWD:  I would just ask that the doctor be permitted to finish his answer.

A.  Yeah, let me answer the question.

Q.  (BY MR. MCHUGH)  Sure.

A.  Okay.  This is not a sequential protocol.

Q.  This is your protocol.

A.  This is not a sequential protocol.  Do you understand what sequential means?

Q.  1, 2, 3.

A.  Right.  Right.  And so, I did not do histogram stretch followed by histogram equalization.  This is a collection.  The reason they're numbered is merely because one has to somehow put them down.  I could have


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 41 of 146
William Russell Oliver, MD, MS, MPA                October 28, 2010

41

just as easily said -- put histogram as number 1 and
CLAHE as -- as number 2.  Okay?

        The reason these are -- these are not -- these
are simply classifications.  The reason the basic image
adjustment is number 1 and the things underneath that
and then the contrast enhancement is number 2 is just to
classify them --

Q.  Okay.

A.  -- so people know what I did.

Q.  Although we wouldn't know in what order from
reading this?

A.  There is no order.  They're not done one after
the other.

Q.  Okay.

A.  That's what I'm trying to tell you.

Q.  Now --

A.  They're done independently.

Q.  You called it a collection; is that right?

A.  Yes.

Q.  Could you please tell me of one peer-reviewed
article that discusses the collection that you used here
in the same article?

A.  No, I don't know of any.

Q.  Okay.  Now, the -- was there a software used
during this process?


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

A.  Yes.

Q.  Okay.  And who created that software?

A.  Advanced Digitalization Systems.

Q.  You had no -- you didn't create a software that was used in this protocol?

A.  Yes.

Q.  Okay.  What software did you create?

A.  I created the algorithm that was implemented into AVS.

Q.  Okay.  Now, that software -- where is it indicated that you're using your own software in this list of protocols, this collection?

A.  No.  This is a list of the algorithms, not the software packages.

Q.  Okay.  So, there's no mention in your collection of protocols that you used that you utilized your own software; is that right?

A.  Not that I know of.

Q.  Okay.  Now, this software that you created, when did you create it?

A.  I created it in part while I was a graduate student and then modified it during the years following.

Q.  Okay.  Well, how many times did you modify it?

A.  I modified it a few times, mostly to -- to include libraries to allow input of different formats of



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 43 of 146
William Russell Oliver, MD, MS, MPA                     October 28, 2010

43

images.

Q. So -- now, when you -- when you were working on this case, had -- do you have a name for your software?

A. No.

Q. Okay. It's just -- do you have it stored in your computer?

A. Not now.

Q. Okay. Where -- where is the software that you -- that you used in this case?

A. It was at the Armed Forces Institute of Pathology.

Q. So, it was something you created while you were working there?

A. Yes.

Q. Okay. Now, had it ever been sold or used for public consumption, this software?

A. No.

Q. Okay. Besides yourself, who else tested the software?

A. No one.

Q. Okay. So, the software that you used in this case has not been tested by anybody other than yourself?

A. No.

Q. Okay. And are there any peer-reviewed articles concerning the software that you created?


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

A.  Concerning the algorithm I created, yes.

Q.  Okay.  What is the name of that -- well, the algorithm you created was published?

A.  The algorithm is Contrast-Limited Adaptive Histogram Equalization.

Q.  Okay.  I'm talking about the software.  You said that you -- no one else used it but yourself.

A.  Well, a lot of people use the algorithm.  The specific implementation was -- was part of my personal image processing armamentarium.

Q.  Okay.  But the implementation was the -- we can agree that you created a software; is that right?

A.  I created a program, yes.

Q.  Okay.  Has -- and we've established that no one else has used it but yourself?

A.  That particular program, though many people have used the algorithm.

Q.  I understand.

A.  Okay.

Q.  That particular program, has that been subject to peer review, to your knowledge?

A.  No.

Q.  Okay.  And the -- who determines when you're -- when you're using your software whether or not it's -- it's calibrated correctly?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216   Document 609-1   Filed 11/17/10 in TXSD   Page 45 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

45

A.  I do.

Q.  Okay.  Does anybody back you up and do a blind analysis of whether it's calibrated correctly?

A.  No.

Q.  Okay.  Now, at the time of the trial, were there any standards that governed the protocol that you've established here or that we're talking about here, P-181?

A.  I think that the Scientific Working Group on Imaging Technology has -- had promulgated guidelines by that time.

Q.  SWGIT, is that --

A.  Yes.

Q.  So, you -- it was your understanding that they had promulgated guidelines --

A.  Yes.

Q.  -- at the time of this trial?

A.  I wrote them, so, yes.

Q.  Okay.  Did anybody -- when you wrote the -- when you wrote the guidelines, who -- who did they -- who were they vetted with?

A.  They were -- they were vetted through the Federal Bureau of Investigation.  They were also published -- promulgated through the -- I think it's called the Institute for Identification.  It's the IAI is what it's



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216   Document 609-1   Filed 11/17/10 in TXSD   Page 46 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

46

called -- for public comment, and they're up for six months or so for public comment, and then we look at the public comments and modify things in response to that.

Q.   Now, when you're utilizing -- let's talk about the bigger aspect of what you did, the CLAHE.  Who picked the parameters that you used?

A.   I did.

Q.   Okay.  Did you record or log the parameters?

A.   No.

Q.   Okay.  And why not?

A.   Because these were not the basis of a decision, and so, a lot of the things you're talking about are important if you're going to do analysis based on the processing.  Since the analysis was not based on the processing, then I did not.

Q.   Why is it important to record those things?  You said it --

A.   So that someone else can -- can do the same thing, can --

Q.   And why is that -- why is that important?

A.   Because people come to depositions like this.

Q.   Well, would it also have something to do with determining whether or not the -- the conclusions are valid and whether or not there's errors that were made?

A.   Well, no conclusions were based on it --


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Q.  I understand that --

A.  -- so --

Q.  -- but we're talking about why it's important.

A.  Well --

Q.  You said there are instances where it's important.

A.  Right.  Had I been making conclusions based on it, then I would have included that so it could have been reviewed for the conclusions based upon it.

Q.  And -- and I believe the distinction you're making is that the conclusions you made were on the 30 -- were from the 35 millimeter photographs; is that right?

A.  They were from the prints.

Q.  Right.  Of the photographs?

A.  Yes.  And from the -- and from the images on the disks that I received.

Q.  Okay.  So, you did -- so, in reaching your conclusions, you did rely -- what was the difference?  Was the 35 millimeter photographs -- prints, were they also autopsy photographs?

A.  Yes.

Q.  And then you also received the exact same images but that had been submitted on a disk?

A.  No.  They were different photographs.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Q.  Okay.  Do you know who took them or why they were different?

A.  I believe Dr. Rouse took them.

Q.  Both sets?

A.  I don't know.

Q.  Okay.

A.  I believe Dr. Rouse took the disk.  I don't know who took the other ones.

Q.  Okay.  So, obviously, the disks --

A.  Excuse me.

Q.  The disks contained a number of autopsy slides --

A.  Yes.

Q.  -- since Dr. Rouse was the pathologist?

A.  Yes.

Q.  So, going back to why it's important you said in certain instances to record and log the parameters, can you just tell me why that is?

A.  What -- if -- if a -- if there are conclusions based on it, then you need to do that so that people who are reviewing it can come to the same conclusion.

Q.  Okay.  And so, the -- did you save any -- and I know you comment on it in your -- your list of protocols.  Did you save any intermediate photographs -- or images that you created, I should say?

A.  No.  The SWGIT guidelines explicitly state that



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 49 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

49

that's not necessary.

Q.  That you don't need to.  So, in this particular -- and the SWGIT guidelines were in place at that time?

A.  Yes.

Q.  Okay.  And so, you did not save any of the -- and how many, approximately, intermediate photographs -- or images did you create before you got to the final versions?

A.  Well, there was no final version.

Q.  Well, the version that was -- ended up in the Power Point.

A.  Since I did not keep track of the order in which I did them, I can't say.

Q.  Okay.  Now, you said that the reason that you don't have to keep track of your steps and log things is because you didn't rely on the conclusions -- your conclusions were based on the original 35 millimeter photographs or prints but, in fact, what did you tell the jury were the original photographs?

A.  Well, I said -- basically, when I said original, I was talking about the images that I was displaying, yes.

Q.  And those images that you were displaying were, in fact, the digitally -- the digital images that you


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 50 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

50

had taken from the -- from Dr. Rouse; is that right?

A.   They were -- they were the -- the ones that I used for display were all prints, as I remember, were all -- were all digitized from prints.

Q.   Okay.  So, they -- but they were all digitized?

A.   Yes.

Q.   Okay.  So, you said that you didn't log in things because you were basing your conclusion on the 35 millimeter photographs or prints, is that right, but --

A.   Actually, for the digitized images, I did record the log -- I did log the parameter, the 600 DPI.

Q.   Okay.  But for the -- for purposes of the jury, you said that the reason to do that is because you're not basing your conclusion on it, you don't need to do it; is that right?

A.   Uh-huh.

Q.   But with the jury, your direction to the jury was that you called the originals -- when you said, "Go back to the originals," you, in fact, were pointing to your digitized version of the photographs; is that right?

A.   Right, because I have to show them something.

Q.   Well --

A.   And -- and as far as I was concerned, they were fair and accurate representations of the features that I saw in the -- in the photographic prints.


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

51

Q.   And that's based on your opinion; is that right?

A.   Absolutely.

Q.   Okay.   So -- but -- but when you told the jury that they were to go back to the original, you were not, in fact, showing them the originals, were you?

A.   No.   I was showing them the unenhanced images.

Q.   Right.   But digitized?

A.   But digitized.

Q.   Okay.   And, in fact, digitized with JPEG; is that right?

A.   No.

Q.   They were not?

A.   No.   As I remember, they were digitized with TIFF because, basically, I have -- the software that I used to do the processing required Targa, and so, I -- I -- I either digitized to TIFF or Targa.

Q.   Now, do you consider your -- the protocols that you used traditional or nontraditional?

A.   From the sense of --

Q.   Under the SWGIT guidelines.

A.   The first -- that's why I have -- it's separated into two groups.   The first three, color balancing, cropping and standard digitization parameterization, are all the first, and the others, contrast enhancement is nontraditional.


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216   Document 609-1   Filed 11/17/10 in TXSD   Page 52 of 146
William Russell Oliver, MD, MS, MPA                October 28, 2010

52

Q.  Is nontraditional?

A.  Right.

Q.  Okay.  So, let's take a look at this.  I'm going to show you what I've marked as P-127, and are you familiar with this document?

A.  Yes, I am.

Q.  Okay.  And what is this?

A.  This is -- looks like the 2002 version of the SWGIT guidelines for Recommendations and Guidelines for the Use of Digital Image Processing in the Criminal Justice System.

Q.  So, are these the -- the image -- are these the guidelines that you said that you wrote?

A.  Part of them.

Q.  Okay.  Well, right but, I mean, these are --

A.  We're a large group.  I wrote -- I wrote some of them and I -- some of them.  I, obviously, didn't write the whole entire thing.

Q.  Okay.  So -- all right.  Let's start with the -- the background part on Page 1.

A.  Okay.

Q.  It indicates there that, "Digital imaging -- image processing is an accepted practice in forensic science.  It is the position of the SWGIT" -- I'll -- I'll use the acronym -- "that any changes to an image



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

made through digital imaging process are acceptable in forensic application provided the following criteria are met."

A.   Uh-huh.

Q.   Number one, "The original image is preserved."

A.   Uh-huh.

Q.   And two, "The processing steps are logged when they include techniques other than used in traditional photographic darkrooms."

A.   Uh-huh.

Q.   And you did not do that, did you, the -- log the processing steps?

A.   I -- no, I did not.

Q.   Okay.  And then the next one down, "The end result is presented as an enhanced image, which may -- may be produced -- may be reproduced by applying the logged steps to the original image;" is that right?

A.   That's right.

Q.   So, we couldn't do that under the SWGIT guidelines because the logged steps were not saved?

A.   Yes.

Q.   Okay.  Now, I wanted to talk to you about nontraditional enhancement techniques.

A.   Uh-huh.

Q.   So, go back a few pages.  I believe you said the


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

CLAHE was a nontraditional enhancement?

A.  Yes.

Q.  That portion of your protocol.

A.  Uh-huh.

Q.  And, again, the date of this is January of '03; is that right?

A.  Could be.  Let's see.  Yes.

Q.  Okay.  And just, if you could, do you agree with the -- with the paragraph that states, "Some nontraditional image enhancement processes are used and accepted by a variety of scientific fields, such as medicine, aerospace and cartography;" is that right?

A.  Cartography, yes.

Q.  Cartography.  Right.  That's not what we were doing here in this case, right, this was a forensic case?

A.  It was medicine.

Q.  Right.  Well, this -- well, but the -- but the use of the medicine was in a forensic setting, is that fair to say?

A.  But it was medicine, yes.

Q.  Right.  But can we agree it was used in a forensic setting?

A.  Yes.

Q.  Okay.  And then they said, "These processes have



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

55

no direct counterpart within traditional silver based photography.  In fact, only recently have they been applied within the forensic environment, therefore, their general acceptance may be subject to challenge." Now, do you agree with that statement as it was made back in January of 2003?

A.  Yes.

Q.  Okay.  And so, putting it in context of what you were doing, is the CLAHE that you were using, SWGIT had established or was saying in January of 2003 that it may be subject to general acceptance, is that fair to say?

A.  Subject to challenge.

Q.  Right.  That it --

A.  Right.

Q.  There may be challenges or there's -- there's questions as to its general acceptance and it may be subject to challenge, is that --

A.  Uh-huh.

Q.  Is that a fair characterization?

MR. DOWD:  I would object.  I think the document speaks for itself.

MR. MCHUGH:  Okay.  I think so.

Q.  (BY MR. MCHUGH)  Do you agree with what the document says?

A.  Yes.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

56

Q.  Okay.  And, again, the -- you weren't using -- you were using nontraditional enhancement techniques but you didn't document your steps; is that right?

A.  Because I wasn't using it as the basis of my conclusion.

Q.  Right.  But the jury was told that the digital imaging were the originals and you told the jury to base their conclusions off of the original, is that fair to say?

A.  The original -- that's basic -- that's not nontraditional.  Okay?  The stuff that I was telling them to base it on was not the nontraditional part of it.

Q.  Well --

A.  The nontraditional part was the contrast enhancement.

Q.  Okay.

A.  When I told them to go back and look at the original photograph, meaning at the time the unenhanced photograph, that actually is all basic adjustment.

Q.  All right.  But let me -- let me talk about that for a second.  The jury had to do two things in order to reach their conclusion under your demonstration; is that right?  They had to look at your enhancements and then they had to go back to the originals; is that right?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 57 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

57

A.   Uh-huh.

Q.   The nontraditional was part of the enhancements?

A.   Yes.

Q.   Okay.  And that part, I believe you've agreed, you did not document?

A.   Right, because it was not the basis of the conclusion.  It was a medical illustration simply to draw attention to things.

Q.   But the jury has to do two things in order for you -- if your presentation has any merit whatsoever, you're -- you're getting up there with your enhancements --

A.   Uh-huh.

Q.   -- and what you call the originals; is that right?

A.   Uh-huh.  Yes.

Q.   Otherwise, we wouldn't have the enhancements?

A.   Right.

Q.   Okay.  So, there's -- there's two parts to what you're presenting to the jury and asking them to do?

A.   Yes, but I could have done it with just the -- just the originals except that as is the case with courtroom demonstrations, sometimes it helps to have illustrations to demonstrate what you're looking at.

Q.   Well, you did a lot more than just illustrate,


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216   Document 609-1   Filed 11/17/10 in TXSD   Page 58 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

58

you found a significantly more number of injuries than
Dr. Rouse who performed the autopsy, isn't that fair to
say, and presented those to the jury?

A.   Dr. Rouse did not enumerate the injuries, as far
as I know.

Q.   Well, obviously, she --

A.   And so, I don't know exactly how many she found.

Q.   Well, she enumerated a significant number of
injuries, didn't she?

A.   Right.  And, in fact, when she reviewed my
report, she did not disagree with it.

Q.   Okay.  Where did she do that?

A.   She did it as part of the quality assurance
program at the Armed Forces Institute of Pathology.
This report was vetted through the QA process, which
involved both Dr. Rouse and a number of other
pathologists.

Q.   And does Dr. Rouse -- or did Dr. Rouse have any
training in digital imaging or digital imaging
enhancement?

A.   No.  She correlated it with what she knew, having
done the autopsy itself.

Q.   So, she did not have any idea of the basis for
your enhancements, and specifically P-181, the protocol,
is that fair to say?


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 59 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

59

A.  No, she was referring to her personal experience with the autopsy.

Q.  Okay.  In her personal experience with the autopsy, she did not list near the number of injuries you did, is that fair to say?

A.  I don't remember how many she listed.

Q.  Okay.  But you would agree that you found a number of more injuries than she did, even though you don't remember the specific --

A.  I don't remember the specifics.

MR. DOWD:  I think that's been asked and answered, and I would object.

Q.  (BY MR. MCHUGH)  Now, I want to talk to you about error rate.  In this particular collection of -- of tasks or collection of steps that you took, P-181, is there a known error rate, as far as you know?

A.  For -- error rate for what?

Q.  Error rate for -- for accurately enhancing digital images.

A.  That's -- that's not -- define accurate.

Q.  Define accurate?

A.  Yes.

Q.  Correctly.

A.  Okay.  The question becomes -- there -- there -- in image analysis, there are tasks to do.  In other


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                          October 28, 2010

60

words, can you or can you not identify certain things. Okay?

So, if you're going to ask is there an error rate, the question would be, well, if you're given -- given a hundred things to identify and you use these images, do you identify them more correctly.  That presumes, once again, that you are using those images as the basis of your conclusion.

Since there's no task that I did using -- that involves a conclusion based upon the processed image, then there is -- there is no right or wrong -- there's no answer based on the -- on the processed image, thus, there's no right or wrong answer based on the image, thus, the error rate -- that's why I'm asking, what --

Q.   Well, are you --

A.   -- what answer --

Q.   -- aware that any testing, validation studies, things of that nature --

A.   Uh-huh.

Q.   -- that have be done -- that have been done on your protocol to develop an error rate as to whether or not images were -- images or wounds in this particular case were identified that actually didn't exist, for example?

A.   Oh, so -- oh, to go back to -- to -- then you're



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

talking about general forensic pathology, and the answer
to that is as far as I know, there is no double blinded
study on wound interpretation that provides an error
rate.  All I can say is that it is generally accepted
within the community.  There is a literature on
evaluating image -- evaluating contusions and such from
photographs.  There is training involved on it, and
there is testing involved on it.

Q.  But, you know, you fall back into that generally
accepted methods of pathology.  I want to talk about
what you did in this case.

A.  What I did --

Q.  Are you aware -- just -- if the question is
that -- if the answer is that there's no known error
rate, that's fine but are you aware of an error rate for
the protocol, the collection of steps you took, whatever
order you did them in, that you applied in this case?

A.  There are studies that look at the effect of
using ancillary images in diagnoses that show that
depending upon the strength of the feature, it either
has no effect or it increases -- it increases accuracy.

Q.  But any of those studies --

A.  And so --

Q.  -- deal with -- I'm sorry.

MR. DOWD:  I'd just ask that he could



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

finish.

Q.   (BY MR. MCHUGH)   Go ahead.

A.   And so, in that sense, yes, it decreases error by -- between 9 and 15 percent depending upon how obvious the feature is.  Clearly, if the feature is extraordinarily obvious, then doing contrast enhancement will not -- will not change the fact that you see -- you notice something that's very, very obvious.  If it is not very obvious, then doing contrast enhancement will increase the likelihood that you notice it, and that is -- that is what the studies and the medical literature have repeatedly shown.

Q.   Well, that's assuming that the injury exists, is that right, as opposed to an error?

A.   Yes.

Q.   Okay.  Now, back to the -- this particular protocol that you used.  Do you know of any error rate, any -- these studies that you talk about, have any of them studied your protocol and your seven steps?

A.   Well, I'm only talking about one step.

Q.   I'm talking about seven.

A.   Well, once again, you're -- you're creating a connection that doesn't exist.

Q.   What --

A.   So --


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 63 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

63

Q.  It's a simple question.  Do you know of an error rate that has been promulgated and tested for the protocol that you developed, the seven steps?

A.  They're not seven steps.  It's just a collection of seven things.

Q.  Seven things that you did?

A.  The seven things that I did.

Q.  In whatever order.

A.  Each one -- each one has its own literature.

Q.  Okay.  But -- but, again, this particular task that you performed, you used all seven?

A.  I used them independently.

Q.  Uh-huh.

A.  Okay?  So, independently, each one has its own literature.

Q.  And collectively, does -- collectively --

A.  All right.

Q.  -- does -- is there an error rate talking about what you used here?

A.  There is one for each one.  I mean, that's all I can say.

Q.  Well, you can answer the question.

A.  And -- and -- and for the -- for the connection that doesn't exist that you're asking for, no.

Q.  No what?


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

A.   There is no literature.

Q.   There is no error rate?

A.   There is no literature that describes an error rate.

Q.   Which means there's no study of an error rate, is that --

A.   Yes.

Q.   Okay.  Now, you used wavelet; is that right?

A.   Yes.

Q.   Okay.  What is that?

A.   A wavelet is a -- a wavelet is a small function that is band limited in frequency space that allows you to blur images in a particular way.  In particular, wavelets separate out high -- the way that they tend to be used is they tend to separate out high versus low frequency components or blurred or sharp components, and they do it regarding a specific derivative or direction in the image, so that what normally happens in classic wavelet decomposition is that you have an image, you do the wavelet decomposition and you get four images, each one of one quarter size.  One image will have the edges in the up and down direction, one image will have the edges in the right and left direction, and one image will have the edges in the diagonals.  Okay?

And then the fourth image will be a -- the



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                October 28, 2010

65

remaining lower resolution image.  This is performed iteratively until you decompose the image down to individual pixels, and that's called a wavelet decomposition.

Q.  Okay.  Now, that is one of the steps in here; is that right?

A.  Uh-huh.  Yes.

Q.  And you said that each one of these steps has a validation study that has been done and specifically to determine an error rate.  What is a -- can you tell me what the validation study that has been done to determine the accuracy or an error rate of the wavelet decomposition?

A.  Well, I would refer you to Larry Clark's paper on -- on the use of wavelet packet -- on the use of wavelet packet construction in doing image processing on -- on the internals.  I don't have -- obviously, I don't have the reference right at my hand.

Q.  But it's by Larry Clark?

A.  Larry Clark.

Q.  And -- and do you know the title of the -- of the the --

A.  No, I don't know the title.

Q.  Okay.  Okay.  Now, I want to show you -- what's our next exhibit -- a document which I've marked as



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

P-182.  And can you identify that for the record?

A.  Yes.  This is a workshop on forensic and -- image and video processing done last year in Denver at the American Academy of Forensic Sciences.

Q.  And, in fact, on the very first page, you were the co-chair; is that correct?

A.  Yes.

Q.  Okay.  And this was -- this particular document that I show -- I'm showing you, if you look to about the third or fourth page in --

A.  Uh-huh.

Q.  -- it was a workshop by Zeno Geradts; is that right?

A.  Yes.

Q.  And it concerned forensic image and video processing; is that right?

A.  Yes.

Q.  Okay.  And is he a member of SWGIT?

A.  No.

Q.  Is -- what is he the chair of?  On the front, it says chair and then you're co-chair; is that right?

A.  Right, of the workshop.

Q.  Okay.  And -- but he's, obviously, in the -- a member of the American Academy of Forensic Science, is that fair to say?


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216     Document 609-1     Filed 11/17/10 in TXSD     Page 67 of 146
William Russell Oliver, MD, MS, MPA                          October 28, 2010

67

A.  Yes.

Q.  Okay.  A well-respected scientist in his field or in this field, is that fair to say?

A.  Yes.  Uh-huh.

Q.  Okay.  And I would ask you to go to the section or -- and this is -- obviously, appears to be a -- a printout of his Power Point presentation; is that right?

A.  I don't know.  Okay.

Q.  Well, you taught at this seminar, too; is that right?

A.  Right.

Q.  Okay.  And you had -- you had one that was a Power Point presentation; is that right?

A.  Yes, I did.  Uh-huh.

Q.  And under methods --

A.  Uh-huh.

Q.  -- do you see there where he discusses wavelet?

A.  Yes.

Q.  Okay.  And it states there, "Unknown risk"?

A.  Yes.

Q.  Okay.  Wouldn't -- wouldn't it be fair to say that what he taught at this workshop and what he's indicating there under the methods, that wavelet -- wavelet, in at least his opinion, has an unknown risk of


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

error, obviously?

A.   I -- to be honest with you, I didn't attend his session but the Power Point, obviously, says what it says.

Q.   Okay.  So, would -- if that's, in fact, what he taught at that presentation, would you say that you disagree with the chair of the present -- of the workshop?

MR. DOWD:  I would object to asking an opinion as to just a bullet on a Power Point presentation because I don't think that is self-explanatory.  I know it says unknown risk but I don't know what he --

Q.   (BY MR. MCHUGH)  Well, did you ever --

MR. MCHUGH:  Okay.  I may need to clarify.

Q.   (BY MR. MCHUGH)  Did you ever --

MR. MCHUGH:  Or try to clarify.

Q.   (BY MR. MCHUGH)  Did you ever discuss with him error rates in wavelets?

A.   No.

Q.   You've never discussed that with him?

A.   No.

Q.   And you were on the faculty of this but you're saying you did not attend his particular session?

A.   Yes.  Unfortunately, particularly in 2009 --



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

wait.  This is 2010.

Q.  Right, this was 2009.

A.  This was 2009.  I'm sorry.  I was thinking 2008. In 2010, they scheduled me for two workshops at exactly the same time.  So, I was running in between them.

Q.  Okay.

A.  That actually happens pretty commonly.  When I -- I tend to give multiple workshops.

Q.  Uh-huh.

A.  So, very commonly, I'm running in and out of these things, and sometimes I just show up for mine.

Q.  Okay.  But -- so, you've never discussed with Zeno Geradts the issue concerning a rate of error or an error rate with wavelets --

A.  No.

Q.  -- is that right?

And we kind of agree, though, that the wavelet that's mentioned there is what's in your protocol, is that right, that -- and I don't mean the exact type but the concept?

A.  It's the concept, the class.

Q.  That's what I meant.

A.  Yes.

Q.  Okay.  Now, I want to talk to you a little bit about the compression or digitalization compression.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

A.  Uh-huh.

Q.  I believe you agreed with Mr. Schenk that details in accuracy are lost when items are compressed using a lossey compression; is that right?

A.  Yes.

Q.  And you, in fact, received digital images with JPEG; is that right?

A.  Yes.

Q.  Okay.  That's a lossey compression; is that right?

A.  Yes.

Q.  Okay.  Did you use those digital images at all?

A.  Yes.

Q.  What did you use them for?

A.  I -- I reviewed them.

Q.  Okay.  Did you use them at any time during your Power Point?

A.  I don't think so but I might have.

Q.  Okay.  Is there any -- if they came in a -- in a -- in a digital form, is there a reason that you can think of that you wouldn't have used them?

A.  No, I can't think of a reason I wouldn't have used them --

Q.  Okay.  Is it your best --

A.  -- unless they just didn't demonstrate something



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 71 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

71

I wanted to demonstrate.

Q.  Right.  But you said earlier that they were Dr. Rouse's autopsy photos, is that right, or at least she had taken them?

A.  Right, but maybe -- but there often are duplicates.  So, I'm not going to show -- I mean, this is -- the thing I did was a courtroom demonstration.  It's not useful to keep showing, you know, the same photograph over and over again.

Q.  I understand.  But based on your -- your records and your notes of this Power Point that you created, you're not sure whether you used all or some of the scanned photographs --

A.  Right.

Q.  -- or the JPEG digital images?

A.  For the -- for my conclusions, I used -- I looked at all of them.

Q.  We're talking about the presentation to the jury now, though.

A.  Okay.  Not my conclusion?

Q.  Yes.

A.  Okay.

Q.  Okay.  And I believe you were asked by Mr. Dowd did you rely on both for your conclusions.

A.  Yes.


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

72

Q.   Okay.  So, when you reached your conclusions, you not only relied on the original 35 millimeter prints --

A.   Uh-huh.

Q.   -- but you also relied on the JPEG digitized versions; is that right?

A.   Well, the JPEG photographs.  They're -- they're not -- they're different photos.  They're not -- there's are not JPEG versions of the -- of the prints.

MR. DOWD:  Could we clarify, are you talking about the JPEGs that Dr. Rouse sent to --

MR. MCHUGH:  Yeah, that's what I'm trying to talk about here.

A.   Yeah, they're different -- they're different sets of photos.

Q.   (BY MR. MCHUGH)  So, you get something from Dr. Rouse that's in JPEG disk?

A.   Right.

Q.   Then you got a set of 35 millimeter prints that you believe came from Dr. Rouse also; is that right?

A.   Right.

Q.   Okay.  Did you utilize both -- you -- I'm not talking about the jury now.  Did you utilize both in forming your conclusions?

A.   Yes.

Q.   Okay.  So, you did rely, at least a portion of,


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

on lossey compression, is that fair to say?

A.  On -- yeah, the photographs that were taken at autopsy as JPEG photos, yes.

Q.  Okay.  And, obviously, that was some -- something that you -- that you utilized in your conclusion stated before the jury?

A.  Yes.

Q.  Okay.  Now, I want to talk to you about that. Did the -- let me see here.  Do you know what -- how -- what -- what form of JPEG she used or did you have any information from her as to the type of JPEG she was using or --

A.  No.

Q.  -- the calibration?

Okay.  I'm going to ask you to take a minute and look at what's been marked as P-183 and tell me if you've had an opportunity if you can identify it?

A.  It looks like a -- an SOP from the FBI.

Q.  Okay.  Are you familiar with these type of documents?

A.  Yes.

Q.  Okay.  Do you review these in your normal course of professional life?

A.  I've never reviewed the FBI one.

Q.  Okay.  Now, at the top, it indicates a synopsis



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 74 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

74

to establish the standard minimum operating guidelines for all photographic operations using digital images capturing devices, is that fair to say?

A. Uh-huh.

Q. Okay. And it was done in an -- the next line down, it was done in an effort to regulate the use of digital imaging technology by FBI personnel and Photographic Operations and Imaging Services Unit?

A. Uh-huh.

Q. Okay. So, those -- essentially, this is an operating procedure that the FBI is going to rely upon in 2005?

A. Yes. Uh-huh.

Q. And the date of it is June of 2005?

A. Okay.

Q. Well, I mean, I'm asking you.

A. Yes. Okay. Okay.

Q. I can't testify.

A. All right. Sorry.

Q. Is it -- does it appear that it's dated June 17th of 2005?

A. Yes.

Q. Okay. And just the first sentence of the scope, can you just read that first sentence for us?

A. Scope, "The following are the basic minimum



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

guidelines for the use of digital photography technology for the capture and storage of imagery which at the time of its creation is reasonably and foreseeably likely to be of evidentiary value."

Q.   Okay.  So, what we can agree upon is that what's contained in this document are minimum guidelines; is that right?

A.   Uh-huh.

Q.   Okay.  So, then I would ask you to continue further with the document, and in looking underneath standard operating guidelines for digital photography, do you see that on the second page?

A.   Yes.

Q.   Okay.  And it starts to talk about SWGIT; is that right?

A.   Yes.

Q.   Okay.  And it indicates there on the second page that SWGIT has noted that generally a single frame of standard 35 color -- color film is demonstrably superior quality to its digital imagery equivalent, is that fair to say?

A.   Yes.

Q.   Okay.  And was that an accurate description by the FBI's SOPs of SWGIT at that time?

A.   At that time, though it's obviously changed.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216   Document 609-1   Filed 11/17/10 in TXSD   Page 76 of 146
William Russell Oliver, MD, MS, MPA                October 28, 2010

76

Q. Okay. Well, we'll get to that. And then the next sentence is -- or a sentence or two down it says, "Moreover, film is typically more sensitive to a wider range of light values within a single image and has a better ability to accurately capture colors -- color fidelity than do most digital cameras." Do you agree with that?

A. Yes.

Q. Okay. And then the last sentence of that paragraph, "It is for these reasons that SWGIT advises the use of film in most law enforcement applications." Do you agree with that?

A. Yes.

Q. Okay. And right underneath that is in all capitals and underlined and what does it state?

A. "Avoid lossey compression digital imagery when possible."

Q. Okay. And, in fact, this particular case, you didn't avoid it because you, in fact, were provided with JPEG photos?

A. Yes.

Q. Okay. Now, what is the next sentence about what SWGIT advised?

A. "SWGIT also advises against the use of lossey compression when shooting digital images because lossey



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

compression, most frequently utilized in digital cameras using the JPEG standard, further reduces the quality of information contained in the data file, which generates and comprises the captured image."

Q.  And so, do you agree with that?

A.  For the type of photographs they do, yes.

Q.  Okay.  Well, are you making a distinction that there's some -- they talked about photographs being used -- to be used of any evidentiary value.  Are you making a distinguish that I'm not picking up on?

A.  Perhaps in that they don't do autopsies.  They don't do autopsy photography, and, in fact, the standard in autopsy photography is to use JPEGs.

Q.  And who is that standard?

A.  National Association of Medical Examiners.  It is an informal standard and, in fact, the most recent --

Q.  Can I stop you?  What do you mean by informal standard?  I'm not sure that -- isn't that an oxymoron?

A.  No, not really.  It is -- it is -- it is -- it is the -- it is the de facto standard practice.

Q.  What is de facto standard practice?

A.  In that if you go and look at virtually all -- or most image -- at autopsy facilities, they use JPEG imaging.

Q.  So, are you saying that the autopsy -- that the



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 78 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

78

de facto practice amongst pathologists is below the
basic minimum guidelines that the FBI established?

A.   It's because of a different purpose.  And, in
fact, the SWGIT guidelines themselves state that the
type of compression should be dictated by the use of the
imagery.

Q.   Okay.  But in this particular case, it's said to
be of evidentiary value; is that right?

A.   This is the FBI -- this is the FBI standard for
photographs they deal with.

Q.   Right.  But --

A.   And for SWGIT -- and the SWGIT guidelines are
different.

Q.   Okay.  But the -- the pathologists we're talking
about, certainly their photographs are being used for
evidence; is that right?

A.   Yes, they are.

Q.   And the FBI is talking about minimum standards
for evidentiary value; is that right?

A.   Yes.

Q.   So, what we're saying is that -- you're telling
us that there's a de facto or informal standard that is
followed by forensic pathologists that is less than the
FBI's minimum?

A.   That is -- that is different than that by the



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

FBI.

Q.  Well, the FBI is specifically saying don't --
avoid lossey compression; isn't that right?

A.  Which is for --

MR. DOWD:  I'm going to object.  I think
it's been asked and answered.

A.  Yeah.  Which is for a different domain, yes.

Q.  (BY MR. MCHUGH)  But we can agree that the domain
that the FBI is talking about is use in evidence, is
that fair?

A.  Yes.

Q.  And pathology photographs are certainly
foreseeable to be used as evidence in a forensic
setting?

A.  And the -- and the FBI does not do autopsies.

Q.  Okay.  And so, that's the distinction is because
it's an autopsy photo versus a fingerprint photo or a
mugshot or things of -- that's what you're saying is the
difference?

A.  Yes.  And I'd be happy to explain it to you if
you want me to explain it at length.

Q.  That's -- I'm sure you'll have an opportunity.

A.  Okay.

Q.  We need to take a break at this point because
they have to change the video.


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

A.   Okay.

THE VIDEOGRAPHER:   The time is approximately 1:01.   We are now off the record.

(Short recess.)

THE VIDEOGRAPHER:   This is the beginning of tape two.   The time is approximately 1:07.   We are now back on the record.

Q.   (BY MR. MCHUGH)   Doctor, I was going over with you the FBI -- I believe you called them standard -- SOPs or minimum operating guidelines?

A.   Standard operating procedure.

Q.   Right.   P-183.   And I just was going back to the area where we stopped.   There's a sentence there that says -- talking about avoiding lossey compression, and in discussing lossey compression, I'm referring right here.

A.   Uh-huh.   Uh-huh.

Q.   "Frequent -- frequently this means that fine variations in color across a surface may be eliminated to make the image data file smaller and, therefore, easier to store or transmit."   Do you agree that that is a possibility that can occur when one uses a lossey compression such as JPEG?

A.   Yes.

Q.   Okay.   And then the last -- I believe the last



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216   Document 609-1   Filed 11/17/10 in TXSD   Page 81 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

81

thing I wanted to -- well, two other points on this.
For the -- the next paragraph down, it indicates, "For
these reasons and other reasons, POISU and the Forensic
Audio, Video and Image Analysis Unit strongly advise
against the use of lossey compression (JPEG) when
capturing digital photographs."  Do you agree with that?

A.  Yes.

MR. DOWD:  Do you agree that that's -- that
that's part of their standard procedure or do you
agree --

A.  Yeah, it's part of their standard procedure.

Q.  (BY MR. MCHUGH)  Okay.  But do you follow that --
or do you agree with that as a matter of principle?

A.  All right.  Say it again.  I'm sorry.

Q.  Okay.  Do you agree with that statement as a
matter of principle?

A.  Where -- where is it one more time?  Read it
again to me.

Q.  I'm sorry.  I can just point it to you.  Right
there.

A.  Oh, the part about many cameras don't allow it
and you have to use JPEG sometimes, and so, do these
things?

Q.  No.  The statement that the FBI subcommittees
that they're talking about here --


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216   Document 609-1   Filed 11/17/10 in TXSD   Page 82 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

82

A.   Uh-huh.

Q.   -- strongly advise against the use of lossey compression when capturing digital photographs.  Do you agree with that procedure that the FBI follows?

A.   I -- I agree that they advise that, yes.

Q.   Do you think it's an unnecessary advisement?

A.   It depends upon the use for which the imagery is used.

Q.   Okay.  How about if it's being used in a courtroom in a capital case?

A.   It depends upon the feature in the image.

Q.   Okay.  And by feature, what do you mean?

A.   The thing you're looking at.

Q.   Okay.  What if it's --

A.   You know, for -- for instance, if you look at one of these images, if the question is are those legs, then it doesn't matter whether it's --

Q.   Doesn't matter?  What if we're --

A.   -- whether it's JPEG or not.

Q.   What if we're looking at numerous, numerous small, various size injuries that Dr. Rouse testified were very hard to see, would it then matter as far as use of JPEG?

A.   It would depend upon whether or not, in fact, they were still visible in the image and, if not, then



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 83 of 146
William Russell Oliver, MD, MS, MPA                                    October 28, 2010

83

you -- you would have to say, "Look, they're not visible in this image."

Q. Okay. So, that would be -- you would agree in that context then JPEG would -- should be avoided, is that fair to say, in --

A. To the degree -- to the degree that you can --

Q. Okay.

A. -- you know.

Q. And I know in this case, you couldn't because that's, in fact, how you got them?

A. Yes.

Q. Is that fair to say?

A. Right.

Q. Now, just turning to the -- talking about the next page where it talks about capture, do you see that?

A. Yes.

Q. And going to the bottom, it indicates, "To preserve the integrity of the photographic process, there should be no" -- and no is underlined and capitalized -- "deletion of images during the course of the mission/investigation. This includes the last images captured." Now, that's -- is that, in fact, the FBI saying that you're supposed to save your intermediate images? Is that --

A. That is explicitly not what they're saying.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216   Document 609-1   Filed 11/17/10 in TXSD   Page 84 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

84

Q.  What are they saying?

A.  They're saying that when you're capturing images --

Q.  Uh-huh.

A.  -- the image that you captured should be kept. What they're specifically talking about here is the fact that when you're at a crime scene --

Q.  Uh-huh.

A.  -- sometimes you'll be taking pictures, on and on and on, and occasionally as may happen, you'll end up taking a picture of your foot or it will be up there, you'll have the lens cap on or something like that, and it is a common process for some crime scene investigation units to say, "Well, those don't have anything to do with it," and then what happens, of course, later is that counsel will come back and say, "Obviously, you've deleted the image that makes all the difference."

Q.  Okay.

A.  So, that's what they're saying to avoid.

Q.  And so, what you're saying is it is important to document from beginning to end what steps were taken even if some of those steps were not fruitful, is that fair to say, for completeness of the investigation?

A.  During -- no.  All I'm saying here is that during


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216   Document 609-1   Filed 11/17/10 in TXSD   Page 85 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

85

image capture such as -- all I'm saying is that the guideline here states that during image capture, such as a crime scene, you shouldn't delete images even if -- even if they are images of your foot.

Q.   Okay.

A.   That's all it says.

Q.   Okay.  Do you agree with this statement concerning lossey compression, "Lossey compression reduces the amount of image detail and can make it impossible to detect -- to detect manipulation artifacts"?  Do you agree with that?

A.   Yes.

Q.   Okay.  Now I'm going to have you look at another document we'll go through from the workshop.  This is number 6.

MR. MCHUGH:  What are we up to?  P --

Q.   (BY MR. MCHUGH)  And, again, this is a -- I'll -- I'll tell you what it is, it's a -- a portion of the workshop number 6 but I will -- we do have a copy of the entire workshop that I'll be happy to provide for your review.  I simply parsed out what I -- various specific presentations.  And so, can you identify this -- who presented this workshop?

A.   It was -- Richard Vorder Bruegge and myself are the two co-chairs.  There was -- I'm sure there were


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

other people.  I bet Carl Kriigel presented and some
other people presented as well.

Q.  Well, in fact, looking at the very first page,
the -- what appears to be the first slide in the
packet --

A.  Oh, Carl Kriigel.  There you go, Carl.

Q.  Okay.

A.  All right.

Q.  And, in fact, is Carl, in that particular Power
Point slide, identified as the chair of SWGIT?

A.  Yes.

Q.  Okay.  So, he's -- is that the head man of SWGIT?

A.  He's -- he's currently the chair.

Q.  Okay.  And, again, this was -- what's been marked
as P-184 is the February of 2009 workshop that you
attended?

A.  Yes.

Q.  Okay.  I'm just going to ask you to go to the
second page where he outlines the SWGIT position on
digital imaging.  Do you see that?

A.  Excuse me.  Yes.

Q.  Okay.  And it says, "Changes to an image made
through digital image processing are acceptable in
forensic applications provided," and then he lists
fourth -- four factors -- I'm sorry -- five factors?


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Looks like --

A.  Oh, I see where you are.  Okay.

Q.  I want to talk to you about that.  So -- so, he's stating that the SWGIT position on imaging -- digital imaging is acceptable in forensic applications if, one, the original image is preserved; is that right?

A.  Yes.

Q.  Okay.  And, of course, that happened in this case?

A.  Yes.

Q.  The processing steps are logged, and you would agree with me that that did not happen in this case?

A.  Right.

Q.  And number three, the end result presented as processed or working copy image; is that right?

A.  Yes.

Q.  Okay.  And four, documenting processing steps so a comparably trained person can understand the process and repeat comparable information from the image, is that fair to say?

A.  Yes.  Uh-huh.

Q.  Well, obviously, that couldn't be done in this case because, as you said, the protocol that you had wasn't even in the order that you used; is that right?

A.  The -- the -- once again, the ordering is



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

arbitrary because they're not done in order.  They're done independently.

The second thing is that these guidelines are for the use of image processing from which you are deriving a conclusion.

Q.  Now, where does he say that?

A.  Well, I don't know but I happen -- being -- being the chairman of the image analysis subcommittee of this -- of the SWGIT, I happen to know that that's the position of SWGIT.

Q.  Well, I'm just asking you --

A.  And, in fact, I can't -- I can't -- this is a Power Point bullet.

Q.  Right.

A.  Okay.  And so, it is the position of SWGIT -- and I will affirm it regardless of what the bullets on this Power Point state -- is that these apply to processing where you're drawing a conclusion from the processed image.

Q.  Okay.  But -- but you would agree with me in the chairman's presentation, he states that it's acceptable in forensic applications, he doesn't limit it to applications where conclusions are being drawn from, can we agree that it doesn't state that there?

A.  It is not -- no, that is not one of the bullets.



ESQUIRE

an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

89

Q.  Okay.  And you would agree with me that you could not -- somebody could not pick up your protocol and start from where you were and get to you were -- to get to where you ended up by following your protocol, is that fair to say?

A.  Oh, they probably could.  They probably --

Q.  Well, how about if they don't know your parameters, could you say --

A.  Because -- because -- because, in fact, there are very limited -- in this particular process, there are very limited parameters and they tend to lead to the same place.

Q.  Well --

A.  So, in fact, for this kind of thing, yes, the bottom line is that if they -- if they simply modify parameters a bit, they end up at the same place.

Q.  But they wouldn't get there the same way you got there unless it was by luck, is that what you're saying?

A.  No.  No.  I mean, once again, this is -- as I said in there, this is an exploration process.

Q.  Right.

A.  So, if they -- if they did exploration and varied parameters by not very much, they would end up at a similar place.

Q.  But by following what you've provided -- because


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

I guess what I'm asking is this -- this list of your parameters -- or I'm sorry -- your -- your protocols, P-181, is that the only document that exists today that documents what you did in this case?

A.  Yes.

Q.  Okay.  And you've told us already that you didn't -- that this is in no particular order --

A.  Right.

Q.  -- is that right?

So, the person would have to -- if they wanted to follow you step by step, they would just have to guess at what order to go in, is that fair to say?

A.  The order has nothing to do with it.

Q.  Well, I'm just talking about re -- what they say here is, "Can understand the process and repeat comparable information from the image."  So --

A.  Yes, they could -- regardless of the order in which they did them, they would send up at the same place.  That's what I'm saying.

Q.  And that's only if they used the same parameters that you did not identify, is that fair?

MR. DOWD:  I would object as asked and answered.

MR. MCHUGH:  Yeah, I'm going to move on.

Q.  (BY MR. MCHUGH)  Now, moving on to Page 6 of the


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

SWGIT chairman, Mr. Kriigel's Power Point presentation, it talks about nontraditional enhancement.  Do you see that?

A.  Yes.

Q.  And he has an indication that says caution; is that right?

A.  Uh-huh.

Q.  Do you agree with the statement that he has underneath that that, "Application in high degree of these techniques can affect color, increase noise, cause detail loss and/or introduce artifacts"?

A.  Yes.

Q.  Okay.  And we've already established that the CLAHE that you used in this case is a nontraditional enhancement technique?

A.  Yes.

Q.  Okay.  Okay.  Now, I believe you testified in various different jurisdictions that you would not make a medical diagnosis unless you looked at the originals, is that fair to say?

A.  Yes.

Q.  Okay.  Would it also be fair to say that you won't do that because the originals are clearly -- the original photographs are clearly the best evidence that you want to review?


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216   Document 609-1   Filed 11/17/10 in TXSD   Page 92 of 146
William Russell Oliver, MD, MS, MPA                October 28, 2010

92

A.  Yes.

Q.  Okay.  In this particular case when you made your presentation to the jury, they were not provided during your presentation with the originals; is that right?

A.  Right, because the images, I felt, were a fair and accurate representation of the features I wanted to demonstrate.

Q.  Okay.  But you didn't tell the jury that they weren't looking at the originals; is that right?

MR. DOWD:  I would object.  That's been asked and answered.

MR. MCHUGH:  Okay.  I just have a couple more questions here.

Q.  (BY MR. MCHUGH)  You told the jury that the originals were, in fact, the digitized images; is that right?

A.  I referred to them as the originals because I was -- what I meant was unenhanced.

Q.  Okay.  Well, you were wrong about that, is that right, when you called them the originals?

A.  In the sense that they were unenhanced and they demonstrated in a fair and accurate manner the features in the original images I wanted to display, they were the original images.

Q.  So, you're saying the digitized images were, in


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

fact, the original images?

A.   I'm saying that they were a fair and accurate representation --

Q.   Okay.

A.   -- of the features in the original images that I wanted to display.

Q.   But what -- let's break it down.

A.   Okay.

Q.   I only have a few questions here.

A.   Correct.

Q.   When you told the jury that, "You need to go back to the originals," and you pointed --

A.   Uh-huh.

Q.   -- to the Power Point presentation --

A.   Right.

Q.   -- you were, in fact, referring to the digitized images?

A.   Yes, I was.

Q.   Okay.  And you would agree with me that those were not the originals as we've just discussed about you making a medical diagnosis?

A.   Yes.

Q.   Okay.  And what you're telling me -- so, when you told the jury that those were the originals, that, in fact, was incorrect as far as --


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216   Document 609-1   Filed 11/17/10 in TXSD   Page 94 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

94

MR. DOWD:  Asked and answered.

A.  They were correct to the degree that they were fair and accurate representations --

Q.  (BY MR. MCHUGH)  Right.

A.  -- of the features in the original images that I wanted to demonstrate in the demonstration in the Power Point presentation.

Q.  But we have to rely on you for that, that they're fair and accurate representations; isn't that right?

A.  Absolutely --

Q.  Okay.

A.  -- since I'm the one that did the analysis.

Q.  Right.  But you're asking the jury to do the analysis, is that fair?

A.  I'm asking the jury to notice the features that I used in my analysis, and this was a fair and accurate representation of those features.

Q.  I just wanted to ask you some questions that came out on direct examination now.  The -- I think you stated that, in fact, Power Point will result -- when something is converted from Power Point will result in some detail and accuracy loss, is that fair to say?

A.  Right.  It has more to do with the display than the Power Point.

Q.  Well, isn't that what this is all about as to


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

what's being displayed?

A.  Right, but the fact of the matter is that it doesn't matter how many pixels are in an image, if you have a 1 K by -- by 780 K display, then it will be at 1 K by 780 K.

Q.  What did you mean when you said it depends whether it's recognition versus measurement?  Do you remember when you testified about that?

A.  Sure.

Q.  Okay.  Was that in the Power Point context?

A.  Yes.

Q.  Okay.  And you said it would be okay if it's used for recognition?

A.  Uh-huh.

Q.  But could -- could create issues if it's used for measurement?

A.  Yes.

Q.  Okay.  What do you mean by measurement?

A.  All right.  In the image that you -- that you used as -- as --

Q.  157?

A.  Right.

Q.  Okay.

A.  Okay.  Recognition is that's a foot, that's a hand.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Q.   Okay.

A.   Okay?  Measurement would be the hand -- the foot is exactly, you know, 16.56 centimeters long.

Q.   Okay.  So, if we were looking at measurements of injuries or measurements of what appear to be injuries, Power Point would not be a good program to use for that, is that fair to say?

A.   In general, no.

Q.   Okay.  You mentioned when there was talk about -- you corrected Mr. Schenk about color gamut?

A.   Yes.

Q.   Do you remember that?  And it was talking about scanning?

A.   Yes.

Q.   And I believe you indicated that there would be -- scanners back at that time would have a narrower gamut; is that right?

A.   Yes.

Q.   What does that mean?

A.   That means that the -- that the number of colors that can be recorded from the scanner is fewer and somewhat different than the number of colors that can be recorded in the -- in the print.

Q.   Okay.  So, there would be loss of detail and accuracy back at the time that this was being done


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                October 28, 2010

97

in the -- you would agree then in the scanning of these

photographs?

     A.   Yes.

     Q.   Okay.

          MR. MCHUGH:   If I may just have a minute.

          That's all I have.

          FURTHER EXAMINATION

     Q.   (BY MR. DOWD)   Dr. Oliver, just a few more

questions.

     A.   Excuse me.

     Q.   Explain the -- the reason that there's a

difference between the FBI standard against using JPEG

format for evidentiary photographs and the SWGIT

standard which -- which permits the use of JPEG format.

     A.   The -- the bottom line is that the degree -- the

question -- the question boils down to the size of the

feature that is being used and what the -- what the

image is being used for, so that, for instance, if I

take a photograph of a gunshot wound and I want to show

that there is a gunshot wound on the left thigh, all

right, those are very big features, making it a JPEG

image will not change that data.  You'll still see the

gunshot wound, so that when you get up on the stand and

it is a fair and accurate representation of that gunshot

wound on that thigh.



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216   Document 609-1   Filed 11/17/10 in TXSD   Page 98 of 146
William Russell Oliver, MD, MS, MPA                      October 28, 2010

98

And so, how much -- how much one should or should not do compression or -- or change the size of the image, et cetera, et cetera, is a function of really how the image is being used.

Q. All right. And you said that the JPEG format is the de facto standard for autopsy photos?

A. Yes.

Q. And what are the reasons for that? Is it out of convenience or uniformity --

A. It is --

Q. -- or --

A. Yeah, it is primarily out of convenience. And the fact is -- and the fact that the features that people are taking photographs of are accurate -- are fairly and accurately represented in those photographs and they work.

Q. All right.

A. The issue frequently comes from the fact -- and to use an example, let's say that I have a 100 by 100 pixel image and it shows -- it shows a little circle in the middle. All right? And I use -- I also have the same image but -- a photograph of the same thing but it's JPEG'd but it's a 10,000 by 10,000 pixel image. All right?

Q. Uh-huh.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 99 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

99

A.  It is rather arbitrary to say that oh, no, the 100 by 100 pixel image is a better -- is a better image because it is not stored in lossey compression than the 10,000 by 10,000 pixel image because it has undergone JPEG compression, particularly if the feature that you're looking at is of a size that is greater than the loss of information associated with the JPEG compression.

If using JPEG compression destroy the usefulness of an image, then -- or any kind of that kind of stuff, then we basically could never look at images in -- in textbooks because those have low resolution.  We could never look at a television set.  We could never display an image in court.

Q.  Because those are all reduced to JPEG format?

A.  Well, they're not all reduced to JPEG but they all have reduced resolution.

Q.  Okay.  All right.  And I just want to make sure I understood this or make this clear.  As you -- did -- was your testimony that you relied upon the JPEGs produced and shared with you by Dr. Rouse of the autopsy and did you say that those were accurate depictions of -- well, to the extent that you had duplicates of those JPEG images in the autopsy prints, was your testimony that those were -- that those were virtually

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com



ESQUIRE
an Alexander Gallo Company

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 100 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

100

the same, that they were accurate depictions of --

A.   Well, there were two --

Q.   -- of the duplicate prints?

A.   There were two different sets of photographs.

Q.   Uh-huh.

A.   One -- one group -- going back to what the SOP was at -- at the AFIP, the -- the prints were most likely taken by the staff photographers.  I don't -- I don't know whether it was Dr. Rouse or the staff photographers who took the ones that were on the disk, and some of those were useful and some of them weren't.

Q.   Did you say there was some duplication --

A.   Well, there were duplications of --

Q.   -- from the autopsy prints versus the JPEG from the autopsies?

A.   They were not duplications of the same photograph.  They were duplicate views of the same area on the body.

Q.   Okay.

A.   Okay.

Q.   And you had testified that -- that the JPEG images were accurate depictions of that scene?

A.   To the degree that they demonstrated what I wanted to demonstrate.

Q.   Which was the injuries?


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

A.  Yes.

Q.  Okay.  Now, why in the -- I'm talking about the SWGIT protocol, which describes the need to log the processing steps, and you indicated that it wasn't necessary in what you were performing.  Why is that?

A.  Because there was no test, there was no question that was answered by the processing.  So, the issue merely becomes are these -- are these images convenient.

Q.  To demonstrate --

A.  To demonstrate something, yes.

Q.  Okay.  And you indicated that you had picked the parameters that you used for the enhancements?

A.  Yes.

Q.  I believe you indicated that those, again, were not that important?

A.  Well, they're important but they're -- but they're easily -- they're easily varied.  I mean, basically, there are two parameters to the Contrast-Limited Adaptive Histogram Equalization, and those are the size of the -- of the adaptive regions and the degree of clipping.

And so, you -- I mean, basically, if you're doing this kind of image exploration, you'll basically do a number of them and change the parameters.

Q.  Okay.  Now, I wanted to ask you about the --



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 102 of 146
William Russell Oliver, MD, MS, MPA                     October 28, 2010

102

explain, if you would, the -- I want to get to the software and the algorithms in the CLAHE.  Explain how the software is used in conjunction with the algorithms that -- for the CLAHE.  And I'm -- I know I'm very inartfully putting this to you but I just want to understand, we've distinguished the software that you -- that you wrote to --

A.  Uh-huh.

Q.  -- in which the CLAHE algorithms -- what does the software do?

A.  Okay.  An algorithm is simply a -- a standardized set of steps to get from one place to another.  That's all an algorithm is.

Q.  Okay.

A.  Okay.  That, in turn, needs to be encoded into computer code, and that is implementation into that computer code.

Q.  All right.

A.  All right?  Those programs are frequently called software to distinguish them from the actual physical computer itself, which is called hardware.

Q.  Okay.

A.  Okay?  Frequently -- I mean, there are numerous larger software packages for which -- that provide essentially front ends and back ends to algorithms


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

because you don't want to have to write, you know, your own dials and buttons and all that kind of stuff that most people think of when they think of a graphical user interface for a program.  Okay?

And they provide, you know, different -- different things to make -- make the coding of these things easier.

And so, the -- the algorithm was developed in the 1980s.  The implementation that I did was, for the most part, done at the University of North Carolina, and I used the UNC implementation, for which then I basically put what are called wrappers around.  And wrappers are essentially little programs that will take input, pass it to the software and take output and pass it to the software, and that's what I did.

Q.  You indicate that the algorithms, in conjunction with this -- this enhancement process --

A.  Uh-huh.

Q.  -- have been tested?

A.  They have -- they have been tested, yes, in various -- in various situations.

Q.  All right.  But that the software that you wrote had not been tested?

A.  Right.

Q.  And what's the significance of whether or not the



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

104

software has been tested or not, your software?

A.   The significance would be that, you know, for instance, the algorithm might say that -- that A should go in five steps from 1 to -- 1 to 10 by steps of two, zero to 9 by steps -- zero to 10 by steps of two.  And one person may accidentally write it incorrectly so that it goes up by steps of three.  Okay?  And that would make things work wrong.

Q.   Okay.

A.   Okay?  The way -- you know, there are two or three ways you can -- you can look at this to see whether or not things are working out right, and the simplest way is to take known images, run it through and see whether or not you get the results you think you should get, which I did.  I mean, that's the way you test software.

Q.   And that's why you're confident that your software was working properly?

A.   Right, plus the fact that it was an implementation that was done at UNC by the people -- you know, basically, by the group there, including myself, who worked on this algorithm.

Q.   Okay.  So, the software was developed by you but it was also in connection with these other --

A.   Right.  The algorithm was mostly developed by



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Robert Cromartie and Brad Hemminger.  And then there was another implementation that was done by -- I'm blanking on his name now.  I want to say -- not Yon Cooter.  It was -- I forget what his name is.  Hold on just for a second.  I can't remember his name but it was published in Graphic Gems and the actual code for that was published.  Graphic Gems IV back in 1994.

Q.  And, Dr. Oliver, you had looked at the workshop presentation on forensic image and video processing in Denver on February 17th, 2009.  And you were the co-chair of this?

A.  Yes.

Q.  What -- what -- did -- what presentation did you make?

A.  I did a presentation on medical imaging.

Q.  Okay.  On this very topic?

A.  Yes.

Q.  And -- and P-184 -- is that right -- P-184 in Colorado on -- well, I guess it's just the day before, February 16th, 2009, you -- you made a presentation at that workshop and that was the -- that was the So You Think You Know Digital Imaging, SWGIT Advice to All AAFS Disciplines.  Do you remember what presentation you made at that one, at that workshop?

A.  No, but I'm sure you can remind me.


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Q.   Is it Meeting Resolution and Color Accuracy Needs?

A.   Okay.

Q.   Does that sound familiar?

A.   Sure, that's something I would lecture on.

Q.   Okay.  All right.

MR. DOWD:  Were you going to offer these?

MR. MCHUGH:  I have mine marked as a -- as a piece of those just for, you know, purposes of the examination.  These are the complete copies if you want to mark them.  Do you want the whole thing in?  I have no problem with that.  Yeah, we'll mark them.

MR. DOWD:  Okay.  Yeah, we'd like to -- if you're not going to offer it, we'd like to offer the complete workshop, and that's on the February 16 one.

MR. MCHUGH:  And there's 19 and number 6.

MR. DOWD:  Do you have the complete one on the other one, too?

MR. MCHUGH:  Yes.

MR. DOWD:  Oh, I'm sorry.  Okay.  Otherwise, we would pass Dr. Oliver.

FURTHER EXAMINATION

Q.   (BY MR. MCHUGH)  Okay.  I just have a few questions to follow up, Dr. Oliver.

A.   Sure.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 107 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

107

Q.  In -- in the redirect, you talked about the difference between using the FBI standard versus the SWGIT standard, and I thought you said it had to do with the size of the feature; is that right?

A.  And the use of the image, yes.

Q.  And you -- okay.  But you used an example of identifying a gunshot?

A.  Yes.

Q.  I'm not sure I follow you on that.  So, are you saying that if the image is larger, then you -- you don't need to follow the FBI standard?

A.  No.  I'm saying that the usefulness -- that the issue comes with the size of the feature relative to the -- to the -- relative to the question at hand.

To -- to give you an example, I can pull out my -- I can pull out my camera on my telephone, which is a low resolution camera, all right, and then take a picture of you and ask the question do you have two eyes or three eyes.  And I can look at the image, no, he's got two eyes.  Okay.  And I can do that with a relatively low resolution image.  Okay?

The reason that people talk about this JPEG compression is because you lose resolution, and basically what you're doing is you're taking a -- say a 10 megapixel image and giving you the equivalent


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

resolution of an 8 megapixel image.  You're losing those 2 megapixels worth of data.

So, if the feature in question is a feature that is easily visible at that 8 megapixels rather than at the 10 megapixels, then, in fact, it will have no effect on the actual analysis of the image.

Q.  But -- but -- but we're talking about the standards here, and so, are you saying that the FBI standards are -- that the standards that they give, and they call them minimum standards --

A.  Uh-huh.

Q.  -- it's your testimony that they will not apply if the image is one that's large, in your opinion, like a gunshot, then these standards --

A.  Well --

Q.  -- for use of evidence are not applicable? That's what I'm trying to get at here.

A.  The -- the SOP for the FBI --

Q.  Yes.

A.  -- is an SOP for the FBI.

Q.  Right.

A.  And the S -- and I presume the FBI follows it in all cases.

Q.  Okay.  So, the FBI doesn't make the distinction that you're making here, I just want to clarify that,



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

right?  The FBI seems to say, from this SOP, that it's in all cases where the photograph -- or the image, I should say --

A.  Uh-huh.

Q.  -- is going to be used -- or to have evidentiary value; is that right?

A.  Well, actually, it says here that there are many cases where, in fact, it's not possible.

Q.  Right.

A.  And that, in fact, you can still use them for evidentiary value given these certain things.

Q.  If certain steps are followed.

A.  I'll also -- I'll also move forward and say also, for instance, the home office of the United Kingdom specifically states that format is -- format is not a determining factor in the usefulness of forensic images.

Q.  But -- but under the F --

A.  So, if you're going to talk about different standards, you should recognize that, in fact, there are both different standards and different SOPs, and an SOP for a particular organization is not a universally accepted standard.

Q.  Well, I'm only talking about the FBI here.

A.  Right.

Q.  We're in America.  It's a federal case.


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 110 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

110

A.  Right.

Q.  Federal prosecutors.

A.  Right.

Q.  Federal defender.

A.  Right.

Q.  FBI.  Okay?

A.  And if the FBI were doing this, they would use their own SOPs.

Q.  And that would be what's listed here?

A.  And that's what's listed there.

Q.  Okay.  And --

A.  Not being part of the FBI --

Q.  I understand.

A.  -- I don't use the FBI SOPs.

Q.  I understand that.  But you would agree with me that the FBI standard does not say that the standard is waiveable based on --

MR. DOWD:  I'm going to object.  The FBI SOP speaks for itself.

MR. MCHUGH:  Okay.

MR. DOWD:  And I think we've beaten this to death.

Q.  (BY MR. MCHUGH)  Now, the SWGIT standard --

A.  Uh-huh.

Q.  So, you're comparing the FBI standard, and I



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

believe counsel asked you --

A.   Uh-huh.

Q.   -- between the SWGIT standard and the FBI standard, are you saying the SWGIT standard depends on the size of the feature that's being analyzed?

A.   No.  It depends on the use of the image.

Q.   Okay.  So, if it's not in the FBI standard about the size of the feature and it's not in the SWGIT standard, why was it in your answer on --

A.   Because as -- as an image scientist, I know what I'm doing.

Q.   Okay.  So, we -- I thought the question was what does the FBI say you should do and what SWGIT says you should do is standard?

A.   No.  I was explaining to you why the distinction you're being made in a practical sense, and the question that came to me is well, why is it, for instance, that autopsy pathologists don't do this.  The reason -- and I gave you the reason autopsy pathologists tend not to do this.

Q.   Why is that?  Because of the size of the features?

A.   Right, because it's not feasible.

Q.   Are you familiar with the term petechia?

A.   Yes.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

112

Q.  Okay.  Is that large or small?

A.  That depends on where -- what -- where -- where it is in the image.

Q.  But it can be very small; is that right?

A.  If we're -- if I were taking a picture of someone in that building over there, it would be very small, yes.

Q.  Right.

A.  If I were taking pictures like this, it would be very big.

Q.  Right.  But --

A.  It's a -- it's a function of the size of the feature in the image.

Q.  Okay.

A.  It's not an absolute large or small issue.

Q.  Okay.  Maybe I misunderstood your answer then.

Now, you said that the JPEG, it's the de facto standard and I just -- where are you coming up with this de facto?  Whose standard is it?

A.  Okay.  Basically, this came up in -- in numerous discussions that I've had with other forensic pathologists since this is an area of interest of mine, and the -- the response I've gotten from those forensic pathologists -- and I've queried many, many of them -- is that, in fact, they tend to take photographs in JPEG



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

113

because it adequately -- it adequately shows what they want to show and, in fact, in my autopsy suite in the Offices of the Chief Medical Examiner of North Carolina in Raleigh, in the Office of the Chief Medical Examiner in Georgia, in the Regional Medical Examiner Offices in Georgia and in numerous other offices, the standard is to use JPEGs.

Q. So -- so, it was based on your standards in Georgia and your conversation with other forensic pathologists that you --

A. Right. You have to remember there are only about 400 of us.

Q. Right. In SWGIT?

A. No. In the nation.

Q. Okay. And it's your -- your testimony that you're confident that from that, you can testify that there's a de facto standard of using JPEG?

A. That it is acceptable in the profession.

Q. Okay.

A. Okay?

Q. I thought it was --

A. Which -- which -- which makes it a de facto standard, right?

Q. Okay. Now, the -- you talked about logging the parameters, counsel asked you about that. Would it be



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 114 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

114

fair to say that if someone -- and the reason to log the parameters is that someone can go back and reproduce what you did.  In this particular case, someone would have to figure out the size of the CLAHE that you decided to use; is that right?

A.  The contextual region.

Q.  Right.  I think you called it the size, you can choose a certain region size?

A.  Of the adaptive region.

Q.  They would have to get that right; is that right?

A.  No.  They'd have to get -- they'd have to get somewhere -- somewhere anywhere chose.  It wouldn't have to be the same one.

Q.  But they would have to get close to the size, is that fair to say?

A.  Yes.

Q.  And then they'd have to determine the degree of clipping that you used?

A.  Yes.

Q.  Okay.  And how many variations on that are there?

A.  As many as you want.

Q.  Okay.  So, they'd have to determine the size, the degree of clipping and then they would have to know that you used your own software; is that right?

A.  No.  Almost all the permutations would give



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

similar answers.

Q. Well, they'd have to know that -- well, they have to know that you used your wrappers on your software, is that fair to say?

A. No. They'd use their own.

Q. Okay. So that --

A. All that does -- all that does is say, "Oh, I can use this -- this -- this image coming in." People -- if they did it in Photoshop as a plug-in, they would use Photoshop as their wrapper. If they did it in AVS, they'd use AVS as their wrapper.

Q. Okay.

A. If they did it in ITK or VTK, they'd use VTK as their wrapper.

Q. All right. So -- so, you don't agree with the fact they'd have to know your software and they'd have to know your wrappers but you do agree that they'd have to accurately establish the size of the CLAHE, the square that you used; is that right?

A. Not accurately. Anywhere -- anywhere nearby.

Q. In the ball park?

A. Yeah.

Q. And figure out the degree of clipping?

A. Anywhere in the ball park.

Q. Okay.


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216   Document 609-1   Filed 11/17/10 in TXSD   Page 116 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

116

MR. MCHUGH:  That's all I have.

MR. DOWD:  Okay.  Nothing further.

THE VIDEOGRAPHER:  The time is approximately 1:46.  We are now off the record.

(Off the record.)

THE VIDEOGRAPHER:  The time is approximately 1:47.  We're now back on the record.

MR. MCHUGH:  Petitioner at this time offers P -- exhibit which is marked P-185, which is a complete copy of workshop number 19, which has been referenced in the testimony of Dr. Oliver.

MR. DOWD:  No objection.

MR. MCHUGH:  And P-186, which is a complete copy of workshop number 6 that was referenced during the testimony of Dr. Oliver.

MR. DOWD:  No objection.

THE VIDEOGRAPHER:  The time is approximately 1:47.  We are now off the record.

MR. DOWD:  We're still on the record.

MR. MCHUGH:  I'm sorry.  And I offer all my exhibits in addition to this.

MR. DOWD:  Oh, and you're offering everything else?

MR. MCHUGH:  Yeah.

MR. DOWD:  Okay.  What are the numbers of


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216    Document 609-1    Filed 11/17/10 in TXSD    Page 117 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

117

those?

MR. MCHUGH:  We are offering -- in addition to the exhibits that we just offered, we're offering Exhibit 182, 183, 184, 127, which was premarked.  Didn't we refer to that?

MR. DOWD:  That was used earlier?

MR. MCHUGH:  Yes.

MR. DOWD:  Oh, there is it is.  Okay.

MR. MCHUGH:  And that's it.

MR. DOWD:  All right.  Thank you.

(Whereupon at 1:49 p.m. the deposition was concluded.)



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

118

E R R A T A    S H E E T

Correction                                    Page        Line

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

I, WILLIAM RUSSELL OLIVER, MD, MS, MPA, have read the foregoing deposition and hereby affix my signature that same is true and correct, except as noted above.

_____

WILLIAM RUSSELL OLIVER, MD, MS, MPA

THE STATE OF _____

COUNTY OF _____

Before me, _____, on this day personally appeared WILLIAM RUSSELL OLIVER, MD, MS, MPA, known to me (or proved to me under oath or through _____) (description of identity card or other document) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _____ day of _____, _____.

_____

NOTARY PUBLIC IN AND FOR

THE STATE OF _____



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Case 2:02-cr-00216   Document 609-1   Filed 11/17/10 in TXSD   Page 120 of 146
William Russell Oliver, MD, MS, MPA                    October 28, 2010

120

STATE OF TEXAS        *
COUNTY OF HARRIS      *

        I, the undersigned certified shorthand reporter
and notary public in and for the State of Texas, certify
that the facts stated in the foregoing pages are true
and correct.
        I further certify that I am neither attorney or
counsel for, nor related to or employed by, any of the
parties to the action in which this deposition is taken
and, further, that I am not a relative or employee of
any counsel employed by the parties hereto, or
financially interested in the action.

        SUBSCRIBED AND SWORN TO under my hand and seal of
office on this the 10th day of November, 2010.

EDITH A. BOGGS, CSR
Certified Shorthand Reporter and
Notary Public in and for
the State of Texas
Notary Expires:  5-10-2012
Certificate No. 3022
Expiration date:  12-31-2011
Esquire Deposition Solutions, LLC
Registration No. 3



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

121

| **A** | |
|---|---|

**AAFS**
4:20,23
  105:22
**ability**
76:5
**able**
16:16 36:8
**abrasions**
31:10
**absolute**
112:15
**absolutely**
27:9 51:2
  94:10
**abstract**
36:3
**Academy**
8:25 11:9
  66:4,24
**acceptable**
53:1 86:23
  87:5 88:21
  113:18
**acceptance**
55:4,11,16
**accepted**
28:7 52:23
  54:11 61:4
  61:10
  109:22
**accidentally**
104:6
**accuracy**
31:19 36:13
  36:16 61:21
  65:12 70:3
  94:22 96:25
  106:1
**accurate**
31:16 50:24
  59:20,21
  75:23 92:6
  92:22 93:2
  94:3,9,16
  97:24 98:14
  99:22 100:1

  100:22
**accurately**
59:18 76:5
  98:15
  115:18,20
**achieved**
20:17
**acknowledged**
119:8
**acronym**
52:25
**action**
120:6,7
**active**
7:23
**actual**
23:11 24:5
  102:20
  105:6 108:6
**adaptive**
14:19 19:17
  21:2,4,4
  22:4 44:4
  101:19,20
  114:9
**addition**
16:7 116:21
  117:2
**additional**
12:22
**adequately**
25:15 113:1
  113:1
**adjustment**
19:25 41:5
  56:20
**administr...**
6:16
**administr...**
8:10
**Advanced**
13:2 42:3
**Advice**
4:20,23
  105:22
**advise**
5:22 81:4
  82:2,5

**advised**
76:23
**advisement**
82:6
**advises**
76:10,24
**advisor**
14:18
**aerospace**
54:12
**aesthetic...**
35:8
**affect**
91:10
**affirm**
88:16
**affix**
119:1
**AFIP**
100:7
**afternoon**
37:14
**agree**
36:12 44:12
  54:8,22
  55:5,23
  59:7 69:17
  75:5 76:6
  76:12 77:5
  79:8 80:21
  81:6,8,10
  81:13,15
  82:4,5 83:3
  85:7,11
  87:12 88:20
  88:24 89:1
  91:8 93:19
  97:1 110:15
  115:15,17
**agreed**
57:4 70:2
**ahead**
5:12 8:8
  11:24 25:22
  62:2
**aid**
30:22
**ALFRED**

  1:6
**algorithm**
42:8 44:1,3
  44:4,8,17
  102:11,13
  103:8 104:3
  104:22,25
**algorithms**
7:9,12,15
  42:13 102:2
  102:3,9,25
  103:16
**allow**
7:15 42:25
  81:21
**allows**
64:12
**America**
1:4 109:25
**American**
8:25 9:5,6,7
  10:19 11:9
  66:4,24
**amount**
85:9
**analysis**
7:18 11:6,7
  17:17 32:9
  45:3 46:13
  46:14 59:25
  81:4 88:8
  94:12,14,16
  108:6
**analyst**
17:20 18:7
**analysts**
18:10
**analyzed**
111:5
**anatomic**
6:5
**ancillary**
61:19
**and/or**
91:11
**answer**
15:13 40:10
  40:14,15

  60:12,13,16
  61:1,14
  63:22 111:9
  112:16
**answered**
59:12 79:6
  90:23 92:11
  94:1 101:7
**answers**
2:11 115:1
**anybody**
43:22 45:2
  45:19
**API**
13:9
**apparent**
18:12,13
**appear**
74:20 96:5
**appeared**
119:6
**appears**
38:3 67:6
  86:4
**applicable**
108:16
**application**
53:2 91:9
**applications**
76:11 86:24
  87:5 88:22
  88:23
**applied**
55:3 61:17
**applies**
21:5
**apply**
24:17 88:17
  108:12
**applying**
53:16
**appropriate**
21:25 22:1
**approxima...**
5:3 8:19
  49:7 80:2,6
  116:3,6,17


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                     October 28, 2010

122

approxima...
16:17
arbitrary
88:1 99:1
area
8:18 9:10
  16:4 29:15
  29:18 30:23
  80:13
  100:17
  112:22
areas
30:13
armamenta...
44:10
Armed
7:2,3,5,20
  7:22 8:11
  14:23 15:6
  15:14,20,25
  43:10 58:14
Army
11:18
article
38:9 39:4,21
  41:21,22
articles
43:24
artifact
19:4 24:2
artifacts
85:11 91:11
artist
23:6
asked
17:8 59:11
  71:23 79:6
  90:22 92:11
  94:1 111:1
  113:25
asking
40:12 57:20
  60:14 63:24
  68:9 74:16
  88:11 90:1
  94:13,15
aspect
19:9 33:18

46:5
aspects
19:15
assessment
31:16
assist
22:22
associated
99:7
Association
1:15 3:5 9:1
  9:3,3,7
  77:15
assuming
62:13
assumption
20:16
assurance
58:13
attack
10:2,7
attempt
21:2 30:2
attempts
20:19
attend
68:2,24
attended
86:16
attention
17:14 19:9
  22:23 23:25
  30:12,14,22
  57:8
attorney
3:3 120:5
ATTORNEYS
3:9
Attorney's
3:10,16 5:10
Audio
81:4
autopsies
10:9 15:8
  77:11 79:15
  100:15
autopsy

8:6,14 17:8
  23:19 25:19
  29:7 30:16
  31:12 32:20
  32:20,25
  37:1,7
  47:21 48:11
  58:2,22
  59:2,4 71:3
  73:3 77:12
  77:13,23,25
  79:17 98:6
  99:21,24
  100:14
  111:18,19
  113:2
avoid
76:16,19
  79:3 84:20
avoided
83:4
avoiding
80:14
AVS
12:14,15,25
  12:25,25
  13:1,8 42:9
  115:10,11
award
9:22
awards
9:9,15 10:11
  10:12
aware
40:10 60:17
  61:13,15
a.m
2:17

_____
       B
_____
bachelor's
5:23
back
10:4 19:2,5
  23:9,12
  24:1,5
  28:14 31:23
  33:20 45:2

48:15 50:18
  51:4 53:25
  55:6 56:18
  56:25 60:25
  61:9 62:16
  80:7,12
  84:16 93:11
  96:16,25
  100:6
  102:25
  105:7 114:2
  116:7
background
5:21,22 6:23
  6:24 11:1
  52:20
balances
35:12
balancing
38:14 51:22
ball
115:21,24
band
64:12
base
56:7,12
based
24:16 46:13
  46:14,25
  47:7,9
  48:19 49:18
  51:1 55:1
  60:10,12,13
  71:10
  110:17
  113:8
basic
41:4 56:10
  56:20 74:25
  78:2
basically
13:5 23:25
  34:14 49:21
  51:14 99:11
  101:18,22
  101:23
  103:11
  104:21

107:24
  112:20
basing
50:8,14
basis
27:2 46:11
  56:4 57:6
  58:23 60:8
beaten
110:21
beginning
80:5 84:22
believe
27:21 47:10
  48:3,7
  53:25 57:4
  70:2 71:23
  72:19 80:9
  80:25 91:17
  96:15
  101:14
  111:1
believed
30:23
bends
20:18
Berry
9:19
best
20:17 26:12
  26:13,16,22
  27:7 32:10
  33:1 35:25
  70:24 91:24
bet
86:1
better
21:24 76:5
  99:2,2
big
97:21 112:10
bigger
46:5
bit
22:24,25
  23:12 35:12
  37:18 69:24
  89:16



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                     October 28, 2010

123

| | | | | |
|---|---|---|---|---|
| **black** 18:3 21:15 | **brief** 19:18 | 18:25 20:7 20:20 21:4 | 43:3,9,22 54:15,16 | **chairman's** 88:21 |
| **blanking** 105:2 | **briefly** 17:16 | 21:18 41:18 45:24 46:1 | 57:22 60:23 61:11,17 | **challenge** 55:4,12,17 |
| **blind** 38:24 45:2 | **bright** 20:22,24 | 50:18 65:3 80:9 92:20 | 76:18 78:7 82:10 83:9 | **challenges** 55:15 |
| **blinded** 61:2 | **brighter** 20:15 | 102:19,21 103:12 | 87:9,12,23 90:4 91:14 | **change** 18:22 23:10 |
| **blood** 29:3 | **brights** 20:14 | 114:7 | 92:2 109:25 114:3 | 25:6 34:14 35:1 62:7 |
| **blur** 64:13 | **bring** 18:12 | **camera** 25:3 33:2 | **cases** 108:23 109:2 | 79:25 97:22 98:2 101:24 |
| **blurred** 64:16 | **Brody** 8:4,6,14 | 107:16,17 | 109:8 | **changed** 75:25 |
| **body** 29:7 100:18 | **Bruegge** 85:24 | **cameras** 76:6 77:1 | **cause** 91:10 | **changes** 19:23 34:24 |
| **Boggs** 1:19 2:12 | **bruise** 29:16,19 | 81:21 | **caution** 91:5 | 52:25 86:22 |
| 3:25 120:11 | **bruises** 29:17,19,21 | **cap** 84:12 | **cells** 29:3 | **Chapel** 6:4 |
| **boils** 97:16 | **build** 13:6 | **capital** 82:10 | **centimeters** 96:3 | **character...** 55:19 |
| **bone** 21:13,13,14 | **building** 1:16 3:6 | **capitalized** 83:20 | **certain** 18:16 48:16 | **chemical** 34:16 35:22 |
| 22:1,1,6,7 | 112:6 | **capitals** 76:15 | 60:1 109:11 109:12 | **Chief** 113:3,4 |
| **bones** 21:17 | **bullet** 68:10 88:13 | **capture** 75:2 76:5 | 114:8 | **child** 27:12,18 |
| **BOOTH** 3:18 | **bullets** 88:16,25 | 83:15 85:1 85:2 | **certainly** 28:9,10 | **choose** 114:8 |
| **bottom** 83:17 89:15 | **Bureau** 7:25 45:23 | **captured** 77:4 83:22 | 33:15 78:15 79:12 | **chose** 114:12 |
| 97:15 | **buttons** 103:2 | 84:5 | **Certificate** 120:14 | **Christi** 3:17 |
| **boundaries** 18:14 | | **capturing** 74:3 81:6 | **certificates** 9:9 | **circle** 98:20 |
| **Bourgeois** 1:6 17:7 | _____ **C** _____ | 82:3 84:2 | **certified** 2:12 120:2 | **civilian** 7:24 |
| **Box** 3:11 | **C** 3:1 7:13,13 | **card** 119:7 | 120:12 | **CLAHE** 41:2 46:5 |
| **boxes** 18:20 | **cadaverous** 35:16 | **Carl** 86:1,6,6,9 | **certify** 120:3,5 | 54:1 55:9 |
| **Brad** 105:1 | **calibrated** 44:25 45:3 | **Carolina** 6:4 8:4,7,15 | **cetera** 33:3,3,3 | 91:14 102:2 102:4,9 |
| **break** 18:13,18 | **calibration** 34:23 73:14 | 8:20 9:15 103:10 | 98:3,3 | 114:4 115:18 |
| 19:20 79:24 93:7 | **call** 57:14 108:10 | 113:3 | **chair** 66:20,21 | **claim** 24:7,18 |
| **breakdown** 16:11,15 | **called** 5:14 18:20 | **cartography** 54:12,13,14 | 68:7 86:10 86:13 | 26:11 27:5 |
| | | **case** 10:4 17:6 18:8 38:1 39:4 40:5 | **chairman** 88:8 91:1 | |


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

124

28:1,5,13
28:16 33:7
**clarify**
68:15,17
72:9 108:25
**Clark**
65:19,20
**Clark's**
65:14
**class**
69:21
**classic**
17:21 20:6
64:18
**classific...**
41:4
**classify**
41:7
**clear**
99:19
**clearly**
62:5 91:23
91:24
**clinical**
6:5 9:7
**clipping**
101:21
114:18,23
115:23
**close**
114:14
**code**
102:16,17
105:6
**coding**
103:6
**collection**
20:4 40:24
41:18,21
42:12,15
59:14,15
61:16 63:4
**collectively**
63:16,16
**College**
9:6
**color**

20:6 33:8,10
35:6,7,11
38:14 51:22
75:19,19
76:5 80:19
91:10 96:10
106:1
**Colorado**
105:19
**colors**
34:15 35:8
76:5 96:20
96:22
**Columbus**
6:16,17
**combination**
39:9,12
**come**
18:14 46:21
48:20 84:16
**comes**
98:18 107:13
**coming**
112:18 115:8
**commendation**
10:1,3
**comment**
46:1,2 48:22
**comments**
46:3
**common**
84:13
**commonly**
69:7,10
**community**
1:14 3:4
18:19 28:8
28:19 61:5
**company**
13:4
**comparable**
87:19 90:16
**comparably**
87:18
**compare**
31:20
**compared**

31:21,23
**comparing**
110:25
**comparison**
23:13
**complete**
106:10,15,17
116:9,13
**completeness**
84:24
**components**
64:16,16
**compressed**
25:2 34:3
70:3
**compression**
24:19,20
69:25,25
70:4,9 73:1
76:16,25
77:1 78:5
79:3 80:14
80:15,23
81:5 82:3
85:8,8 98:2
99:3,5,8,9
107:23
**comprises**
77:4
**computed**
21:10
**computer**
6:6,9,10,20
6:21,22
11:4,4,5
13:10 28:21
43:6 102:16
102:17,21
**computing**
8:10 9:3,16
9:17
**concept**
69:20,21
**concerned**
50:23 66:15
**concerning**
43:25 44:1
69:13 85:8

**concluded**
117:12
**conclusion**
48:20 50:8
50:14 56:5
56:23 57:7
60:8,10
71:20 73:5
88:5,18
**conclusions**
26:23 46:23
46:25 47:7
47:9,11,19
48:18 49:17
49:18 56:8
71:16,24
72:1,23
88:23
**confident**
104:17
113:16
**confocal**
7:10,12 15:9
**conjunction**
102:3 103:16
**connection**
17:11 62:23
63:23
104:24
**consider**
51:17
**considera...**
119:9
**construction**
38:21 65:16
**consultant**
16:8,11
**consulted**
16:19
**consumption**
43:16
**contained**
29:16 48:11
75:6 77:3
**context**
55:8 83:4
95:10
**contextual**

114:6
**continue**
75:9
**contrast**
18:22 19:21
19:25 20:9
20:17,24
21:6,14,15
21:16 22:11
22:21 23:10
41:6 51:24
56:15 62:6
62:9
**Contrast-...**
14:19 19:17
44:4 101:19
**contributed**
9:9
**contribution**
10:6
**contribut...**
9:22
**contusions**
31:9,9 61:6
**convenience**
98:9,12
**convenient**
101:8
**conversation**
113:9
**conversion**
28:3 33:8
**converted**
94:21
**converting**
34:3
**Cooter**
105:3
**copies**
106:10
**copy**
85:19 87:15
116:10,14
**Corpus**
3:17
**correct**
27:9 28:4



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

125

29:7 31:24
31:25 66:6
93:10 94:2
119:2 120:4
**corrected**
96:10
**Correction**
118:3
**correctly**
44:25 45:3
59:23 60:6
**correlated**
58:21
**counsel**
13:20 84:16
111:1
113:25
120:5,7
**count**
17:9 23:18
23:22 26:4
27:11,17
29:18,19
30:18 31:11
**counted**
23:16 29:20
31:14
**Counter**
10:21
**counterpart**
55:1
**counties**
8:19
**counting**
29:5
**County**
2:13 119:5
120:1
**couple**
24:21 92:12
**course**
73:22 83:20
84:16 87:8
**courses**
14:12,14,16
**court**
1:3 5:6
16:12 17:7

27:4 29:10
30:5,25
99:14
**courtroom**
37:3 57:23
71:7 82:10
**co-chair**
66:6,21
105:11
**co-chairs**
85:25
**create**
42:4,7,20
49:8 95:15
**created**
42:2,8,19,21
43:12,25
44:1,3,12
44:13 48:24
71:11
**creates**
24:9
**creating**
27:3 39:18
62:22
**creation**
33:4 75:3
**crime**
84:7,13 85:3
**Criminal**
4:16 52:10
**criteria**
53:2
**Cromartie**
105:1
**crop**
18:22
**cropping**
51:23
**Crows**
9:4
**Cr-C-02-216**
1:5
**CSR**
1:19 120:11
**CT**
21:9,9,11

**currently**
86:13
**Curtis**
1:16 3:6
**CUSTODY**
1:13
**cut**
8:8
**CV**
12:14
**Cv-07-223**
1:6

---

**D**

**dark**
20:23,25
**darker**
20:14
**darkroom**
34:21
**darkrooms**
53:9
**darks**
20:14
**data**
15:9 17:18
17:20 18:6
21:11,20
29:20 36:6
77:3 80:20
97:22 108:2
**date**
1:19 5:2
54:5 74:14
120:15
**dated**
74:20
**day**
2:16 29:14
105:19
119:6,10
120:9
**de**
77:20,21
78:1,22
98:6 112:17
112:19
113:17,22

**deal**
61:24 78:10
**dealing**
7:20
**death**
110:22
**decided**
114:5
**decision**
46:11
**decompose**
65:2
**decomposi...**
64:19,20
65:4,13
**deconvolu...**
38:25
**decreases**
62:3
**defender**
1:14,15 3:4
3:5 110:4
**defense**
7:24 16:16
16:19
**define**
59:20,21
**degraded**
27:22
**degree**
5:23 6:2,8
6:16 11:3
12:7 13:24
28:9 83:6,6
91:9 94:2
97:15
100:23
101:21
114:17,23
115:23
**delete**
85:3
**deleted**
84:17
**deletion**
83:20
**demonstrably**

75:19
**demonstrate**
19:15 30:12
57:24 70:25
71:1 92:7
94:6 100:24
101:9,10
**demonstrated**
25:15 92:22
100:23
**demonstra...**
24:23 27:3
56:23 71:7
94:6
**demonstra...**
57:23
**Denver**
66:3 105:10
**Department**
3:10,15 7:1
7:24
**depend**
82:24
**depending**
61:20 62:4
**depends**
82:7,11 95:6
111:4,6
112:2
**depict**
37:25
**depicted**
17:9
**depictions**
99:22 100:1
100:22
**deposition**
1:11,13 2:8
2:11,14 5:8
117:12
119:1 120:6
120:15
**depositions**
46:21
**deputy**
7:3
**derivative**
64:17



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                October 28, 2010

126

deriving
88:4
describe
10:25
describes
64:3 101:3
describing
22:12
description
4:13 19:19
  75:23 119:7
destroy
99:9
detail
85:9 91:11
  94:22 96:24
details
21:13 28:2
  70:2
detect
85:10,10
determine
24:10 65:10
  65:12
  114:17,22
determines
44:23
determining
46:23 109:16
develop
60:21
developed
14:18 21:8
  22:5 63:3
  103:8
  104:23,25
devices
74:3
diagnoses
61:19
diagnosis
36:21 91:19
  93:21
diagonals
64:24
dials
103:2

dictated
78:5
difference
24:23 47:19
  79:19 84:18
  97:12 107:2
differences
17:25 18:9
  35:2
different
18:11 26:3
  34:8 35:11
  42:25 47:25
  48:2 72:7
  72:13,13
  78:3,13,25
  79:7 91:18
  96:22 100:4
  103:5,6
  109:18,20
  109:20
difficulty
23:9
digital
4:15,20,23
  7:7 12:4,20
  13:24 14:5
  14:5,21,22
  15:5,12,17
  15:21 16:5
  25:3 28:3
  33:8 35:22
  49:25 52:10
  52:22 53:1
  56:6 58:19
  58:19 59:19
  70:6,12,20
  71:15 74:2
  74:7 75:1
  75:11,20
  76:6,16,25
  77:1 81:6
  82:3 86:20
  86:23 87:4
  105:22
digitaliz...
42:3 69:25
digitally

49:25
digitization
33:6 51:23
digitize
36:13
digitized
24:12 26:12
  26:24,25
  27:1,6,10
  27:16,17
  30:2,7,21
  31:23 33:19
  36:13,23
  50:4,5,10
  50:20 51:7
  51:8,9,13
  51:16 72:4
  92:15,25
  93:16
digitizing
32:13,14,22
dimensional
13:10
dimensions
7:16
direct
30:12,22
  55:1 94:19
direction
50:17 64:17
  64:22,23
director
8:6,13
disagree
58:11 68:7
discern
24:1
disciplines
4:20,23 11:2
  105:23
discuss
29:9,9 68:18
discussed
31:7 68:21
  69:12 93:20
discusses
38:14,16,17
  38:19,24

39:5,25
  41:21 67:18
discussing
80:15
discussions
112:21
disjoint
26:2
disk
25:25 47:24
  48:7 72:16
  100:10
disks
47:17 48:9
  48:11
display
20:8,10
  21:21 36:22
  50:3 92:23
  93:6 94:23
  95:4 99:13
displayed
18:21 21:12
  95:1
displaying
49:22,24
displays
37:3
distinction
47:10 77:7
  79:16
  108:24
  111:15
distinguish
77:10 102:20
distingui...
102:6
District
1:3,3,15 3:4
  5:10
doctor
40:13 80:8
doctor's
17:2
document
52:5 55:21
  55:24 56:3
  57:5 65:25

66:8 75:6
  75:10 84:22
  85:14 90:3
  119:8
documenting
87:17
documents
73:20 90:4
doing
7:14,18
  13:10 20:2
  23:7 33:23
  33:25 54:15
  55:9 62:6,9
  65:16
  101:22
  107:24
  110:7
  111:11
domain
79:7,8
double
61:2
Dowd
3:13 4:4,6,8
  5:7,9,17
  11:20,24
  17:1,4,6
  19:7 29:13
  29:15 33:17
  37:10 40:13
  55:20 59:11
  61:25 68:9
  71:23 72:9
  79:5 81:8
  90:22 92:10
  94:1 97:8
  106:7,13,17
  106:20
  110:18,21
  116:2,12,16
  116:19,22
  116:25
  117:6,8,10
DPI
32:7,7,14
  50:11
Dr



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

127

5:20 11:21
12:1 17:6
25:4,4,9,18
26:10 37:15
48:3,7,13
50:1 58:2,4
58:16,18,18
71:2 72:10
72:15,19
82:21 97:8
99:21 100:9
105:8
106:21,24
116:11,15
**draw**
19:8 23:24
23:25 30:14
57:8
**drawing**
17:14 22:23
23:9 88:18
**drawings**
23:5,6
**drawn**
88:23
**duly**
5:14
**duplicate**
100:3,17
**duplicates**
71:6 99:23
**duplication**
100:12
**duplications**
100:13,16
**duty**
7:23

---

**E**

**E**
3:1,1 5:19
118:1,1,1
**earlier**
71:2 117:6
**easier**
80:21 103:7
**easily**
23:4 41:1

101:17,17
108:4
**East**
8:4,7,15
**Eastern**
1:15 3:4
**easy**
23:13
**eaten**
20:24,25
**eb**
1:1
**Echtochrome**
35:10
**ECU**
16:7
**edges**
64:21,23,24
**Edith**
1:19 2:12
3:25 120:11
**educational**
5:21,22
**effect**
32:5 61:18
61:21 108:5
**effort**
74:6
**either**
18:16 30:2
51:16 61:20
**Electrical**
9:2
**electronic**
9:2,4
**eliminated**
80:19
**ELSA**
3:18
**emphasis**
6:9 11:4
**employed**
14:22 16:4
120:5,7
**employee**
7:25 120:6
**employment**

8:12 14:20
15:11,20
**encoded**
102:15
**ended**
16:19 49:11
89:4
**ends**
102:25,25
**enforcement**
76:11
**Engineers**
9:2
**enhance**
17:12
**enhanced**
23:22,23,23
23:24 24:12
24:16 30:3
30:10,21
31:6,19,22
31:22 36:24
53:15
**enhancement**
7:19 11:2,5
14:8 15:18
15:21 19:21
22:12 28:2
29:1 41:6
51:24 53:23
54:1,10
56:2,16
58:20 62:6
62:9 91:2
91:15
103:17
**enhancements**
56:24 57:2
57:12,17
58:24
101:12
**enhancing**
14:4,5,12
15:11 16:5
59:18
**entails**
17:16
**entire**

52:18 85:20
**enumerate**
58:4
**enumerated**
58:8
**environment**
55:3
**equalization**
14:19 19:17
20:16,20,21
21:5,5
38:19 40:23
44:5 101:19
**equivalent**
26:13 27:7
34:17 75:20
107:25
**error**
24:10,14,15
33:22 59:14
59:16,17,18
60:3,14,21
61:3,14,15
62:3,14,17
63:1,18
64:2,3,5
65:10,12
68:1,19
69:13,14
**errors**
46:24
**Esquire**
1:14 2:14
3:7,13,13
3:18,18
120:15
**essentially**
12:6 18:13
23:3 24:17
34:17,18
74:10
102:25
103:13
**establish**
74:1 115:18
**established**
44:14 45:7
55:10 78:2

91:13
**estimation**
38:22
**et**
33:3,3,3
98:3,3
**evaluate**
32:11
**evaluating**
12:13 61:6,6
**evaluation**
10:2
**evidence**
26:12,13,17
26:22 27:7
35:25 78:16
79:9,13
91:24
108:16
**evident**
36:18,20
**evidentiary**
75:4 77:9
78:8,19
97:13 109:5
109:11
**exact**
47:23 69:19
**exactly**
34:9 58:7
69:4 96:3
**examination**
4:1 5:16
11:25 17:5
37:12 94:19
97:7 106:10
106:22
**examiner**
7:3,4,20 8:1
8:16 113:3
113:4,5
**Examiners**
9:1 77:15
**example**
17:21 60:24
98:19 107:6
107:15
**Excerpt**



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

128

4:17,19
**excuse**
13:20 17:23
48:10 86:21
97:10
**executed**
119:9
**exhibit**
37:23 65:25
116:9 117:4
**exhibits**
4:11 116:21
117:3
**exist**
60:23 62:23
63:24
**exists**
62:13 90:3
**expect**
18:16
**experience**
11:1 59:1,3
**expert**
11:12,21
16:9
**Expiration**
120:15
**Expires**
120:14
**explain**
17:16 25:22
79:20,21
97:11 102:1
102:2
**explaining**
111:15
**explicitly**
35:6 48:25
83:25
**exploration**
17:15 18:25
27:2 89:20
89:22
101:23
**Express**
12:15 13:8
**expressed**
119:9

**extensive**
28:11,11
**extensively**
11:10
**extent**
99:23
**extraordi...**
62:6
**eyes**
107:18,19,20

─────────────
        **F**
─────────────
**F**
7:13 109:17
**facilities**
77:23
**fact**
25:7 26:21
33:4 34:25
34:25 35:1
35:5 49:19
49:25 50:19
51:5,9 55:2
58:10 62:7
66:5 68:5
70:6 76:18
76:19 77:12
77:16 78:4
82:24 83:10
83:22 84:6
86:3,9
88:12 89:9
89:14 92:15
93:1,16,25
94:20 95:2
98:13,13,18
104:19
108:5 109:8
109:10,19
112:25
113:2
115:16
**facto**
77:20,21
78:1,22
98:6 112:17
112:19
113:17,22

**factor**
109:16
**factors**
86:25,25
**facts**
120:3
**faculty**
68:23
**fails**
24:20
**fair**
50:24 54:20
55:11,19
56:8 58:2
58:25 59:5
66:25 67:3
67:22 73:1
74:3 75:20
79:10 83:5
83:12 84:24
87:20 89:5
90:12,21
91:20,22
92:5,22
93:2 94:3,9
94:14,16,22
96:7 97:24
114:1,15
115:4
**fairly**
98:15
**fall**
61:9
**familiar**
21:10 52:5
73:19 106:4
111:24
**family**
35:14
**far**
14:20 16:15
26:24 29:23
30:9 50:23
58:4 59:16
61:2 82:22
93:25
**FBI**
4:18 73:18

73:24 74:7
74:11 78:2
78:9,9,18
79:1,2,9,15
80:9 81:24
82:4 83:23
97:12 107:2
107:11
108:8,18,20
108:22,24
109:1,23
110:6,7,12
110:14,16
110:18,25
111:3,7,13
**FBI's**
75:24 78:24
**feasible**
111:23
**feature**
23:11 32:11
61:20 62:5
62:5 82:11
82:12 97:17
99:5 107:4
107:13
108:3,3
111:5,8
112:13
**features**
18:12,12
19:22,22
22:24,25
25:14 36:17
36:20,20,22
50:24 92:6
92:22 93:5
94:5,15,17
97:21 98:13
111:22
**February**
86:15 105:10
105:20
106:15
**federal**
1:14 3:4
9:25 45:22
109:25

110:2,4
**fellowship**
6:5,11
**felt**
92:5
**fewer**
37:4 96:21
**fidelity**
76:6
**field**
22:13 67:2,3
**fields**
54:11
**figure**
114:4 115:23
**file**
34:4 77:3
80:20
**film**
33:3 75:19
76:3,11
**films**
35:6,7
**final**
49:8,10
**finalist**
9:18
**financially**
120:7
**fine**
61:15 80:18
**fingerprint**
79:17
**finish**
40:14 62:1
**first**
5:14,20
24:22 26:14
51:21,22,24
66:5 74:23
74:24 86:3
86:4
**fit**
20:13
**five**
86:25 104:4
**fix**


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA    October 28, 2010

129

21:16
**flesh**
35:13
**focus**
12:3,6 14:24
**follow**
81:12 90:11
106:24
107:9,11
**followed**
39:13 40:23
78:23
109:12
**following**
5:25 6:3,24
8:3 12:11
42:22 53:2
74:25 89:4
89:25
**follows**
5:15 82:4
108:22
**foot**
84:11 85:4
95:24 96:2
**force**
7:21
**forces**
7:2,4,5,20
7:23 8:11
14:23 15:6
15:14,21,25
33:8 43:10
58:14
**foregoing**
119:1,8
120:3
**forensic**
4:17,21 6:6
6:11 8:6,14
8:25 9:10
9:11 10:19
10:20 11:10
11:12,13,21
11:22 15:3
15:3 25:11
28:8,10
52:23 53:2

54:15,19,23
55:3 61:1
66:2,4,15
66:24 78:23
79:13 81:3
86:24 87:5
88:22 105:9
109:16
112:21,23
113:9
**foreseeable**
79:13
**foreseeably**
75:3
**forget**
105:4
**form**
70:20 73:10
**format**
25:5,6,20
97:13,14
98:5 99:15
109:15,15
**formats**
42:25
**forming**
72:23
**forward**
109:13
**found**
58:1,7 59:7
**four**
64:20 86:25
87:17
**fourth**
64:25 66:10
86:25
**frame**
75:18
**frequency**
64:12,16
**Frequent**
80:18
**frequently**
17:18 18:15
35:12 77:1
80:18 98:18
102:19,23

**front**
66:20 102:25
**fruitful**
84:23
**full**
5:17 8:3
**function**
34:19,20,21
64:11 98:3
112:12
**fungi**
29:3
**further**
16:25 17:5
34:2 37:12
75:10 77:2
97:7 106:22
116:2 120:5
120:6

———————
**G**
———————
**gamut**
33:10,16
96:10,17
**GBI**
16:7
**Gems**
105:6,7
**general**
55:4,11,16
61:1 96:8
**generally**
61:4,9 75:18
**generates**
77:3
**Georgia**
6:17 7:25
8:2 9:14
113:5,6,9
**Geradts**
66:12 69:13
**getting**
57:11
**give**
11:8 17:21
19:18 69:8
107:15
108:9

114:25
**given**
9:25 20:5,6
60:4,5
109:11
119:10
**giving**
107:25
**GL**
12:16 13:8,9
**glare**
38:22
**go**
5:11 8:8
11:24 19:2
19:5 24:4
25:22 36:4
50:18 51:4
53:25 56:18
56:25 60:25
62:2 67:5
77:22 85:14
86:6,18
90:12 93:11
104:4 114:2
**goes**
20:8,10 38:4
104:7
**going**
13:12 16:20
23:9 24:11
28:14 37:15
37:18 46:13
48:15 52:3
60:3 71:6
73:15 74:11
79:5 80:8
80:12 83:17
85:13 86:18
90:24 100:6
106:7,14
109:5,18
110:18
**good**
12:1,2 37:13
96:6
**gotten**
112:23

**governed**
45:6
**government**
9:16,16,25
16:16
**graduate**
6:6 42:21
**graph**
20:4
**Graphic**
105:6,7
**graphical**
103:3
**graphics**
13:10
**gray**
20:5
**greater**
99:6
**group**
9:4 45:9
52:16 100:6
104:21
**groups**
26:3 51:22
**guess**
6:15 90:1,11
105:19
**guideline**
85:2
**guidelines**
4:15,15
45:10,15,20
48:25 49:3
51:20 52:9
52:9,13
53:20 74:1
75:1,6,11
78:2,4,12
80:10 88:3
**gunshot**
97:19,20,23
97:24 107:7
108:14

———————
**H**
———————
**H**
118:1


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

130

**half**
40:7
**hand**
32:20 65:18
95:25 96:2
107:14
119:10
120:8
**handy**
12:14
**happen**
84:10 87:12
88:7,9
**happened**
87:8
**happens**
64:18 69:7
84:15
**happy**
79:20 85:20
**hard**
82:22
**hardware**
102:21
**Harris**
2:13 120:1
**head**
7:6 86:12
**healed**
31:8
**held**
32:20
**help**
22:20,22
30:22
**helpful**
22:19
**helps**
57:23
**hem**
18:2
**Hemminger**
105:1
**Hennig**
3:21
**Herb**
32:25

**hereto**
120:7
**high**
33:2 64:14
64:15 91:9
**higher**
18:2 32:15
32:22
**Hill**
6:4
**hired**
23:6
**histogram**
14:19 19:17
20:1,3,4,7
20:10,16,18
20:20,21
21:5,5
38:16,17,19
40:22,23
41:1 44:5
101:19
**history**
28:11,11,20
**hold**
9:8 105:4
**home**
109:14
**honest**
68:2
**hostage**
7:21
**hours**
2:17
**Houston**
1:22 2:15
3:12
**human**
34:21,22
**hundred**
60:5

---

**I**

**IAI**
45:25
**idea**
58:23

**identific...**
26:5 45:25
**identified**
19:11 60:23
86:10
**identifies**
31:8
**identify**
17:8 24:5
27:11,18
30:13,18
31:6 36:10
37:21 38:9
60:1,5,6
66:1 73:17
85:22 90:21
**identifying**
17:13 107:7
**identity**
119:7
**IEEE**
10:23
**illustrate**
57:25
**illustration**
24:24 57:7
**illustrat...**
19:16 57:24
**image**
4:16,17,21
6:9 7:7,8
7:18,19
10:4 11:1,5
11:6,7,7
12:12 13:24
17:15,17,19
17:20 18:7
18:10,15,21
18:24,25
19:2,5,23
20:9,22,23
21:3,6,25
23:10,12
24:1,16
27:2,24
32:6,9,12
32:16,19,19
32:23 33:4

33:20 41:4
44:10 52:10
52:12,23,25
53:5,15,17
54:10 59:25
60:10,12,13
61:6 64:18
64:19,21,22
64:23,25
65:1,2,16
66:2,15
76:4 77:4
77:23 80:20
81:4 82:11
82:25 83:2
84:5,17
85:1,2,9
86:22,23
87:6,15,19
88:4,8,19
90:16 95:3
95:19 97:18
97:22 98:3
98:4,20,22
98:23 99:2
99:2,4,10
99:14
101:23
105:9 107:5
107:10,19
107:21,25
108:1,6,13
109:2 111:6
111:10
112:3,13
115:8
**imagery**
25:8,9,12,23
75:2,20
76:16 78:6
82:7
**images**
12:13 14:4,5
14:5,13
15:5,7,8,9
15:10,12
16:5 18:11
18:14 23:22

23:24,24
24:24 25:3
25:10,12,16
25:25 26:3
26:12,25
27:6,20,21
27:22 34:3
43:1 47:16
47:23 48:24
49:8,22,24
49:25 50:10
51:6 59:19
60:6,7,22
60:22 61:19
64:13,20
70:6,12
71:15 74:2
76:25 82:16
83:20,22,24
84:3 85:3,4
92:5,15,23
92:24,25
93:1,5,17
94:5 99:11
99:24
100:22
101:8
104:13
109:16
**imagine**
20:8
**imaging**
4:20,23 9:11
11:13,22
12:5,20
14:21,22
15:18,21
28:23 35:23
45:10 52:22
53:1 56:7
58:19,19
74:7,8
77:24 86:20
87:4,5
105:15,22
**impact**
33:19,24
34:1


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

131

impacts
29:17
implement...
44:9,11
  102:16
  103:9,11
  104:20
  105:2
implemented
42:8
implies
24:14
importance
19:23
important
35:4 46:13
  46:16,20
  47:3,6
  48:15 84:21
  101:15,16
impossible
24:10 85:10
inartfully
102:5
include
8:25 9:15
  42:25 53:8
included
47:8
includes
83:21
including
10:19 104:21
incorrect
32:1 93:25
incorrectly
104:6
increase
21:6 62:10
  91:10
increases
61:21,21
independe...
41:17 63:12
  63:14 88:2
INDEX
4:1,11

indicate
103:16
indicated
42:11 96:15
  101:4,11,14
indicates
52:22 73:25
  75:17 81:2
  83:17
indicating
67:24
indication
91:5
individual
29:21 38:13
  65:3
influential
9:17
informal
77:16,17
  78:22
information
25:5 32:16
  32:23 34:2
  73:11 77:3
  87:19 90:16
  99:7
injuries
17:9,14
  23:16,22
  24:5 26:5,5
  27:11,11,17
  27:18,20,23
  29:6 30:13
  30:18 31:11
  31:15 36:10
  37:4 58:1,4
  58:9 59:4,8
  82:21 96:5
  96:5 100:25
injury
19:11 30:23
  62:13
input
42:25 103:13
instance
11:8 14:18
  23:4 35:9

  35:10 82:15
  97:18 104:3
  109:14
  111:17
instances
47:5 48:16
Institute
7:2,6,23
  8:11 9:2
  14:23 15:6
  15:14,21,25
  43:10 45:25
  58:14
instrument
119:8
integrity
83:18
intelligence
10:21,22
  18:19
interest
112:22
interested
120:7
interface
13:9 103:4
intermediate
48:23 49:7
  83:24
internals
65:17
internati...
10:21 28:8
interpola...
34:15,18
  35:20
interpret...
19:6 61:3
introduce
34:24 91:11
investiga...
8:1 45:23
  84:14,24
involved
58:16 61:7,8
involves
38:20 60:10

Involving
28:23
issue
18:6,7 32:8
  69:13 98:18
  101:7
  107:13
  112:15
issues
7:9,18,21,21
  24:21 31:7
  95:15
items
70:3
iteratively
65:2
ITK
115:13
IV
105:7

_____
          J
_____

James
1:14 3:7
Janet
10:3
January
54:5 55:6,10
job
7:7 14:25
  15:1
Journal
10:19,20,21
  10:22,23
journals
10:16,18
JPEG
25:4,6,10,12
  25:16,20,25
  34:4 51:9
  70:7 71:15
  72:4,6,8,16
  73:3,10,11
  76:20 77:2
  77:23 80:23
  81:5,22
  82:19,23
  83:4 97:12

  97:14,21
  98:5 99:5,7
  99:9,15,16
  99:24
  100:14,21
  107:22
  112:17,25
  113:17
JPEGs
72:10 77:13
  99:20 113:7
JPEG'd
98:23
judge
24:4 27:16
judge's
19:8
June
74:14,20
jurisdict...
91:18
jury
19:8,15
  22:18,22
  24:4 27:15
  29:10,24
  30:22 31:1
  36:8,9,14
  36:23 49:20
  50:12,17,17
  51:3 56:6,7
  56:22 57:9
  57:20 58:3
  71:18 72:22
  73:6 92:3,8
  92:14 93:11
  93:24 94:13
  94:15
jury's
30:12
justice
3:10,15 4:16
  6:16 52:11

_____
          K
_____
K
95:4,4,5,5
Kathrin


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

132

3:21
**keep**
49:13,16
71:8
**kept**
11:17 84:5
**kind**
33:5 69:17
89:14 99:10
99:10
101:23
103:2
**King**
10:4
**Kingdom**
109:14
**kit**
13:5
**knew**
58:21
**know**
4:20,23 18:5
21:9 30:6
33:2 34:7
34:14 35:1
41:9,10,23
42:18 48:1
48:5,7,22
58:5,7
59:16 61:2
61:9 62:17
63:1 65:21
65:23 67:9
68:12,13
71:8 73:9
82:15 83:8
83:9 88:7,9
89:7 96:3
100:9 102:4
103:1,5
104:2,10,21
105:22
106:9
111:10
114:23
115:2,3,16
115:17
**knowledge**

44:21
**known**
24:9 28:6
59:16 61:14
104:13
119:6
**Kodachrome**
35:11
**Kriigel**
86:1,6
**Kriigel's**
91:1

────────
L
────────

**L**
5:19 7:13
**laboratory**
7:7
**Lamar**
2:15
**large**
29:16 52:16
108:13
112:1,15
**larger**
102:24
107:10
**Larry**
65:14,19,20
**late**
9:18 22:15
**law**
76:11
**layers**
24:8
**lead**
89:11
**lecture**
11:7,10
106:5
**left**
64:23 97:20
**legs**
82:16
**length**
79:21
**lens**

84:12
**letter**
10:3
**let's**
9:5 10:11
21:19 23:21
23:21 26:13
38:10 46:4
52:3,19
54:7 93:7
98:19
**libraries**
42:25
**licensed**
9:14
**licenses**
9:9
**life**
35:17,18
73:23
**light**
18:20 36:10
76:4
**likelihood**
62:10
**limit**
88:22
**limitation**
29:10
**limitations**
29:5
**limited**
64:12 89:10
89:11
**line**
23:5,5,9
74:5 89:15
97:15 118:3
**list**
39:6,7,7
42:12,13
48:22 59:4
90:1
**listed**
59:6 110:9
110:10
**lists**
86:24

**literature**
28:12,22
38:14,15,16
38:17,18,20
38:21,23,24
39:8,20
61:5 62:12
63:9,15
64:1,3
**little**
17:22 18:2
22:24,25
23:12 35:12
37:18 69:24
98:20
103:13
**LLC**
120:15
**local**
21:3,6
**log**
46:8 48:16
49:16 50:7
50:11,11
53:11 101:3
114:1
**logged**
53:7,17,20
87:11
**logging**
113:24
**long**
22:11,12
28:10,20
96:3
**look**
18:15,24
21:12,14,15
22:5 32:11
35:15,17,18
36:4,9
37:15 46:2
52:3 56:18
56:24 61:18
66:9 73:16
77:22 82:15
83:1 85:13
99:11,13

104:11
107:19
**looked**
24:25 71:16
91:19 105:8
**looking**
18:14 23:12
35:15 57:24
75:10 82:13
82:20 86:3
92:9 96:4
99:6
**looks**
37:22 52:8
73:18 87:1
**lose**
107:23
**losing**
20:23 108:1
**loss**
25:5 36:6,12
36:16 91:11
94:22 96:24
99:7
**lossey**
24:20 70:4,9
73:1 76:16
76:24,25
79:3 80:14
80:15,22
81:5 82:2
85:8,8 99:3
**lossless**
24:19
**lost**
28:2 34:2
70:3
**lot**
21:11 44:8
46:12 57:25
**low**
20:9 64:15
99:12
107:17,21
**lower**
32:21 65:1
**luck**
89:18


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

133

lung
 22:2,2,9,9
  22:10
lungs
 21:14,16,17

——————— M ———————

M
 3:13
machine
 34:22,23
Machinery
 9:3
magazine
 18:8
magazines
 17:22
magnify
 18:21
mail
 13:13
making
 26:22 47:7
  47:11 77:7
  77:10 93:21
  97:21
  108:25
man
 86:12
manipulate
 18:11
manipulating
 20:1
manipulation
 85:10
manner
 92:22
manufactu...
 34:19
Marital
 10:23
mark
 3:13 5:9
  106:11,12
marked
 4:13 37:16
  52:4 65:25

 73:16 86:14
  106:8 116:9
marks
 31:8
masking
 38:23
master's
 6:8,16 11:3
  12:7,18
  13:24 14:9
  14:11
materials
 13:13
matter
 25:7 81:13
  81:16 82:17
  82:18,22
  95:2,3
McHugh
 1:14 3:7 4:5
  4:7,9 11:23
  12:1 13:22
  13:23 16:25
  17:3 33:14
  37:11,13
  40:16 55:22
  55:23 59:13
  62:2 68:14
  68:15,16,17
  68:18 72:11
  72:15 79:8
  80:8 81:12
  85:16,17
  90:24,25
  92:12,14
  94:4 97:5
  106:8,16,19
  106:23
  110:20,23
  116:1,8,13
  116:20,24
  117:2,7,9
MD
 1:11 2:8,11
  5:8,13
  119:1,3,6
mean
 23:24 24:25

 34:14 36:2
  52:15 63:20
  69:19 71:6
  74:16 77:17
  82:12 89:19
  95:6,18
  96:19
  101:17,22
  102:23
  104:15
meaning
 56:19
means
 19:22 30:6
  33:10 35:9
  40:20 64:5
  80:18 96:20
meant
 69:22 92:18
measurement
 95:7,16,18
  96:2
measurements
 33:23 96:4,5
mechanical
 34:13
medical
 6:2 7:3,4,20
  8:1,16 9:1
  22:13 24:23
  28:19,21,23
  57:7 62:11
  77:15 91:19
  93:21
  105:15
  113:3,4,5
medicine
 6:1 8:4,7,15
  9:14,19,23
  10:20 28:9
  54:12,17,19
  54:21
Meeting
 106:1
megapixel
 107:25 108:1
megapixels
 108:2,4,5

member
 8:21 66:18
  66:24
members
 35:14
mention
 42:15
mentioned
 69:18 96:9
merely
 40:24 101:8
merit
 57:10
met
 53:3
method
 19:14,21
  22:17,22
  28:16,21
  31:19
methods
 19:25 21:2,4
  22:5 61:10
  67:16,24
mic
 13:21
microbiology
 5:24
microscope
 7:14
microscopy
 7:10,12 15:9
  15:10
mid
 22:15
middle
 98:21
Milam
 3:11
military
 6:25 9:19,23
  11:6
millimeter
 25:18 26:11
  26:16,18
  32:7 33:21
  47:12,20

 49:18 50:9
  72:2,18
mine
 69:11 106:8
  112:22
minimum
 74:1,25 75:6
  78:2,18,24
  80:10
  108:10
minute
 6:12,13 19:3
  22:6,8
  73:15 97:5
mission/i...
 83:21
misunders...
 112:16
modification
 24:8 35:20
modified
 19:16 35:8
  42:22,24
modify
 18:24 42:23
  46:3 89:15
Molecular
 7:1
months
 46:2
morning
 12:1,2 37:13
move
 18:22 20:11
  20:12 21:13
  21:16,22
  22:8 90:24
  109:13
moving
 10:16 90:25
MPA
 1:11 2:8,12
  5:8,13
  119:1,3,6
mugshot
 79:18
multiple
 29:18 69:8



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

134

multiply
20:12

_____
N

N
3:1 7:13
name
5:9,18,18
19:21 39:23
43:3 44:2
105:3,4,5
119:8
names
14:15
narrower
33:8,16
96:16
Nashville
6:1
nation
113:14
National
9:1 77:15
native
25:5
nature
16:5 37:2
60:18
near
59:4
nearby
115:20
necessary
32:10 49:1
101:5
need
18:17,17
48:19 49:2
50:14 68:15
79:24 93:11
101:3
107:11
needs
102:15 106:2
negative
34:6 35:25
36:4,5,9
neither

28:6 120:5
network
8:9,10
never
11:17 31:21
68:21 69:12
73:24 99:11
99:13,13
News
9:16,17
nice
35:15
noise
91:10
nonspecific
31:9
nontradit...
51:18,25
52:1 53:23
54:1,10
56:2,11,12
56:15 57:2
91:2,14
normal
73:22
normally
64:18
North
3:16 6:3 8:2
8:20 9:15
103:10
113:3
Northeastern
8:20
Northwest
8:2
notary
5:15 119:12
120:3,12,14
noted
75:18 119:2
notes
71:11
notice
19:1 22:20
22:22 62:8
62:10 94:15
notices

17:20 18:9
noting
20:5
November
120:9
number
10:16,18,23
20:5,18
31:1 41:1,2
41:5,6
48:11 53:5
58:1,8,16
59:4,8
85:15,19
87:14 96:20
96:22
101:24
106:16
116:10,14
numbered
40:24
numbers
38:3 116:25
numerous
20:1 24:8
29:17,17
31:6 82:20
82:20
102:23
112:20
113:6

_____
O

O
5:19 7:13,13
oath
5:6 119:7
object
17:1 39:7
55:20 59:12
68:9 79:5
90:22 92:10
110:18
objection
11:22 29:22
30:1 116:12
116:16
objections

5:11
obvious
19:24,24
20:15 23:1
23:11 62:5
62:6,8,9
obviously
25:1 48:9
52:17 58:6
65:17 66:23
67:6 68:1,3
73:4 75:25
84:17 87:22
occasionally
84:10
occasions
11:16 31:1
occur
80:22
occurred
29:14 30:23
October
2:16 5:2
Oddly
16:18
offer
11:21 106:7
106:14,14
116:20
offered
117:3
offering
116:22 117:2
117:3
offers
116:8
office
1:14 3:4,10
3:16 5:10
7:3,19
109:14
113:4
119:10
120:9
officer
7:24
offices
2:14 113:3,5

113:6
oh
6:12,13 8:8
10:15,16
16:22 22:6
22:8 23:13
60:25,25
81:21 86:6
87:2 89:6
99:1 106:20
115:7
116:22
117:8
okay
7:17 10:10
10:14,16,17
11:15 12:10
13:7,8,19
14:4,24
15:2 16:3,9
16:11,15,21
16:24 17:1
17:4 19:14
20:10 21:3
23:2,3,15
24:7,18
25:22 26:1
26:8,10,15
26:24 27:10
27:15 28:1
28:23 29:5
29:9,12,22
30:20,25
31:4,14,18
32:4 33:7
34:2,6
36:12 37:9
37:20 38:3
38:8,12
40:17 41:2
41:8,14,24
42:2,7,10
42:15,19,23
43:5,8,15
43:18,21,24
44:2,6,11
44:14,19,23
45:2,5,19



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

135

46:8,10
47:18 48:1
48:6,9,21
49:6,15
50:5,7,12
51:3,9 52:3
52:7,15,19
52:21 53:14
53:22 54:8
54:25 55:8
55:22 56:1
56:11,17
57:4,19
58:12 59:3
59:7,24
60:2 62:16
63:10,14
64:8,10,24
65:5,24,24
66:8,18,23
67:2,5,9,13
67:20,22
68:5,15
69:6,12,24
70:9,12,16
70:19,24
71:20,22,23
72:1,21,25
73:4,8,15
73:19,22,25
74:5,10,15
74:17,17,23
75:5,9,14
75:17,23
76:1,9,14
76:18,22
77:7 78:7
78:14 79:16
79:23 80:1
80:25 81:12
81:15 82:9
82:12,14
83:3,7
84:19 85:5
85:7,13
86:7,12,14
86:18,22
87:2,8,17
88:15,20

89:1 90:6
91:13,17,17
91:22 92:2
92:8,12,19
93:4,8,19
93:23 94:11
95:10,12,12
95:18,23,24
96:1,2,4,9
96:24 97:4
99:18
100:19,20
101:2,11,25
102:11,14
102:15,22
102:23
103:4 104:7
104:9,10,23
105:16
106:3,6,13
106:20,23
107:6,20,21
108:24
110:6,11,20
111:7,12
112:1,14,16
112:20
113:15,19
113:20,24
114:20,22
115:6,12,25
116:2,25
117:8
**Oklahoma**
5:24
**Old**
9:4
**Oliver**
1:11 2:8,11
5:8,13,19
5:20 11:21
12:1 17:6
37:15 97:8
105:8
106:21,24
116:11,15
119:1,3,6
**once**

24:22 60:7
62:22 87:25
89:19
**Oncology**
10:22
**ones**
48:8 50:2
100:10
**Open**
12:16 13:8,9
**operating**
74:1,11
75:11 80:10
80:11
**operations**
74:2,8
**opinion**
51:1 67:25
68:10
108:13
**opportunity**
73:17 79:22
**opposed**
62:14
**optical**
34:13
**order**
18:11,13,24
41:10,12
49:13 56:22
57:9 61:17
63:8 87:24
88:1 90:7
90:12,13,17
**ordering**
87:25
**organization**
109:21
**organizat...**
8:22
**original**
1:12 19:2,5
19:12 23:10
23:12,18
24:1,5,8,11
26:11 27:7
30:3,4,16
31:12,15,20

33:20,20
36:25 37:7
49:18,20,21
51:4 53:5
53:17 56:8
56:10,19
72:2 87:6
91:24 92:23
92:24 93:1
93:5 94:5
**originally**
21:8 33:12
**originals**
31:22 50:18
50:19 51:5
56:7,25
57:14,22
91:19,23
92:4,9,15
92:17,20
93:12,20,24
**outlines**
86:19
**outlining**
38:6
**output**
103:14
**oversaturate**
35:13
**oxymoron**
77:18

_____
             **P**
_____
**P**
3:1,1 85:16
116:9
**PA**
1:16 3:6
**packages**
12:12 42:14
102:24
**packet**
38:20 65:15
65:16 86:5
**page**
4:3 29:14
31:5 40:7
52:20 66:5

66:10 75:12
75:17 83:15
86:3,19
90:25 118:3
**pages**
53:25 120:3
**paint**
23:6
**pale**
35:15
**paper**
34:12,19
65:14
**paragraph**
54:9 76:10
81:2
**parameter**
50:11
**parameter...**
51:23
**parameters**
46:6,8 48:16
89:8,11,16
89:23 90:2
90:20
101:12,18
101:24
113:25
114:2
**park**
115:21,24
**parsed**
85:21
**part**
11:8 14:7,11
16:6 20:22
20:22 21:25
26:14 42:21
44:9 52:14
52:20 56:12
56:15 57:2
57:4 58:13
81:9,11,21
103:10
110:12
**particular**
17:14 19:9
30:13 36:21



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

136

38:1 44:16
44:20 49:3
59:14 60:22
62:16 63:10
64:13,13
66:8 68:24
76:18 78:7
86:9 89:10
90:7 92:2
109:21
114:3
**particularly**
25:8 32:19
32:24 33:11
34:20 35:4
35:10 68:25
99:5
**parties**
120:6,7
**parts**
57:19
**pass**
37:10 103:13
103:14
106:21
**pathologist**
7:1 48:13
**pathologists**
9:6 10:8
25:11 58:17
78:1,14,23
111:18,19
112:22,24
113:10
**pathology**
6:5,6,11 7:1
7:2,6,23
8:5,11,13
9:7,10
10:20 11:12
11:21 14:23
15:3,4
43:11 58:14
61:1,10
79:12
**pattern**
20:13 31:9
34:25

**PATTI**
3:18
**peer**
28:18 38:10
38:13,15
44:21
**peer-review**
38:15
**peer-revi...**
28:12 38:9
38:17,18,20
38:21,22,24
39:4,8,19
41:20 43:24
**Pennsylvania**
1:15 3:4
**Pentagon**
10:2,6
**people**
7:15 18:15
18:24 21:10
21:24 35:7
35:14 41:9
44:8,16
46:21 48:19
86:1,2
98:14 103:3
104:20
107:22
115:8
**perceivable**
35:2,3,3
**percent**
15:1,2 16:21
16:23 62:4
**perceptional**
23:8
**perceptual**
18:14
**performed**
58:2 63:11
65:1
**performing**
101:5
**period**
6:18 8:9
16:3
**permits**

97:14
**permitted**
40:14
**permutations**
114:25
**person**
18:8 87:18
90:10 104:6
119:8
**personal**
44:9 59:1,3
**personally**
119:6
**personnel**
74:7
**petechia**
111:24
**Petitioner**
1:7 3:3
116:8
**Philadelphia**
1:15,16 3:5
3:6
**photo**
11:1 24:9
32:7 33:21
37:1 79:17
79:17
**photograph**
19:9 33:23
56:19,20
71:9 97:19
98:22
100:17
109:2
**photograp...**
100:8,10
**photographic**
25:24 29:1,2
31:19 32:19
32:19 34:2
34:16 50:25
53:9 74:2,8
83:18
**photographs**
17:9,12
25:15 29:3
29:3,4,6

30:16 31:6
31:16 47:12
47:15,20,21
47:25 48:23
49:7,19,20
50:9,20
61:7 71:13
72:6 73:2
77:6,8
78:10,15
79:12 81:6
82:3 91:24
97:2,13
98:14,15
100:4
112:25
**photography**
22:14 55:2
75:1,11
77:12,13
**photos**
17:8 23:19
25:18 26:11
26:16,18
31:12,20,22
71:3 72:7
72:14 73:3
76:20 98:6
**Photoshop**
115:9,10
**physical**
102:20
**pick**
89:2
**picked**
46:6 101:11
**picking**
77:10
**picture**
18:1,1,21
84:11
107:18
112:5
**pictures**
17:23,24
35:14 84:9
112:9
**piece**

106:9
**Pieternelle**
3:22
**pipeline**
33:4 34:13
**pixel**
98:20,23
99:2,4
**pixels**
20:5,19,24
20:25 65:3
95:3
**Pizer**
6:10 14:18
**place**
22:5 49:3
89:12,16,24
90:19
102:12
**placed**
5:5
**please**
5:18 37:21
41:20
**pleasing**
35:8
**plug-in**
115:9
**plus**
104:19
**point**
27:13,23
30:9,25
32:9 37:23
38:7 49:12
67:7,14
68:3,10
70:17 71:11
79:24 81:19
86:10 88:13
88:17 91:1
93:14 94:7
94:20,21,24
95:10 96:6
**pointed**
93:12
**pointing**
50:19



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

137

points
81:1
POISU
81:3
portion
54:3 72:25
85:18
position
52:24 86:19
87:4 88:10
88:15
possibility
80:22
possible
76:17 109:8
potential
24:10
Power
27:13,23
30:9 37:23
38:7 49:12
67:7,14
68:3,10
70:17 71:11
86:9 88:13
88:17 91:1
93:14 94:6
94:20,21,24
95:10 96:6
practical
25:13,14
111:16
practice
9:14 52:23
77:20,21
78:1
prejudice
29:23
premarked
117:4
present
3:20 8:12
17:19 18:6
27:22,23
31:15 68:7
presentation
19:8 22:18
27:13 29:24

30:9 36:8
57:10 67:7
67:14 68:6
68:11 71:18
88:21 91:1
92:3,4
93:14 94:7
105:9,13,15
105:20,23
presentat...
85:22
presented
53:15 58:3
85:23 86:1
86:2 87:14
presenting
57:20
preserve
83:18
preserved
53:5 87:6
presume
108:22
presumes
60:7
pretty
69:7
previous
27:24
previously
11:11
primarily
7:8,20 32:8
98:12
primary
12:6 14:24
25:13
principal
37:5
principle
81:13,16
print
24:11 32:14
32:15 34:16
34:21 36:13
37:22,24
96:23
printout

67:7
prints
25:1,2,24
26:6,9 27:8
30:3,4,7
34:8,8 36:1
37:7 47:14
47:20 49:19
50:3,4,9,25
72:2,8,18
99:24 100:3
100:7,14
private
16:8,11
Prize
9:19
probably
16:22 89:6,6
problem
17:19 20:21
23:3,5,7
38:6 106:12
problems
17:18 21:9
procedure
24:4 74:11
80:11 81:9
81:11 82:4
proceed
5:12
proceedings
5:1 10:24
process
12:5 14:21
14:22 15:17
15:22 25:18
34:7,17
39:13,25
41:25 53:1
58:15 83:18
84:13 87:18
89:10,20
90:15
103:17
processed
60:10,12
87:15 88:18
processes

21:3 54:10
54:25
processing
4:16,17,22
6:9 7:7,8
7:19 10:4
11:8 12:12
12:20 15:18
44:10 46:14
46:15 51:15
52:10,23
53:7,12
65:16 66:3
66:16 86:23
87:11,17
88:4,17
101:4,7
105:9
produce
34:8
produced
53:16 99:21
profession
113:18
professional
6:23,24 8:21
9:8 73:23
professio...
11:6
professio...
9:17
professor
8:4,5,13
program
14:9,12
44:13,16,20
58:14 96:6
103:4
programming
6:19,20
12:12,15,15
12:16 13:9
programs
6:18 13:16
102:19
103:13
promulgated
45:10,15,24

63:2
properly
104:18
prosecution
16:18,23
prosecutors
110:2
protection
7:21
protocol
37:25 38:8
38:10,12
39:3,18
40:4,9,17
40:18,19
42:5 45:6
54:3 58:24
60:21 61:16
62:17,19
63:3 69:18
87:23 89:2
89:4 101:3
protocols
42:12,16
48:23 51:17
90:2
proved
119:7
provide
85:20 102:24
103:5
provided
53:2 76:19
86:24 89:25
92:3
provides
33:5 61:3
public
43:16 46:1,2
46:3 119:12
120:3,12
publication
28:18,20
publications
9:10 10:14
10:15
published
10:15,18



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

138

44:3 45:23
105:5,7
**pull**
107:15,16
**purpose**
17:13,13
78:3
**purposes**
50:12 106:9
119:9
**put**
40:25 41:1
103:12
**putting**
55:8 102:5
**puzzles**
17:22
**P-127**
4:15 52:4
**P-181**
37:16 45:8
58:24 59:15
90:3
**P-182**
4:17 66:1
**P-183**
4:18 73:16
80:12
**P-184**
4:19 86:15
105:18,18
**P-185**
4:21 116:9
**P-186**
4:23 116:13
**p.m**
2:17 117:11
**P.O**
3:11

___

**Q**

**QA**
58:15
**qualifica...**
17:2
**qualified**
11:12

**quality**
33:3 58:13
75:20 77:2
**quarter**
64:21
**queried**
112:24
**question**
15:12 17:25
24:17 25:7
40:15 59:24
60:4 61:13
63:1,22
82:16 97:16
97:16 101:6
107:14,18
108:3
111:12,16
**questions**
4:3 11:23
55:16 92:13
93:9 94:18
97:9 106:24

___

**R**

**R**
3:1,13 5:8
5:19 118:1
118:1
**Raleigh**
113:4
**range**
76:4
**rate**
24:10,14,15
59:14,16,17
59:18 60:4
60:14,21
61:4,15,15
62:17 63:2
63:18 64:2
64:4,5
65:10,12
69:13,14
**rates**
68:19
**ratio**
33:18

**reach**
56:23
**reached**
72:1
**reaching**
47:18
**read**
74:24 81:17
119:1
**reading**
18:8 41:11
**real**
19:3 35:17
35:18
**reality**
35:6
**really**
77:19 98:3
**reason**
25:14 40:24
41:3,4
49:15 50:13
70:20,22
97:11
107:22
111:18,19
114:1
**reasonably**
75:3
**reasons**
25:13 76:10
81:3,3 98:8
**recall**
14:15 16:1
**RECEIPT**
1:12
**received**
5:23 6:1,8
6:15 9:15
10:1,2 12:4
12:4,11,22
25:1,8,24
26:19 47:17
47:23 70:6
**receiving**
13:13
**recess**
80:4

**recognition**
33:25 95:7
95:13,24
**recognize**
109:19
**Recommend...**
4:15 52:9
**record**
5:4,18 29:13
46:8,16
48:16 50:10
66:1 80:3,7
116:4,5,7
116:18,19
**recorded**
96:21,23
**records**
71:10
**recruited**
8:3
**red**
35:15
**redder**
35:12
**redirect**
107:1
**reduced**
99:15,16,17
**reduces**
77:2 85:9
**refer**
65:14 117:5
**reference**
65:18
**referenced**
116:10,14
**referred**
92:17
**referring**
31:4 59:1
80:15 93:16
**regard**
35:24
**regarded**
28:7
**regarding**
10:6 64:17

**regardless**
88:16 90:17
**region**
114:6,8,9
**regional**
8:1 113:5
**regions**
21:3,6
101:20
**Registration**
120:16
**regular**
15:3
**regulate**
74:6
**regulated**
28:7
**related**
6:21 11:2
120:5
**relates**
11:1 35:25
**Relating**
6:20
**relative**
19:23 107:13
107:14
120:6
**relatively**
107:21
**reliability**
32:6 33:19
**relied**
72:2,4 99:20
**rely**
47:19 49:17
71:24 72:25
74:11 94:8
**remaining**
65:1
**remember**
29:25 33:12
35:5 50:3
51:13 59:6
59:9,10
95:8 96:12
105:5,23



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

139

| | | | | |
|---|---|---|---|---|
| 113:11 | 107:17,21 | 30:14,14,15 | 98:5,17,21 | **Russell** |
| **remind** | 107:23 | 33:17 35:24 | 98:24 99:18 | 1:11 2:8,11 |
| 105:25 | 108:1 | 36:7,16 | 102:18,19 | 5:13,19 |
| **remote** | **Respondent** | 37:4,6 38:5 | 103:22,24 | 119:1,3,6 |
| 15:8 | 1:5 3:9 | 39:1,17 | 104:12,19 | |
| **Reno** | **response** | 40:8,22,22 | 104:25 | _____ |
| 10:3 | 32:17 34:12 | 41:18 42:17 | 105:18 | **S** |
| **repeat** | 46:3 112:23 | 44:12 47:7 | 106:6 107:4 | _____ |
| 87:19 90:15 | **result** | 47:13,15 | 107:17 | **S** |
| **repeatedly** | 34:16 36:17 | 50:1,9,15 | 108:21 | 3:1 108:22 |
| 62:12 | 36:19 53:15 | 50:20,21 | 109:1,6,9 | 118:1 |
| **replace** | 87:14 94:20 | 51:1,7,10 | 109:24 | **SALINAS** |
| 30:4 | 94:21 | 52:2,15,19 | 110:1,3,5 | 3:18 |
| **report** | **resulted** | 53:17,18 | 111:23 | **save** |
| 27:14 31:5 | 29:16 | 54:6,12,14 | 112:4,8,11 | 48:21,23 |
| 58:11,15 | **results** | 54:15,18,22 | 113:11,13 | 49:6 83:23 |
| **REPORTED** | 104:14 | 55:13,14 | 113:23 | **saved** |
| 3:24 | **review** | 56:3,6,21 | 114:5,7,10 | 53:20 |
| **reporter** | 17:8 28:18 | 56:24,25 | 114:10,24 | **saw** |
| 2:13 5:6 | 38:13,15 | 57:6,15,18 | 115:15,19 | 7:16 27:24 |
| 120:2,12 | 44:21 73:22 | 58:10 60:11 | 117:10 | 36:23,25 |
| **represent** | 85:21 91:25 | 60:13 62:14 | **risk** | 50:25 |
| 35:6 | **reviewed** | 63:17 64:8 | 67:20,25 | **saying** |
| **represent...** | 47:9 58:10 | 64:23 65:6 | 68:12 | 55:10 68:24 |
| 92:6 93:3 | 70:15 73:24 | 65:18 66:13 | **Robert** | 77:25 78:21 |
| 94:17 97:24 | **reviewing** | 66:16,21,22 | 105:1 | 79:2,18 |
| **represent...** | 48:20 | 67:8,11,12 | **ROBERTS** | 83:23,25 |
| 50:24 94:3,9 | **reviews** | 67:14 69:2 | 3:13 | 84:1,2,20 |
| **represented** | 38:10 | 69:16,19 | **Rodney** | 84:21,25 |
| 98:15 | **Richard** | 70:4,7,10 | 10:4 | 85:1 89:18 |
| **reproduce** | 85:24 | 71:2,3,5,14 | **rosy** | 90:19 92:25 |
| 114:2 | **right** | 72:5,17,19 | 35:15 | 93:2 107:10 |
| **reproduced** | 5:7,20 6:22 | 72:20 74:19 | **Rouse** | 107:12 |
| 53:16 | 8:8,21 9:8 | 75:7,15 | 25:4,4,9,18 | 108:8 111:4 |
| **reproducing** | 9:24 10:25 | 76:14 78:8 | 48:3,7,13 | **says** |
| 32:6 | 11:11,19 | 78:11,16,19 | 50:1 58:2,4 | 31:25 55:24 |
| **require** | 12:21 13:17 | 79:3 80:12 | 58:16,18,18 | 66:21 68:3 |
| 33:5 | 13:22 14:2 | 80:15 81:14 | 72:10,16,19 | 68:4,12 |
| **required** | 14:15,20 | 81:19 83:13 | 82:21 99:21 | 76:2 80:14 |
| 51:15 | 15:15,24 | 86:8 87:6 | 100:9 | 85:6 86:22 |
| **residency** | 16:13 17:11 | 87:13,15,24 | **Rouse's** | 91:5 109:7 |
| 6:5 | 17:17 19:7 | 88:14 89:21 | 71:3 | 111:13 |
| **resolution** | 19:18 22:11 | 90:8,9 91:6 | **Rule** | **scale** |
| 32:10,15,18 | 22:16,21 | 92:4,5,9,16 | 30:1 | 20:5 21:23 |
| 32:23 33:5 | 24:3 25:17 | 92:20 93:15 | **run** | **scan** |
| 65:1 99:12 | 26:4,10 | 94:4,9,13 | 104:13 | 21:11 |
| 99:17 106:1 | 27:1,5 | 94:23 95:2 | **running** | **scanned** |
| | 28:13 29:24 | 95:19,22 | 69:5,10 | 71:13 |
| | | 96:17 97:21 | | **scanner** |
| | | | | 32:6 96:21 |


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

140

**scanners**
33:15 96:16
**scanning**
96:13 97:1
**scans**
21:9,9
**scars**
31:8
**scene**
25:19 34:7
84:7,13
85:3 100:22
**scheduled**
69:4
**Schenk**
31:14,18,21
70:2 96:10
**Schenk's**
24:7,18
26:10 28:1
28:13,16
31:4 33:7
**school**
5:25 6:6 8:4
8:6,14 14:6
**science**
6:7,9,21,22
11:4,5
28:21 52:24
66:24
**Sciences**
9:1 10:19
11:10 66:4
**scientific**
8:10 24:19
45:9 54:11
**scientist**
67:2 111:10
**scope**
74:23,25
**seal**
119:10 120:8
**Sean**
3:22
**second**
56:22 75:12
75:17 86:19
88:3 105:5

**section**
67:6
**see**
7:16 9:5,5
10:11 18:16
21:13,17,21
27:20,20
31:11 34:15
35:7 36:5
36:25 37:4
54:7 62:7
67:18 73:9
75:12 82:22
83:15 86:20
87:2 91:2
97:22
104:11,14
**seeing**
29:7,7
**seen**
36:14
**self-expl...**
68:12
**seminar**
67:10
**send**
90:18
**sense**
51:19 62:3
92:21
111:16
**sensing**
15:8
**sensitive**
76:3
**sent**
25:19 26:6
72:10
**sentence**
74:23,24
76:2,2,9,22
80:13
**separate**
64:14,15
**separated**
51:21
**separately**
39:15

**sequential**
38:12 40:8
40:17,19,20
**serve**
8:16,19
**services**
8:6,14 74:8
**session**
68:3,24
**set**
25:24,25
72:18 99:13
102:12
**sets**
25:23 26:2
48:4 72:13
100:4
**setting**
54:19,23
79:14
**seven**
62:19,21
63:3,4,5,6
63:7,11
**Sex**
10:23
**shared**
99:21
**sharp**
64:16
**shift**
33:18
**shooting**
76:25
**Shoreline**
3:16
**Short**
80:4
**shorthand**
2:13 120:2
120:12
**show**
21:25 32:18
50:21 52:4
61:19 65:24
66:9 69:11
71:6 97:19
113:2

**showed**
33:4
**showing**
51:5,6 66:9
71:8
**shown**
62:12
**shows**
98:20,20
113:1
**side**
17:23,23,24
17:24
**signature**
1:12 119:1
**significance**
103:25 104:2
**significant**
58:8
**significa...**
32:21 58:1
**silver**
35:1 55:1
**similar**
89:24 115:1
**simple**
63:1
**simplest**
20:7 104:13
**simply**
13:13 20:4
33:25 41:4
57:7 85:21
89:15
102:11
**simultane...**
6:4
**single**
29:19,21
75:18 76:4
**singular**
29:18
**Sir**
5:17
**situation**
24:9 32:21
33:1

**situations**
103:21
**six**
46:1
**size**
64:21 82:21
97:16 98:2
99:6 101:20
107:4,13
111:5,8,21
112:12
114:4,7,8
114:14,22
115:18
**skirt**
18:2
**slide**
86:4,10
**slides**
37:22 48:11
**small**
36:19 64:11
82:21 112:1
112:4,6,15
**smaller**
80:20
**smile**
9:5
**Society**
9:7
**soft**
22:2,2
**software**
13:5,6 41:24
42:2,4,7,10
42:11,14,17
42:19 43:3
43:8,16,19
43:21,25
44:6,12,24
51:14 102:2
102:3,6,10
102:20,24
103:14,15
103:22
104:1,1,16
104:18,23
114:24


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

141

115:3,16
**sold**
43:15
**Solutions**
2:15 120:15
**somebody**
89:2
**somewhat**
96:22
**SOP**
4:18 73:18
  100:6
  108:18,20
  109:1,20
  110:18
**SOPs**
75:24 80:10
  109:20
  110:8,14
**sorry**
6:13 9:6
  10:16 13:22
  61:24 69:3
  74:19 81:14
  81:19 86:25
  90:2 106:20
  116:20
**sort**
17:21 18:18
  32:18 36:2
  36:2
**sorts**
18:23 29:4
**sound**
106:4
**source**
33:22
**Southern**
1:3 5:10
**space**
64:12
**speaks**
55:21 110:19
**specific**
12:17 24:14
  44:9 59:9
  64:17 85:21
**specifically**

12:23 58:24
  65:9 79:2
  84:6 109:15
**specifics**
59:10
**spectrum**
33:9
**spell**
5:18
**spending**
7:22
**SPIE**
10:24
**square**
115:19
**stabilized**
33:2
**staff**
6:25 100:8,9
**stand**
97:23
**standard**
15:3 24:19
  24:20 51:23
  74:1 75:11
  75:19 77:2
  77:12,14,16
  77:18,20,21
  78:9,22
  80:9,11
  81:9,11
  97:12,14
  98:6 107:2
  107:3,11
  109:22
  110:16,16
  110:23,25
  111:3,4,4,7
  111:9,14
  112:18,19
  113:6,17,23
**standardized**
102:11
**standards**
45:6 78:18
  108:8,9,9
  108:10,14
  109:19,20

  113:8
**start**
5:21 26:14
  52:19 89:3
**starts**
75:14
**state**
2:13 5:17
  6:17 48:25
  76:15 78:4
  88:17,24
  119:4,13
  120:1,3,13
**stated**
32:17 73:5
  94:20 120:3
**statement**
24:13 31:25
  55:5 81:15
  81:24 85:7
  91:8
**states**
1:3,4 3:10
  3:16 5:9
  17:7 54:9
  67:20 85:2
  88:21
  109:15
**stating**
87:4
**step**
35:19 39:18
  62:20 90:11
  90:11
**steps**
49:16 53:7
  53:12,17,20
  56:3 59:15
  61:16 62:19
  63:3,4 65:5
  65:8 84:22
  84:23 87:11
  87:17 101:4
  102:12
  104:4,4,5,5
  104:7
  109:12
**Steve**

6:10 14:18
**stop**
10:16 77:17
**stopped**
80:13
**storage**
75:2
**store**
80:21
**stored**
25:19 43:5
  99:3
**Street**
1:16 2:15
  3:5
**strength**
61:20
**stretch**
20:7 40:23
**stretching**
20:11 38:16
  38:18
**strongly**
81:4 82:2
**student**
42:22
**studied**
14:8 62:19
**studies**
32:18 60:17
  61:18,22
  62:11,18
**study**
14:5 32:25
  61:3 64:5
  65:9,11
**studying**
14:13
**stuff**
29:4 56:11
  99:10 103:2
**subcommittee**
88:8
**subcommit...**
81:24
**subject**
34:13 44:20

55:4,11,12
  55:17
**subjected**
28:18
**submitted**
47:24
**subscribed**
119:8 120:8
**subsequent**
14:1
**substitute**
28:2
**suggest**
24:3 27:15
  30:15
**suggested**
27:19 28:18
**suggests**
31:5,14,18
  31:21
**suite**
1:16 2:15
  3:6,11,16
  33:1 113:2
**superior**
75:19
**supplant**
30:3
**supposed**
83:23
**sure**
5:19,23 11:3
  12:25 19:20
  33:24 38:4
  40:16 71:12
  77:18 79:22
  85:25 95:9
  99:18
  105:25
  106:5,25
  107:9
**surface**
80:19
**Surgical**
10:22
**surveillance**
15:7
**SWGIT**



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

142

| | | | | |
|---|---|---|---|---|
| 4:15,20,23 | 100:8 120:6 | **technical** | 104:1 | 22:20 23:8 |
| 45:12 48:25 | **takes** | 32:5 | **testified** | 23:25 30:14 |
| 49:3 51:20 | 19:22 38:22 | **technique** | 5:15 16:12 | 35:1,5 |
| 52:9,24 | **talk** | 22:12 28:5 | 82:21 91:17 | 38:13 41:5 |
| 53:19 55:9 | 34:14 37:18 | 91:15 | 95:8 100:21 | 46:3,12,16 |
| 66:18 75:14 | 46:4 53:22 | **techniques** | **testify** | 49:16 50:7 |
| 75:18,24 | 56:21 59:13 | 53:8,23 56:2 | 74:18 113:16 | 56:22 57:8 |
| 76:10,23,24 | 61:10 62:18 | 91:10 | **testifying** | 57:9 60:1,5 |
| 78:4,12,12 | 69:24 72:12 | **technology** | 16:15 | 60:18 63:5 |
| 86:10,12,19 | 73:8 75:14 | 45:10 74:7 | **testimony** | 63:6,7 |
| 87:4 88:9 | 87:3 96:9 | 75:1 | 27:25 31:7 | 69:11 79:18 |
| 88:10,15 | 107:22 | **telephone** | 99:20,25 | 81:23 103:6 |
| 91:1 97:13 | 109:18 | 107:16 | 108:12 | 103:7 104:8 |
| 101:3 | **talked** | **television** | 113:15 | 104:12 |
| 105:22 | 27:3 77:8 | 99:13 | 116:11,15 | 109:11 |
| 107:3 | 107:1 | **tell** | **testing** | **think** |
| 110:23 | 113:24 | 11:15 12:23 | 60:17 61:8 | 4:19,23 9:18 |
| 111:3,4,8 | **talking** | 14:17 38:9 | **Texas** | 29:13 33:10 |
| 111:13 | 23:14 24:11 | 41:15,20 | 1:3,22 2:14 | 45:9,24 |
| 113:13 | 32:13 44:6 | 48:17 49:19 | 2:16 3:12 | 55:20,22 |
| **sworn** | 45:7 46:12 | 65:10 73:16 | 3:17 5:10 | 59:11 68:11 |
| 5:14 120:8 | 47:3 49:22 | 85:18 92:8 | 120:1,3,13 | 70:18,21,22 |
| **synopsis** | 61:1 62:20 | **telling** | **textbooks** | 79:5 82:6 |
| 73:25 | 62:21 63:18 | 56:11 78:21 | 99:12 | 94:19 103:3 |
| **System** | 71:18 72:9 | 93:23 | **Thank** | 103:3 |
| 4:16 52:11 | 72:22 78:14 | **tend** | 18:4 37:11 | 104:14 |
| **systems** | 78:18 79:9 | 35:13 64:14 | 117:10 | 105:22 |
| 13:2 33:11 | 80:14 81:25 | 64:15 69:8 | **Therapy** | 110:21 |
| 42:3 | 83:14 84:6 | 89:11 | 10:23 | 114:7 |
| | 90:14 96:12 | 111:19 | **they'd** | **thinking** |
| **———— T ————** | 101:2 108:7 | 112:25 | 114:11,11,17 | 69:3 |
| **T** | 109:23 | **Tennessee** | 114:22 | **third** |
| 118:1,1 | **talks** | 6:1 | 115:2,5,11 | 66:10 |
| **take** | 38:23 83:15 | **tenured** | 115:13,16 | **thought** |
| 20:11 21:21 | 91:2 | 8:3 | 115:16,17 | 22:19 107:3 |
| 25:11 35:14 | **tape** | **term** | **thigh** | 111:12 |
| 36:9 52:3 | 80:6 | 111:24 | 97:20,25 | 113:21 |
| 73:15 79:24 | **Targa** | **terrorism** | **thing** | **thousand** |
| 97:19 | 51:15,16 | 7:21 | 6:14 27:2 | 21:20,23 |
| 103:13,14 | **task** | **test** | 32:13 46:19 | **three** |
| 104:13 | 60:9 63:10 | 24:14,15 | 52:18 71:7 | 7:16 13:10 |
| 107:17 | **tasks** | 31:18 101:6 | 81:1 82:13 | 51:22 87:14 |
| 112:25 | 7:7 59:15,25 | 104:16 | 88:3 89:14 | 104:7,11 |
| **taken** | **taught** | **tested** | 98:22 | 107:19 |
| 2:12,14 25:3 | 67:10,23 | 28:17 43:18 | 106:11 | **three-dim...** |
| 25:10 34:7 | 68:6 | 43:22 63:2 | **things** | 7:14,15 |
| 50:1 71:4 | **teach** | 103:19,20 | 12:15 16:5 | **thrust** |
| 73:2 84:22 | 11:7 | 103:23 | 18:16,23 | 19:7 |



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

143

| | | | | |
|---|---|---|---|---|
| **TIFF** | 49:16 | 34:18,18 | **ultimately** | **universally** |
| 51:13,16 | **traditional** | 38:3 51:22 | 19:14 | 109:21 |
| **time** | 51:18 53:8 | 53:7 56:22 | **UNC** | **University** |
| 5:3 14:6 | 55:1 | 57:9,19 | 103:11 | 5:24 6:3,17 |
| 15:17 33:15 | **trained** | 69:4 76:2 | 104:20 | 8:5,7,15 |
| 45:5,11,17 | 15:16,17 | 80:6 81:1 | **uncommon** | 103:10 |
| 49:4 56:19 | 87:18 | 85:25 100:2 | 18:10 | **unknown** |
| 69:5 70:16 | **training** | 100:4 | **undergone** | 24:14 67:20 |
| 75:2,24,25 | 6:18,25 12:3 | 101:18 | 99:4 | 67:25 68:12 |
| 80:2,6 | 12:4,11,23 | 104:4,5,10 | **underlined** | **unnecessary** |
| 81:17 96:16 | 12:25 13:8 | 107:18,20 | 76:15 83:19 | 82:6 |
| 96:25 116:3 | 13:8,15,24 | **type** | **underneath** | **unsharp** |
| 116:6,8,17 | 58:19 61:7 | 7:13 32:20 | 41:5 75:10 | 38:23 |
| **times** | **trainings** | 32:21 69:19 | 76:14 91:9 | **upside** |
| 16:12 33:18 | 13:12,16 | 73:11,19 | **undersigned** | 18:23 |
| 33:18 42:23 | 14:1 | 77:6 78:5 | 120:2 | **use** |
| 42:24 | **transcript** | **typically** | **understand** | 4:15 13:16 |
| **tire** | 29:14 | 76:3 | 25:17 39:16 | 18:19 19:14 |
| 18:2 | **transmit** | | 40:20 44:18 | 21:8 22:13 |
| **tissue** | 80:21 | ――――――― | 47:1 71:10 | 22:17 23:21 |
| 22:2,3 | **tri** | U | 87:18 90:15 | 24:20 27:10 |
| **title** | 33:2 | ――――――― | 102:6 | 27:16 28:11 |
| 65:21,23 | **trial** | **U** | 110:13,15 | 29:23 30:1 |
| **today** | 16:20 29:23 | 16:7 | **understan...** | 30:2,16,20 |
| 90:3 | 31:2 33:12 | **Uh-huh** | 45:14 | 44:8 52:10 |
| **Today's** | 45:5,17 | 12:19 13:25 | **understood** | 52:25 54:19 |
| 5:2 | **tripod** | 26:20 30:8 | 99:19 | 60:5 65:15 |
| **told** | 33:2 | 37:17 39:22 | **underwent** | 65:15 70:12 |
| 51:3 56:6,7 | **trivial** | 39:24 40:6 | 24:9 | 70:14,16 |
| 56:18 90:6 | 17:21 | 50:16 53:4 | **unenhanced** | 74:6 75:1 |
| 92:14 93:11 | **true** | 53:6,10,24 | 26:12,25 | 76:11,24 |
| 93:24 | 36:3 119:2 | 54:4 55:18 | 27:6,6,17 | 77:13,23 |
| **tomography** | 120:3 | 57:1,13,16 | 51:6 56:19 | 78:5 79:9 |
| 21:10 | **try** | 60:19 63:13 | 92:18,21 | 81:5,22 |
| **tones** | 68:17 | 65:7 66:11 | **unfortuna...** | 82:2,7,23 |
| 35:13 | **trying** | 67:4,15,17 | 12:14 36:2 | 88:4 96:6 |
| **TONY** | 41:15 72:11 | 69:9 70:1 | 37:2 38:6 | 97:14 98:19 |
| 3:13 | 108:17 | 72:3 74:4,9 | 68:25 | 98:21 107:5 |
| **tool** | **turn** | 74:13 75:8 | **uniformity** | 108:16 |
| 13:5 | 18:23 102:15 | 80:17,17 | 98:9 | 109:10 |
| **top** | **turning** | 82:1 84:4,8 | **Unit** | 110:7,14 |
| 73:25 | 83:14 | 87:21 91:7 | 74:8 81:4 | 111:6 113:7 |
| **topic** | **turns** | 93:13 95:14 | **United** | 114:5 115:5 |
| 105:16 | 25:11 35:19 | 98:25 100:5 | 1:3,4 3:10 | 115:8,9,11 |
| **total** | **two** | 102:8 | 3:16 5:9 | 115:13 |
| 40:1 | 17:23,24 | 103:18 | 17:7 109:14 | **useful** |
| **track** | 20:13 25:23 | 108:11 | **units** | 26:9 32:24 |
| 11:17 49:13 | 25:23 34:8 | 109:4 | 84:14 | 71:8 100:11 |
| | | 110:24 | | |
| | | 111:2 | | |



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

144

**usefulness**
99:9 107:12
  109:16
**user**
 34:14 103:3
**uses**
 80:22
**usually**
 16:19 35:2
**utilize**
 72:21,22
**utilized**
 42:16 73:5
  77:1
**utilizing**
 46:4
**U.S**
 3:10,15 28:7

———————————
                V
**V**
 5:19
**valid**
 46:24
**validation**
 60:17 65:9
  65:11
**value**
 75:4 77:9
  78:8,19
  109:6,11
**values**
 76:4
**Vanderbilt**
 5:25
**variations**
 80:19 114:20
**varied**
 89:22 101:17
**variety**
 54:11
**various**
 6:18 12:12
  82:21 85:21
  91:18
  103:21,21
**version**

 4:15 24:12
  24:12 27:11
  27:17 36:14
  36:23,24
  49:10,11
  50:20 52:8
**versions**
 30:2,3,21,21
  31:24 49:9
  72:5,8
**versus**
 16:16 17:7
  33:18 64:15
  79:17 95:7
  100:14
  107:2
**vetted**
 45:21,22
  58:15
**victims**
 10:9
**video**
 4:17,21 66:3
  66:15 79:25
  81:4 105:9
**Videographer**
 3:22 5:2
  13:20 80:2
  80:5 116:3
  116:6,17
**VIDEOTAPED**
 1:11
**view**
 32:9
**viewer**
 35:4
**views**
 100:17
**virtually**
 37:3 77:22
  99:25
**visible**
 36:17 82:25
  83:1 108:4
**visibly**
 31:15
**vision**
 6:10 11:4

**visualiza...**
 7:9,9,12
  13:2,5,6
  22:7
**Vorder**
 85:24
**VTK**
 115:13,13

———————————
                W
**wait**
 6:12,13 19:3
  22:6,8 69:1
**waiveable**
 110:17
**wall**
 18:3,3
**Walnut**
 1:16 3:5
**want**
 12:9 21:12
  21:15 32:4
  32:11 35:14
  59:13 61:10
  65:24 69:24
  73:8 79:21
  87:3 91:25
  97:19 99:18
  102:1,5
  103:1 105:3
  106:10,11
  108:25
  113:2
  114:21
**wanted**
 12:3 36:22
  53:22 71:1
  81:1 90:10
  92:6,23
  93:6 94:6
  94:18
  100:24
  101:25
**warfare**
 9:4
**wasn't**
 56:4 87:24
  101:4

**wavelet**
 38:20 64:8
  64:11,11,19
  64:20 65:3
  65:12,15,16
  67:18,24,25
  69:17
**wavelets**
 64:14 68:19
  69:14
**way**
 10:4 12:13
  16:1 35:3
  35:17,18,19
  36:3 64:13
  64:14 89:17
  104:10,13
  104:15
**ways**
 18:11 20:1
  104:11
**well-resp...**
 67:2
**went**
 5:25 6:3,12
  6:25 7:25
  13:15,16
  14:2 23:25
**weren't**
 56:1 92:9
  100:11
**West**
 1:16 3:6
**wet**
 35:22
**we'll**
 76:1 85:14
  106:12
**we're**
 45:7 47:3
  52:16 71:18
  78:14,21
  82:18,20
  108:7
  109:25
  112:5 116:7
  116:19
  117:3

**we've**
 37:16 44:14
  91:13 93:20
  102:6
  110:21
**whatsoever**
 57:10
**whip**
 31:8
**white**
 18:3 21:18
**wider**
 76:3
**William**
 1:11 2:8,11
  5:8,13,19
  119:1,3,6
**window**
 21:22 22:1,1
  22:2,3,6,8
  22:9,10
**windowing**
 21:18
**witness**
 5:5,14 16:9
  18:4 37:10
**words**
 21:19 36:7
  60:1
**work**
 10:1,3 16:6
  24:24 98:16
  104:8
**worked**
 104:22
**working**
 43:2,13 45:9
  87:15
  104:12,18
**workshop**
 4:17,19,21
  4:23 11:8,9
  66:2,12,22
  67:23 68:8
  85:14,19,20
  85:23 86:15
  105:8,21,24
  106:15



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA                    October 28, 2010

145

116:10,14
**workshops**
69:4,8
**worth**
108:2
**wouldn't**
21:24 36:8
  41:10 57:17
  67:22,22
  70:21,22
  89:17
  114:12
**wound**
61:3 97:19
  97:20,23,25
**wounds**
60:22
**wrapper**
115:10,11,14
**wrappers**
103:12,12
  115:3,17
**write**
52:17 103:1
  104:6
**writing**
7:9,15
**wrong**
60:11,13
  92:19 104:8
**wrote**
45:18,19,20
  52:13,16,16
  102:7
  103:22

———————————
**X**
**x-rays**
21:8 28:23

———————————
**Y**
**yeah**
35:18 40:15
  72:11,13
  73:2 79:7
  81:11 90:24
  98:12
  106:12,13

115:22
  116:24
**year**
11:9 66:3
**years**
7:22 11:7
  16:1 42:22
**Yon**
105:3

———————————
**Z**
**Zeno**
66:12 69:13
**zero**
20:8,11
  21:20,21,22
  21:23 104:5
  104:5

———————————
**#**
**#19**
4:17,21
**#6**
4:19,23

———————————
**0**
**03**
54:5

———————————
**1**
**1**
21:23 38:4
  38:10 40:1
  40:7,21
  41:1,5
  52:20 95:4
  95:4 104:4
  104:4
**1:01**
80:3
**1:07**
80:6
**1:46**
116:4
**1:47**
116:7,18
**1:49**
2:17 117:11

**10**
31:10 104:4
  104:5
  107:25
  108:5
**10th**
120:9
**10,000**
98:23,23
  99:4,4
**10-28-10**
1:22
**100**
9:17 98:19
  98:19 99:2
  99:2
**105**
31:9
**106**
4:9
**11**
4:5 31:5
**11:39**
2:17 5:3
**116**
4:21,23
**12**
7:22 11:6
**12-31-2011**
120:15
**1221**
2:15
**127**
117:4
**13-year**
16:3
**1305**
2:15
**15**
62:4
**150**
20:10,12
**1500**
3:11
**157**
95:21
**16**

106:15
**16th**
105:20
**16.56**
96:3
**17**
4:6
**17th**
74:20 105:10
**182**
117:4
**183**
117:4
**184**
117:4
**184256**
1:1
**19**
12:9 106:16
  116:10
**19106**
1:16 3:6
**196**
29:14
**1980s**
22:15 103:9
**1990**
12:9 16:2
**1990s**
9:18
**1992**
10:5
**1994**
105:7
**1998**
9:18

———————————
**2**
**2**
31:5 33:18
  38:4 40:21
  41:2,6
  108:2
**200**
21:21,22
**2002**
4:15 52:8

**2003**
6:15 16:2
  55:6,10
**2004**
33:13,15
**2005**
74:12,14,21
**2007**
31:5
**2008**
69:3
**2009**
68:25 69:2,3
  86:15
  105:10,20
**2010**
2:16 5:3
  69:1,4
  120:9
**22**
8:19,19
**25**
31:8
**255**
20:8,12
**26**
31:8
**28th**
2:16 5:3

———————————
**3**
**3**
33:18,18,19
  38:4,11
  40:21
  120:16
**30**
15:2 47:12
**3022**
120:14
**35**
25:18 26:11
  26:16,18
  32:7 33:20
  33:20 47:12
  47:20 49:18
  50:8 72:2
  72:18 75:19



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

William Russell Oliver, MD, MS, MPA

**3600**
32:7,14
**37**
4:7

**4**

**4**
33:14,18
**400**
113:12
**403**
30:1

**5**

**5**
4:4 29:14
38:4
**5-10-2012**
120:14
**50**
16:21 20:10
20:11
**500**
3:16
**52**
4:15
**540**
1:16 3:6

**6**

**6**
38:4 85:15
85:19 90:25
106:16
116:14
**600**
32:7 50:11
**601**
1:16 3:5
**61129**
3:11
**66**
4:17

**7**

**7**
38:5,10 40:1

40:7
**70**
15:1
**73**
4:18 31:8
**77002**
3:12
**77208-1129**
3:11
**78**
31:8
**780**
95:4,5
**78401**
3:17

**8**

**8**
31:9 108:1,4
**80**
16:22
**80s**
28:14
**800**
3:16
**86**
4:19

**9**

**9**
31:9 62:4
104:5
**9-11**
10:1
**90**
16:22
**919**
3:11
**97**
4:8
**98**
9:19
**99**
9:20



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com