UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

_____ :
                                 :
UNITED STATES OF AMERICA,        :        No. Cr-C-02-216
                                 :        No. Cv-07-223
              Respondent,        :    Honorable Janis Graham Jack,
                                 :           U.S.D.J.
       -against-                 :
                                 :
ALFRED BOURGEOIS,               :        Electronically Filed
                                 :
              Petitioner.        :
_____ :

**PETITIONER'S PROPOSED AMENDMENT TO HIS SECTION 2255 MOTION**

1.     Petitioner files the foregoing Amendment to his already-filed Section 2255 Motion and its prior Amendments.

2.     This Amendment is a supplement to – and does not replace – the prior Section 2255 Motion.

3.     All prior allegations contained in the initial Section 2255 Motion are incorporated as if fully set forth herein.

**This Amendment Is Timely**

4.     Section 2255 provides that the one year statute of limitations begins to run from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2255.  Here, despite diligent efforts to uncover the existence of these documents, counsel did not

learn of the existence of the document and the exculpatory evidence contained within it until the Government's disclosure, mid-hearing, on September 23, 2010. Accordingly, the amended claim is timely under Section 2255.

**AMENDED GROUND FOR RELIEF**

**THE GOVERNMENT VIOLATED PETITIONER'S RIGHT TO DUE PROCESS GUARANTEED BY THE FIFTH, SIXTH AND EIGHTH AMENDMENTS WHEN IT FAILED TO DISCLOSE P-179, WHICH CONTAINS EXCULPATORY EVIDENCE RELEVANT TO THE GUILT AND PENALTY PHASE OF TRIAL AND WHICH SUPPORTS PETITIONER'S CHALLENGE TO THE GOVERNMENT'S ASSERTION THAT SEMEN WAS PRESENT IN THE VICTIM'S RECTUM.**

5.    At trial and during these § 2255 proceedings, Mr. Bourgeois sought the timely disclosure of all exculpatory evidence pursuant to Brady v. Maryland, 373 U.S. 83 (1963).

6.    Nevertheless, it was not until the middle of the evidentiary hearing, on the evening of September 23, 2010, that the Government provided Petitioner's counsel with document P-179.

7.    P-179, entitled "P30 Test Results" indicates that on the three swabs, Q5-Q7, that were subjected to p30 testing by the FBI, the results were "very weak, very weak and weak," respectively.  Within the context of the issues before the Court these results are exculpatory and should have been disclosed.

8.    P-179's notation that the p30 test performed by the FBI lab technicians produced weak results, is critical evidence necessary to attack the Government's

assertion that Mr. Bourgeois sexually assaulted the victim. In addition, in conjunction with the FBI's own serology protocols, P-180, demonstrate that the Government's evidence that semen was definitively detected in the rectum of JG-1999 was erroneous, and, as Petitioner has alleged in Claim IV, scientifically unsupportable.

9. FBI Procedures for the Serological Identification of Biological Substances on Evidentiary Materials (2002), Chapter 11 states:

> Attempts to identify human semen in some categories of evidence **MUST** be approached through the identification of spermatozoa rather than by the detection of human specific proteins, such as p30. These categories would include ... stain extracts that possess **borderline levels of p30**.

P-180.

10. Thus, under the FBI's own protocols, P-179 reveals that the p30 results in this case cannot be considered confirmatory of the presence of semen. The government experts were aware of the results of their own test – that the p30 results were "weak, very weak, and very weak." Thus, they knowingly mislead the jury when they testified that the p30 results definitively identified the presence of semen in the victim's rectum.

11. The law governing these issues is well settled. The Due Process Clause of the Fifth Amendment to the United States Constitution requires a prosecutor to disclose favorable evidence to the accused. Brady v. Maryland, 373 U.S. 83, 87 (1963); Giglio v. United States, 405 U.S. 150, 153-56 (1972); United States v. Bagley,

473 U.S. 667, 676 (1985); <u>Kyles v. Whitley</u>, 514 U.S. 419, 437 (1995).  Evidence is "material" under Brady and its progeny when "[t]he favorable evidence could reasonably be taken" to put the case "in such a different light as to undermine confidence in the verdict." <u>Kyles</u>, 514 U.S. at 435.  Indeed, the purpose of the Brady doctrine is "[t]o ensure that a miscarriage of justice does not occur." <u>Bagley</u>, 473 U.S. 675.

12.    "[A] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." <u>Napue v. Illinois</u>, 360U.S. 264, 269 (1959). Thus, due process is violated "where previously undisclosed evidence revealed that the prosecution introduced trial testimony that it knew or should have known was perjured." <u>Kyles v. Whitley</u>, 514 U.S. 419, 443 (1995). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." <u>Napue</u>, 360 U.S. at 269.

13.    The duty to disclose is especially important in capital cases where heightened safeguards, greater protections for the defendant and a heightened scope of judicial review are required by the United States Constitution.  <u>See</u>, <u>e.g.</u>, <u>Beck v. Alabama</u>, 447 U.S. 625 (1980); <u>Caldwell v. Mississippi</u>, 472 U.S. 320 (1985).

14.    As a result of the failure to disclose of the information in P-179, and the resultant violation of Mr. Bourgeois' rights as guaranteed by the Fifth, Sixth and Eighth Amendments, Mr. Bourgeois is entitled to a new trial and/or sentencing hearing.