186810 eb

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

UNITED STATES OF AMERICA *
         Respondent,  *
against               * No. Cr-C-02-216
                    * No. Cv-07-223
ALFRED BOURGEOIS     *
         Petitioner.  *

VIDEOTAPED DEPOSITION OF
RANDALL PRICE, PhD

UPON RECEIPT OF SIGNATURE, THE ORIGINAL OF THIS
DEPOSITION WILL BE IN THE CUSTODY OF:
Michael Wiseman, Esquire
Federal Community Defender Office
For the Eastern District of Pennsylvania
Defender Association of Philadelphia
601 Walnut Street, Suite 540 West, Curtis Building
Philadelphia, PA  19106

Date                   Edith A. Boggs, CSR

11-10-10            HOUSTON, TEXAS


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

DEPOSITION OF RANDALL PRICE, PhD


        DEPOSITION AND ANSWERS of RANDALL PRICE, PhD, taken before Edith A. Boggs, a certified shorthand reporter in Harris County for the State of Texas, taken at the offices of Esquire Deposition Solutions, 1221 Lamar Street, Suite 1305, Houston, Texas, on the 10th day of November, 2010, between the hours of 9:51 a.m. and 11:58 a.m.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                                    November 10, 2010

3

                    A P P E A R A N C E S


        ATTORNEYS FOR PETITIONER:
             Federal Community Defender Office
             For the Eastern District of Pennsylvania
             Defender Association of Philadelphia
             601 Walnut Street
             Suite 540 West, Curtis Building
             Philadelphia, PA  19106


             BY:  MICHAEL WISEMAN, ESQUIRE
             AND ELIZABETH LARIN, ESQUIRE


        ATTORNEYS FOR RESPONDENT:
             U.S. Department of Justice
             United States Attorney's Office
             919 Milam, Suite 1500
             P.O. Box 61129 (77208-1129)
             Houston, Texas  77002
             BY:  TONY R. ROBERTS, ESQUIRE
             AND MARK M. DOWD, ESQUIRE


             AND


             U.S. Department of Justice
             United States Attorney's Office
             800 North Shoreline, Suite 500
             Corpus Christi, Texas  78401
             BY:  PATTI BOOTH, ESQUIRE
             AND ELSA SALINAS, ESQUIRE



        ALSO PRESENT:

             Mr. Sean Pieternelle, Videographer



        REPORTED BY:



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                    November 10, 2010

4

                        EXAMINATION INDEX


        QUESTIONS BY                                PAGE


        Mr. Wiseman                                 5

        Mr. Dowd                                    31

        Mr. Wiseman                                 47

        Mr. Dowd                                    56

        Mr. Wiseman                                 61

        Mr. Dowd                                    66

        Mr. Wiseman                                 66



                        INDEX OF EXHIBITS


        NO.     MARKED    DESCRIPTION

        1       5         Excerpt from trial transcript

        2       8         Appendix C

        3       11        Weiner and Gelbort chart

        4       49        Table



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

PROCEEDINGS

THE VIDEOGRAPHER:  Today's date is November 10th, 2010.  The time is approximately 9:51.  We are now on the record.

RANDALL PRICE, PhD

was called as a witness and, being first duly sworn by the notary, testified as follows:

EXAMINATION

Q.  (BY MR. WISEMAN)  Good morning, Dr. Price.

A.  Good morning.

Q.  I'd like to start off by marking as an exhibit for the deposition a four-page transcript excerpt from your testimony.

(Exhibit 1 marked.)

MR. WISEMAN:  And for the record, that is Pages 214 through 217 of the proceedings of September 23rd, 2010.  And we may be referring to portions of that and, of course, if counsel has other areas they want to explore, they can do that as well.

Q.  (BY MR. WISEMAN)  At Page 215, in response to Mr. Dowd's question, "Uh-huh," which is at Line 16 of Page 214, you began talking about scatter, and what I'd like to direct your attention to is on Page 215 starting at line 3, you -- you say, "I used the norms that have been more recently published.  They break it down to age



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

and education.  So, if you compare him" -- meaning Mr. Bourgeois -- "to people of his age and education, his performance on those tests, the category tests, the trails test, it's not deficient.  In fact, it's average to low average on those, which is higher than his IQ."

So, I think Mr. Dowd made a representation in court that the norms you were applying in that portion of your testimony were the Heaton norms; is that correct?

A.  As I recall, he asked me what norms I used, and I told him --

Q.  Okay.

A.  -- it was the Heaton norms.

Q.  Okay.  Now, which particular Heaton norms were you applying?  Were you applying the pre 2004 or the ones that were published in 2004?

A.  It's my -- well, I used the 2004, and it's my understanding is that the norms that were published in '91 were combined with the newer, updated, additional subjects.  And so, it really would be both would be the answer but the actual set of norms that I consulted were those published in 2004.

Q.  All right.  And the ones that were published in 2004 adjust not only for age and education but for gender and race; is that correct?


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                      November 10, 2010

7

A.  You can adjust for all those things with the 2004 ones, yes.

Q.  Okay.  And is there a reason then that in your testimony that I just read to you that you did not include gender and race in your -- in your answer?

A.  No.  It's really a matter of habit to say age and education because many, if not most, neuropsychological tests are -- the norms are adjusted for gender.  I didn't include that.  A lot of them are also adjusted for age, and it wasn't anything intentional that I didn't say age, education, gender and ethnicity.

Q.  All right.  Well, I'm going to mark them in a moment but the -- the actual Heaton norms relevant to your conclusions with respect to categories and trails, in fact, adjust for not only age and education but for race and gender, in other words, you can't break them out separately?

A.  You can -- yes, you can.  You can first use the norms for the entire Heaton sample, which would be a current representative sample of the United States, and then when you break them out, you can break them out for age, education and gender, and then you can take a further analysis and break them out for age, education, gender and ethnicity.

Q.  And what did you do in this case when you reached


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                    November 10, 2010

8

the conclusions that I just read to you?

A.  Well, I had calculated all those factors, and my testimony, I was looking at the norms for age, education and gender.

Q.  And so, you did not take into account the racial or the ethnicity norm?

A.  Not in my testimony, no.

Q.  What part or what appendix of the Heaton norms would one see a breakdown -- well, you know what, let me -- let me -- let me do it this way:  I'm going to mark a series of -- of -- well, it's one exhibit and it's --

                (Exhibit 2 marked.)

Q.  (BY MR. WISEMAN)  I have marked what I'll represent to you are portions -- relevant portions of the Heaton norms.  Why don't you flip through that and -- just to see if it looks complete to you.

A.  It does.

Q.  Okay.  And turning to the third page in, as an example, Appendix D presents the norms for a male with 12 years of education between ages 35 to 39 who's a Caucasian?

A.  Yes.

Q.  Okay.  Are you saying that there's another appendix that would have simply this information or this



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

analysis broken down without accounting for race in the 2004 norms?

A. No. There's another section that would be for African Americans.

Q. Right.

A. Yes.

Q. Okay. And we'll get to that section as well but my question then is -- and I just want to be clear for the record that when you talked about there are analyses you can do that don't take into account race, the Heaton norms that you applied in your testimony took into account race?

A. Yes. I guess that the addition of the African American norms in 2004 was what I was referring to that would take into account an individual's race.

Q. Okay. Now, how did you -- what -- what race did you consider Mr. Bourgeois -- or do you consider Mr. Bourgeois in terms of the application of these norms?

A. Well, in the application of these norms, I did it all three ways, the total Heaton sample, the Caucasian sample and the African American sample.

Q. Okay. And that's because Mr. Bourgeois is, for lack of a better phrase, of mixed race?

A. Race is difficult to define. Usually it's


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

defined by the person's self identification. I wasn't sure. I wanted to analyze this all -- all the ways to see what the differences would be, and I was not sure of his race, that's correct.

Q. Okay. And the Heaton manual which you -- or the portion of the Heaton manual that you provided to Mr. Dowd and he sent it on to us, does not provide guidance to the practitioner as to how to define race for these purposes?

A. I don't recall if -- I believe it leaves that up to the clinician, yes.

Q. All right. And so, the idea that a person -- well, let's go through the various possibilities. If a person -- we -- do you do it by -- by skin tone, the pigment of the person's skin?

A. Well, what -- my study of literature is that it's usually self identification.

Q. Okay. And in Mr. Bourgeois' case, you may recall -- or do you recall that he identified to Dr. Estrada in his report that he was -- was of mixed race?

A. Yes.

Q. Dr. Estrada reported it as Mr. Bourgeois is, quote, black white. Do you recall that in his report?

A. No, I don't.

Q. Okay.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                    November 10, 2010

A.   No.

Q.   All right.

MR. WISEMAN:  I would like to mark another exhibit.

(Exhibit 3 marked.)

Q.  (BY MR. WISEMAN)  And why don't you take a minute to familiarize yourself with that.

A.   (Witness complies.)

MR. DOWD:  While we have a little break here, can I get a clarification on the source of this Appendix C?

MR. WISEMAN:  It's from the Heaton Norms Manual.

MR. DOWD:  The latest one?  2004 or --

MR. WISEMAN:  Yeah.

MS. LARIN:  It should be the same cover actually.

MR. DOWD:  As what you saw.  Okay.

A.   Okay.

Q.  (BY MR. WISEMAN)  Okay.  Now, what I wanted to do was going through, starting with categories, we can see Dr. Weiner's raw score and I just want to walk -- I want you to walk us through how one applies these Heaton norms and what -- what the -- what the conclusions are from that application.  So, could you, use -- using



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Exhibit 2 and taking the raw score of 94 errors, show us -- and tell us if you agree with what's on this chart with respect to the -- the conclusions.

A.   Okay.  First, you would take the raw score.  And we're using the raw scores from Weiner at this time?

Q.   Well, starting with Weiner.

A.   Okay.

Q.   Right.

A.   You would take the errors on the category test, which is 94.

Q.   And we're looking at Appendix C, the first page of Exhibit 2?

A.   Yes.

Q.   Okay.

A.   That's what I was going to say.

Q.   Okay.

A.   All right.  So, you would go to Appendix C, and under the second column where it says executive functions, you'll see categories error in the first column and then you would go down to 90 -- the category that includes 93, and then you read -- over to the left, you see that it has a scale score of 5.

Q.   Okay.  And on -- just to interrupt, on my -- the chart that was marked as 3, that is noted as a standard score.  I guess the correct phraseology should be scale



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                November 10, 2010

score?

A.   Yes.   That's correct.

Q.   Okay.

A.   Yes.

Q.   Well, with that correction, why don't you continue.

A.   Okay.   Okay.   Which gives you a scale score of 5 on categories, on the category test, which would be equivalent to the 5th percentile if you considered all of the Heaton norms all combined.

Q.   Okay.

A.   But to then break this down into age and education, you then take that scale score of 5, go to Appendix D and to obtain the T-score for a male Caucasian age 35 to 39, my -- well, you didn't ask me that yet.

So, then you would take the scale score of 5 and go to Appendix D.  Again, in that second column, executive functions, and go down the left on scale score to 5, read across and that's a T-score of 29.

Q.   And for the record, that's Page 3 of the exhibit?

A.   Yes, it's the third page in, yes.

Q.   Okay.

A.   Okay.  And then you would go back to -- let me see the page -- Page 5 into the record -- into this



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Exhibit 2, which is for a male, 12 years of education, 35 to 39 years of age, African American, far left-hand side, scale score of 5, read across and that's a T-score of 33.

Q. Okay. And the T-score cut-off that indicates a deficiency or an impairment is a 39; is that right?

A. I'd -- I'd have to check that.

Q. Okay. Do you agree with the designation on Exhibit 3 that the category score of 29 is in the moderate organic brain dysfunction range?

A. Yes.

Q. And the score of 33 is in the mild organic brain dysfunction range?

A. Yes.

Q. So, doing the same thing then for trails B, which is at the bottom of Exhibit 3, why don't you see if you agree with --

A. Okay.

Q. -- the representations on the chart.

A. Okay. Trails B --

MR. DOWD: Is that designated TPT-B on --

MR. WISEMAN: No, it's at the very bottom.

MR. DOWD: Oh, the very bottom. I'm sorry.

A. Go to Appendix C, under executive functions, trails B, go down to the category that would include 93



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                            November 10, 2010

seconds, read back to the scale score, and that would be a scale score of 8.

MR. DOWD:  What -- what page is that on again?

THE WITNESS:  It's on the first page of the Exhibit 2.

Q.  (BY MR. WISEMAN)  Okay.

A.  So, you get a scale score of 8.  And then go to Appendix D, 12 years of education, male, the third page in, age 35 to 39, Caucasian, and go to the scale score of 8, read across to trails B, and that is a T-score of 37.

Q.  Okay.  And doing the same thing then for the African American appendix, what would the result be?  I guess this is Page 5 again of the exhibit?

A.  Page 5 of the exhibit, scale score of 8, read across, would be a T-score of 45.

Q.  All right.  So, the -- and do you agree that a scale -- I'm sorry -- a T-score of 37 on trails B is in the mildly impaired range?

A.  Yes.

Q.  And a score of 45 is not in the impaired range?

A.  Yes.  That's correct.

Q.  So, if you could explain for the record and for Judge Jack what's going on with respect to how a person


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

can be impaired under one analysis but not another? What -- how does race figure into -- to -- to the same person being impaired under one analysis but not the other?

A.  Well, using the norms most similar to the person, including race, that -- what the literature describes race as an adjustment as a proxy for other factors in the person's life, cultural enrichment, educational opportunities, quality of education and a socioeconomic status.  It stands as a proxy for that.  And to avoid over identifying or -- you would get a greater degree of impairment comparing someone to Caucasians as you would to comparing them to African Americans.

Q.  And do you agree that the -- the Heaton norms, taking into account race, seeks to explain why empirically African Americans, as a group, score lower on these types of tests?

A.  I don't know that the Heaton norms attempt to explain it.  They use race as an adjustment but I don't know that they -- there are studies per se that explain why it is that race makes a difference but it does, in the Heaton manual, describe those as being something -- like I said, it's a proxy for other things, including socioeconomic status, cultural experiences, educational experiences.



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                November 10, 2010

Q.  Now, there is -- well, withdrawn.

Dr. Reitan, who was one of the co-designers, authors of the Halstead-Reitan battery, does not advocate the use of the Heaton norms, do you agree?

A.  I agree.

Q.  And would you agree that there are some -- given that fact, that there's some controversy within the -- within the field as to whether the Heaton norms ought to ever be applied or -- or not?

A.  Well, there is -- there remains some controversy about which set of norms even above and beyond the Heaton are the Reitan stage, and there is some controversy over that, yes.

Q.  All right.  And Dr. Weiner, in his administration, apparently falls on the side of the controversy that says you don't use the Heaton norms, he didn't use them?

A.  He didn't use them.

Q.  And Dr. Gelbort --

MR. DOWD:  I would -- I would -- would ask what the source of that is?  Is that in his report or in the testimony?

Q.  (BY MR. WISEMAN)  Well, based on your review of his data, would you agree that he did not use them?

A.  Well, I should say I didn't see any reference to


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                    November 10, 2010

18

them in his --

Q.  Okay.

A.  -- affidavit or his report.

Q.  And the scores that he reflects and the impairments that he notes do not rely on the Heaton norms; is that right?

A.  It was not reflected in his report or affidavit.

Q.  Okay.  But how about his raw data?  That's what, I guess, I'm asking.

A.  I didn't see any -- in his raw data, any analysis using the Heaton norms.

Q.  Now, I guess -- and not to be irritating about it, I guess I was a little unclear as to what you meant in some of your testimony here.  So, let me try to, you know, hash that out and we can go from there.

As I understood -- and please correct me if I'm misunderstanding.  What I understood your testimony to be was that given Mr. Bourgeois' performance on categories and trails, with the Heaton norms applied, that those scores were not deficient?

A.  That's correct.

Q.  And that, moreover, they compared favorably -- or I shouldn't say favorably -- they were higher than his IQ scores, relatively speaking?

A.  They would not be expected based on his IQ



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

scores, that's -- that's correct.

Q.  All right.  Now, taking the first part of what you just said or what you just agreed with, that Mr. Bourgeois is not impaired in categories and trails, you would agree that at least on the application of the Caucasian norms, he is moderately impaired on categories, correct?

A.  On the data from Dr. Weiner?

Q.  Yes.  I'm sorry.

A.  Based on the analysis that you presented to me in Exhibit 3, Dr. Weiner's data on the category would indicate moderate impairment.

Q.  And do you have any -- any disagreement with the presentation of the data with respect to categories on -- on Exhibit 3?

A.  No.  The only difference I have is that it was my understanding that at the time of Mr. Weiner's evaluation --

Q.  Dr. Weiner.

A.  I'm sorry -- at the time of Dr. Weiner's examination, Mr. Bourgeois was 40 years old, and that's the ones I used.  If he indeed was 39, then this would be correct.

Q.  Okay.  And if he was 40, he would be even more impaired?


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

A.  No.  He would be a little less impaired.

Q.  Less impaired.  Oh, right.  Because he's older.

A.  Yeah.

Q.  But still impaired?

A.  But still falling at the mild level on -- yes.

MR. DOWD:  Can we agree to Mr. Bourgeois' age at the time of the --

MR. WISEMAN:  Yeah.  That's what I'm trying to figure out.

MR. DOWD:  Oh, okay.

MR. WISEMAN:  I believe he was born in June of '64, and these tests were administered, I believe, in March of '04, which would make him 39.

MS. LARIN:  On 2-28.

MR. WISEMAN:  Oh, 2-28.  Okay.  So, it's right on top of it.  2-28-04, which would make him 39 at the time of the administration.

THE WITNESS:  Okay.

MR. WISEMAN:  I'm -- just for the record, I'm reading from Exhibit 31 from the hearing, which is the face sheet of Dr. Weiner's raw data.

Q.  (BY MR. WISEMAN)  All right.  So, with that correction, it would appear that what's on table -- chart 3 -- or Exhibit 3 is accurate with respect to categories and the Caucasian score?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                November 10, 2010

21

A.   Yes.

Q.   Okay.  And with respect to the application of the Heaton norms to categories, you would agree that a 33 is in the mild range of impairment on categories?

A.   Yes.

Q.   Okay.  So, in your testimony at Page 215 -- and you may not have meant to say this but I just want it to be clear for the record -- when you say on categories, he's not deficient, in fact, he's in the average to low average, that's not accurate, as we've just seen, he's in either the moderate or the mildly impaired range?

A.   That's correct.  When compared to Caucasians, that is correct.

Q.   And when compared to African Americans, it's also correct, isn't it?  33 is in the impaired range, as you just agreed?

MR. DOWD:  Well, I think that misrepresents the testimony, and I don't think -- the question was is 33 in the mild range of impairment on the categories tests.  It didn't distinguish under which sample.

MR. WISEMAN:  All right.  Well, let's -- let's start off again then.

Q.   (BY MR. WISEMAN)  Do you agree that the T-score for Mr. Bourgeois on categories on Dr. Weiner's administration is a 33?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                    November 10, 2010

A.   Yes.

Q.   And I thought you had agreed that a 33 is in the mildly impaired range?

A.   Yes.

Q.   Okay.  So, your testimony that he was in the low average to average range on categories is not accurate, he's impaired on that -- on that test?

A.   Looking at my analysis, he is impaired unless you compare him to African Americans, yes.  That's correct.

Q.   Yeah.  Yeah, I'm -- I'm -- I have to apologize. I'm not following you.  The Exhibit 3, the category under Dr. Weiner that says, "T-score male African Americans" -- you're with me now?

A.   Yes, I am.

Q.   Okay.

A.   I'm sorry.  I'm sorry.  I am.  That -- using Dr. Weiner's data in all those categories, he would be at the mild level of impairment.

Q.   Okay.

A.   Yes.

Q.   I think I know where you're going.

A.   Okay.

Q.   Okay.  So, to sort of wrap this part up, the portion of your testimony then where you say he's average to low average on categories was -- was an error



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                    November 10, 2010

of some sort?  And I'm not throwing stones here.  I just want the record to be clear.  That was not accurate testimony?

A.  I would say that it's not complete, and in that regard, it would not be accurate.

Q.  Okay.

A.  That Dr. Weiner's data would show mild impairment on category, that's correct.

Q.  Now, why don't we move on to Dr. Gelbort on -- in regard to categories.  And we don't have to necessarily spend time going through the -- the whole process but would you agree with the representations on Exhibit 3 as to the -- the raw score standard and the two T-Scores for Dr. Gelbort's administration of categories?

A.  I would.  It's the same.  My analysis of the data from Dr. Gelbort's 2007 evaluation with regard to the categories yields the -- the same numbers that appear on Exhibit 3.

Q.  Okay.  And so, if you compare Mr. Bourgeois to Caucasians, he is mildly impaired at 34, would you agree with that?

A.  Yes.

Q.  And he is not impaired on the comparison to African Americans, which is 40?

A.  That's correct.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                    November 10, 2010

Q.   And 40, although not impaired, would be in the borderline range of impairment?

A.   A T-score of 40 would fall at the low average level.

Q.   Low average.  Now, you talked about another analysis you did.  I wrote it down but I'm not sure I remember it.  It was the analysis for Caucasians, African Americans.  I think you called it the -- the summary score?

A.   Well, you know, the first step in utilizing the Heaton norms, when you obtain that scale score in Appendix -- in Appendix C --

Q.   Yeah.

A.   -- that scale score, of course, takes into account the whole sample.  I mean, that's -- and you then go into Appendix D to adjust it for the demographics.

So, you can take that scale score for the whole sample and convert that scale score to a T-score or to an index score, which -- wherein lies some of the -- of the misunderstanding here, I think.

You can convert all these scores to an index score, which would be the same metric that the IQ scores are on and -- which would facilitate a comparison --

Q.   I see.


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

A.   -- which is what I did, and I think that's where --

Q.   Right.

A.   -- some of the misunderstanding is.

Q.   Okay.  So, the -- the -- just so I understand what you just said, the -- what you said about the scale score for Weiner was that that was the 5th percentile, using the analysis you just talked about?

A.   On the category test?

Q.   Yes.

A.   Yes.

Q.   Where would that come out on the scale score for Gelbort?  Where would that 6 come out, what percentile?

A.   At the 9th percentile.

Q.   And where in the Heaton manual does it say to do that type of percentile conversion?  Is that in the Heaton manual?

A.   No, I don't think so.

Q.   And is it in the Halstead-Reitan manual?

A.   Oh, no, it's not in there at all.

Q.   Now, I guess the other area that I wanted to ask you about was -- and, again, this may be my misunderstanding of what you were trying to do in your testimony or what your answers were.

Were you opining at all on Mr. Bourgeois' overall


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                          November 10, 2010

26

brain impairment or lack thereof?

A.   No.

Q.   And looking at the -- the scores reflected on Dr. Weiner's chart -- I'm sorry.  It's not Dr. Weiner's chart.  It's Exhibit 3, which has Dr. Weiner's scores reflected.  Would you agree that that is a profile of a person with -- with brain impairment, applying the Heaton norms?

A.   Well, I would agree that these scores on the tests that were administered using the overall Heaton norms would be consistent with impairment in those areas that are sensitive to brain dysfunction.

Q.   Okay.  And so, leaving aside the issue of localization, you don't disagree with Dr. Weiner's overall conclusion that Mr. Bourgeois, on his testing, came up as a person with organic brain dysfunction?

A.   I -- I don't know.  I didn't do an analysis to arrive at that opinion.  I was instead looking at these scores and comparing them to his IQ.

And so, clinically speaking, when you have someone with low intelligence, it's more difficult to arrive at that opinion, and that would be the problem I would have with it.

Q.   So, is what you're saying that given Mr. Bourgeois' low intelligence, it could be that that



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                    November 10, 2010

could -- well, withdrawn.

Just so we're clear on the meaning of some of these numbers on -- on Exhibit 3, with regard to T-scores, 35 to 39 is mild impairment?

A.  35 to 39 is mild impairment, yes.

Q.  30 to 34 is mild to moderate?

A.  Yes.

Q.  And 25 to 29 is moderate?

A.  Yes.

MR. WISEMAN:  If we can have a two-minute break, I think we might be at our conclusion.

MR. DOWD:  Okay.

THE VIDEOGRAPHER:  The time is approximately 10:30.  We are now off the record.

(Short recess.)

THE VIDEOGRAPHER:  The time is approximately 10:34.  We're now back on the record.

MR. WISEMAN:  I have no other questions.

I would like to move for the admission of Exhibits 2 and 3.

MR. DOWD:  As far as No. 3, did -- did -- has Dr. Price verified that the scores reflected on here, the norms reflected are all accurate according to Dr. Weiner's and Dr. Gelbort's --

MR. WISEMAN:  I will -- I assume the answer


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

to that is no.

Or what is the answer?

THE WITNESS:  I verified that his analysis for category and trails B is accurate as depicted on here.

MR. DOWD:  Accurately depicts --

THE WITNESS:  Yes.

MR. DOWD:  Or accurately reflects the results of the tests that -- and the raw data that --

THE WITNESS:  No.  No.  It accurately reflects the application of the Heaton norms the way it's presented here on those two tests.  I went through that actually on the category test and checked it here and I -- trails B, we did that, too.

MR. WISEMAN:  We did trails B.

THE WITNESS:  Yeah.

MR. WISEMAN:  Maybe what --

MR. DOWD:  Are the raw scores here also?

MR. WISEMAN:  Right.  Maybe, so we don't have to --

THE WITNESS:  No.  The application of the Heaton norms.

MR. WISEMAN:  Maybe what we should do is before you cross -- redirect, maybe we should let Dr. Price --



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

MR. DOWD:  Cross.

MR. WISEMAN:  I just crossed.

MR. DOWD:  I thought it was your witness.  I would have been nicer to him.

MR. WISEMAN:  Okay.

MR. DOWD:  Okay.

MR. WISEMAN:  Before you examine -- how about that?

MR. DOWD:  Okay.

MR. WISEMAN:  -- maybe we should let Dr. Price spend a few minutes -- or as much time as he needs with Exhibit 2 and he can --

MR. DOWD:  Sure.

MR. WISEMAN:  -- make sure that the application has no errors, and then we won't have to come back.

MR. DOWD:  Yeah.  Subject to that analysis, we have no objection to Exhibit 3 coming in.  And --

MR. WISEMAN:  So, do you want to do that, Dr. Price, and we'll --

THE WITNESS:  Okay.  So, the task is to -- as presented here, to -- to verify the application of the Heaton norms to the raw scores that are presented here?

MR. DOWD:  And see if the raw scores are



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

accurate, too.

MR. WISEMAN:  I can give you the data.

MS. LARIN:  We have the raw scores.

MR. WISEMAN:  Here's that.

MS. LARIN:  No, this is it.

THE WITNESS:  That might be a problem to -- for me to verify the raw scores sitting here, I would need all the manuals and --

MR. DOWD:  All right.

THE WITNESS:  -- all that but I can do this part.

MS. LARIN:  That's the raw scores.

MR. WISEMAN:  Yeah.  I'm just showing you Page 7 of Exhibit 31.  Would that enable you to check the raw scores as depicted on the exhibit with what --

THE WITNESS:  Well, here's what I can do from this:  I can see -- anybody could see --

MR. WISEMAN:  Right.

THE WITNESS:  -- if these scores as depicted on this summary are accurate on Exhibit 3 but what I'm hearing that you're asking me if I can do is to verify the accuracy of the raw scores.

MR. WISEMAN:  Right.  I don't think we can expect you to do that last part.  Why don't you -- and if counsel agrees, why don't you see if chart -- Exhibit



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

3 accurately depicts the -- the scores obtained by Dr. Weiner and then, based on those scores, see if the Heaton norms are appropriately applied or accurately applied on -- on Exhibit 3.

MR. DOWD:  Can you do that?

THE WITNESS:  I can do that.

MR. DOWD:  Okay.

MR. WISEMAN:  Why don't we take as long as we need.

THE VIDEOGRAPHER:  The time is approximately 10:37.  We're now off the record.

(Short recess.)

THE VIDEOGRAPHER:  The time is approximately 11:01.  We are now back on the record.

MR. DOWD:  All right.  Thank you.

Back on the record.

Dr. Randall Price is still under oath, and my name is Mark Dowd, and I'll examine Dr. Price.

EXAMINATION

Q.  (BY MR. DOWD)  Doctor, explain the function and purpose of establishing and using norms in interpreting raw scores obtained specifically in the trail making and the category test.

A.  Well, a raw score doesn't mean anything.  A raw score is either the number of errors, how long it took



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                    November 10, 2010

32

somebody to complete a test, and without comparing that to a group of people -- to a similar group of people, the raw score itself doesn't have any meaning to us in neuropsychology.

So, you have a group of people, and you have how they did on that, and then you can compare an individual's raw score to the group of people that are similar to them.

Q. All right. And did Doctors Weiner and Gelbort identify the norms that they applied to raw scores they obtained on those tests from Mr. Bourgeois?

A. I did not see any identification of the specific norms that they used.

Q. All right. Now, can -- can demographic factors affect the interpretation of raw scores?

A. Yes.

Q. And what's the basis of your saying that?

A. Well, we certainly have a plethora of studies in neuropsychology that show the more education a person has, for various reasons, even comfort in taking tests and knowledge and experience and how to learn that they gather through education, they score higher on the same tests than someone with lower education.

We know that as we -- as people get older, they score lower on certain neuropsychological tests.


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Largely, that's because of speed and then other kinds of factors.

So, the way I would say this is that the neuropsychological tests do not only reflect brain dysfunction.  They reflect other things about our abilities and other factors go into the way a person performs on the neuropsychological tests other than if there's anything wrong with their brain or not.

Those factors, the demographics, have an effect on the scores.  Also, if they're depressed, other extraneous factors, if they're not putting forth good effort, all those things can affect the scores, and the clinician would take those into account.

Their prior intelligence, how intelligent they are, you expect a person to score similarly on the neuropsychological test as they would score on an IQ test.

Q.  All right.  And other than age and education, any other main demographic -- demographic features impact the interpretation of these raw scores?

A.  Age, education, gender, ethnicity are -- have been studied and are incorporated into what we've referred to here as the Heaton norms.

Q.  All right.  And how are these -- you were evaluating and comparing the impact of these Heaton



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

norms on -- on scale scores, is that right, earlier in your testimony?

A.   Yes.   That's right.   You take a raw score in the Heaton norm system, convert it to a scale score, and then you adjust that for the demographics to arrive at what -- Heaton norms produces a T-score.

Q.   Uh-huh.

A.   So, there's all these different scores.   And that's the way it works with the Heaton norms.

Q.   All right.   And -- and the purpose of applying these demographic adjustments to the scores is to do what?   To make the results more accurate or --

A.   Right.   It's to make the results more accurate in terms of accounting for what you could refer to as normal variables, as opposed to some kind of pathology --

Q.   Uh-huh.

A.   -- so that you don't -- you cut down on what we would call false positives, saying somebody has brain dysfunction when they don't.

Q.   All right.   And is it fair to say that the more -- the more that the demographic applied reflects the testee's background, the more accurate the results will be?

A.   Yes.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Q.  Okay.  Now, we've determined that Mr. Bourgeois reported that he was of mixed race?

A.  Yes.

Q.  Do you know how Mr. Bourgeois was -- was raised, if he was raised in a Caucasian community or a Caucasian family or an African American family?

A.  It's my understanding from the records that he was raised in an African American family, in an African American community.

Q.  All right.  And how would that relate to applying the African American demographic to his raw scores?

A.  Well, it would speak to the side of using those norms and analyzing his scores.

Q.  Okay.  Now, how -- how did they -- how do they come up with the numbers, the relational numbers in -- in comparing let's say an African American versus a Caucasian?  How do they determine at what levels -- at what score levels these relate to, the particular numbers?  Is this done by testing or how is this done?

A.  Well, there's a sample of Caucasians for different ages, different levels of education and gender, and they give the test to them, get the raw scores, calculate averages, percentiles, et cetera, and that's the norms.

And then in a separate sample, in a separate


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

study, a group -- in the case of the Heaton norms, a group of about 500 African Americans were studied and applying -- using the raw scores they obtained in calculating the norms on that group to see -- to adjust for the proxy variable of ethnicity.

Q.   Okay.  So, it's done by testing?

A.   Yes.

Q.   Sampling?

A.   Yes.

Q.   All right.  Now, I guess we've demonstrated Dr. Weiner used the Reitan sample -- or norms, I should say?

A.   Well, you know, I don't know that for a fact --

Q.   Okay.

A.   -- because they were not listed in his report. My experience, looking at them, would lead me to conclude that he did but --

Q.   Okay.  But he's --

A.   -- I don't know for sure.

Q.   But you can say that he did not apply the Heaton norms?

A.   I didn't see any indication that he did, no.

Q.   Okay.  And the Heaton norms establish more selective standards, in other words --

            MR. WISEMAN:  Objection to leading.



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                    November 10, 2010

Q.  (BY MR. DOWD)  How do the Heaton norms compare with the -- the Reitan norms as relating to their selectivity?

A.  Well, the Heaton norms are anywhere from 10 to 20 years more current.  There's a larger sample size, considerably larger sample size, and the Heaton norms, again, are broken down into the demographic groups.

Q.  All right.  And -- and for Mr. Bourgeois, did you specific -- specifically apply the Heaton norms in evaluating the raw scores obtained by Dr. Weiner and Dr. Gelbort on the trail making and categories tests?

A.  I did.

Q.  And what were the results of your analysis?

A.  All of them?

Q.  Yes.  Well, it's, what, six?

A.  Yeah.  I mean, I looked at six tests, two administrations of three tests.

Q.  Uh-huh.  And -- and I forgot to ask you about Dr. Gelbort.  Did -- does the -- does the record indicate that Dr. Gelbort as well used the Reitan norms or the Heaton norms?

A.  Well, I don't see any indication of the use of Heaton norms.

Q.  All right.

A.  Just my experience led me to conclude that he was



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                November 10, 2010

using the Reitan norms.

Q.   Reitan.   Okay.

A.   It could have been another set.   There's other sets of norms for individual tests.

Q.   Right.

A.   There's a whole book of different norms that people can use and --

Q.   Okay.

A.   -- there's others out there that he could have used.

Q.   But you used the -- you used the Heaton norms in your analysis?

A.   Yes.

Q.   And why is that?   Why did you choose those norms?

A.   Well, it's the most recent comprehensive set of norms adjusted for demographic variables.   It's -- in -- even as long ago as 2000, 75 percent of board certified neuropsychologists used the Heaton norms, and it's the trend.   It's the -- you know, even though there's some controversy over it still, it's the most utilized system in neuropsychology.

Q.   All right.   And is -- are they used because of -- are they chosen because of ease of use or accuracy or why is it the trend to move toward the Heaton norms?

A.   Well, I would say accuracy and that the



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

demographic variables, applying those helps us to understand a person's score better in clinical practice.

Q. All right. And in applying those Heaton norms to Mr. Bourgeois' raw data scores from the categories, trails A and B test given by Dr. Weiner and Dr. Gelbort, what were your conclusions?

A. I probably -- there's a step that's missing and -- that we touched on and that is that, you know, I also converted these scores to the metric that's like IQ scores --

Q. Uh-huh.

A. -- because I wasn't trying to analyze these to opine about whether or not, you know, they indicated brain dysfunction. I was looking at the issue of mental retardation, and so, to compare apples and apples, I combined -- I converted T-scores to standard scores.

Q. Uh-huh.

A. A T-score has a mean or an average of 50, and a standard score has a mean or an average of 100, like IQ tests. And it's the same point on the distribution but just to convert those so I could compare it to what his measured intelligence has been.

Q. All right. And -- and if you could -- it's not a long process. If you could go through for the record your valuation, you know, how did you -- applying the



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Heaton norms to his raw data, what numbers did you come up with and then how did you relate those numbers to your valuation of whether that was consistent with Mr. Bourgeois' mental retardation?

A.   Okay.  Well -- okay.  All right.  On Dr. Weiner's administration of the booklet category test, when compared to Caucasian individuals of his age and education and gender, the standard score was a 71.  When compared to African Americans, the standard score was 78.

On Dr. Weiner's administration of trail making test part A, when compared to Caucasians of his age, education and gender, the standard score was 92.  When compared to African Americans, it was 101.

Dr. Weiner's administration of trail making test part B, when compared to individuals of his age, education and gender that were Caucasians, his standard score would be an 84.  When compared to similar African Americans, his standard score was a 96.

On Dr. Gelbort's 2007 evaluation, the administration of the booklet category test, when compared to Caucasians that were of his age, education and gender, the standard score was 76.  When compared to African Americans, it's 85.

Dr. Gelbort's administration of the trail making



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                    November 10, 2010

41

test part A, when compared to Caucasians of his
education, age and gender, the standard score was 93.
When compared to African Americans, it was 101.

Dr. Gelbort's administration of the trail making
test part B, when administered to -- when compared to
Caucasians of his age, education and gender, the
standard score was 90.  When compared to African
Americans, it was 101.

Q.  All right.  And these standard scores that you're
discussing, those are the standard scores obtained by
using the specific norms of Caucasian of his age and
educational background for the first one, and then the
second one was African Americans of his age and
educational background?

A.  Yes.  Technically, it's the age, education and
the demographic variables yield a T-score with a mean of
50.

Q.  Uh-huh.

A.  And then I converted those to standard scores so
that I could compare them to the IQ scores.

Q.  Okay.  And go ahead and compare those standard
scores to -- to an evaluation whether or not they are
consistent with someone who is mentally retarded.

A.  Okay.  Well, these would not be consistent with
somebody that's mentally retarded.  On Dr. Weiner's



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

administration of the category test, the results fall at the borderline level, which is consistent with five out of the six IQ scores he's obtained.

The -- Dr. Weiner's administration of the trail making test A fall at the average level, which is higher than you would expect with someone of his intelligence.

Q.   In other words, the average level of intelligence?

A.   Yes.

Q.   Okay.

A.   And trail making test B from Dr. Weiner, those results fall at the low average to average level, which is inconsistent with mental retardation.

Dr. Gelbort's data, the booklet category test -- or the category test, the -- when compared to Caucasians, it falls at the borderline level of IQ analysis, which would be consistent, and when compared to African Americans, it's 85, which is also consistent with borderline intelligence.

Trail making test A with Dr. Gelbort, they fell in the average level when compared to both Caucasians and African Americans.

Q.   Average level of intelligence?

A.   Average level of intelligence.

Trail making test B from Dr. Gelbort, again, fall



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                              November 10, 2010

at the average level when compared to the metric of IQ tests.

Q.  All right.  One moment, please.

Now, in your earlier testimony, you -- I just want to clarify this.  You had indicated that you did not apply the ethnicity demographic factor in your testimony.  Are you suggesting you did not apply the ethnicity factor in your valuation, in your conclusions here?

A.  I did analyze the data as compared to the entire sample to the African -- African American sample and the Caucasian sample, yes.  To get a --

Q.  Okay.

A.  -- whole picture of it, I did, yes.

Q.  So, earlier in your testimony, you were just suggesting that you didn't elaborate on that in your actual testimony?

A.  I didn't.

Q.  Okay.  And your understanding, you had indicated that ethnicity is used as a proxy for other issues impacting a testee, such as socioeconomic range, other -- I don't recall your full testimony but is your understanding of Mr. Bourgeois' upbringing consistent with using that ethnicity as -- as a proxy for -- well, actually, using the African American demographic, is



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

that consistent with Mr. Bourgeois' background as
relates to the -- to the proxies in which they
represent?

A.   Yes.

Q.   Okay.  Because he -- he had -- it was -- came
from limited means, opportunities, et cetera?

MR. WISEMAN:  Objection to leading.

Q.   (BY MR. DOWD)  And -- and what is the nature of
the controversy on whether or not the Heaton -- the more
specific Heaton norms should be used, which include
the -- you know, the demographics of age, education,
ethnicity and -- what's the last one -- oh, and gender?
What is the nature of the controversy about using those,
applying those?

A.   Well, Dr. Reitan, who is -- could be considered
the father of clinical neuropsychology --

Q.   Uh-huh.

A.   -- who really started the field in the 1950s, his
approach to analyzing this data was to get a sample of
people that were normal, neurologically normal --

Q.   Uh-huh.

A.   -- a sample of people that were known by medical
testing even following them and they were known to have
brain damage --

Q.   Uh-huh.


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

A.  -- and then comparing the two.  His position -- Dr. Reitan's position is that you -- that age and education and gender don't influence the scores of brain damaged individuals like they do with normal individuals.  That's his -- his position.

The other position is that -- using the demographics, is that you compare the raw scores of people to people similar to them and then you can see how they fall and you can compare interrelated tests for pattern analysis and strengths and weaknesses and use other techniques to analyze the data, and their view is to have a cut score that just says brain damaged or not isn't as accurate.  That's the issue.

Q.  Okay.  Now, during the break, you were asked to look at defense -- or Mr. Bourgeois' Exhibit No. 3 and try to verify if the application of the Heaton norms was accurately reflected in the -- in the scale used here. Were you able to do that?

A.  Yes.

Q.  Okay.  And we also wanted to see if you could verify if the raw scores listed on the exhibit accurately reflected the raw scores obtained by Doctors Weiner and Gelbort.  Are you able to do that?

A.  No.  I can -- I can verify -- with the one minor exception of changing standard score to scale score, I



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

can verify that using these raw scores, the application
of the Heaton norms to those raw scores is accurate.  I
can't verify the accuracy of those raw scores as I sit
here today.

Q.  All right.

MR. DOWD:  Just for the record, we would
object to the introduction of Exhibit 3 unless we can in
some way verify the -- that the raws scores reflected on
there are accurate.

Q.  (BY MR. DOWD)  Let's see here, Doctor.

MR. WISEMAN:  By the way, you didn't state
your position with respect to Exhibit 2 on the record,
just for --

MR. DOWD:  Oh, I'm sorry.  And Exhibit 2 is
the appendix?

MR. WISEMAN:  Yes.

MR. DOWD:  We have no objection to -- to
this, I think.  Let me ask the doctor.

Q.  (BY MR. DOWD)  Dr. Price, you had an opportunity
to look at Exhibit 2, which is reflected -- you have a
copy there?

A.  Yes.

Q.  And is that -- does that accurately reflect the
Heaton norms -- application of those norms to the scale
scores?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

A.   To the best of my knowledge, this is a copy of the appropriate pages of the Heaton norms.

Q.   Okay.

A.   Yes.

MR. DOWD:  We don't object to Exhibit 2.

MR. WISEMAN:  Okay.

MR. DOWD:  I'll pass the witness.

FURTHER EXAMINATION

Q.   (BY MR. WISEMAN)  Okay.  Just a little follow-up, Doctor.

You were talking about the demographics incorporated in the Heaton norms and in the same discussion, you also mentioned depression and effort as potentially impacting a test taker.  And I just want to be clear for the record, the Heaton norms do not address factors such as depression or effort, would you agree?

A.   That's correct.

Q.   So, the Heaton norms only address the area of demographics, i.e., race, gender, age, education?

A.   That's -- that's -- that is correct, and I think that's what I added, those other things were clinical factors --

Q.   I see.

A.   -- that the clinician would look at, not the Heaton norms, though.


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                    November 10, 2010

48

Q.   Right.   And I thought what you said on my initial questioning today was that because you had a question as to Mr. Bourgeois' ethnicity and because there isn't guidance from the various manuals and literature as to how to resolve those questions, you, therefore, applied both the Caucasian and the African American Heaton norms in your analysis?

A.   Yes.   That's correct.   There is -- I would say there is guidance about how to apply the ethnicity in that the customary and usual approach is the self identification of the person.   So, that's the only guidance I know of.

Q.   Okay.   Now, you talked about converting the scale scores to -- I'm sorry -- the T-scores to -- to a standard score.   All right.   Let me start over.

You -- you testified that you took the standard scores for a variety of these tests and you arrived at a percentile score that would be placed on a bell curve, much like an MR score would?

A.   Yes.

Q.   Okay.   And I thought what you said was that the T-score -- the mean for a T-score is 50 and that's why the conversion is necessary, so you can compare apples and apples?

A.   Yes.


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                              November 10, 2010

49

Q.  If the T-score average -- or mean, I should say, is 50, then why don't you simply double the scale score to arrive at that percentile score?  Is there some other chart that -- that you're referring to?

A.  It would -- I can see why you would ask that. I've never -- never been asked that.  It just doesn't work out that way.

Q.  Because.

A.  For instance -- and I have a table that does this, and that's the reason I can say that.  If you have a T-score of 31, the standard score is 72.

Now, if I can explain that as to why you don't just double it, the -- that the metric is different because the standard deviation would not be the same. For instance, with a standard score of a hundred, with standard scores, the mean is a hundred, the standard deviation is 10.  With T-scores, the mean is 50.

Let me have just a minute here.

The standard deviation is 7.  So, it -- you can't just double it because of that.

Q.  Okay.  Can I see what you're referring to?

A.  Sure.

MR. WISEMAN:  Could we have this marked, please.

(Exhibit 4 marked.)


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                    November 10, 2010

50

Q.  (BY MR. WISEMAN)  I've marked the chart that you handed me, Doctor, and it's Exhibit 4.  Can you tell us from where this originates?  Where did you get it?

A.  If I recall correctly, Dr. Munro Cullum at the University of Texas Southwestern School of Medicine put this together from the different sources, using the Wechsler, the Heaton interpretations, and then the stat -- the statistical analysis of scores, which is found in many books, that would say that any point on that distribution -- assuming that it's normal, any point on that distribution can be represented by three different kinds of scores, standard scores where the mean is 10 -- I mean, scale scores where the mean is 10, standard scores where the mean is 100, T-scores where the mean is 50.  And you can convert -- and you can also do a percentile.

And the advice that's given to us is to use one and convert all your scores to this same kind of score so that you can compare them.  Many people prefer the percentiles because it's less -- less confusing and less standard scale scores and all that but the idea is to get it so you can compare it.  So, it's what he's done, and I think that's where I got this many --

Q.  And --

A.  -- years ago.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                    November 10, 2010

51

Q. And so, I guess the question relevant to mental retardation then is that the DSM and all the different authorities we discussed at the hearing in chief as to how to diagnose MR or the lack thereof doesn't suggest that one engage in the type of conversions that you have discussed here today for diagnostic purposes?

A. I'm sorry.

Q. Okay.

A. I don't understand that question.

Q. Sure. Let me -- let me try it again.

The DSM and the AAMR and its successive -- successor publication talk about a diagnosis of MR as being based on an IQ score, not on a conversion such as the one you've discussed today?

A. Okay. I'm following you. Those sources -- those authoritative sources on the diagnosis of mental retardation say use an IQ test, not neuropsychological tests.

So, it's not really about my conversion of scores. It's about they say you don't use neuropsychological tests of memory, abstract thinking, et cetera, to diagnose mental retardation.

Q. Right. And I guess we're -- we're discussing this because you've opined that his performance on certain of the neuropsychological tests are, in your



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

words, inconsistent with MR, and that's why we're having this discussion. So, I just want to be clear, and you agree, I take it, that for diagnostic purposes, we look at the gold standard IQ test?

A. That's true. It's not that you would ignore any other information as it might relate to their cognitive functioning but the -- the bottom line diagnosis is based on IQ tests, adaptive behavior and the time in life it begins.

Q. Okay. And the -- during your discussion of the conversion with Mr. Dowd, you were using a phrase that the converted scores fall at a particular level of intelligence, and my question with regard to that is -- and I think that you just said -- these neuropsychological tests don't measure intelligence, they measure for the presence or absence of organicity, correct?

A. I would agree with all of that and it was well phrased except the end of it, that they measure organicity. I would say that, you know, they -- neuropsychological tests are intended to measure brain dysfunction but we now know that many other factors contribute to those but that's not the thrust of your question, I know. Just --

Q. Okay. I'll stand corrected with great pride.


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

A.  It was a good question.

Q.  Thank you.  And a fine answer.

Now, just so we can try to resolve the question about the raw scores on -- on Exhibit 3, I'm going to hand you a copy of Exhibit 31, Page 7, which for the record is Dr. Weiner's score sheet for the Halstead-Reitan Neuropsychological Test Battery For Adults, and if we can just go down -- and I know you can't vouch for the way in which he administered the test but I just want to make sure either what we've got -- what he put down on his score sheet is accurately reflected on Exhibit 3 and, if not, you'll let us know, and if you can't tell, let us know that.

Categories, 94 errors, is that accurate?

A.  That's the number on his summary sheet.

Q.  That's -- that's all I'm asking for.

A.  Okay.

Q.  I know you can't go deeper than that.

A.  Okay.

Q.  TPT-DL, 3.33?

A.  I -- you know, I can't verify that because there's a nomograph that we would use to convert. That's -- that's -- that's the dominant hand, and you see on the summary sheet that it looks like -- it's 10 minutes, and it looks like a 3 in parentheses, and I --



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                   November 10, 2010

54

this is a 3.33.  So, I mean, I can certainly see the comparison there but I -- I really couldn't verify that as being accurate.

Q.  Okay.  And then TPT-NDR?

A.  I really would need to look at the manuals for this.

Q.  Okay.  TPT-B?

A.  Same thing.  I --

Q.  B is both hands?

A.  Yes.

Q.  All right.  And where it says both hands on the score sheet, it says 9 minutes, 32 seconds?

A.  Yes.

Q.  All right.  And you don't feel comfortable extrapolating from that to the .95?

A.  Right.

Q.  Okay.  How about TPT-Total, 1.16?

A.  I don't know.  The total times 26 minutes and 50 seconds, and I couldn't verify that that's the conversion for raw score.

Q.  TPT-Memory, 6?

A.  6 is the same that's on the summary sheet.

Q.  Okay.  So, that you can verify?

A.  Uh-huh.

Q.  At least as -- under the parameters we're working


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

under?

A.  Right.

Q.  TPT-Localization is a 1.  I think you can do that as well?

A.  Yes.

Q.  That's on the score sheet.  All right.  We have finger tapping at 50, DL?

A.  Finger tapping, 50, that's what's on the summary sheet.

Q.  Okay.  So, that's accurate.

Tapping NDR, 46?

A.  That's for nondominant hand, and that's the same.

Q.  All right.  And seashore rhythm at a 23, that's on the score sheet?

A.  Yes, that's on the score sheet.  I don't know what 23C means but -- 23 correct, that's what that means.

Q.  23 correct?

A.  Yes.

Q.  9 errors?

A.  Yes.

Q.  That's what it means.  And then speech sounds, 9 errors is also on the score sheet?

A.  Yes.

Q.  And trails A and B, I think we've covered, 32 and



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

93?

A. Yes.

Q. Okay. So, with the exception of those few TPT scores that you would need a manual, you can say that what's reflected in the raw scores on Exhibit 3 are -- are accurately taken from Dr. Weiner's score sheets?

A. From the summary sheet, yes.

Q. Yes. Okay.

MR. WISEMAN: With that, I will -- I mean, obviously, the judge will have to make a decision but I would renew the offer, and I would suggest that whatever the doctor can't verify would go to the weight and not the admissibility of this exhibit.

MR. DOWD: I'll ask the doctor a few more questions when you're finished --

MR. WISEMAN: Okay.

MR. DOWD: -- and then I'll voice my objection.

MR. WISEMAN: Okay. Okay. That's all I have. Thank you.

FURTHER EXAMINATION

Q. (BY MR. DOWD) Just a little bit longer, doctor.

Now, the Heaton norms didn't address depression or lack of effort on the part of the testee, I think you testified to that earlier?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

A.  Yes.  They -- they don't address those clinical factors at all.

Q.  All right.  And those are addressed by the -- by the clinician, the person administering the test?

A.  Yes.

Q.  All right.  And did -- do you remember whether Dr. Weiner or Dr. Gelbort suggested that Mr. Bourgeois did not provide full effort on the taking of these tests?

MR. WISEMAN:  I'm going to object to this as beyond the scope of the deposition.  I -- you know, this is going rather far afield.

MR. DOWD:  Well, I'm just following up with a question that you brought up relating to the Heaton norms don't address depression and effort.

Q.  (BY MR. DOWD)  Doctor, if you could answer.  If you recall, do you recall if Dr. Weiner and Dr. Gelbort observed whether or not Mr. Bourgeois was giving full effort?

A.  My recall of that would -- is not clear.

Q.  If you don't recall -- if you don't recall, that's fine.

A.  Not for sure.  I mean, I remember something but --

Q.  It will be in the record.


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                November 10, 2010

58

And as far as the guidance on whether to apply the demographic for ethnicity, is -- in your opinion, is that -- is there guidance that suggests that you should apply that demographic?

A.  Yes, I think there is guidance.  I think that I described in this case, I think one should look at all the norms for this in this -- in this case, yeah.

Q.  Okay.  And if -- my earlier question might not have been clear but do you know whether Mr. Bourgeois' background and upbringing is consistent with the proxies that form the basis of applying the African American ethnicity norm?

A.  That's my understanding and -- from both my evaluation of him and the records, yes.

Q.  Okay.  Now, as far as this issue about the DSM suggests that you should use, you know, IQ -- excuse me -- IQ scores to determine mental retardation, what's -- what's the -- why did you feel that you were able to give an opinion as to applying these neuropsychological tests to -- as to whether or not those are consistent with a finding of mental retardation?

A.  Well, I think you look at all the information you have to see what's consistent and what isn't consistent, and if you have other test scores -- just like if you



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

had a school file and there were tests -- nonIQ tests in the school file, you would -- you would look to see if those were consistent or inconsistent with an opinion about mental retardation.

Q.  And is this evaluation, comparing the results of the neuropsychological test to whether it's consistently -- consistent with mental retard -- with a finding of mental retardation, I mean, is that an evaluation that is rarely done or is that a standard evaluation done by, you know, psychologists, on the issue of mental retardation?

A.  It would not be typical -- when asked to evaluate if somebody was mentally retarded or not, it would not be typical to administer a battery of neuropsychological tests.

Q.  Okay.  Now, on Exhibit No. 3, the -- you were not able to verify the -- that the raw scores reflected on the exhibit, in fact, reflect accurately the results of Dr. Weiner's and Dr. Gelbort's administration of the categories, trails making -- and trail making tests to Mr. Bourgeois, and what -- what -- what would you need to --

MR. WISEMAN:  I'm going to object.  That, I think, that mischaracterizes the doctor's testimony.

Q.  (BY MR. DOWD)  Well, let me ask you:  Were you



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

able to -- to verify that raw score data reflected on Exhibit 3 accurately reflects the results of the -- Dr. Weiner's and Dr. Gelbort's administration of those tests I just talked about to Mr. Bourgeois?

A.  I -- I can't do that here today, no.

Q.  And what would you need to do that?  I mean, what -- what would -- what, if anything, would enable you to do that, to verify whether this is accurate, Exhibit 3?

A.  Well, I could -- I could verify as to whether or not the -- the scoring on the raw data was accurate and that the final scores were consistent with this, with all the manuals and everything --

Q.  Uh-huh.

A.  -- here.

Q.  Uh-huh.

A.  What I couldn't do, of course, is to verify anything about the administration of the test but --

Q.  Uh-huh.

A.  -- I could assume that was -- that was correct and analyze the scoring if I had all the materials here.

Q.  Okay.  And you don't?

A.  No.

Q.  Now, the -- once the raw data is obtained, it's then transferred onto a summary sheet?



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

A.  Typically.

Q.  Okay.  And that's another step in the process that -- that was done and you can't determine whether that was done accurately as well?

A.  Well, I mean, I could -- given the raw data and the summary sheet, I mean, I could -- here today, I could go back and look at those to see if it was transferred correctly to the summary sheet, but I mean --

Q.  Okay.  But -- but your -- your testimony assumes that that transfer was done accurately as well?

A.  Yes.

Q.  Okay.

MR. DOWD:  We would renew our objection to Exhibit No. 3 because the -- I don't think that the raw data information has been verified.

MR. WISEMAN:  Well, let me ask a few more questions then about it.

FURTHER EXAMINATION

Q.  (BY MR. WISEMAN)  Just -- I know -- we've gotten maybe a little bit confused here collectively.  What we've asked you to do is look at Dr. Weiner's data sheet to see if the information on that data sheet was accurately placed on the Exhibit 3 raw score category.

MR. DOWD:  Just for clarification, you're



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                    November 10, 2010

62

talking about the summary sheet?

MR. WISEMAN:  I'm talking about Page 7 of Exhibit 31, which is the Halstead-Reitan Neuropsychological Test Battery Result Summary Sheet.

MR. DOWD:  Summary sheet.  Okay.

Q.  (BY MR. WISEMAN)  So, the -- my question then is that is it your understanding what you've been asked to do is to see to the extent it's possible, without additional materials, whether the numbers on that document were accurately placed on Exhibit 3 in the raw score category?

A.  I was asked to do that, yes.

Q.  Okay.  And you were able to do that for all but four of the TPT scores?

A.  That's correct.

Q.  Okay.  Now, the other questions Mr. Dowd just asked you were whether you -- whether you have an opinion or can you tell as to whether or not Dr. Weiner accurately administered and scored the testing.  Is that your understanding of what he was asking?

A.  Yes.

Q.  Okay.  I just want to read to you your testimony in response to my questions at the hearing.

MR. DOWD:  Let me -- let me just voice an objection.  That wasn't the question but that would be



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                November 10, 2010

63

my objection.

MR. WISEMAN:  Okay.

MR. DOWD:  But I know the witness has already said that --

MR. WISEMAN:  That was his understanding, yes.

MR. DOWD:  Right.

Q.  (BY MR. WISEMAN)  On Page 238 of the transcript of September 23rd, line 20, I asked you, "Leaving aside the controversy between the parties here as to whether Mr. Bourgeois is entitled to a formal diagnosis of mental retardation, you would agree that, at best, he is borderline deficient in his intellectual functioning?"

And your answer is, "That's the best measurement of his cognitive IQ that we have.  I agree with that, yes."

Question, "Okay.  And I don't see in your report any criticism of the administration.  You read the data from both Doctors -- "

Answer, "Yes."

Question -- "Gelbort and Weiner?"

Answer, "Yes."

Question, "I don't see any report or critique in your report that they administered the tests incorrectly or that they scored them incorrectly?"



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                November 10, 2010

64

Answer, "That's correct."

So, you had no quarrel with the actual -- to the extent one can tell, you weren't in the room -- the actual administration and scoring of Dr. Weiner's testing?

A.  Wait.  Don't close that.

MR. DOWD:  Do you need to -- Doctor, this is your copy of the -- of your testimony if you need to look at that.

THE WITNESS:  Okay.

A.  As I --

MR. DOWD:  I'm sorry, what page was that on?

MR. WISEMAN:  238 to 239.

MR. DOWD:  Okay.

THE WITNESS:  Whoops.  That's --

MR. DOWD:  That's yours.  That's your testimony, Doctor.

THE WITNESS:  Okay.

A.  Okay.  I have a two-part answer to that --

Q.  (BY MR. WISEMAN)  Okay.

A.  -- if you'll let me do that.  I don't, as -- I didn't, as I sat there during the hearing, and I don't, as I sit here today, have a quarrel with that.  I didn't -- I don't.  I don't know.  I just don't know if -- but I'll -- at the hearing, I was answering the



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

question that you asked.  And you said, "I don't see any report or critique in your report that they administered the test incorrectly?"

And so, I answered, "That's correct."

Q.  Okay.

A.  It wasn't in the report.  I mean, there wasn't anything.  And so, maybe that's a little confusing, and maybe I'm --

Q.  Well --

A.  -- splitting hairs but --

Q.  Yeah, I mean, maybe -- maybe, maybe not but let's ask it this way:  I mean, if you thought that Dr. Weiner had, you know, grossly or even in some minor but material way made a mistake in his testing, you would have pointed that out to counsel and it would have been in your report and presumably in your testimony, you would have talked about that if he made a mistake?

A.  I think I would have talked about that.  I don't know that I would answer that I would have put it in my report, though.

Q.  Okay.  All right.  Well, final question then about this Exhibit 3.  During the break, you checked the scale scores and you checked the T-scores and you didn't find any errors in Exhibit 3?

A.  That's correct.


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Q.   Okay.   And that would be true of -- well, withdrawn.

MR. WISEMAN:   Okay.   That's really it unless Mr. Dowd -- and we would renew our -- we would renew our offer and, obviously, the judge will make a decision.

FURTHER EXAMINATION

Q.   (BY MR. DOWD)   Doctor, as far as this issue about whether or not you have any information that Dr. Weiner administered the testing properly or improperly, what -- can you draw any conclusions on that from the -- his reporting the raw data or can you -- can you address that at all?   Is there a way for you to determine whether or not he -- he administered the tests properly or improperly?

A.   No, not -- not the administration, no.

Q.   Okay.

FURTHER EXAMINATION

Q.   (BY MR. WISEMAN)   Well, to be clear, administration, scoring, if there were scoring errors, you could see that, correct?

A.   Correct.

Q.   Okay.   And if there was an error in the administration that reflected in the scoring itself, you would be able to determine that?

A.   Okay.   Yeah.   I'm following you now.   There would



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

be some instances where, by analyzing the scoring, you could see if there was a problem in the administration. They would be very specific things, though.

Q. Okay. And you didn't sit through the entire -- well, you didn't sit through the testimony of Dr. Price, did you -- of Doctor --

A. No.

Q. I -- I -- I -- I'll rephrase that.

You didn't sit through the testimony of Dr. Gelbort?

A. No.

Q. All right. Have you had a chance to review his transcript?

A. No.

Q. All right. Have you talked with Dr. Moore about his views of the accuracy of the administration and scoring of Dr. Gelbort's testing -- I'm sorry -- Dr. Weiner's testing?

A. No.

MR. WISEMAN: Okay. Nothing else.

MR. DOWD: That's all we have.

THE VIDEOGRAPHER: The time is approximately 11:58. We are now off the record.

(Whereupon at 11:58 a.m. the deposition was concluded.)


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                    November 10, 2010

68

E R R A T A    S H E E T


Correction                              Page        Line


_____


_____


_____


_____


_____


_____


_____


_____


_____


_____


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                    November 10, 2010

69

I, RANDALL PRICE, PhD, have read the foregoing deposition and hereby affix my signature that same is true and correct, except as noted above.

_____
RANDALL PRICE, PhD

THE STATE OF _____
COUNTY OF _____
Before me, _____, on this day personally appeared RANDALL PRICE, PhD, known to me (or proved to me under oath or through _____) (description of identity card or other document) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that they executed the same for the purposes and consideration therein expressed.
Given under my hand and seal of office this _____ day of _____, _____.


_____
NOTARY PUBLIC IN AND FOR
THE STATE OF _____



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                November 10, 2010

70

STATE OF TEXAS          *

COUNTY OF HARRIS        *


        I, the undersigned certified shorthand reporter and notary public in and for the State of Texas, certify that the facts stated in the foregoing pages are true and correct.

        I further certify that I am neither attorney or counsel for, nor related to or employed by, any of the parties to the action in which this deposition is taken and, further, that I am not a relative or employee of any counsel employed by the parties hereto, or financially interested in the action.


        SUBSCRIBED AND SWORN TO under my hand and seal of office on this the 23rd day of November, 2010.

        EDITH A. BOGGS, CSR
        Certified Shorthand Reporter and
        Notary Public in and for
        the State of Texas

Notary Expires:  5-10-2012
Certificate No. 3022
Expiration date:  12-31-2011
Esquire Deposition Solutions, LLC
Registration No. 3



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                    November 10, 2010

71

| A | | | | |
|---|---|---|---|---|
| **AAMR** | **actual** | 67:2,16 | **ages** | 22:8 23:15 |
| 51:11 | 6:21 7:13 | **administr...** | 8:21 35:21 | 24:6,7 25:8 |
| **abilities** | 43:17 64:2 | 37:17 | **ago** | 26:17 28:3 |
| 33:6 | 64:4 | **admissibi...** | 38:17 50:25 | 29:17 37:13 |
| **able** | **adaptive** | 56:13 | **agree** | 38:12 42:17 |
| 45:18,23 | 52:8 | **admission** | 12:2 14:8,17 | 45:10 48:7 |
| 58:19 59:17 | **added** | 27:19 | 15:18 16:14 | 50:8 |
| 60:1 62:13 | 47:21 | **Adults** | 17:4,5,6,24 | **analyze** |
| 66:24 | **addition** | 53:8 | 19:5 20:6 | 10:2 39:12 |
| **absence** | 9:13 | **advice** | 21:3,23 | 43:10 45:11 |
| 52:16 | **additional** | 50:17 | 23:12,20 | 60:21 |
| **abstract** | 6:19 62:9 | **advocate** | 26:6,9 | **analyzing** |
| 51:21 | **address** | 17:4 | 47:16 52:3 | 35:13 44:19 |
| **account** | 47:15,18 | **affect** | 52:18 63:12 | 67:1 |
| 8:5 9:10,12 | 56:23 57:1 | 32:15 33:12 | 63:15 | **answer** |
| 9:15 16:15 | 57:15 66:11 | **affidavit** | **agreed** | 6:21 7:5 |
| 24:15 33:13 | **addressed** | 18:3,7 | 19:3 21:16 | 27:25 28:2 |
| **accounting** | 57:3 | **affix** | 22:2 | 53:2 57:16 |
| 9:1 34:14 | **adjust** | 69:1 | **agrees** | 63:14,20,22 |
| **accuracy** | 6:24 7:1,15 | **afield** | 30:25 | 64:1,19 |
| 30:22 38:23 | 24:16 34:5 | 57:12 | **ahead** | 65:19 |
| 38:25 46:3 | 36:4 | **African** | 41:21 | **answered** |
| 67:16 | **adjusted** | 9:4,13,22 | **ALFRED** | 65:4 |
| **accurate** | 7:8,9 38:16 | 14:2 15:14 | 1:6 | **answering** |
| 20:24 21:10 | **adjustment** | 16:13,16 | **AMERICA** | 64:25 |
| 22:6 23:2,5 | 16:7,19 | 21:14 22:9 | 1:4 | **answers** |
| 27:23 28:4 | **adjustments** | 22:12 23:24 | **American** | 2:11 25:24 |
| 30:1,20 | 34:11 | 24:8 35:6,8 | 9:14,22 14:2 | **anybody** |
| 34:12,13,23 | **administer** | 35:8,11,16 | 15:14 35:6 | 30:17 |
| 45:13 46:2 | 59:14 | 36:2 40:9 | 35:8,9,11 | **apologize** |
| 46:9 53:14 | **administered** | 40:14,18,24 | 35:16 43:11 | 22:10 |
| 54:3 55:10 | 20:12 26:10 | 41:3,7,13 | 43:25 48:6 | **apparently** |
| 60:8,11 | 41:5 53:9 | 42:18,22 | 58:11 | 17:15 |
| **accurately** | 62:19 63:24 | 43:11,11,25 | **Americans** | **appear** |
| 28:6,8,10 | 65:2 66:9 | 48:6 58:11 | 9:4 16:13,16 | 20:23 23:17 |
| 31:1,3 | 66:13 | **age** | 21:14 22:9 | **appeared** |
| 45:17,22 | **administe...** | 5:25 6:2,24 | 22:13 23:24 | 69:6 |
| 46:23 53:11 | 57:4 | 7:6,10,11 | 24:8 36:2 | **appendix** |
| 56:6 59:18 | **administr...** | 7:15,22,23 | 40:9,14,19 | 4:17 8:8,20 |
| 60:2 61:4 | 17:15 20:17 | 8:3 13:12 | 40:24 41:3 | 8:25 11:11 |
| 61:11,24 | 21:25 23:14 | 13:15 14:2 | 41:8,13 | 12:11,17 |
| 62:10,19 | 40:6,11,15 | 15:10 20:7 | 42:18,22 | 13:14,18 |
| **acknowledged** | 40:21,25 | 33:18,21 | **analyses** | 14:24 15:9 |
| 69:8 | 41:4 42:1,4 | 40:7,12,16 | 9:9 | 15:14 24:12 |
| **action** | 59:19 60:3 | 40:22 41:2 | **analysis** | 24:12,16 |
| 70:6,7 | 60:18 63:18 | 41:6,11,13 | 7:23 9:1 | 46:15 |
| | 64:4 66:15 | 41:15 44:11 | 16:1,3 | **apples** |
| | 66:19,23 | 45:2 47:19 | 18:10 19:10 | 39:15,15 |



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                November 10, 2010

72

48:23,24
**application**
9:18,20
  11:25 19:5
  21:2 28:11
  28:21 29:15
  29:22 45:16
  46:1,24
**applied**
9:11 17:9
  18:19 31:3
  31:4 32:10
  34:22 48:5
**applies**
11:23
**apply**
36:20 37:9
  43:6,7 48:9
  58:1,4
**applying**
6:7,15,15
  26:7 34:10
  35:10 36:3
  39:1,3,25
  44:14 58:11
  58:19
**approach**
44:19 48:10
**appropriate**
47:2
**appropria...**
31:3
**approxima...**
5:3 27:13,16
  31:10,13
  67:22
**area**
25:21 47:18
**areas**
5:18 26:11
**arrive**
26:18,22
  34:5 49:3
**arrived**
48:17
**aside**
26:13 63:9
**asked**

6:10 45:14
  49:6 59:12
  61:22 62:7
  62:12,17
  63:9 65:1
**asking**
18:9 30:21
  53:16 62:20
**Association**
1:15 3:5
**assume**
27:25 60:20
**assumes**
61:10
**assuming**
50:10
**attempt**
16:18
**attention**
5:23
**attorney**
70:5
**ATTORNEYS**
3:3,10
**Attorney's**
3:11,17
**authorita...**
51:16
**authorities**
51:3
**authors**
17:3
**average**
6:4,5 21:9
  21:10 22:6
  22:6,25,25
  24:3,5
  39:18,19
  42:5,7,12
  42:12,21,23
  42:24 43:1
  49:1
**averages**
35:23
**avoid**
16:10
**a.m**

2:16,17
  67:24

─────────────
             **B**
─────────────
**B**
14:15,20,25
  15:11,19
  28:4,14,15
  39:5 40:16
  41:5 42:11
  42:25 54:9
  55:25
**back**
13:24 15:1
  27:17 29:16
  31:14,16
  61:7
**background**
34:23 41:12
  41:14 44:1
  58:10
**based**
17:23 18:25
  19:10 31:2
  51:13 52:8
**basis**
32:17 58:11
**battery**
17:3 53:7
  59:14 62:4
**began**
5:22
**begins**
52:9
**behavior**
52:8
**believe**
10:10 20:11
  20:12
**bell**
48:18
**best**
47:1 63:12
  63:14
**better**
9:24 39:2
**beyond**
17:11 57:11

**bit**
56:22 61:21
**black**
10:23
**board**
38:17
**Boggs**
1:19 2:12
  70:11
**book**
38:6
**booklet**
40:6,21
  42:14
**books**
50:9
**BOOTH**
3:19
**borderline**
24:2 42:2,16
  42:19 63:13
**born**
20:11
**bottom**
14:16,22,23
  52:7
**Bourgeois**
1:6 6:2 9:17
  9:18,23
  10:18,22
  18:18 19:4
  19:21 20:6
  21:24 23:19
  25:25 26:15
  26:25 32:11
  35:1,4 37:8
  39:4 40:4
  43:23 44:1
  45:15 48:3
  57:7,18
  58:9 59:21
  60:4 63:11
**Box**
3:12
**brain**
14:10,12
  26:1,7,12
  26:16 33:4

33:8 34:19
  39:14 44:24
  45:3,12
  52:21
**break**
5:25 7:16,21
  7:21,23
  11:9 13:12
  27:11 45:14
  65:22
**breakdown**
8:9
**broken**
9:1 37:7
**brought**
57:14
**Building**
1:16 3:6

─────────────
             **C**
─────────────
**C**
3:1 4:17
  11:11 12:11
  12:17 14:24
  24:12
**calculate**
35:23
**calculated**
8:2
**calculating**
36:4
**call**
34:19
**called**
5:6 24:8
**card**
69:7
**case**
7:25 10:18
  36:1 58:6,7
**categories**
7:14 11:21
  12:19 13:8
  18:19 19:4
  19:7,14
  20:25 21:3
  21:4,8,19
  21:24 22:6



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                    November 10, 2010

73

22:17,25
23:10,14,17
37:11 39:4
53:14 59:20
**category**
6:3 12:9,20
  13:8 14:9
  14:25 19:11
  22:11 23:8
  25:9 28:4
  28:13 31:23
  40:6,21
  42:1,14,15
  61:24 62:11
**Caucasian**
8:22 9:21
  13:15 15:10
  19:6 20:25
  35:5,5,17
  40:7 41:11
  43:12 48:6
**Caucasians**
16:12 21:12
  23:20 24:7
  35:20 40:12
  40:17,22
  41:1,6
  42:16,21
**certain**
32:25 51:25
**certainly**
32:18 54:1
**Certificate**
70:14
**certified**
2:12 38:17
  70:2,12
**certify**
70:3,5
**cetera**
35:23 44:6
  51:22
**chance**
67:12
**changing**
45:25
**chart**
4:18 12:2,24

14:19 20:24
26:4,5
30:25 49:4
50:1
**check**
14:7 30:14
**checked**
28:13 65:22
  65:23
**chief**
51:3
**choose**
38:14
**chosen**
38:23
**Christi**
3:18
**clarifica...**
11:10 61:25
**clarify**
43:5
**clear**
9:8 21:8
  23:2 27:2
  47:15 52:2
  57:20 58:9
  66:18
**clinical**
39:2 44:16
  47:21 57:1
**clinically**
26:20
**clinician**
10:11 33:13
  47:24 57:4
**close**
64:6
**cognitive**
52:6 63:15
**collectively**
61:21
**column**
12:18,20
  13:18
**combined**
6:19 13:10
  39:16

**come**
25:12,13
  29:16 35:15
  40:1
**comfort**
32:20
**comfortable**
54:14
**coming**
29:18
**community**
1:14 3:4
  35:5,9
**compare**
6:1 22:9
  23:19 32:6
  37:1 39:15
  39:21 41:20
  41:21 45:7
  45:9 48:23
  50:19,22
**compared**
18:22 21:12
  21:14 40:7
  40:9,12,14
  40:16,18,22
  40:23 41:1
  41:3,5,7
  42:15,17,21
  43:1,10
**comparing**
16:12,13
  26:19 32:1
  33:25 35:16
  45:1 59:5
**comparison**
23:23 24:24
  54:2
**complete**
8:17 23:4
  32:1
**complies**
11:8
**comprehen...**
38:15
**conclude**
36:17 37:25
**concluded**

67:25
**conclusion**
26:15 27:11
**conclusions**
7:14 8:1
  11:24 12:3
  39:6 43:8
  66:10
**confused**
61:21
**confusing**
50:20 65:7
**consider**
9:17,17
**considerably**
37:6
**considera...**
69:9
**considered**
13:9 44:15
**consistent**
26:11 40:3
  41:23,24
  42:2,17,18
  43:23 44:1
  58:10,21,24
  58:24 59:3
  59:7 60:12
**consistently**
59:7
**consulted**
6:21
**continue**
13:6
**contribute**
52:23
**controversy**
17:7,10,13
  17:16 38:20
  44:9,13
  63:10
**conversion**
25:16 48:23
  51:13,19
  52:11 54:20
**conversions**
51:5

**convert**
24:19,22
  34:4 39:21
  50:15,18
  53:22
**converted**
39:9,16
  41:19 52:12
**converting**
48:13
**copy**
46:21 47:1
  53:5 64:8
**Corpus**
3:18
**correct**
6:9,25 10:4
  12:25 13:2
  15:23 18:16
  18:21 19:1
  19:7,23
  21:12,13,15
  22:9 23:8
  23:25 47:17
  47:20 48:8
  52:17 55:16
  55:18 60:20
  62:15 64:1
  65:4,25
  66:20,21
  69:2 70:4
**corrected**
52:25
**correction**
13:5 20:23
  68:3
**correctly**
50:4 61:8
**counsel**
5:18 30:25
  65:15 70:5
  70:7
**County**
2:13 69:5
  70:1
**course**
5:18 24:14
  60:17



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                    November 10, 2010

74

court
1:3 6:7
cover
11:16
covered
55:25
co-designers
17:2
criticism
63:18
critique
63:23 65:2
cross
28:24 29:1
crossed
29:2
Cr-C-02-216
1:5
CSR
1:19 70:11
Cullum
50:4
cultural
16:8,24
current
7:20 37:5
Curtis
1:16 3:6
curve
48:18
CUSTODY
1:13
customary
48:10
cut
34:18 45:12
cut-off
14:5
Cv-07-223
1:6

D

D
8:20 13:14
  13:18 15:9
  24:16
damage

44:24
damaged
45:4,12
data
17:24 18:8
  18:10 19:8
  19:11,14
  20:21 22:17
  23:7,15
  28:9 30:2
  39:4 40:1
  42:14 43:10
  44:19 45:11
  60:1,11,24
  61:5,16,22
  61:23 63:18
  66:11
date
1:19 5:2
  70:15
day
2:15 69:6,10
  70:9
decision
56:10 66:5
deeper
53:18
Defender
1:14,15 3:4
  3:5
defense
45:15
deficiency
14:6
deficient
6:4 18:20
  21:9 63:13
define
9:25 10:8
defined
10:1
degree
16:11
demographic
32:14 33:19
  33:19 34:11
  34:22 35:11
  37:7 38:16

39:1 41:16
43:6,25
58:2,4
demographics
24:17 33:9
  34:5 44:11
  45:7 47:11
  47:19
demonstrated
36:10
Department
3:11,16
depicted
28:4 30:15
  30:19
depicts
28:6 31:1
deposition
1:11,13 2:8
  2:11,14
  5:12 57:11
  67:25 69:1
  70:6,15
depressed
33:10
depression
47:13,16
  56:23 57:15
describe
16:22
described
58:6
describes
16:6
description
4:15 69:7
designated
14:21
designation
14:8
determine
35:17 58:17
  61:3 66:12
  66:24
determined
35:1
deviation

49:14,17,19
diagnose
51:4,22
diagnosis
51:12,16
  52:7 63:11
diagnostic
51:6 52:3
difference
16:21 19:16
differences
10:3
different
34:8 35:21
  35:21 38:6
  49:13 50:6
  50:12 51:2
difficult
9:25 26:21
direct
5:23
disagree
26:14
disagreement
19:13
discussed
51:3,6,14
discussing
41:10 51:23
discussion
47:13 52:2
  52:10
distinguish
21:20
distribution
39:20 50:10
  50:11
District
1:3,3,15 3:4
DL
55:7
doctor
31:20 46:10
  46:18 47:10
  50:2 56:12
  56:14,22
  57:16 64:7

64:17 66:7
67:6
Doctors
32:9 45:22
  63:19
doctor's
59:24
document
62:10 69:7
doing
14:15 15:13
dominant
53:23
double
49:2,13,20
Dowd
3:14 4:6,8
  4:10 6:6
  10:7 11:9
  11:14,18
  14:21,23
  15:3 17:20
  20:6,10
  21:17 27:12
  27:21 28:6
  28:8,18
  29:1,3,6,9
  29:13,17,25
  30:9 31:5,7
  31:15,18,20
  37:1 44:8
  46:6,10,14
  46:17,19
  47:5,7
  52:11 56:14
  56:17,22
  57:13,16
  59:25 61:14
  61:25 62:5
  62:16,24
  63:3,7 64:7
  64:12,14,16
  66:4,7
  67:21
Dowd's
5:21
Dr
5:9 10:19,22



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                    November 10, 2010

11:22 17:2
17:14,19
19:8,11,19
19:20 20:21
21:24 22:12
22:16 23:7
23:9,14,16
26:3,4,5,14
27:22,24,24
28:24 29:10
29:20 31:1
31:17,18
36:11 37:10
37:11,19,20
39:5,5 40:5
40:11,15,20
40:25 41:4
41:25 42:4
42:11,14,20
42:25 44:15
45:2 46:19
50:4 53:6
56:6 57:7,7
57:17,17
59:19,19
60:2,3
61:22 62:18
64:4 65:12
66:8 67:5
67:10,15,17
67:17

**draw**
66:10

**DSM**
51:2,11
58:15

**duly**
5:6

**dysfunction**
14:10,13
26:12,16
33:5 34:20
39:14 52:22

———————
**E**

**E**
3:1,1 68:1,1
68:1

**earlier**
34:1 43:4,15
56:25 58:8

**ease**
38:23

**Eastern**
1:15 3:4

**eb**
1:1

**Edith**
1:19 2:12
70:11

**education**
6:1,2,24 7:7
7:11,15,22
7:23 8:3,21
13:13 14:1
15:9 16:9
32:19,22,23
33:18,21
35:21 40:8
40:13,17,22
41:2,6,15
44:11 45:3
47:19

**educational**
16:8,24
41:12,14

**effect**
33:9

**effort**
33:12 47:13
47:16 56:24
57:8,15,19

**either**
21:11 31:25
53:10

**elaborate**
43:16

**ELIZABETH**
3:8

**ELSA**
3:19

**empirically**
16:16

**employed**
70:5,7

**employee**

70:6

**enable**
30:14 60:7

**engage**
51:5

**enrichment**
16:8

**entire**
7:19 43:10
67:4

**entitled**
63:11

**equivalent**
13:9

**error**
12:19 22:25
66:22

**errors**
12:1,9 29:15
31:25 53:14
55:20,23
65:24 66:19

**Esquire**
1:14 2:14
3:7,8,14,14
3:19,19
70:15

**establish**
36:23

**establishing**
31:21

**Estrada**
10:20,22

**et**
35:23 44:6
51:22

**ethnicity**
7:11,24 8:6
33:21 36:5
43:6,8,20
43:24 44:12
48:3,9 58:2
58:12

**evaluate**
59:12

**evaluating**
33:25 37:10

**evaluation**
19:18 23:16
40:20 41:22
58:14 59:5
59:9,10

**examination**
4:1 5:8
19:21 31:19
47:8 56:21
61:19 66:6
66:17

**examine**
29:7 31:18

**example**
8:20

**exception**
45:25 56:3

**excerpt**
4:16 5:12

**excuse**
58:16

**executed**
69:8

**executive**
12:18 13:19
14:24

**exhibit**
5:11,14 8:11
8:13 11:4,5
12:1,12
13:21 14:1
14:9,16
15:6,15,16
19:11,15
20:20,24
22:11 23:12
23:18 26:5
27:3 29:12
29:18 30:14
30:15,20,25
31:4 45:15
45:21 46:7
46:12,14,20
47:5 49:25
50:2 53:4,5
53:12 56:5
56:13 59:16
59:18 60:2

60:9 61:15
61:24 62:3
62:10 65:22
65:24

**Exhibits**
4:13 27:20

**expect**
30:24 33:15
42:6

**expected**
18:25

**experience**
32:21 36:16
37:25

**experiences**
16:24,25

**Expiration**
70:15

**Expires**
70:14

**explain**
15:24 16:15
16:19,20
31:20 49:12

**explore**
5:19

**expressed**
69:9

**extent**
62:8 64:3

**extraneous**
33:11

**extrapola...**
54:15

———————
**F**

**face**
20:21

**facilitate**
24:24

**fact**
6:4 7:15
17:7 21:9
36:13 59:18

**factor**
43:6,8

**factors**



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                      November 10, 2010

76

```
  8:2 16:7          financially        57:18              69:10             guidance
  32:14 33:2        70:7              function            gives             10:8 48:4,9
  33:6,9,11         find               31:20              13:7               48:12 58:1
  47:16,22          65:24             functioning         giving             58:3,5
  52:22 57:2        finding            52:7 63:13         57:18
facts               58:21 59:8       functions           go                 ──── H ────
 70:3               fine              12:19 13:19        10:13 12:17
fair                53:2 57:22        14:24              12:20 13:13        H
 34:21              finger           further             13:18,19,24        68:1
fall                55:7,8           7:23 47:8           14:24,25          habit
 24:3 42:1,5        finished          56:21 61:19        15:8,10           7:6
  42:12,25          56:15             66:6,17            18:15 24:16       hairs
  45:9 52:12        first             70:5,6             33:6 39:24         65:10
falling             5:6 7:18                             41:21 53:8        Halstead-...
 20:5                12:4,11,19        ──── G ────        53:18 56:12       17:3 25:19
falls                15:5 19:2       gather              61:7                53:7 62:3
 17:15 42:16         24:10 41:12      32:22              going             hand
false               five            Gelbort             7:12 8:10          53:5,23
 34:19              42:2             4:18 17:19           11:21 12:15        55:12 69:10
familiarize         flip             23:9 25:13          15:25 22:21        70:8
 11:7               8:16             32:9 37:11          23:11 53:4        handed
family              following        37:19,20           57:10,12           50:2
 35:6,6,8           22:11 44:23       39:5 42:20         59:23            hands
far                  51:15 57:13      42:25 45:23       gold               54:9,11
 14:2 27:21          66:25            57:7,17           52:4              Harris
  57:12 58:1        follows           63:21 67:10       good               2:13 70:1
  58:15 66:7        5:7             Gelbort's           5:9,10 33:11      hash
father              follow-up        23:14,16            53:1               18:15
 44:16              47:9              27:24 40:20       gotten            hearing
favorably           foregoing        40:25 41:4         61:20             20:20 30:21
 18:22,23           69:1,8 70:3       42:14 59:19       great              51:3 62:23
features            forgot            60:3 67:17        52:25              64:22,25
 33:19              37:18            gender             greater           Heaton
Federal             form            6:25 7:5,8          16:11             6:8,13,14
 1:14 3:4           58:11            7:11,16,22         grossly            7:13,19 8:8
feel                formal           7:24 8:4           65:13              8:16 9:10
 54:14 58:18        63:11            33:21 35:22        group              9:21 10:5,6
fell                forth            40:8,13,17         16:16 32:2,2       11:12,23
 42:20              33:11            40:23 41:2          32:5,7 36:1       13:10 16:14
field               found            41:6 44:12         36:2,4            16:18,22
 17:8 44:18         50:9             45:3 47:19        groups             17:4,8,12
figure              four            give                37:7              17:16 18:5
 16:2 20:9          62:14            30:2 35:22        guess              18:11,19
file                four-page        58:19             9:13 12:25         21:3 24:11
 59:1,2             5:12            given               15:15 18:9        25:15,17
final               full            17:6 18:18          18:12,13          26:8,10
 60:12 65:21        43:22 57:8       26:24 39:5         25:21 36:10       28:11,22
                                     50:17 61:5         51:1,23           29:23 31:3
                                                                          33:23,25
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                November 10, 2010

34:4,6,9
36:1,20,23
37:1,4,6,9
37:21,23
38:11,18,24
39:3 40:1
44:9,10
45:16 46:2
46:24 47:2
47:12,15,18
47:25 48:6
50:7 56:23
57:14
**helps**
39:1
**hereto**
70:7
**higher**
6:5 18:23
32:22 42:5
**hours**
2:16
**Houston**
1:22 2:15
3:13
**hundred**
49:15,16

———————
**I**
**idea**
10:12 50:21
**identific...**
10:1,17
32:12 48:11
**identified**
10:19
**identify**
32:10
**identifying**
16:11
**identity**
69:7
**ignore**
52:5
**impact**
33:19,25
**impacting**
43:21 47:14

**impaired**
15:20,22
16:1,3 19:4
19:6,25
20:1,2,4
21:11,15
22:3,7,8
23:20,23
24:1
**impairment**
14:6 16:12
19:12 21:4
21:19 22:18
23:7 24:2
26:1,7,11
27:4,5
**impairments**
18:5
**improperly**
66:9,14
**include**
7:5,9 14:25
44:10
**includes**
12:21
**including**
16:6,23
**inconsistent**
42:13 52:1
59:3
**incorporated**
33:22 47:12
**incorrectly**
63:24,25
65:3
**index**
4:1,13 24:20
24:22
**indicate**
19:12 37:20
**indicated**
39:13 43:5
43:19
**indicates**
14:5
**indication**
36:22 37:22
**individual**

38:4
**individuals**
40:7,16 45:4
45:5
**individual's**
9:15 32:7
**influence**
45:3
**information**
8:25 52:6
58:23 61:16
61:23 66:8
**initial**
48:1
**instance**
49:9,15
**instances**
67:1
**instrument**
69:8
**intellectual**
63:13
**intelligence**
26:21,25
33:14 39:22
42:6,8,19
42:23,24
52:13,15
**intelligent**
33:14
**intended**
52:21
**intentional**
7:10
**interested**
70:7
**interpret...**
32:15 33:20
**interpret...**
50:7
**interpreting**
31:21
**interrelated**
45:9
**interrupt**
12:23
**introduction**

46:7
**IQ**
6:5 18:24,25
24:23 26:19
33:16 39:9
39:19 41:20
42:3,16
43:1 51:13
51:17 52:4
52:8 58:16
58:17 63:15
**irritating**
18:12
**issue**
26:13 39:14
45:13 58:15
59:11 66:7
**issues**
43:20
**i.e**
47:19

———————
**J**
**Jack**
15:25
**judge**
15:25 56:10
66:5
**June**
20:11
**Justice**
3:11,16

———————
**K**
**kind**
34:15 50:18
**kinds**
33:1 50:12
**know**
8:9 16:18,20
18:15 22:21
24:10 26:17
32:24 35:4
36:13,13,19
38:19 39:8
39:13,25
44:11 48:12
52:20,22,24

53:8,12,13
53:18,21
54:18 55:15
57:11 58:9
58:16 59:10
61:20 63:3
64:24,24
65:13,19
**knowledge**
32:21 47:1
**known**
44:22,23
69:6

———————
**L**
**lack**
9:24 26:1
51:4 56:24
**Lamar**
2:14
**Largely**
33:1
**larger**
37:5,6
**LARIN**
3:8 11:16
20:14 30:3
30:5,12
**latest**
11:14
**lead**
36:16
**leading**
36:25 44:7
**learn**
32:21
**leaves**
10:10
**leaving**
26:13 63:9
**led**
37:25
**left**
12:21 13:19
**left-hand**
14:2
**let's**


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                    November 10, 2010

78

10:13 21:21
21:22 35:16
46:10 65:11
**level**
20:5 22:18
24:4 42:2,5
42:7,12,16
42:21,23,24
43:1 52:12
**levels**
35:17,18,21
**lies**
24:20
**life**
16:8 52:9
**limited**
44:6
**line**
5:21,24 52:7
63:9 68:3
**listed**
36:15 45:21
**literature**
10:16 16:6
48:4
**little**
11:9 18:13
20:1 47:9
56:22 61:21
65:7
**LLC**
70:15
**localization**
26:14
**long**
31:8,25
38:17 39:24
**longer**
56:22
**look**
45:15 46:20
47:24 52:3
54:5 58:6
58:23 59:2
61:7,22
64:9
**looked**
37:16

**looking**
8:3 12:11
22:8 26:3
26:18 36:16
39:14
**looks**
8:17 53:24
53:25
**lot**
7:9
**low**
6:5 21:9
22:5,25
24:3,5
26:21,25
42:12
**lower**
16:16 32:23
32:25

— **M** —

**M**
3:14
**main**
33:19
**making**
31:22 37:11
40:11,15,25
41:4 42:5
42:11,20,25
59:20,20
**male**
8:20 13:14
14:1 15:9
22:12
**manual**
10:5,6 11:13
16:22 25:15
25:17,19
56:4
**manuals**
30:8 48:4
54:5 60:13
**March**
20:13
**mark**
3:14 7:12
8:11 11:3

31:18
**marked**
4:15 5:14
8:13,14
11:5 12:24
49:23,25
50:1
**marking**
5:11
**material**
65:14
**materials**
60:21 62:9
**matter**
7:6
**mean**
24:15 31:24
37:16 39:18
39:19 41:16
48:22 49:1
49:16,17
50:13,13,13
50:14,15
54:1 56:9
57:23 59:8
60:6 61:5,6
61:9 65:6
65:11,12
**meaning**
6:1 27:2
32:3
**means**
44:6 55:16
55:17,22
**meant**
18:13 21:7
**measure**
52:15,16,19
52:21
**measured**
39:22
**measurement**
63:14
**medical**
44:22
**Medicine**
50:5
**memory**

51:21
**mental**
39:14 40:4
42:13 51:1
51:16,22
58:17,21
59:4,7,8,11
63:12
**mentally**
41:23,25
59:13
**mentioned**
47:13
**metric**
24:23 39:9
43:1 49:13
**Michael**
1:14 3:7
**Milam**
3:12
**mild**
14:12 20:5
21:4,19
22:18 23:7
27:4,5,6
**mildly**
15:20 21:11
22:3 23:20
**minor**
45:24 65:13
**minute**
11:6 49:18
**minutes**
29:11 53:25
54:12,18
**mischarac...**
59:24
**misrepres...**
21:17
**missing**
39:7
**mistake**
65:14,17
**misunders...**
18:17 24:21
25:4,23
**mixed**

9:24 10:20
35:2
**moderate**
14:10 19:12
21:11 27:6
27:8
**moderately**
19:6
**moment**
7:13 43:3
**Moore**
67:15
**morning**
5:9,10
**move**
23:9 27:19
38:24
**Munro**
50:4

— **N** —

**N**
3:1
**name**
31:18 69:8
**nature**
44:8,13
**NDR**
55:11
**necessarily**
23:10
**necessary**
48:23
**need**
30:8 31:9
54:5 56:4
59:21 60:6
64:7,8
**needs**
29:11
**neither**
70:5
**neurologi...**
44:20
**neuropsyc...**
7:7 32:25
33:4,7,16



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

51:17,21,25
52:15,21
53:7 58:20
59:6,14
62:4
**neuropsyc...**
38:18
**neuropsyc...**
32:4,19
38:21 44:16
**never**
49:6,6
**newer**
6:19
**nicer**
29:4
**nomograph**
53:22
**nondominant**
55:12
**nonIQ**
59:1
**norm**
8:6 34:4
58:12
**normal**
34:15 44:20
44:20 45:4
50:10
**norms**
5:24 6:7,8
6:10,13,14
6:18,21 7:8
7:13,19 8:3
8:8,16,20
9:2,11,14
9:19,20
11:12,24
13:10 16:5
16:14,18
17:4,8,11
17:16 18:6
18:11,19
19:6 21:3
24:11 26:8
26:11 27:23
28:11,22
29:23 31:3

31:21 32:10
32:13 33:23
34:1,6,9
35:13,24
36:1,4,11
36:21,23
37:1,2,4,6
37:9,20,21
37:23 38:1
38:4,6,11
38:14,16,18
38:24 39:3
40:1 41:11
44:10 45:16
46:2,24,24
47:2,12,15
47:18,25
48:6 56:23
57:15 58:7
**North**
3:17
**notary**
5:7 69:12
70:3,12,14
**noted**
12:24 69:2
**notes**
18:5
**November**
2:16 5:2
70:9
**number**
31:25 53:15
**numbers**
23:17 27:3
35:15,15,19
40:1,2 62:9

_____
O
_____

**oath**
31:17 69:7
**object**
46:7 47:5
57:10 59:23
**objection**
29:18 36:25
44:7 46:17
56:18 61:14

62:25 63:1
**observed**
57:18
**obtain**
13:14 24:11
**obtained**
31:1,22
32:11 36:3
37:10 41:10
42:3 45:22
60:24
**obviously**
56:10 66:5
**offer**
56:11 66:5
**office**
1:14 3:4,11
3:17 69:10
70:9
**offices**
2:14
**oh**
14:23 20:2
20:10,15
25:20 44:12
46:14
**okay**
6:12,14 7:3
8:19,24 9:7
9:16,23
10:5,18,25
11:18,19,20
12:4,7,14
12:16,23
13:3,7,7,11
13:23,24
14:5,8,18
14:20 15:7
15:13 18:2
18:8 19:24
20:10,15,18
21:2,6 22:5
22:15,19,22
22:23 23:6
23:19 25:5
26:13 27:12
29:5,6,9,21
31:7 35:1

35:14 36:6
36:14,18,23
38:2,8 40:5
40:5 41:21
41:24 42:10
43:13,19
44:5 45:14
45:20 47:3
47:6,9
48:13,21
49:21 51:8
51:15 52:10
52:25 53:17
53:19 54:4
54:7,17,23
55:10 56:3
56:8,16,19
56:19 58:8
58:15 59:16
60:22 61:2
61:10,13
62:5,13,16
62:22 63:2
63:17 64:10
64:14,18,19
64:20 65:5
65:21 66:1
66:3,16,22
66:25 67:4
67:20
**old**
19:21
**older**
20:2 32:24
**once**
60:24
**ones**
6:16,23 7:2
19:22
**opine**
39:13
**opined**
51:24
**opining**
25:25
**opinion**
26:18,22
58:2,19

59:3 62:18
**opportuni...**
16:9 44:6
**opportunity**
46:19
**opposed**
34:15
**organic**
14:10,12
26:16
**organicity**
52:16,20
**ORIGINAL**
1:12
**originates**
50:3
**ought**
17:8
**overall**
25:25 26:10
26:15

_____
P
_____

**P**
3:1,1
**PA**
1:16 3:6
**page**
4:3 5:20,22
5:23 8:19
12:11 13:21
13:22,25,25
15:3,5,9,15
15:16 21:6
30:14 53:5
62:2 63:8
64:12 68:3
**pages**
5:16 47:2
70:3
**parameters**
54:25
**parentheses**
53:25
**part**
8:8 19:2
22:23 30:11



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

30:24 40:12
40:16 41:1
41:5 56:24
**particular**
6:14 35:18
52:12
**parties**
63:10 70:6,7
**pass**
47:7
**pathology**
34:16
**pattern**
45:10
**PATTI**
3:19
**Pennsylvania**
1:15 3:4
**people**
6:2 32:2,2,5
32:7,24
38:7 44:20
44:22 45:8
45:8 50:19
**percent**
38:17
**percentile**
13:9 25:7,13
25:14,16
48:18 49:3
50:16
**percentiles**
35:23 50:20
**performance**
6:3 18:18
51:24
**performs**
33:7
**person**
10:12,14
15:25 16:3
16:5 26:7
26:16 32:19
33:6,15
48:11 57:4
69:7
**personally**
69:6

**person's**
10:1,15 16:8
39:2
**Petitioner**
1:7 3:3
**PhD**
1:11 2:8,11
5:5 69:1,3
69:6
**Philadelphia**
1:15,16 3:5
3:6
**phrase**
9:24 52:11
**phrased**
52:19
**phraseology**
12:25
**picture**
43:14
**Pieternelle**
3:22
**pigment**
10:15
**placed**
48:18 61:24
62:10
**please**
18:16 43:3
49:24
**plethora**
32:18
**point**
39:20 50:9
50:11
**pointed**
65:15
**portion**
6:7 10:6
22:24
**portions**
5:17 8:15,15
**position**
45:1,2,5,6
46:12
**positives**
34:19

**possibili...**
10:13
**possible**
62:8
**potentially**
47:14
**practice**
39:2
**practitioner**
10:8
**pre**
6:15
**prefer**
50:19
**presence**
52:16
**PRESENT**
3:21
**presentation**
19:14
**presented**
19:10 28:12
29:22,23
**presents**
8:20
**presumably**
65:16
**Price**
1:11 2:8,11
5:5,9 27:22
28:25 29:11
29:20 31:17
31:18 46:19
67:5 69:1,3
69:6
**pride**
52:25
**prior**
33:14
**probably**
39:7
**problem**
26:22 30:6
67:2
**proceedings**
5:1,16
**process**

23:11 39:24
61:2
**produces**
34:6
**profile**
26:6
**properly**
66:9,13
**proved**
69:6
**provide**
10:7 57:8
**provided**
10:6
**proxies**
44:2 58:10
**proxy**
16:7,10,23
36:5 43:20
43:24
**psycholog...**
59:10
**public**
69:12 70:3
70:12
**publication**
51:12
**published**
5:25 6:16,18
6:22,23
**purpose**
31:21 34:10
**purposes**
10:9 51:6
52:3 69:9
**put**
50:5 53:11
65:19
**putting**
33:11
**P.O**
3:12

——————
**Q**
——————
**quality**
16:9
**quarrel**

64:2,23
**question**
5:21 9:8
21:18 48:2
51:1,9
52:13,24
53:1,3
57:14 58:8
62:6,25
63:17,21,23
65:1,21
**questioning**
48:2
**questions**
4:3 27:18
48:5 56:15
61:18 62:16
62:23
**quote**
10:23

——————
**R**
——————
**R**
3:1,14 68:1
68:1
**race**
6:25 7:5,16
9:1,10,12
9:15,16,24
9:25 10:4,8
10:20 16:2
16:6,7,15
16:19,21
35:2 47:19
**racial**
8:5
**raised**
35:4,5,8
**Randall**
1:11 2:8,11
5:5 31:17
69:1,3,6
**range**
14:10,13
15:20,22
21:4,11,15
21:19 22:3
22:6 24:2



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                November 10, 2010

81

43:21
**rarely**
59:9
**raw**
11:22 12:1,4
 12:5 18:8
 18:10 20:21
 23:13 28:9
 28:18 29:23
 29:25 30:3
 30:7,12,15
 30:22 31:22
 31:24,24
 32:3,7,10
 32:15 33:20
 34:3 35:11
 35:22 36:3
 37:10 39:4
 40:1 45:7
 45:21,22
 46:1,2,3
 53:4 54:20
 56:5 59:17
 60:1,11,24
 61:5,15,24
 62:10 66:11
**raws**
 46:8
**reached**
 7:25
**read**
 7:4 8:1
 12:21 13:20
 14:3 15:1
 15:11,16
 62:22 63:18
 69:1
**reading**
 20:20
**really**
 6:20 7:6
 44:18 51:19
 54:2,5 66:3
**reason**
 7:3 49:10
**reasons**
 32:20
**recall**

6:10 10:10
 10:19,19,23
 43:22 50:4
 57:17,17,20
 57:21,21
**RECEIPT**
 1:12
**recess**
 27:15 31:12
**record**
 5:4,15 9:9
 13:21,25
 15:24 20:19
 21:8 23:2
 27:14,17
 31:11,14,16
 37:19 39:24
 46:6,12
 47:15 53:6
 57:25 67:23
**records**
 35:7 58:14
**redirect**
 28:24
**refer**
 34:14
**reference**
 17:25
**referred**
 33:23
**referring**
 5:17 9:14
 49:4,21
**reflect**
 33:4,5 46:23
 59:18
**reflected**
 18:7 26:3,6
 27:22,23
 45:17,22
 46:8,20
 53:12 56:5
 59:17 60:1
 66:23
**reflects**
 18:4 28:8,11
 34:22 60:2
**regard**

23:5,10,16
 27:3 52:13
**Registration**
 70:16
**Reitan**
 17:2,12
 36:11 37:2
 37:20 38:1
 38:2 44:15
**Reitan's**
 45:2
**relate**
 35:10,18
 40:2 52:6
**related**
 70:5
**relates**
 44:2
**relating**
 37:2 57:14
**relational**
 35:15
**relative**
 70:6
**relatively**
 18:24
**relevant**
 7:13 8:15
 51:1
**rely**
 18:5
**remains**
 17:10
**remember**
 24:7 57:6,23
**renew**
 56:11 61:14
 66:4,4
**rephrase**
 67:8
**report**
 10:20,23
 17:21 18:3
 18:7 36:15
 63:17,23,24
 65:2,2,6,16
 65:20

**reported**
 3:24 10:22
 35:2
**reporter**
 2:12 70:2,12
**reporting**
 66:11
**represent**
 8:15 44:3
**represent...**
 6:6
**represent...**
 14:19 23:12
**represent...**
 7:20
**represented**
 50:11
**resolve**
 48:5 53:3
**respect**
 7:14 12:3
 15:25 19:14
 20:24 21:2
 46:12
**Respondent**
 1:5 3:10
**response**
 5:20 62:23
**result**
 15:14 62:4
**results**
 28:9 34:12
 34:13,23
 37:13 42:1
 42:12 59:5
 59:18 60:2
**retard**
 59:7
**retardation**
 39:15 40:4
 42:13 51:2
 51:17,22
 58:17,22
 59:4,8,11
 63:12
**retarded**
 41:23,25

59:13
**review**
 17:23 67:12
**rhythm**
 55:13
**right**
 6:23 7:12
 9:5 10:12
 11:2 12:8
 12:17 14:6
 15:18 17:14
 18:6 19:2
 20:2,16,22
 21:21 25:3
 28:19 30:9
 30:18,23
 31:15 32:9
 32:14 33:18
 33:24 34:1
 34:3,10,13
 34:21 35:10
 36:10 37:8
 37:24 38:5
 38:22 39:3
 39:23 40:5
 41:9 43:3
 46:5 48:1
 48:15 51:23
 54:11,14,16
 55:2,6,13
 57:3,6 63:7
 65:21 67:12
 67:15
**ROBERTS**
 3:14
**room**
 64:3

---
**S**
---
**S**
 3:1 68:1
**SALINAS**
 3:19
**sample**
 7:19,20 9:21
 9:22,22
 21:20 24:15
 24:19 35:20


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                    November 10, 2010

82

35:25 36:11
37:5,6
43:11,11,12
44:19,22
**Sampling**
36:8
**sat**
64:22
**saw**
11:18
**saying**
8:24 26:24
32:17 34:19
**says**
12:18 17:16
22:12 45:12
54:11,12
**scale**
12:22,25
13:7,13,17
13:19 14:3
15:1,2,8,10
15:16,19
24:11,14,18
24:19 25:6
25:12 34:1
34:4 45:17
45:25 46:24
48:13 49:2
50:13,21
65:23
**scatter**
5:22
**school**
50:5 59:1,2
**scope**
57:11
**score**
11:22 12:1,4
12:22,25
13:1,7,13
13:17,19
14:3,9,12
15:1,2,8,10
15:16,22
16:16 20:25
23:13 24:9
24:11,14,18

24:19,20,23
25:7,12
31:24,25
32:3,7,22
32:25 33:15
33:16 34:3
34:4 35:18
39:2,19
40:8,9,13
40:18,19,23
41:2,7
45:12,25,25
48:15,18,19
49:2,3,11
49:15 50:18
51:13 53:6
53:11 54:12
54:20 55:6
55:14,15,23
56:6 60:1
61:24 62:11
**scored**
62:19 63:25
**scores**
12:5 18:4,20
18:24 19:1
24:22,23
26:3,5,9,19
27:22 28:18
29:23,25
30:3,7,12
30:15,19,22
31:1,2,22
32:10,15
33:10,12,20
34:1,8,11
35:11,13,23
36:3 37:10
39:4,9,10
39:16 41:9
41:10,19,20
41:22 42:3
45:3,7,21
45:22 46:1
46:2,3,8,25
48:14,17
49:16 50:8
50:12,12,13

50:14,18,21
51:20 52:12
53:4 56:4,5
58:17,25
59:17 60:12
62:14 65:23
**scoring**
60:11,21
64:4 66:19
66:19,23
67:1,17
**se**
16:20
**seal**
69:10 70:8
**Sean**
3:22
**seashore**
55:13
**second**
12:18 13:18
41:13
**seconds**
15:1 54:12
54:19
**section**
9:3,7
**see**
8:9,17 10:3
11:21 12:19
12:22 13:25
14:16 17:25
18:10 24:25
29:25 30:17
30:17,25
31:2 32:12
36:4,22
37:22 45:8
45:20 46:10
47:23 49:5
49:21 53:24
54:1 58:24
59:2 61:7
61:23 62:8
63:17,23
65:1 66:20
67:2
**seeks**

16:15
**seen**
21:10
**selective**
36:24
**selectivity**
37:3
**self**
10:1,17
48:10
**sensitive**
26:12
**sent**
10:7
**separate**
35:25,25
**separately**
7:17
**September**
5:16 63:9
**series**
8:11
**set**
6:21 17:11
38:3,15
**sets**
38:4
**sheet**
20:21 53:6
53:11,15,24
54:12,22
55:6,9,14
55:15,23
56:7 60:25
61:6,8,22
61:23 62:1
62:4,5
**sheets**
56:6
**Shoreline**
3:17
**Short**
27:15 31:12
**shorthand**
2:12 70:2,12
**show**
12:1 23:7

32:19
**showing**
30:13
**side**
14:3 17:15
35:12
**signature**
1:12 69:1
**similar**
16:5 32:2,8
40:18 45:8
**similarly**
33:15
**simply**
8:25 49:2
**sit**
46:3 64:23
67:4,5,9
**sitting**
30:7
**six**
37:15,16
42:3
**size**
37:5,6
**skin**
10:14,15
**socioecon...**
16:9,24
43:21
**Solutions**
2:14 70:15
**somebody**
32:1 34:19
41:25 59:13
**sorry**
14:23 15:19
19:9,20
22:16,16
26:4 46:14
48:14 51:7
64:12 67:17
**sort**
22:23 23:1
**sounds**
55:22
**source**



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                                    November 10, 2010

83

11:10 17:21
**sources**
50:6 51:15
51:16
**SOUTHERN**
1:3
**Southwestern**
50:5
**speak**
35:12
**speaking**
18:24 26:20
**specific**
32:12 37:9
41:11 44:10
67:3
**specifically**
31:22 37:9
**speech**
55:22
**speed**
33:1
**spend**
23:11 29:11
**splitting**
65:10
**stage**
17:12
**stand**
52:25
**standard**
12:24 23:13
39:16,19
40:8,9,13
40:17,19,23
41:2,7,9,10
41:19,21
45:25 48:15
48:16 49:11
49:14,15,16
49:16,19
50:12,14,21
52:4 59:9
**standards**
36:24
**stands**
16:10

**start**
5:11 21:22
48:15
**started**
44:18
**starting**
5:23 11:21
12:6
**stat**
50:8
**state**
2:13 46:11
69:4,12
70:1,3,13
**stated**
70:3
**States**
1:3,4 3:11
3:17 7:20
**statistical**
50:8
**status**
16:10,24
**step**
24:10 39:7
61:2
**stones**
23:1
**Street**
1:16 2:15
3:5
**strengths**
45:10
**studied**
33:22 36:2
**studies**
16:20 32:18
**study**
10:16 36:1
**Subject**
29:17
**subjects**
6:20
**subscribed**
69:8 70:8
**successive**
51:11

**successor**
51:12
**suggest**
51:4 56:11
**suggested**
57:7
**suggesting**
43:7,16
**suggests**
58:3,16
**Suite**
1:16 2:15
3:6,12,17
**summary**
24:9 30:20
53:15,24
54:22 55:8
56:7 60:25
61:6,8 62:1
62:4,5
**sure**
10:2,3 24:6
29:13,14
36:19 49:22
51:10 53:10
57:23
**sworn**
5:6 70:8
**system**
34:4 38:20

_____

_____
**T**
**T**
68:1,1
**table**
4:19 20:23
49:9
**take**
7:22 8:5
9:10,15
11:6 12:4,9
13:13,17
24:18 31:8
33:13 34:3
52:3
**taken**
2:11,13 56:6
70:6

**taker**
47:14
**takes**
24:14
**talk**
51:12
**talked**
9:9 24:5
25:8 48:13
60:4 65:17
65:18 67:15
**talking**
5:22 47:11
62:1,2
**tapping**
55:7,8,11
**task**
29:21
**Technically**
41:15
**techniques**
45:11
**tell**
12:2 50:2
53:13 62:18
64:3
**terms**
9:18 34:14
**test**
6:4 12:9
13:8 22:7
25:9 28:13
31:23 32:1
33:16,17
35:22 39:5
40:6,12,15
40:21 41:1
41:5 42:1,5
42:11,14,15
42:20,25
47:14 51:17
52:4 53:7
53:10 57:4
58:25 59:6
60:18 62:4
65:3
**testee**
43:21 56:24

**testee's**
34:23
**testified**
5:7 48:16
56:25
**testimony**
5:13 6:8 7:4
8:3,7 9:11
17:22 18:14
18:17 21:6
21:18 22:5
22:24 23:3
25:24 34:2
43:4,7,15
43:17,22
59:24 61:10
62:22 64:8
64:17 65:16
67:5,9
**testing**
26:15 35:19
36:6 44:23
62:19 64:5
65:14 66:9
67:17,18
**tests**
6:3,3 7:8
16:17 20:12
21:20 26:10
28:9,12
32:11,20,23
32:25 33:4
33:7 37:11
37:16,17
38:4 39:20
43:2 45:9
48:17 51:18
51:21,25
52:8,15,21
57:9 58:20
59:1,1,15
59:20 60:3
63:24 66:13
**Texas**
1:3,22 2:13
2:15 3:13
3:18 50:5
70:1,3,13


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                              November 10, 2010

84

**Thank**
31:15 53:2
  56:20
**thereof**
26:1 51:4
**thing**
14:15 15:13
  54:8
**things**
7:1 16:23
  33:5,12
  47:21 67:3
**think**
6:6 21:17,18
  22:21 24:8
  24:21 25:1
  25:18 27:11
  30:23 46:18
  47:20 50:23
  52:14 55:3
  55:25 56:24
  58:5,5,6,23
  59:24 61:15
  65:18
**thinking**
51:21
**third**
8:19 13:22
  15:9
**thought**
22:2 29:3
  48:1,21
  65:12
**three**
9:21 37:17
  50:11
**throwing**
23:1
**thrust**
52:23
**time**
5:3 12:5
  19:17,20
  20:7,17
  23:11 27:13
  27:16 29:11
  31:10,13
  52:8 67:22

**times**
54:18
**today**
46:4 48:2
  51:6,14
  60:5 61:6
  64:23
**Today's**
5:2
**told**
6:11
**tone**
10:14
**TONY**
3:14
**top**
20:16
**total**
9:21 54:18
**touched**
39:8
**TPT**
56:3 62:14
**TPT-B**
14:21 54:7
**TPT-DL**
53:20
**TPT-Local...**
55:3
**TPT-Memory**
54:21
**TPT-NDR**
54:4
**TPT-Total**
54:17
**trail**
31:22 37:11
  40:11,15,25
  41:4 42:4
  42:11,20,25
  59:20
**trails**
6:4 7:14
  14:15,20,25
  15:11,19
  18:19 19:4
  28:4,14,15

 39:5 55:25
  59:20
**transcript**
4:16 5:12
  63:8 67:13
**transfer**
61:11
**transferred**
60:25 61:8
**trend**
38:19,24
**trial**
4:16
**true**
52:5 66:1
  69:2 70:3
**try**
18:14 45:16
  51:10 53:3
**trying**
20:8 25:23
  39:12
**turning**
8:19
**two**
23:13 28:12
  37:16 45:1
**two-minute**
27:10
**two-part**
64:19
**type**
25:16 51:5
**types**
16:17
**typical**
59:12,14
**Typically**
61:1
**T-score**
13:14,20
  14:3,5
  15:11,17,19
  21:23 22:12
  24:3,19
  34:6 39:18
  41:16 48:22

 48:22 49:1
  49:11
**T-Scores**
23:13 27:4
  39:16 48:14
  49:17 50:14
  65:23

──────── **U** ────────
**Uh-huh**
5:21 34:7,17
  37:18 39:11
  39:17 41:18
  44:17,21,25
  54:24 60:14
  60:16,19
**unclear**
18:13
**undersigned**
70:2
**understand**
25:5 39:2
  51:9
**understan...**
6:18 19:17
  35:7 43:19
  43:23 58:13
  62:7,20
  63:5
**understood**
18:16,17
**United**
1:3,4 3:11
  3:17 7:20
**University**
50:5
**upbringing**
43:23 58:10
**updated**
6:19
**use**
7:18 11:25
  16:19 17:4
  17:16,17,18
  17:24 37:22
  38:7,23
  45:10 50:17
  51:17,20

 53:22 58:16
**usual**
48:10
**usually**
9:25 10:17
**utilized**
38:20
**utilizing**
24:10
**U.S**
3:11,16

──────── **V** ────────
**valuation**
39:25 40:3
  43:8
**variable**
36:5
**variables**
34:15 38:16
  39:1 41:16
**variety**
48:17
**various**
10:13 32:20
  48:4
**verified**
27:22 28:3
  61:16
**verify**
29:22 30:7
  30:21 45:16
  45:21,24
  46:1,3,8
  53:21 54:2
  54:19,23
  56:12 59:17
  60:1,8,10
  60:17
**versus**
35:16
**Videographer**
3:22 5:2
  27:13,16
  31:10,13
  67:22
**VIDEOTAPED**
1:11



Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.                          November 10, 2010

85

view
 45:11
views
 67:16
voice
 56:17 62:24
vouch
 53:9

---
### W
Wait
 64:6
walk
 11:22,23
Walnut
 1:16 3:5
want
 5:18 9:8
  11:22,22
  21:7 23:2
  29:19 43:5
  47:14 52:2
  53:10 62:22
wanted
 10:2 11:20
  25:21 45:20
wasn't
 7:10 10:1
  39:12 62:25
  65:6,6
way
 8:10 28:11
  33:3,6 34:9
  46:8,11
  49:7 53:9
  65:12,14
  66:12
ways
 9:21 10:2
weaknesses
 45:10
Wechsler
 50:7
weight
 56:12
Weiner
 4:18 12:5,6

17:14 19:8
19:19 22:12
25:7 31:2
32:9 36:11
37:10 39:5
42:11 45:23
57:7,17
62:18 63:21
65:12 66:8
Weiner's
 11:22 19:11
  19:17,20
  20:21 21:24
  22:17 23:7
  26:4,4,5,14
  27:24 40:5
  40:11,15
  41:25 42:4
  53:6 56:6
  59:19 60:3
  61:22 64:4
  67:18
went
 28:12
weren't
 64:3
West
 1:16 3:6
we'll
 9:7 29:20
we're
 12:5,11 27:2
  27:17 31:11
  51:23,23
  52:1 54:25
we've
 21:10 33:22
  35:1 36:10
  53:10 55:25
  61:20,22
white
 10:23
Whoops
 64:15
Wiseman
 1:14 3:7 4:5
  4:7,9,11
  5:9,15,20

8:14 11:3,6
11:12,15,20
14:22 15:7
17:23 20:8
20:11,15,19
20:22 21:21
21:23 27:10
27:18,25
28:15,17,19
28:23 29:2
29:5,7,10
29:14,19
30:2,4,13
30:18,23
31:8 36:25
44:7 46:11
46:16 47:6
47:9 49:23
50:1 56:9
56:16,19
57:10 59:23
61:17,20
62:2,6 63:2
63:5,8
64:13,20
66:3,18
67:20
withdrawn
 17:1 27:1
  66:2
witness
 5:6 11:8
  15:5 20:18
  28:3,7,10
  28:16,21
  29:3,21
  30:6,10,16
  30:19 31:6
  47:7 63:3
  64:10,15,18
words
 7:16 36:24
  42:7 52:1
work
 49:7
working
 54:25
works

34:9
wrap
 22:23
wrong
 33:8
wrote
 24:6

---
### Y
yeah
 11:15 20:3,8
  22:10,10
  24:13 28:16
  29:17 30:13
  37:16 58:7
  65:11 66:25
years
 8:21 14:1,2
  15:9 19:21
  37:5 50:25
yield
 41:16
yields
 23:17

---
### 0
04
 20:13

---
### 1
1
 4:16 5:14
  55:3
1.16
 54:17
10
 37:4 49:17
  50:13,13
  53:24
10th
 2:15 5:3
10:30
 27:14
10:34
 27:17
10:37
 31:11

100
 39:19 50:14
101
 40:14 41:3,8
11
 4:18
11-10-10
 1:22
11:01
 31:14
11:58
 2:16 67:23
  67:24
12
 8:21 14:1
  15:9
12-31-2011
 70:15
1221
 2:14
1305
 2:15
1500
 3:12
16
 5:21
186810
 1:1
19106
 1:16 3:6
1950s
 44:18

---
### 2
2
 4:17 8:13
  12:1,12
  14:1 15:6
  27:20 29:12
  46:12,14,20
  47:5
2-28
 20:14,15
2-28-04
 20:16
20
 37:4 63:9



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com

Randall Price, Ph.D.　　　　　　　　　　　　　November 10, 2010

86

**2000**
38:17
**2004**
6:15,16,17
 6:22,24 7:1
 9:2,14
 11:14
**2007**
23:16 40:20
**2010**
2:16 5:3,17
 70:9
**214**
5:16,22
**215**
5:20,23 21:6
**217**
5:16
**23**
55:13,16,18
**23C**
55:16
**23rd**
5:17 63:9
 70:9
**238**
63:8 64:13
**239**
64:13
**25**
27:8
**26**
54:18
**29**
13:20 14:9
 27:8

---
**3**
---
3
 4:18 5:24
 11:5 12:24
 13:21 14:9
 14:16 19:11
 19:15 20:24
 20:24 22:11
 23:12,18
 26:5 27:3

27:20,21
29:18 30:20
31:1,4
45:15 46:7
53:4,12,25
56:5 59:16
60:2,9
61:15,24
62:10 65:22
65:24 70:16
**3.33**
53:20 54:1
**30**
27:6
**3022**
70:14
**31**
4:6 20:20
 30:14 49:11
 53:5 62:3
**32**
54:12 55:25
**33**
14:4,12 21:3
 21:15,19,25
 22:2
**34**
23:20 27:6
**35**
8:21 13:15
 14:2 15:10
 27:4,5
**37**
15:12,19
**39**
8:21 13:15
 14:2,6
 15:10 19:22
 20:13,16
 27:4,5

---
**4**
---
4
 4:19 49:25
 50:2
**40**
19:21,24
 23:24 24:1

 24:3
**45**
 15:17,22
**46**
 55:11
**47**
 4:7
**49**
 4:19

---
**5**
---
5
 4:5,16 12:22
 13:7,13,17
 13:20,25
 14:3 15:15
 15:16
**5th**
 13:9 25:7
**5-10-2012**
 70:14
**50**
 39:18 41:17
 48:22 49:2
 49:17 50:15
 54:18 55:7
 55:8
**500**
 3:17 36:2
**540**
 1:16 3:6
**56**
 4:8

---
**6**
---
6
 25:13 54:21
 54:22
**601**
 1:16 3:5
**61**
 4:9
**61129**
 3:12
**64**
 20:12
**66**

4:10,11

---
**7**
---
7
 30:14 49:19
 53:5 62:2
**71**
 40:8
**72**
 49:11
**75**
 38:17
**76**
 40:23
**77002**
 3:13
**77208-1129**
 3:12
**78**
 40:10
**78401**
 3:18

---
**8**
---
8
 4:17 15:2,8
 15:11,16
**800**
 3:17
**84**
 40:18
**85**
 40:24 42:18

---
**9**
---
9
 54:12 55:20
 55:22
**9th**
 25:14
**9:51**
 2:16 5:3
**90**
 12:20 41:7
**91**
 6:19
**919**

3:12
**92**
 40:13
**93**
 12:21 14:25
 41:2 56:1
**94**
 12:1,10
 53:14
**95**
 54:15
**96**
 40:19


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.969.3027
Facsimile: 210.558.3670

Suite 630
9901 IH-10 West
San Antonio, TX 78230
www.esquiresolutions.com