IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

CORPUS CHRISTI DIVISION

UNITED STATES OF AMERICA                    2:02-cr-00216-1


VS.                                         January 12, 2011
                                            Corpus Christi, Texas
                                            11:20 a.m.
ALFRED NMI BOURGEOIS
        Defendant




TELEPHONE CONFERENCE

BEFORE THE HONORABLE JANIS GRAHAM JACK

UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the United States          Tony R. Roberts, AUSA
                               Mark Michael Dowd, AUSA
                               Office of the U. S. Attorney
                               1000 Louisiana
                               Suite 2300
                               Houston, Texas 77002

For the Defendant              Michael Wiseman, AFPD
                               Victor Abreu
                               Elizabeth Larin
                               Office of the Federal Public
                                  Defender
                               601 Walnut Street
                               The Curtis Center
                               Suite 545
                               Philadelphia, Pennsylvania
                                  19106



Proceedings from official electronic sound recording;
transcript produced by court approved transcriber.

DIGITAL SCROLL TRANSCRIPTION                    281.382.9862

| Court Clerk | Sondra Scotch |
|---|---|
| Electronic Recording Operator | Velma Gano<br>U. S. District Clerk's Office<br>1133 N. Shoreline Blvd.<br>Suite 208<br>Corpus Christi, Texas 78401 |

DIGITAL SCROLL TRANSCRIPTION                    281.382.9862

COURT CLERK:  The Court calls Criminal Action C-02-216, United States of America versus Alfred Bourgeois.

May I have appearances, please?

MR. WISEMAN:  Michael Wiseman and Elizabeth Larin for Mr. Bourgeois.

MR. ROBERTS:  Tony Roberts for the United States.

MR. DOWD:  Mark Dowd for the United States.

THE COURT:  Well, what do you think about getting a written report from your expert, Mr. Roberts, sometime before she appears by phone on the 13th?

MR. ROBERTS:  Yes, Your Honor, Tony Roberts for the record.

I – we actually got the transcripts a lot faster than we realized or anticipated.  So, we got them last night. I was able to e-mail the – a copy of Dr. Leestma's testimony to Dr. Rosch, but I did it last night.

I'm not sure – I haven't received any response from her yet.  She's very difficult to contact, as I think Mr. Wiseman will attest to.  But she actually – I was actually quite surprised she was able to call me on Monday before Dr. Leestma's testimony.

So, what I've done is I sent the transcript to her.  I asked her if there is any way that she could read it today and give me, at least, a one-page or a short summary of what kind of response and information she would have, and I

haven't had a response from her as of yet.

THE COURT:  Okay.  Do you have a phone number for her?

MR. ROBERTS:  Yes, Your Honor.  And I – when I call, generally, it goes into a voice mail.  I don't know if she – I actually don't know what her schedule is currently.  She's out in Maryland, and –

But she did tell me when we spoke on Monday that she had some kind of a training on Thursday morning but that she would make herself available by phone if there were any questions that anyone wanted to ask her after Dr. Leestma's deposition was completed and she made herself available for Thursday.  She – we didn't even talk about Wednesday.  But I will continue to try to reach out to her, Your Honor.

THE COURT:  Well, why – why don't you have somebody in your office try to reach her by phone right now and see how – what we're looking at?

MR. ROBERTS:  Yes. Your Honor.  I can ask Ms. Hohle to try and do that.

THE COURT:  Thanks.

MR. ROBERTS:  Do you want me to hang up or just sit the phone down?

THE COURT:  Just sit the – you know – you can do it, or you can have somebody in your office do it where it's more

private.

MR. ROBERTS:  Okay.

I will – I will – I'm going to leave for just a minute and go grab –

MR. DOWD:  Your Honor, Mark Dowd for the Government. I think I can – if it's sensible, I'll run and have Ms. Hohle – Ms. Hohle call and see –

THE COURT:  Okay.  What happened with our – what's all that buzzing – buzzing from?  Is that Mr. Roberts' phone?

MR. ROBERTS:  I'm still – no, Your Honor, I'm still sitting in the same place.  I haven't put my phone down or done anything yet.

MR. ABREU:  Hello.  Hello, everybody. This is Victor Abreu.  I just called in.  I apologize for being late, but I was away from my phone and didn't know that the time had been set.

THE COURT:  Would you hang up, Mr. Abreu, just for a second?

MR. ABREU:  Oh, yes, Your Honor.

(Counsel complies.)

THE COURT:  Uh- --

MR. ROBERTS:  That was it.

MR. LARIN:  Those hotel phones, traveling.

THE COURT:  Are we okay, Mr. Wiseman, without Mr. Abreu in?

MR. WISEMAN:  Yeah, sure.

THE COURT:  Okay.

MR. WISEMAN:  Sure.

MR. ROBERTS:  Your Honor – Tony Roberts – Mark Dowd just stepped in.  He said he's going to get Debbie and ask her to make the phone call.

THE COURT:  Okay.

MR. ROBERTS:  So Mark Dowd is no longer on the line.

THE COURT:  Okay.  Thanks.

Well, at least we'll know when Mr. Abreu comes back.

MR. WISEMAN:  We usually put a cow bell around his neck.

THE COURT:  No, he doesn't need one.

MR. ROBERTS:  I'm not sure if he will call back or not.  Nobody told him to call back.

(Pause in the proceedings.)

MR. ROBERTS:  Your Honor, I also just sent – Tony Roberts for the record – I also just sent Ms. Hohle an e-mail stating to her that your request that we contact Dr. Rouse immediately and find out if she's going to be able to get a report, a one-page report done.

THE COURT:  Okay.

Thank you.

(Pause in the proceedings.)

MR. WISEMAN:  Your Honor, while we're waiting –

THE COURT:  Sure.

MR. WISEMAN:  Yeah.  Mr. Roberts has made a request for Dr. Leestma's December 15th preliminary report, and we're going to be e-mailing that to him shortly.  We – you know, we've been traveling and what not, so it's been a hard –

THE COURT:  I hear you're ensconced in Corpus.

MR. WISEMAN:  Yeah, it's a little chilly down here.  I thought –

THE COURT:  It – I'm sorry about that, but –

MR. WISEMAN:  It's the first time it has been cold here.

THE COURT:  It's unusual.

MR. WISEMAN:  Yeah.  It feels like Philadelphia.

MR. ROBERTS:  It's Tony Roberts for the record, Your Honor.  I – perhaps it should be also useful at this time to inquire about whether Mr. Wiseman had planned on submitting Dr. Leestma's deposition testimony.  We were going to go ahead and submit that, and I believe that – you know, it's their witness, so.

MR. WISEMAN:  Yeah, we were certainly going to do that.  We haven't gotten the transcript yet.  I – so, we wanted it on same timeline you did, but we'll certainly file it with the Court when it comes in.

Mr. Abreu is standing by me now, and he tells me

he has the e-mail of it, so we'll – we'll file it shortly.

THE COURT:  Okay.

Well, you don't have to file with the Court, but does Mr. – do you all have it?

MR. WISEMAN:  Oh, we have it, but I thought it was going to be a – it was a trial deposition was my understanding.

THE COURT:  Well, just read it in.

MR. WISEMAN:  Okay.  I want to submit it as – as evidence.

THE COURT:  Okay.  Do you want me to – is that unobjected to, Mr. Roberts?

MR. ROBERTS:  Yes, Your Honor.  It's unobjected to.

THE COURT:  Okay.

MR. ROBERTS:  Obviously, that's what we would use to have Dr. Rouse respond.

THE COURT:  Okay.  So, I'll read it before the hearing.  Okay?

MR. WISEMAN:  Yes, that'll be great.

Thank you.

(Pause in the proceedings.)

THE COURT:  Are you a football fan, Mr. Wiseman?

MR. WISEMAN:  Oh, very much so, yes.

THE COURT:  I guess then you're for that Philadelphia team, huh?

MR. WISEMAN:  No, actually, I'm a new Giants fan.

THE COURT:  Oh, really?

MR. WISEMAN:  Well, I'm originally from New York, so I -

THE COURT:  Well, there you go.

MR. WISEMAN:  Some - some habits die hard.

THE COURT:  I know.  We were Baltimore Orioles fans for years when we moved down here, but there you have it - we finally switched over.

MR. WISEMAN:  You're a Hooks fan?

THE COURT:  Pardon?

MR. WISEMAN:  A Hooks fan, right?  Is that the local team, the Hooks?

THE COURT:  Oh, well, there's a - yes, it's a farm team for the Houston Astros.

MR. WISEMAN:  Right.  Right.

Yeah, I was actually quite pleased that the Eagles got beaten.  It's how telling it was.

MR. ROBERTS:  Well, there's not much focus in football in the State of Texas this year.

THE COURT:  Yeah, we're kind of out of it; aren't we?

MR. ROBERTS:  We are, yes, ma'am.

(Discussion between Court and Court Clerk.)

THE COURT:  Oh, you know what?  You know what?

Ms. Scotch, while we're on the phone, we were

just talking – just pointed out a problem.

THE COURT: Mr. Bourgeois is going to appear by phone, right?

MR. WISEMAN: That's right.

THE COURT: Can you be on the "Meet Me" line?

(Discussion between Court and Clerk.)

THE COURT: But then your doctor, Mr. Roberts, is going to appear by phone. So, if every – if they can all – if she can do the "Meet Me" line, we can do that, and Ms. Scotch will try to put Mr. Bourgeois on the "Meet Me" line as well. And – but we may have a problem with that.

Is that right?

(Discussion between Court and Clerk.)

THE COURT: She says she thinks it'll work.

MR. ROBERTS: Your Honor, Mark Dowd just stepped in and said that Debbie Hohle had received probably a phone call and it went straight forth to voice mail and has also e-mailed Dr. Rouse, so we made phone calls and e-mails trying to get her to respond and to no avail at this point.

MR. WISEMAN: Your Honor, this is Michael Wiseman. I'm wondering what time Mr. Roberts is thinking of having her available tomorrow to testify?

THE COURT: I guess in the afternoon, since he said she was booked up in the morning.

MR. ROBERTS: Yes, Your Honor. She told me that, if

I remember correctly – and I believe I put it in the – the motion, but I believe it was one or two hours in the morning, and I think she's going to be done at 11:30 a.m. Eastern Time, which would make her – should make her available at 10:30 – I mean, 10:30 – or after 10:30 our time.

MR. DOWD:  Your Honor, Mark Dowd.

Dr. Rouse is on Debbie's phone, and she's going into see Mr. Roberts.

THE COURT:  Oh, good.

MR. ROBERTS:  Okay?

THE COURT:  Great.

MR. ROBERTS:  I'm going to set this phone down, Your Honor, and – fine.

THE COURT:  Okay.  Thanks.

MR. ROBERTS:  Okay.

THE COURT:  This technology, like, telephones, is so amazing.

Are we going to do Bill May first; do you think, Mr. Wiseman?

MR. WISEMAN:  Yes.  I think Bill May first and I guess Mr. Sales will be second.

THE COURT:  Is he in person, Sales?

MR. WISEMAN:  Yeah.

THE COURT:  Okay.

MR. WISEMAN:  He's been subpoenaed, so.  We even got

the right address and everything.

THE COURT:  And we've got the video set up at home for Mr. May; is that right?

MR. WISEMAN:  Yes, we – we had that all taken care of.

THE COURT:  And we're going to re-test that this afternoon to make sure we can –

MR. WISEMAN:  Oh, okay.  Good.

THE COURT:  -- set up with – doing the video with that company.

MR. WISEMAN:  Match them up.

I think it's Esquire Solutions, but I –

MR. LARIN:  No, it's a different company.

THE COURT:  It's something else.  I know – Ms. Thompson just came in and told me earlier what it was.

Well, ours is Court Connect.

(Discussion between Court and Court Clerk.)

THE COURT:  Oh, okay.

The people that you all are using are Court Connect, and we have to make sure that our systems match.

MR. WISEMAN:  And then, I guess we have Ms. Hohle is going to testify, and Dr. –

THE COURT:  Ms. Hohle?

MR. WISEMAN:  -- Dr. Rouse.

THE COURT:  Okay.  Well, I've got a whole day set

aside.  Do you think we can do it?

MR. WISEMAN:  Oh, I hope so.  I'm actually supposed to fly at five o'clock to New Orleans to meet my wife.  We're going to a conference together.  Sorry.  I'm going to have to go –

THE COURT:  Oh, how nice.

MR. WISEMAN:  Yeah.

And so, my hope is to be on that plane, but we'll see.

Yeah, I mean – I expect that none of these witnesses will be particularly well, and then, we have the argument, which, you know –

THE COURT:  Okay.

MR. WISEMAN:  -- shouldn't take more than a few days, you know.

THE COURT:  Well, then, you have an impetus to speed along.

MR. WISEMAN:  That's right – along.  I always have an impetus to move along, although I will point out that –

THE COURT:  No, not in these kind of cases.  Surely, there's no impetus to move hurriedly in a –

MR. WISEMAN:  Oh, no.

THE COURT:  The longer you take the longer your client's –

MR. WISEMAN:  No, no, Your Honor.  See, the way we

look at it is the quicker we move the sooner we get released.

THE COURT:  I see.

MR. WISEMAN:  You know – so, that's our perspective.

I know some – some capital lawyers take a perspective you've articulated, but we don't share that.

THE COURT:  Well, then –

MR. WISEMAN:  And I would point out also that tomorrow shifting on to, in effect, our seventh day of hearing.  It's –

THE COURT:  The what?

MR. WISEMAN:  I'm trying to get a rise out of you, Judge.

THE COURT:  Oh.  No, it's not – I wasn't presupposing what I was going to decide on the case.  I'm just saying, you know, I always thought that the longer this took –

MR. WISEMAN:  This is all a little banter.

THE COURT:  Thank you.

Well – I hope you're – I hope you're taking him to the Windsor Court.

MR. WISEMAN:  I actually was staying at the Royal Sonesta.

THE COURT:  Well, that's not the Windsor Court, Mr. Wiseman.

MR. WISEMAN:  I know.  I'm a Public Defender.  Sorry.

THE COURT:  They have Government rates there.

DIGITAL SCROLL TRANSCRIPTION                          281.382.9862

MR. WISEMAN:  Oh, do they?

THE COURT:  Yes.

And they have them at the Ritz Carlton.

I think the Fifth Circuit stays at the Royal Sonesta by the way, Mr. Wiseman.

MR. WISEMAN:  Oh, is that right?

THE COURT:  Yes.

MR. WISEMAN:  O-o-h.

THE COURT:  So, it's a good hotel.

MR. WISEMAN:  Nice.

And we are starting at eight o'clock tomorrow, right?

THE COURT:  Yes.

MR. WISEMAN:  I think that's what you indicated.

THE COURT:  And I'll be here earlier if you want to start earlier.

MR. WISEMAN:  No, that's about as early as we can get moving.

THE COURT:  Okay.

I just thought it was nine o'clock by your biological time, so you might want –

MR. WISEMAN:  Well, it is, but, yeah, but we would still have to –

THE COURT:  Yes, of course.

I got, Mr. Wiseman, in the mail yesterday from

the district judges in Philadelphia historical calendar on – of Lancaster County that was so nice.

MR. WISEMAN:  Oh, really?

THE COURT:  Yeah.

MR. WISEMAN:  Who sent you that?

THE COURT:  Pardon?

MR. WISEMAN:  Who did you say sent it?

THE COURT:  Yeah, the historical county – the historical map from the district judges in –

MR. WISEMAN:  Oh, I see.

THE COURT:  -- in Lancaster County.

MR. WISEMAN:  Uh-huh.

THE COURT:  They apparently – there – they have a historical site for the federal judges there, and they put out this calendar every year.

MR. WISEMAN:  Oh, neat.

THE COURT:  It's really beautiful.

MR. WISEMAN:  Yeah.

I think there's a Judge Stingall (phonetic) who's from around there.

THE COURT:  Yes.

MR. WISEMAN:  I think he's involved.

MR. ROBERTS:  This is Tony Roberts.

THE COURT:  Yes, sir.

MR. ROBERTS:  Your Honor, I talked to Dr. Rouse on

the phone, and she's looking over the testimony right now. She said that she thinks that – she wants, first of all, to affirm that she stands by her first report, the autopsy report and that nothing from her testimony at trial is going to change because of anything she's seen from Dr. Leestma. At this point she's still reading through the transcript, but she said that she will make every effort to put a – maybe a short synopsis or a paragraph or two of how she's going to respond to Dr. Leestma's testimony.

THE COURT:  That would be wonderful.  And I hate to press on that, but if she could e-mail it to you tonight, and then, you can forward it on over to Mr. Wiseman and Mr. Abreu that would be really great.

MR. WISEMAN:  Yes, ma'am.  Wonderful, thank you.

MR. ROBERTS:  And I'll – and I'll do that, Your Honor, and I mean, she just knows that this is –

THE COURT:  Top priority.

MR. ROBERTS:  Yeah, and – and abnormal and I –

THE COURT:  Would you tell us that I apologize for all this late rushing around.  It's just – this is the way it is.

MR. ROBERTS:  Yes, Your Honor.

And then, she did confirm that she would be available at some point after 11:30 Eastern Time tomorrow.

THE COURT:  Okay.

And she has the "Meet Me" phone number?

MR. ROBERTS:  I'll have to get that to her, Your Honor.

THE COURT:  Would you?  Because –

MR. ROBERTS:  Is this the "Meet Me" phone number we're on?

THE COURT:  Yes, it is.

MR. ROBERTS:  Okay.

THE COURT:  So, when you do that, I guess you need to work out some way to e-mail her to say, call in.

MR. ROBERTS:  Yes, Your Honor.  I'll – I'll – we'll be able to do that.

THE COURT:  Or make sure you have her cell phone, so you can – you know – go outside the courtroom and call her.

MR. ROBERTS:  Yes, Your Honor.

THE COURT:  Anything else?

Are you all satisfied with that, Mr. Wiseman –

MR. WISEMAN:  Yes.

THE COURT:  -- if it –

MR. WISEMAN:  That's just what we had hoped for.  So, we're satisfied.

THE COURT:  All right.  Then, I'll see you all in the morning.

Thank you very much.

MR. WISEMAN:  Okay.

Thank you, Your Honor.

MS. LARIN:  Thank you.

MR. ROBERTS:  Thank you, Your Honor.

THE COURT:  Good bye.

MR. WISEMAN:  Good bye.

MR. ROBERTS:  Bye-bye.

(Proceedings concluded at 11:42:15 a.m.)

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

CORPUS CHRISTI DIVISION

I, Linda Griffin, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

/s/ Linda Griffin                              January 24, 2020
Linda Griffin                                            Date